UNITED STATES DISTRICT COURT
for the
MIDDLE DISTRICT OF PENNSYLVANNIA

| | | |
|---|---|---|
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, | : | |
| PENNSYLVANIA GAME | : | |
| COMMISSION | : | |
|     Plaintiff, | : | |
|     vs. | : | Civil Action No. 1:12-CV-1567 |
| | : | |
| Thomas E. Proctor Heirs Trust | : | |
| under Declaration of Trust dated | : | (Judge Christopher C. Connor) |
| October 28, 1980, which is recorded | : | |
| in Sullivan County in Book 106, | : | [Electronically filed] |
| at page 879, its successors and | : | |
| assigns; | : | |
|     Defendant. | : | |

COMMONWEALTH OF PENNSYLVANIA, PENNSYLVANIA GAME
COMMISSION'S REPLY BRIEF IN OPPOSITION TO DEFENDANT'S
BRIEF IN SUPPORT OF MOTION TO DISMISS AND MOTION FOR A
MORE DEFINITIVE STATEMENT

1

## STATEMENT OF MATERIAL FACTS

The subject of this dispute (the "Premises") is approximately 2,481 acres, more or less, in Davidson and Laporte Townships, Sullivan County, Pennsylvania. The Commonwealth of Pennsylvania, Pennsylvania Game Commission (PGC) designates the Premises as part of contract number L-44, and it is part of State Game Lands No. 13. The Premises are comprised of six warrants in the Warrantee names of Robert Irwin, Francis Nichols, John Brady, Thomas Hamilton, Charles Irwin and William Meylert (No. 2).

The PGC claims its interest in; *inter alia*, the coal, oil, gas or petroleum, and minerals, as well as the surface and surface support rights in and to the Premises by virtue of a deed by and between the Central Pennsylvania Lumber Company and the PGC, dated December 31, 1924 and recorded on June 6, 1925 in Sullivan County Deed Book 42, at page 538.

The titles to the aforementioned L-44 contain the following:

    a.    A deed by and between Thomas E. and Emma H. Proctor, husband and wife, and Union Tanning Company, dated October 30, 1894 and recorded January 23, 1895 in Sullivan County Deed Book 24, at page 53, in which Thomas E. and Emma H. Proctor did,

> "reserve and save to himself, his heirs and assigns all the minerals, coal, oil, gas or petroleum found in or under the surface of the land described in each of the above mentioned divisions."

   b. A quitclaim deed from O. B. Grant and Sarah M. Grant, his wife, dated September 17, 1897 and recorded June 13, 1898 in Sullivan County Deed Book 24, at page 790, to Emma H. Proctor, widow, James H. Proctor, Anne P. Rice, Emily W. Proctor, Thomas E. Proctor, heirs at law of Thomas E. Proctor, deceased, quitclaiming, *inter alia*,

> "all the right, title, interest and estate acquired by the parties of the first part hereto under and by virtue of forty-two several treasurer's Deeds from A. L. Smith, Treasurer of Sullivan County, Pennsylvania to O. B. Grant, dated September 21, 1896, of, in and to the minerals, coal, oil, gas or petroleum found on or under the surface of the lands described in said Treasurer's deeds."

  After the reservation and conveyance to the Proctors, the Premises were unseated land sold by Sullivan County Treasurer, Frank H. Farrell to C.H. McCauley, Jr. at Treasurer's sale dated June 8, 1908. All six warrants were sold and the sales are of record. C.H. McCauley, Jr. and Florence M. McCauley, his wife, by their deed dated December 6, 1910, and recorded in Sullivan County Deed Book 36 at page 223, granted and conveyed the said Premises to Central Pennsylvania Lumber Company.

  At the time of the Treasurer's Sale for unpaid taxes, the Premises was unseated land and defendants did not have the oil, gas and mineral estates separately assessed. As a result, the PGC is asserting ownership to all

interests in the Premises. The conveyance of mineral interests from the heirs of Thomas E. Proctor, Sr., to the Thomas E. Proctor Heirs Trust under Declaration of Trust dated October 28, 1980, and was recorded in Sullivan County in Book 1106, at page 879 thus creates a cloud upon the title of the PGC.

## STATEMENT OF QUESTIONS INVOLVED

A.  Is "possession" a jurisdictional prerequisite and element of a quiet title action under Pennsylvania Rule of Civil Procedure 1061(b)(2)?

(Suggested Answer: No.)

B.  Did the Commission plead sufficient facts to state a claim upon which relief may be granted for its quiet title action?

