**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| COMMONWEALTH OF | : | CIVIL ACTION NO. 1:12-CV-01567 |
| PENNSYLVANIA, | : | |
| PENNSYLVANIA GAME | : | |
| COMMISSION, | : | (Judge Conner) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THOMAS E. PROCTOR HEIRS | : | |
| TRUST, under Declaration of Trust | : | |
| Dated October 28, 1980, which is | : | |
| Recorded in Sullivan County in Book | : | |
| 1106, at page 879, its successors and | : | (Magistrate Judge Schwab) |
| assigns, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

In this civil action, proceeding *via* an amended complaint, the plaintiff,

Pennsylvania Game Commission ("PGC"), seeks to quiet title to an oil and gas

estate (the "mineral estate")[1] that underlies property situated in Sullivan County,

Pennsylvania (the "Premises").   Presently before me is a motion filed by the

---

[1]     In its amended complaint, PGC only seeks title to the oil and gas estate.
*Doc.* 12 at 9.  Yet, in its brief in opposition to the Trust's motion, PGC lays claim
to an interest in "*inter alia*, the coal, oil, gas or petroleum, and minerals…." *E.g.,*
*Doc.* 18 at 2.  Unfortunately for PGC, "it is axiomatic that [an amended] complaint
may not be [further] amended by the briefs in opposition to a motion to dismiss."
*Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir.
1988) (internal quotations and citation omitted).  As such, the Court should only
consider whether PGC has an interest in, and title to, the oil and gas estates.

defendant, Thomas E. Proctor Heirs Trust, a Massachusetts trust, its successors, and assigns (collectively "the Trust") pursuant to Rule 12(b)(6), or in the alternative, Rule 12(e), of the Federal Rules of Civil Procedure. For the reasons set forth herein, I recommend that the Trust's motion be granted in part and denied in part.

## I.     __Background and Procedural History__.

On August 10, 2012, PGC initiated this action by filing a civil complaint against the Trust to quiet title to the mineral estate. *Doc.* 1. Upon being served with the complaint, the Trust moved to dismiss it under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Doc.* 6.   Once the motion became ripe for review, I issued a Report and Recommendation, wherein I recommended that the complaint be dismissed for failing to state a claim. *Doc.* 11. I also recommended that PGC be granted leave to file an amended complaint. *Id.* Before the Report and Recommendation was ripe for review by the Court, PGC filed its amended complaint. *Doc.* 12. Nevertheless, the Court ultimately adopted my recommendations. *Doc.* 13.

In the Amended Complaint, PGC alleges that the Premises, under which the mineral estate lies, is approximately 2,481 acres and located in Sullivan County,

Pennsylvania.[2]  In 1895, Thomas E. Proctor ("Proctor") and his wife, Emma H. Proctor ("Emma"), executed and delivered a deed conveying the Premises to the Union Tanning Company ("UTC"), reserving for Proctor, his heirs, and his assigns, "all the minerals, coal, oil, gas or petroleum found in or under the surface" of the Premises, and such deed was recorded.  In the same year, but after Proctor executed and delivered the deed conveying the surface rights to the UTC as severed from the reserved mineral estate, Proctor died and was survived by Emma and their four children.  Subsequently, in 1898, the Grant family executed and delivered a quitclaim deed to Proctor's heirs-at-law, quitclaiming any interest that the Grant family might have had in the mineral estate.  Thereafter, the quitclaim deed was recorded.

In June 1908, due to unpaid taxes, the Sullivan County Treasurer sold the Premises, at a tax sale, to C.H. McCauley, Jr. ("McCauley").  According to PGC, at the time of the tax sale, the Premises was unseated, and, for the purpose of taxation, the mineral estate was not assessed separately from that of the surface estate.[3]  In December 1908, McCauley was issued six duly acknowledged

---

[2]     These facts are taken from PGC's amended complaint, and they are supplied only for the purpose of providing background.  I pass no judgment on their actual veracity.

[3]     The amended complaint does not provide when the tax *assessment* was conducted on the Premises.  In other words, it remains unclear whether the

treasurer's deeds for the six warrants comprising the Premises.   Thereafter, in December 1910, McCauley and his wife executed and delivered a deed conveying the Premises to the Central Pennsylvania Lumber Company ("CPLC").   The deed conveying the Premises to the CPLC was recorded.

Fifteen years later, in 1925, the CPLC executed and delivered a deed conveying its rights in the Premises to PGC.   Subsequently, the deed conveying the Premises to PGC was recorded, and it is by virtue of this conveyance that PGC claims that it acquired its interest and title in the Premises and mineral estate.