(Suggested Answer: Yes.)

C.  Has the Commission pled sufficient facts to establish what property was assessed and sold at tax sales held on June 8, 1908 and conveyed in the Treasurer's Deeds dated December 1, 1908?

(Suggested Answer: Yes.)

D.  Did the Commission plead sufficient facts establishing prima facie title to the premises' coal, oil, gas, petroleum and mineral rights?

(Suggested Answer: Yes.)

## SUMMARY OF ARGUMENT

"Possession" is not a jurisdictional prerequisite and element of a quiet-title action under Pennsylvania Rule of Civil Procedure 1061(b)(2). The Defendant is misreading the factual application of the law to one particular set of facts not present in this case. Possession is not even remotely necessary and the Commission has clearly met its burden under Pa.R.C.P(b)(3) and (b)(4). In a Treasurer's sale there must be a designation of the land such as would lead the owner of the land to knowledge of the fact that it was his land which was assessed. The Premises tracts were listed and sold under their warrantee names. As a matter of law, these names having a clear relation to the tracts being sold, would have provided a sufficient description to allow a landowner or other interest owner in said lands to determine that the land assessed and being sold for unpaid taxes was in fact his own. Pursuant to Pennsylvania law, a tax sale of unseated land passed *all* title of the real estate. Defendant has advanced a legal argument against that law, but the fact remains that if the Plaintiff's recitation of the law is true, a claim has been stated.

## ARGUMENT

A.   "Possession" is not a jurisdictional prerequisite and element of a quiet-title action under Pennsylvania Rule of Civil Procedure 1061(b)(2).

The purpose of a quiet title action is to resolve conflict over an interest in property. Pa.R.C.P No. 1061, 42 Pa.C.S.A., National Christian Conference Center v. Schuykill Tp. 142 Pa.Cmwlth.308, 311, 597 A.2d 248, 250 (Pa.Cmwlth.,1991). While subdivisions (1) and (4) are relatively narrow in scope, subdivisions (2) and (3) are quite comprehensive in their language. Goodrich-Amram Section 1061(b):2 (2d ed.) Furthermore, the rule authorizing quiet title actions was intended to be extremely broad in scope. Bruker v. Burgess and Town Council of Borough of Carlisle, 376 Pa. 330, 102 A.2d 418.

First, Defendant cites Siskos v. Britz for the supposition that "a determination of possession is a judicial prerequisite to a ruling on the merits pursuant to…[Rule 1061](b)(2)" (Doc. 14 , Paragraph 8).  This is simply not always the case. Rule 1061(b)(2) authorizes a quiet title action without regard to possession. McCullough v. Main Line Federal Sav. and Loan Ass'n, 63 Del.Co. 247, 1976 WL 17458 (1976). *Citing, inter alia,* City of Phila. v. Kelly, 78 Pa. D. & C. 445 (1951); Hanson v. Berenfield, 24 Pa. D. & C.2d 361 (1960); 3 Anderson Pa. Civ. Prac. Section 1061.18.

In <u>Siskos v. Britz</u>, the plaintiff filed a Complaint to Quiet Title pursuant to Pa.R.C.P 1061(b)(1) or in the alternative under 1061(b)(2), alleging that she [plaintiff] possessed the disputed property. The Court explicitly stated that,

> where there is a dispute ***regarding possession***, the trial court cannot proceed to the merits of the action without first determining whether plaintiff is in possession.

<u>Siskos v. Britz</u>, 567 Pa. 689, 700, 790 A.2d 1000, 1007 (2002). The Court stated that it must rule upon possession before entertaining an Action to Quiet Title filed under Rule 1061(b)(2) because (b)(1) and (b)(2) are not exclusive alternate remedies. The Court in <u>Siskos</u> went on to state that,

> if a plaintiff requests relief pursuant to both (b)(1) and (b)(2), a court cannot properly address the (b)(2) claim without first determining whether under (b)(1), a Rule 1051 Action in Ejectment will lie.

<u>Siskos</u>, 567 Pa. at 702, 790 A.2d at 1008. Where Plaintiffs were merely equitable owners of the property in question, the Court determined that their action under Pa.R.C.P 1061 [(b)(2)] was properly brought and that it was not necessary, as a jurisdictional prerequisite to establish that the plaintiffs were in possession. <u>Grossman v. Hill</u>, 384 Pa. 590, 594, 122 A.2d 69, 71(1956). The Court stated,

> It is true *that ordinarily*, the plaintiff in such an action must be in possession of the land in controversy, if out of possession his sole remedy being an action in ejectment.