According to PGC, in 1980 Proctor's heirs conveyed their interests in the mineral estate of the Premises to the Trust under a declaration of trust, dated October 28, 1980, which is recorded in Sullivan County.   Further, PGC asserts that the Trust has since made claims of ownership or has attempted to convey its rights in the mineral estate, specifically with regard to its rights in both oil and gas.

Accordingly, based on these factual allegations, PGC seeks to quiet title to the mineral estate under Rule 1061(b)(2), (b)(3), or (b)(4) of the Pennsylvania Rules of Civil Procedure.   On August 1, 2013, however, the Trust filed a motion

---

assessment occurred prior to Proctor's reservation of the mineral estate or after the reservation.  Instead, PGC focuses primarily on the date of the tax *sale*.  This is a crucial distinction, because if the assessment occurred before the reservation, Proctor's reservation in the mineral estate would have been divested and been conveyed to the purchaser at the tax sale.  *See Powell v. Lantzy*, 34 A. 450 (Pa. 1896)

to dismiss the amended complaint, or in the alternative for a more definite statement, that has been fully briefed and is ripe for disposition on the merits.

## II.    Legal Standards.

As a general matter, Rule 12 of the Federal Rules of Civil Procedure enumerates various defenses and objections that a party may raise in response to a pleading and the manner in which such defenses and objections are to be asserted. *See* Fed. R. Civ. P. 12.   In this case, the Trust has moved to dismiss PGC's amended complaint pursuant to two of those provisions, Federal Rules of Civil Procedure 12(b)(6), or in the alternative, Rule 12(e).

With respect to Rule 12(b)(6) of the Federal Rules of Civil Procedure, it provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).   When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint, and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss."   *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Further, a court need not "assume that a ...

5

plaintiff can prove facts that the ... plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Federal notice and pleading rules require that the plaintiff's complaint provide "the defendant notice of what the … claim is and the grounds upon which it rests." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To test the sufficiency of a plaintiff's complaint in the face of a defendant's Rule 12(b)(6) motion, the court must conduct a three step inquiry.  *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).  Next, the factual elements of the claim should be separated from the legal elements of the claim; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  *Id.*; *see also Fowler v. UPMC v. Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well pleaded factual allegations have been isolated, the court must determine whether they are sufficient to demonstrate a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 555 (requiring that a plaintiff allege facts sufficient to "raise a right to relief beyond the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

With respect to Rule 12(e) of the Federal Rules of Civil Procedure a party may move for a more definite statement of a pleading when the pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).  Pursuant to this Rule, the party moving for a more definite statement "must point out the defects complained of and the details desired." *Id.*

## III.  <u>Applicable Law.</u>

In this action, being entertained by the Court pursuant to its diversity jurisdiction, 28 U.S.C. § 1332, the parties agree that Pennsylvania law governs, and it is well-established that "federal courts sitting in diversity cases are required to apply the substantive law of the state whose laws govern[s]…." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378 (3d Cir. 1990). Where there is no guidance from the Commonwealth's highest court, my task is to predict how that high court would resolve the matter.  *See id.*  "In making such predictions [I] recognize that the state's highest authority is the best authority on its own law and that if there be no decision by that Court then [I] must apply what [I] find to be the state law after giving proper regard to the relevant rulings of other courts of the state." *Id.* (quotations and citations omitted). Thus, "[my] role is not to form or create state

7

law but to decide the case as [I] believe it would have been decided by the state's highest court had the [issue] arisen in the state court system." *Id.* (citing *Becker v. Interstate Properties*, 569 F.2d 1203, 1205 n. 5 (3d Cir. 1977)).

## IV.   **Discussion**.

In its amended complaint, PGC seeks to quiet title to the mineral estate in accordance with Pennsylvania Rule of Civil Procedure 1061 ("Rule 1061").  The Supreme Court of Pennsylvania promulgated this Rule in 1947 to "unify into one single procedure all of the diverse procedures by which clouds on title were formerly tried." *Siskos v. Britz*, 790 A.2d 1000, 1007 (Pa. 2002)(internal quotations and cited case omitted).  Accordingly, Rule 1061 neither creates a new action nor changes the substantive rights of the parties or jurisdiction of the courts.  *Id.*

In pertinent part, Rule 1061 provides that an action to quiet title may be brought:

> (1) to compel an adverse party to commence an action of ejectment;
>
> (2) where an action of ejectment will not lie, to determine any right, lien, title or interest in the land, or to determine the validity or discharge of any document, obligation, or deed affecting any right, lien, title or interest in land;
>
> (3) to compel an adverse party to file, record, cancel, surrender, or satisfy of record, or admit the validity, invalidity or discharge of, any document obligation or deed affecting any right, lien, title or interest in land; or

(4) to obtain possession of land sold at a judicial tax sale.