Grossman, 384 Pa. 590, at 593, 122 A.2d 69, at 71.  The Court in Stofflit v. Troxell also recognized that, "by the common law, an ejectment will not lie for anything, whereupon entry cannot be made…" 1845 WL 4977 (Pa. 1845).

    The dicta in cases such as Siskos, Grossman and Stofflit, clearly applies to the ordinary case involving the surface of a tract, but it would not apply to those less frequent situations concerning title controversies to other interests in land. See, Bruker v. Burgess and Town Council of Borough of Carlisle, op. cit., ("for an interest however,…, which does not confer the right to exclusive possession, an action of ejectment will not lie."). Ownership of the mineral estate in the instant case is the very matter in litigation and is not an interest that can be exclusively possessed while still in the ground.

    Second, the facts averred by the Commission and the relief sought clearly shows that the action is not authorized by Pa.R.C.P. 1061(b)(1), to compel defendants to bring an action in ejectment.  The Commission seeks a declaration that it is the owner of the oil and gas estate in, on and under the Premises.  The Amended Complaint specifically requests relief under subsections 2, 3, or 4 of Pa.C.R.P.1061(b). (Doc., 12).  In essence, the complaint makes no assertion as to possession because the issue at hand is

one of title.  The Amended Complaint shows that Commission has title to certain warrants by and through certain deeds of record and avers a cloud on its title by Defendants' Declaration of Trust dated October 28, 1980, recorded in Sullivan County in Book 1106, at page 879.  In <u>Born v. City of Pittsburgh</u>, the Court of Common Pleas of Pennsylvania briefly states the doctrine of "Cloud on Title," as "consist[ing] of instruments or other proceedings in writing which appear upon the record and cast doubt upon the validity of the record title."  When a cloud on title is at issue, the focus of such a dispute is that of title and not of possession.  In keeping with the underlying purpose of unifying into one single procedure all the diverse procedures by which clouds on title were tried formerly, an action to quiet title provides a full and complete remedy for the removal of every type of cloud on a title to real estate. 22 Standard Pennsylvania Practice 2d Section 120:141.   To enforce such an interest, resort may properly be had to Rule 1061.

    B.    <u>The Commission plead sufficient facts to state a claim upon which relief may be granted for its quiet title action.</u>

The Commission has clearly met its burden under Pa.R.C.P(b)(3) and (b)(4).  Pa.R.C.P 1061(b)(3) has no language establishing possession as a

prima facie element, and the right to bring an action to quiet title under 1061(b)(4) is solely based on the substantive rights given to a purchase at tax or judicial sale both of which are applicable under the facts pled in the Amended Complaint. Hanson v. Berenfield, 24 Pa. D. & C.2d 361, 375, 1961 WL 6394, 10 (Pa.Com.Pl). Finally, Pa.R.C.P. 1066(b)(4) is a grant of authority to the court to enter any order necessary for the granting of proper relief.

C.   The Commission pled sufficient facts to establish what property was assessed and sold at tax sales held on June 8, 1908 and conveyed in the Treasurer's Deeds dated December 1, 1908.

The Commission's Amended Complaint clearly states its ownership of the mineral estate, and specifically the oil and gas in, on and under the Premises was acquired by and through a chain of title from the Land Office and into Commission.  (Doc. 12, ¶¶7, 9, 10,12,12a-12f, 13, 21, 22)  On June 8, 1908, six warrants went up for Treasurer's Sale for unpaid taxes.  For a Treasurer's sale to be considered valid, it is essential that there be a designation of the land, such as would lead the owner of the land to knowledge of the fact that it was his land which was assessed. Dunden v. Snodgrass, 18 Pa. 151 (Pa. 1851), 1851 WL 5944, 3, Lyman v. Philadelphia,

10

56 Pa. 488 (Pa. 1867), 1868 WL 7087, 9.  These six tracts were listed and sold under their warrantee names.  These names having a clear relation to the tracts being sold, would have provided a sufficient description to allow a landowner or other interest owner in said lands to determine that the land assessed and being sold for unpaid taxes was in fact his own.

D.   The Commission pled sufficient facts establishing prima facie title to the premises' coal, oil, gas, petroleum and mineral rights.