Pa. R.C.P. 1061(b)(1-4).  At issue here is whether PGC has sufficiently pleaded a claim pursuant to Rule 1061(b)(2), (b)(3), or (b)(4).  Alternatively, if I find that PGC has pleaded a valid claim for relief, the Trust has asked the Court to consider whether it is entitled to a more definite statement.

### A. PGC's claim brought under Rule 1061(b)(2).

In its amended complaint, PGC first brings an action to quiet title under Rule 1061(b)(2), claiming that it now owns the mineral estate, free and clear of any interest that the Trust believes it holds, because the mineral estate was divested *via* the aforementioned tax sale of the Premises.  *Doc.* 12 at 9.  The Trust, however, argues that PGC has failed to plead any facts establishing that either party was not in possession of the mineral estate at the time the amended complaint was filed. *Doc.* 15 at 12-13.  In opposition to the Trust's motion, PGC relies upon cases that deal with an entirely different subpart to Rule 1061(b), or that can be factually distinguished from this matter, in contending that possession is not an element of an action to quiet title under Rule 1061(b)(2).  *Doc.* 18 at 6, 7-8.  Additionally, PGC argues that (1) the line of cases supporting the proposition that possession must be properly pleaded does not apply to interests in mineral rights, because such property cannot be exclusively possessed while still in the ground, and (2)

since the issue at hand concerns the parties' title to the mineral estate, possession is not required to be pleaded. *See id.* at 8-9.

Rule 1061(b)(2) provides that an action to quiet title can be brought "[w]here an action in ejectment will not lie, to determine any right, lien, title, or interest in the land or determine the validity … of any document, obligation or deed affecting any right, lien, title or interest in the land…." Pa. R.C.P. 1061(b)(2). Generally, ejectment is an action filed by a plaintiff who does not possess the land but has the right to possess it, against a defendant who has actual possession. *Soffer v. Beech*, 409 A.2d 337 (1979); 22 Standard Pennsylvania Practice 2d § 120:1. Accordingly, a party bringing a claim under Rule 1061(b)(2) must demonstrate that an ejectment action will not lie. In addition, the same party must also demonstrate that she is not in possession, that she does not have the right to possess the property, and that she wishes to determine all rights in the property. *See Siskos*, 790 A.2d at 1008 (construing Rule 1061(b)(2)); 22 Standard Pennsylvania Practice 2d § 120:145. As such, a determination of the plaintiff's possession is a jurisdictional prerequisite to a ruling on the merits pursuant to Rule 1061(b)(2). *Siskos*, 790 A.2d at 1008.[4]

---

[4] The Pennsylvania courts have, on occasion, found that a determination of possession is not always a jurisdictional prerequisite in actions instituted under Rule 1061. *See Sutton v. Miller*, 592 A.2d 83, 88 n. 5 (Pa. Super. Ct. 1991)(citing cases). Thus, where plaintiffs, out of possession, were mere equitable owners

Even though the rule from *Siskos* is clear regarding possession as a jurisdictional prerequisite, PGC presses that it is not required in this particular case. PGC's arguments, though, are flawed. First, that PGC is proceeding under Rule 1061(b)(2) and not (b)(1) does not entitle it to an inference of a lack of possession. Such an argument is in complete contradiction to the holding in *Siskos*, *supra*.

Second, and last, PGC argues that the mineral estate cannot be exclusively possessed given the minerals' location in the ground. But, based on the definition of possession with respect to minerals, such an argument is meritless.

As stated in my previous Report and Recommendation:

> In the context of mineral rights, the Pennsylvania courts have generally found possession when the minerals are "in grasp," such as where a party has tapped into the portion of the land bearing extractable minerals. *See Hicks v. American Natural Gas Co.*, 57 A. 55, 58 (Pa. 1904) (citing *Westmoreland, Etc., Natural Gas Co. v. De Witt*, 130 Pa. 235 (1889)("And equally so as between lessor and lessee … the one who controls the gas –

without right to immediate exclusive possession, the jurisdictional prerequisite did not apply to a 1061(b)(2) claim. *Grossman v. Hill*, 122 A.2d 69, 71 (Pa. 1956). Similarly, where the plaintiff-lessor was out of possession and maintained no right to immediate possession, the case was permitted to proceed under Rule 1061(b)(2) and (3). *Brennan v. Shore Bros., Inc.*, 110 A.2d 401, 402-03 (Pa. 1955). This matter, however, does not involve leased premises nor is this a case where PGC has a mere equity stake in the Premises. Rather, PGC claims full ownership and the right to possess the mineral estate *via* its conveyance of the Premises traced back to the tax sale. *See Doc.* 12 at ¶ 7, 22. Thus, possession must be shown by PGC, unless its remaining argument has merit.