Pursuant to principles espoused in Hutchinson v. Kline, 199 Pa. 564 (1901); F.H. Rockwell & Co. v. Warren County, 228 Pa. 430 (1910); Proctor v. Sagamore Big Game Club, 155 F.Supp.465 (W.D. Pa, 1958), Greensboro Ferry Co. v. New Geneva Ferry Co., 34 Pa.C.C. 33, 1907 WL 2875 (Pa.Com.Pl.), and Roaring Creek Water Co. v. Northumberland County Commissioners, 6. C.C. 473, 1 Northumb. 181, 1889., a tax sale of unseated land passed *all* title of the real estate.  Similarly, in Fager v. Campbell, 5 Watts 287, 1836 WL 3027, 2 (Pa. 1836), the Court stated,

> The land itself and not the owner of it is debtor for the public charge, and it is therefore immaterial at the moment of sale what may be the state of the ownership or how many derivative estates may have been carved out of it.

While Babcock Lumber Co. v. Faust, 156 Pa. Super. 19, 26, 39 A.2d 298, 302 (1944) does stand for the proposition that only title to the property

11

assessed passes at a tax sale, Proctors' predecessor would have been required by the Act of 28th of March 1806 to have any estate he desired to be separated from the surface separately assessed. If said interest in land was not separately assessed, the tax or treasurer's sale would have vested all of the estate and title in fee to the purchaser, free and clear of all restrictions and reservations. Hutchinson, 199 Pa. 564 (1901), Greensboro Ferry Co. v. New Geneva Ferry Co., 34 Pa.C.C. 33, 1907 WL 2875 (Pa.Com.Pl.).

## CONCLUSION

The issue at hand is not possession, but rather a question of title to interests in land. Moreover, interests in land such as oil and gas are incapable of possession while in situ. Because the Commission claims ownership of the oil and gas by and through sundry tax sales, the Commission has clearly stated a claim under Pa.R.C.P 1061 upon which relief may be granted. The six unseated tracts of land sold for taxes were properly and adequately described by their Warrantee names. Certain interests in land which had previously been excepted and reserved were not separately assessed as required by law. Therefore, the tax sale of the six unseated tracts at issue would have vested all of the estate and title in fee to the purchaser, Commission's predecessor in title, free and clear of all restrictions, exceptions, and reservations existing prior to the sale for taxes.

WHEREFORE, the PGC respectfully requests this Honorable Court to issue an order dismissing Defendant's Motion to Dismiss and Motion for More Definitive Statement.

                              Respectfully submitted,

                              PENNSYLVANIA GAME COMMISSION

DATE: September 15, 2013    *s/ Bradley C. Bechtel*
                                        Bradley C. Bechtel, Chief Counsel
                                        I.D. #49681
                                        2001 Elmerton Avenue
                                        Harrisburg, PA  17110-9797
                                        FAX:  (717)772-0502
                                        (717)783-6530
                                        brbechtel@pa.gov

DATE: September 15, 2013    *s/ Audrey J. Broucek*
                                          Audrey J. Broucek, Assistant Counsel
                                        I.D. #208483
                                        2001 Elmerton Avenue
                                        Harrisburg, PA  17110-9797
                                        FAX (717)772-0502
                                        (717)783-4250, ext. 3617
                                        abroucek@pa.gov

CERTIFICATE OF SERVICE

We, Bradley C. Bechtel, Esquire, Chief Counsel of the Pennsylvania Game Commission, and Audrey J. Broucek, Assistant Counsel for the Pennsylvania Game Commission, hereby certify the foregoing REPLY BRIEF IN OPPOSITION TO DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS AND MOTION FOR A MORE DEFINITIVE STATEMENT was served by depositing same in the United States First Class Mail, the 16th day of September, 2013, upon the following:

Rieders, Travis, Humphrey, Harris Waters & Waffenschmidt
ATTN:  Thomas Waffenschmidt, Esquire
161 West Third Street
P.O. Box 215
Williamsport, PA  17703-0215

Respectfully submitted,

PENNSYLVANIA GAME COMMISSION

DATE:  September 15, 2013   *s/ Bradley C. Bechtel*
Bradley C. Bechtel, Chief Counsel
I.D. #49681
2001 Elmerton Avenue
Harrisburg, PA  17110-9797
FAX:  (717)772-0502
(717)783-6530
brbechtel@pa.gov

DATE:  September 15, 2013   *s/ Audrey J. Broucek*
Audrey J. Broucek, Assistant Counsel
I.D. #208483
2001 Elmerton Avenue
Harrisburg, PA  17110-9797
FAX (717)772-0502
(717)783-4250, ext. 3617
abroucek@pa.gov