> has it in his grasp, so to speak – is the one who has possession in
> the legal as well as in the ordinary sense of the word.").

*Doc*. 11 at 10.   Accordingly, although oil and gas, commonly referred to as minerals *feroe naturoe*, are generally located in the ground and have peculiar attributes, they can still be exclusively possessed, so long as they are within "grasp."   For example, the gas and oil can be considered possessed when a well is put down, which has tapped either mineral.   *See, e.g.*, *Westmoreland & Cambria Nat. Gas Co. v. DeWitt*, 18 A. 724, 725 (Pa. 1889)(explaining the same).

Here, though, PGC makes no effort to show that they were *not* in grasp of said minerals belonging to the mineral estate.   Instead, much like it did in the initial complaint, PGC fails to allege that it does not control said mineral rights; much less that it does not exercise dominion over them.   *Watkins v. Watkins*, 775 A.2d 841, 846 (Pa. Super. Ct. 2001); *Moore v. Duran*, 687 A.2d 822, 827 (Pa. Super. Ct. 1996), *app. denied*, 700 A.2d 442 (1997).   As well, PGC fails to allege that it has not extracted, or has not attempted to extract minerals to the exclusion of the Trust, or that it had not entered onto the Premises, or secured the Premises, for such purpose.   *See generally, Hicks*, 57 A. at 58.   Consequently, without a plausible showing of the lack of possession by PGC, its claim under Rule 1061(b)(2) should be dismissed.

**B. Claim brought pursuant to Rule 1061(b)(3) and (b)(4).**

PGC alternatively raises a quiet-title claim under Rule 1061(b)(3) and (b)(4). In moving to dismiss PGC's claim under these subparts, the Trust argues that PGC fails to establish a *prima facie* title to the Premises.[5]  *Doc.* 15 at 9-10.  Primarily, the Trust contends that PGC's claim fails because only title to assessed property passes at a tax sale; therefore, the basis of PGC's title to the mineral estate, flowing from the tax sale, is flawed.  *See id.*  PGC, nevertheless, counters by arguing that a tax sale of unseated land passes all title of real property.  *Doc.* 18 at 11.  Moreover, PGC contends that the Proctors' predecessor would have been required by the Act of 28th of March 1806 to have any estate the predecessor desired to be separated from the surface separately assessed.  Accordingly, PGC asserts, if said interest in land was not separately assessed, then the tax sale would have vested the entire estate in fee to the purchaser at the tax sale.  *Id.* at 11-12.

With respect to Rule 1061(b)(3), possession is not a jurisdictional prerequisite.  But, as the District Court for the Eastern District of Pennsylvania recently noted, Rule 1061(b)(3) does not specify who may bring such a quiet title action or what precisely must be pleaded.  *Montgomery County, Pa. v. MERSCORP, Inc.*, 904 F.Supp.2d 436, 445 (E.D. Pa. 2012).  Nevertheless, after

---

[5]  The Trust makes the same argument with respect to PGC's claim under Rule 1061(b)(2).  I declined to address it there, however, since I found instead that PGC fails to plead possession.

conducting an incredibly thorough analysis, the same court ultimately predicted, pursuant to its authority to do so, that the Supreme Court of Pennsylvania would hold that a plaintiff states a claim for relief by pleading that (s)he is "the present owner of such premises, or . . . any other person, or persons, in any manner interested in any such . . . conveyances." *Id.* at 447, 449. (citation omitted).  In addition, the same court ruled that the plaintiff must also show an interest "of some type" in the land at issue or "some pecuniary interest. . . ." *Id.* at 450.

Likewise, with respect to PGC's remaining claim, a plaintiff may bring a quiet-title action "to obtain possession of land sold at a judicial tax sale."  Pa. R.Civ.P. 1061(b)(4).  Although the case law on this subpart is scarce, it seems apparent, especially in light of the analysis conduct by the Eastern District of Pennsylvania, *supra*, that a plaintiff must either be the purchaser of, or have some type of interest in, property sold at a tax sale and establish his title and *right to possession. See Hoffman v. Bozitsko*, 182 A.2d 113, 114-15 (Pa. Super. Ct. 1962); *Prusan v. McGuire*, 82 Pa. D. & C. 374, 277-78 (1952).

In the case *sub judice*, I find that PGC has met its pleading burden with respect to the quiet-title claim brought under Rule 1061(b)(3) and (4).  In the amended complaint, PGC traces its interest and title in the Premises from a treasurer's sale of the Premises for unpaid taxes.  PGC further asserts that at the time the Premises was sold at the treasurer's sale, it was unseated, and for the

purposes of taxation, the mineral estate was not separately assessed.  Thus, PGC avers that it has interest and title to said mineral estate.

The Trust's argument that PGC fails to demonstrate that it has a *prima facie* title in the mineral estate, because that estate was not separately assessed before the tax sale, fails.  In this regard, Pennsylvania law is clear that a lien for unpaid taxes attaches only to the estate assessed, "and that estate, but no more, passes at a public sale…." *Babcock v. Faust*, 39 A.2d 298, 301-02 (Pa. Super. Ct. 1944).  At the same time, in a case that recognized and was predicated upon the previously mentioned rule, the Supreme Court of Pennsylvania held that where there is a severance of the surface from the subsurface, the mineral owner has a duty to notify the county commissioners of this fact, and "if he fails to do so, and thereafter the lands are assessed as to the entire estate as unseated lands, and are sold as such at a tax sale, the owner of the surface may purchase at such sale, and acquire good title to the minerals." *Hutchinson v. Kline*, 49 A. 312 (Pa. 1901).

In this matter, PGC traces its title to the mineral estate to a tax sale that occurred when the Premises was assessed as, and considered, unseated.  Moreover, PGC clearly alleges that at the time of the tax sale, the Trust did not have the mineral estate separately assessed, even though, based on Proctor's alleged conveyances, the mineral estate was intended to be separated from the surface estate (i.e. the Premises).  Thus, it is reasonable to infer from the amended

15

complaint that the Trust, through Proctoer's heirs, failed in its duty to inform the assessor that the mineral estate should have been separately assessed. Accordingly, taking the allegations in the amended complaint as true, it is plausible to conclude that PGC may have a valid title in the mineral estate based on its allegations coupled with the holding in *Hutchinson*. Consequently, I find that PGC has stated a valid claim for relief under both 1061(b)(3) and (4); thus, the Trust's dismissal motion should be dismissed on the claim brought under these subparts.

### C. The Trust's 12(e) Motion for a More Definite Statement.

As discussed, in addition to moving to dismiss PGC's amended complaint, the Trust alternatively moves for a more definite statement from PGC regarding what property was assessed and sold at the alleged tax sale, and then conveyed *via* treasurer's deeds. According to the Trust, without a more definite statement it is unable to reasonably prepare a response to PGC's assertion that it acquired ownership to the mineral estate *via* the tax sale of the Premises, because only property assessed passes at a tax sale. *Doc.* 15 at 13-14. Appearing to rely on its earlier argument - that it obtained an interest in, and title to, the mineral estate based on the fact that the Trust, through the Proctor heirs, failed to inform the tax assessors that the mineral estate should have been separately assessed – PGC contends that the Trust's motion for a more definite statement should be denied.

For the reasons stated in the previous subsection of this Report and Recommendation, I find that the amended complaint's averments are neither vague nor ambiguous in this respect. Rather, as made clear in the amended complaint, the Trust, through the Proctor heirs, separated the mineral estate from the surface estate (i.e. the Premises) *via* its reservation of said minerals. Further, at the tax sale the only property that was assessed, as alleged in the amended complaint, was the surface estate, not the mineral estate. Thus, it is plausible to conclude that PGC obtained interest in, and title to, the mineral estate underneath the Premises. As such, it cannot be said that the Trust cannot reasonably prepare a response to the amended complaint. Moreover, any concerns that the Trust might have about the validity of the chain of title can be further explored during the discovery process. The Trust's motion for a more definite statement, therefore, should be denied.

## V.  **Recommendation**.

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that:

(1) The Trust's motion (*Doc.* 14) be **GRANTED IN PART AND DENIED IN PART**:

    a.  The motion should be **GRANTED** with respect to its request for dismissal of PGC's quiet title claim under Rule 1061(b)(2); and

    b.  The motion should be **DENIED** in all other respects.

17

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions. Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **10th** day of **April, 2014**.

*S/ Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge

18