IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH of PENNSYLVANIA, PENNSYLVANIA GAME COMMISSION, | : : : : : | CIVIL ACTION—LAW |
| Plaintiff | : : | CASE NO.   1:12-CV-1567 |
| vs. | : : | JUDGE: Christopher C. Connor |
| THOMAS E. PROCTOR HEIRS TRUST, | : : : | [ELECTRONICALLY FILED] |
| Defendant | : : | |

**Defendant Thomas E. Proctor Heirs Trust's Brief in Support of Objections to the April 10, 2014 Report and Recommendation of the Honorable Susan E. Schwab**

# Table of Contents

**Page:**

## 1. Statement of the Question Involved.

    **A. Quiet-title action: *prima facie* title.** Did Magistrate Judge
Schwab err in concluding that the Game Commission pled
sufficient facts establishing *prima facie* title to the premises's
coal, oil, gas, petroleum, and mineral rights? ……………………….. 1

## 2. Statement of the Case.

    A. Procedural history. ……………………………………………… 1

    B. Statement of facts.

        (1) The Parties. ………………………………………………….5

        (2) The premises. ……………………………………………… 6

        (3) The Trust's claim to the premises's coal, oil, gas,
petroleum, and mineral rights. …………………………………… 6

        (4) The Game Commission's claim to the premises's coal,
oil, gas, petroleum, and mineral rights. ………………………... 7

## 3. Argument. ……………………………………………………….8

    A. The Game Commission must allege facts giving rise to a duty to
notify under the Act of 1806. ………………………………………10

    B. The Game Commission must allege facts establishing a failure to
comply with the duty to notify. ……………………………………...11

    C. The Game Commission must allege facts establishing that the
tax assessments included the oil and natural gas rights. ……………13

    D. The Game Commission must allege the contents of the

treasurer's deeds. ............................................................14

**4. Conclusion.** ............................................................... 15

# 1. Statement of the Question Involved.

## A. Quiet-title action: *prima facie* title.
Did Magistrate Judge Schwab err in concluding that the Game Commission pled sufficient facts establishing *prima facie* title to the premises's coal, oil, gas, petroleum, and mineral rights?

# 2. Statement of the Case.

## A. Procedural history.

On August 10, 2012, the Commonwealth of Pennsylvania, acting through the Pennsylvania Game Commission, filed a *Complaint* naming the Thomas E. Proctor Heirs Trust as a defendant. The *Complaint* alleged an action to quiet title against the Trust with respect to the coal, oil, gas, petroleum, and mineral rights pertaining to approximately 2,481 acres, more or less, located in Davidson and Laporte Townships, Sullivan County, Pennsylvania. (Doc. 1).

On November 30, 2012, the Trust filed a *Motion to Dismiss* with respect to the *Complaint*. (Doc. 6). Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Trust sought dismissal of the Game Commission's *Complaint* and all of the claims asserted therein. Since it was pursuing a quiet-title action under Pennsylvania Rule of Civil Procedure 1061(b)(1), the Game Commission had to plead facts establishing that it possessed the premises's coal, oil, gas, petroleum, and minerals at the time it filed its *Complaint*. It failed to do this, which meant that

the Game Commission had failed to establish a jurisdictional prerequisite for and element of its alleged quiet title action.

On June 28, 2013, United States Magistrate Judge Susan E. Schwab issued a *Report and Recommendation* recommending that the Trust's *Motion to Dismiss* be granted and the Game Commission's *Complaint* "be dismissed without prejudice to the filing of an amended complaint …." (Doc. 11, 1-2, 11).

On July 19, 2013, the Court issued an order stating that:

1. The Report and Recommendation of Magistrate Judge Schwab (Doc. 11) are ADOPTED.

2. Defendant's motion to dismiss (Doc. 6) is GRANTED.

3. Plaintiff's complaint (Doc. 1) is DISMISSED without prejudice. The court notes that plaintiff filed an amended complaint (Doc. 12) on July 18, 2013. Defendant shall respond to the amended complaint pursuant to Local Rules.

(Doc. 13, 2).

In the *Amended Complaint*, the Game Commission asserted an action to quiet title against the Trust under Pennsylvania Rules of Civil Procedure 1061(b)(2), (b)(3), and (b)(4). (Doc. 12, 9, 10).

On August 1, 2013, the Trust filed a *Motion to Dismiss and Motion for a More Definite Statement* with respect to the *Amended Complaint*. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Trust sought dismissal of the

Game Commission's *Complaint* and all of the claims asserted therein.  Since it was pursuing a quiet-title action under Pennsylvania Rule of Civil Procedure 1061(b)(2), the Game Commission had to plead facts establishing that neither it nor the Trust possessed the premises's coal, oil, gas, petroleum, and minerals at the time the Game Commission filed its *Amended Complaint*.  It failed to do this, which meant that the Game Commission had failed to establish a jurisdictional prerequisite for and element of its Rule 1061(b)(2) quiet-title action.  *See Siskos v. Britz*, 567 Pa. 689, 701, 790 A.2d 1000, 1008 (2002).  The Trust also sought dismissal of the Game Commission's quiet-title actions brought under Rules 1061(b)(2), (b)(3), and (b)(4), because the *Amended Complaint* failed to plead facts establishing the Game Commission's *prima facie* title to the premises's coal, oil, gas, petroleum, and mineral rights.

On April 10, 2014, Magistrate Judge Schwab issued a *Report and Recommendation* recommending that the Trust's *Motion to Dismiss and Motion for a More Definite Statement* be granted in part and denied in part.  (Doc. 24, 2, 17).  Magistrate Judge Schwab concluded that the Game Commission failed to plead sufficient facts establishing that neither it nor the Trust possessed the premises's coal, oil, gas, petroleum, and minerals.  (Id. at 12).  Because of this, Magistrate Judge Schwab concluded that the Game Commission's Rule 1061(b)(2) quiet-title action should be dismissed.  (Id.).  As to the Game Commission's Rule 1061(b)(3)

3

and (b)(4) quiet-title actions, Magistrate Judge Schwab found that the Game

Commission pled sufficient facts to establish its *prima facie* title.  (Id. at 14).

She stated:

> In this regard, Pennsylvania law is clear that a lien for
> unpaid taxes attaches only to the estate assessed, 'and
> that estate, but no more, passes at a public sale ....'
> *Babcock v. Faust*, 39 A.2d 298, 301-02 (Pa. Super. Ct.
> 1944).  At the same time, in a case that recognized and
> was predicated upon the previously mentioned rule, the
> Supreme Court of Pennsylvania held that where there is a
> severance of the surface from the subsurface, the mineral
> owner has a duty to notify the county commissioners of
> this fact, and 'if he fails to do so, and thereafter the lands
> are assessed as to the entire estate as unseated lands, and
> are sold as such at a tax sale, the owner of the surface
> may purchase at such sale, and acquire good title to the
> minerals.'  *Hutchison v. Kline*, 49 A. 312 (Pa. 1901).
>
> In this matter, [the Game Commission] traces its title to
> the mineral estate to a tax sale that occurred when the
> Premises was assessed as, and considered, unseated.
> Moreover, [the Game Commission] clearly alleges that at
> the time of the tax sale, the Trust did not have the mineral
> estate separately assessed, even though, based on
> Proctor's alleged conveyances, the mineral estate was
> intended to be separated from the surface estate (i.e. the
> Premises).  Thus, it is reasonable to infer from the
> amended complaint that the Trust, through Proctor's
> heirs, failed in its duty to inform the assessor that the
> mineral estate should have been separately assessed.
> Accordingly, taking the allegations in the amended
> complaint as true, it is plausible to conclude that [the
> Game Commission] may have a valid title in the mineral
> estate based on its allegations coupled with the holding in
> *Hutchison*.  Consequently, I find that [the Game
> Commission] has stated a valid claim for relief under
> both 1061(b)(3) and (4); thus, the Trust's dismissal

4

> motion should be dismissed on the claim brought under
> these subparts.

(Id. at 15-16).

On April 24, 2014, the Trust filed *Objections to the April 10, 2014 Report and Recommendation of the Honorable Susan E. Schwab*.  The Trust contends that Magistrate Judge Schwab erred in finding that the Game Commission pled sufficient facts to establish its *prima facie* title to the premises's coal, oil, gas, petroleum, and mineral rights.  Pursuant to Middle District L.R. 72.2 and 72.3, the Trust submits this brief in support of its *Objections*.

**B. Statement of facts**.

The Game Commission has alleged the following facts in its *Amended Complaint*.

**(1) The Parties.**

The Pennsylvania Game Commission and the Thomas E. Proctor Heirs Trust are the parties to this civil action.  The Game Commission is an independent administrative agency of the Commonwealth of Pennsylvania.  (Doc. 12, ¶ 1).  The Trust is a Massachusetts trust.  (Id. at ¶¶ 2, 3).  Its beneficiaries are the heirs of Thomas E. Proctor, Sr.  The heirs claim to own mineral interests in Pennsylvania, which derive from Proctor, Sr.  (Id. at ¶ 16).  Under a Declaration of Trust dated October 28, 1980, a majority of the Proctor heirs conveyed their Pennsylvania-mineral interests to the Trust.  (Id.).

5

### *(2) The premises.*

The property at issue is approximately 2,481 acres, more or less, located in Davidson and Laporte Townships, Sullivan County, Pennsylvania.  (Doc. 12, ¶ 5). It is comprised of six warrants in the names of Robert Irwin, Francis Nichols, John Brady, Thomas Hamilton, Charles Irwin, and William Meylert (No. 2).  (Id. at ¶ 6). The premises is part of Pennsylvania State Game Lands No. 13, and the Game Commission has designated it as part of contract number L-44.  (Id. at ¶ 8).

### *(3) The Trust's claim to the premises's coal, oil, gas, petroleum, and mineral rights.*

The Trust believes and has asserted that it owns the premises's coal, oil, gas, petroleum, and mineral rights.  (Doc. 12, ¶¶ 2, 24).  In line with this belief and assertion, the Trust has tried to convey its oil and gas rights.  (Id. at ¶ 24).

The Trust's claim to ownership of and title to the premises's coal, oil, gas, petroleum, and mineral rights relies on two deeds.  The first is a deed between Thomas E. Proctor, Sr. and Emma H. Proctor, his wife, and the Union Tanning Company dated October 30, 1894.  (Doc. 12, ¶ 11a).  It contained a reservation of the premises's coal, oil, gas, petroleum, and mineral rights. (Id.).  It stated that Proctor, Sr. did:

> reserve and save to himself, his heirs and assigns all the minerals, coal, oil, gas or petroleum found in or under the surface of the land described in each of the above mentioned divisions.

(Id.).

The second deed was one dated September 17, 1897 between O.B. Grant and Sarah M. Grant, his wife, and Emma H. Proctor, James H. Proctor, Anne P. Rice, Emily W. Proctor, Thomas E. Proctor, Jr. (Doc. 12, ¶ 11b). Through it, the Grants quitclaimed their interest in the premises's coal, oil, gas, petroleum, and mineral rights that they acquired through treasurer's deeds. (Id.). The deed stated that the Grants quitclaimed:

> all the right, title, interest and estate acquired by the parties of the first part hereto under and by virtue of forty-two several treasurer's Deeds from A.L. Smith, Treasurer of Sullivan County, Pennsylvania to O.B. Grant, dated September 21, 1896, of, in and to the minerals, coal, oil, gas or petroleum found on or under the surface of the lands described in said Treasurer's deeds.

(Id.).

### (4) The Game Commission's claim to the premises's coal, oil, gas, petroleum, and mineral rights.

The Game Commission also claims ownership of and title to the premises's coal, oil, gas, petroleum, and mineral rights. (Doc. 12, ¶¶ 10, 21, 22). Its claim relies on a tax sale and two subsequent conveyances.

On June 8, 1908, the premises was sold at a tax sale. (Doc. 12, ¶ 12). At the time, the premises was unseated, and the oil, gas, and mineral estates were not separately assessed. (Id. at ¶¶ 17, 18). C.H. McCauley, Jr. purchased the premises

7

at the tax sale.  (Id. at ¶ 12).  On December 1, 1908, he was issued 6 treasurer's deeds for the six warrants comprising the premises.  (Id. at ¶¶ 12a-12f).

In a deed dated December 6, 1910, McCauley and his wife, Florence M. McCauley, conveyed the premises to the Central Pennsylvania Lumber Company.  (Doc. 12, ¶ 13).

In a deed dated December 31, 1924, the Central Pennsylvania Lumber Company conveyed the premises to the Game Commission.  (Doc. 12, ¶ 7).

## 3. Argument.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).  To state a claim for relief, the complaint must show an entitlement to relief with its facts.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  "To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible."  *Id.* at 210.

When determining facial plausibility, a court must accept as true all factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  Legal conclusion, however, are "not entitled to the assumption of truth."  *Id.* at 679, 129 S.Ct. at 1950.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.*  Furthermore, a court does not have to accept unwarranted factual

8

inferences or bald assertions. *Curay-Cramer v. Ursuline Acad. of Wilmington Delaware, Inc.*, 450 F.3d 130, 133 (3d Cir. 2006); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

To establish a quiet-title action under Rule 1061(b)(2), (b)(3), or (b)(4), a plaintiff must establish a *prima facie* title to the property. *Moore v. Commonwealth, Dep't of Envtl. Res.*, 129 Pa. Cmwlth. 628, 631, 566 A.2d 905, 907 (1989); *Hoffman v. Bozitsko*, 198 Pa. Super. 553, 557, 182 A.2d 113, 115 (1962); *DiCarlo v. Licini*, 156 Pa. Super. 363, 364, 40 A.2d 127, 128 (1944).

In this case, the Game Commission and Magistrate Judge Schwab rely on *Hutchison* to support the Game Commission's alleged *prima facie* title to the premises's coal, oil, gas, petroleum, and mineral rights. Assuming *arguendo* that *Hutchison* stands for the holding Magistrate Judge Schwab stated, to establish a *prima facie* title under *Hutchison*, the following elements must be factually established: (1) a duty to notify under the Act of 1806; (2) a failure to do so; (3) a resulting assessment of the subsurface, which was included in the assessment of the surface; (4) an act on good authority to sell oil and gas rights; and (5) proof of title acquired. The *Amended Complaint* is devoid of any facts establishing these elements.

**A. The Game Commission must allege facts giving rise to a duty to notify
   under the Act of 1806.**

The Game Commission may not simply baldly assert that the Proctors or Grants

had a duty to notify without alleging facts establishing that such a duty arose. For

the oil and gas reservations that are the subject of this action to fall under the

purview of the Act of March 28, 1806 regarding unseated lands, they must first be

considered "unseated land." To be considered as such, there must be facts in the

record that ascribe a value to such reservations that makes them "estates in land."

An assessor may only tax that which has value; if no oil and gas exist, then the oil

and gas cannot be assessed and taxed as if they had value.  In *F.H. Rockwell &*

*Company v. Warren County*, the Pennsylvania Supreme Court stated:

> [I]t is important to keep in mind the fact that the right to
> tax depends upon the valuation and assessment of a
> definite estate in land.  If there is no land, there is nothing
> to tax, and this principle applies as well to minerals as to
> surface.  Because there may be a reservation of oil and
> gas by the grantor of the surface, or there may be an
> express grant of all the oil and gas underlying one or
> several tracts of land, it does not follow that in point of
> fact there is any such estate in existence.  When the
> assessor goes upon the land, it is his duty to make a
> valuation upon information or knowledge which will
> furnish some definite fixed basis of valuation.  *A mere
> naked reservation of oil and gas in a deed without any
> other facts to base a valuation upon is not sufficient to
> warrant the assessment of taxes.*  Development in the
> neighborhood, sales of oil or gas lands in close enough
> proximity to add value, or any other element of value
> which may form a basis of valuation may be taken into
> consideration by the assessor or other taxing authorities,

10

> but should always be borne in mind that the real estate is
> the thing being dealt with, and that the oil and gas are
> considered real estate, and *if there be no oil and gas, then
> there is not real estate to be taxed.*

228 Pa. 430, 434, 77 A. 665, 666 (1910) (emphasis added). Accordingly, the mere

conveyance or reservation of oil and gas rights in a deed—without any other facts

to base a valuation upon—is insufficient to warrant the assessment of taxes on the

oil and gas rights.

Thus, the Game Commission cannot simply say that the Act of March 28, 1806

controls the Proctors' rights. It must allege facts establishing that oil and gas

existed in known, taxable quantities at the time of and in the immediate area of the

subject tax sales. It will not serve simply to reference a statute without supplying

factual allegations to support why the statute is applicable. Until such time as the

Game Commission has alleged that oil and gas existed in taxable known quantities

and thus a duty to notify had arisen, the Game Commission has failed to establish

an element needed to establish its *prima facie* title.

## B. The Game Commission must allege facts establishing a failure to comply with the duty to notify.

The *Amended* Complaint lacks any facts establishing that the Proctors or the

Grants failed to notify the proper authorities of the severance of the premises's

coal, oil, gas, petroleum, and mineral rights. All it contains is the bald assertion

that "[a]t the time of the sales for unpaid taxes … the [Trust] did not have the oil,

11

gas, and mineral estates separately assessed." (Doc. 12, ¶ 17). From this factually

unsupported assertion, Magistrate Judge Schwab made the unwarranted factual

inference that "the Trust, through Proctor's heirs, failed in its duty to inform the

assessor that the mineral estate should have been separately assessed." (Doc. 24,

15-16).

   If a party failed to notify the assessor it would be plain from the record. The

statute states that:

> … on the failure of any holder of unseated lands to
> comply with the injunctions of this act, it shall be the
> duty of the county commissioners to assess on every tract
> of land, respecting which default shall be made, when
> discovered, four times the amount of the tax to which
> such tract or tracts of land would have been otherwise
> liable, and to enforce the collection thereof…

Act of March 28, 1806, § 1. Under the Act, an "owner is required, within a year of

his purchase, under penalty of fourfold taxation, to furnish a statement containing a

description of the tract, the name of the person holding the original title, and its

nature, number, and date, and the name of the grantor, and date of the conveyance

to the person retaining the statement." *City of Philadelphia v. Miller*, 49 Pa. 440,

451 (1865).

   Thus there are two concrete elements of manifest failure to register (1) an

imposition of a fine and (2) and public notice of sale after one year unpaid of the

described oil, gas or mineral rights in the name of the discovered owner or as

"unknown owner". Thus, one cannot baldly proclaim a failure to abide by the law without alleging the elements of such statutory failure. In this case, first it must be alleged that the unseated source registry is missing the Proctor notification and then further alleged that this was regarded as a failure by the authorities through imposition of the requisite fee penalty, assessment, notification and sale.

### C. The Game Commission must allege facts establishing that the tax assessments included the oil and natural gas rights.

A valid assessment is a necessary prerequisite for a valid tax sale. *Humphrey v. Clark*, 359 Pa. 250, 252, 58 A.2d 836, 838 (1948). "The lien for unpaid taxes attaches only to the estate assessed, and that estate, but no more passes at a public sale even though the authorities assume to convey land against which there had been no valid assessment." *Babcock Lumber Co. v. Faust*, 156 Pa. Super. 19, 26, 39 A.2d 298, 302 (1944). "In tax sales, … the sale is the method of enforcing a lien." *Brundred v. Egbert*, 164 Pa. 615, 622, 30 A. 503, 505 (1894). "What shall pass under the sale depends upon what was bound by the lien. The extent of the lien in tax cases must depend upon the assessment; for the lien of unpaid taxes is coextensive with the [property] which they are assessed." *Id.* "The question [is] therefore, … against what [property] were the taxes assessed? Upon that [property] the lien attached. To that [property] the tax sale passed the title." *Id.*

Since Proctor owned the premises in fee and sold the severed surface estate, the new owner of the surface estate had a duty under the Act of March 28, 1806 to

register the unseated land that changed hands. Unless fraud is alleged, the Court must reasonably infer that Elk Tanning complied with the Act and registered its surface estate.  For Proctor's reservation of the subsurface estate to be included in the purported tax sales, the Game Commission must allege facts establishing that more than just the surface estate was assessed.  The Game Commission must allege that a proper valuation (including fee) of the oil, gas or mineral estates in the name of the "Proctor, Grant or Unknown Owner" was added to the surface owner's assessment.  The Game Commission must also allege facts establishing that Sullivan County taxed oil and gas and that rates are listed.

### D. The Game Commission must allege the contents of the treasurer's deeds.

The Game Commission must plead facts establishing that it acquired title to the premises's coal, oil, gas, petroleum, and mineral rights.  It must do this by pleading the contents of the alleged December 6, 1910 treasurer's deeds.  The treasurer's deeds contain all of the requisite facts supporting a sale and provide the most accurate description of the property sold.  Absent factual allegations concerning the treasurer's deeds' content, no *prima facie* document purportedly transferring the oil and gas rights out of the Proctor title chain and into the Game Commission has be alleged.

14

## 4. Conclusion.

For the reasons stated herein, the Court should not follow Magistrate Judge Schwab's recommendations concerning the Game Commission's pleading of sufficient facts to establish its *prima facie* title.  Instead, the Court must dismiss with prejudice the Game Commission's *Amended Complaint* and all of the claims asserted therein, because the Game Commission failed to plead sufficient facts to establish its *prima facie* title, thereby failing to establish its quiet-title actions brought under Rules 1061(b)(2), (b)(3), and (b)(4).

Respectfully submitted:

RIEDERS, TRAVIS, HUMPHREY, HARRIS, WATERS, WAFFENSCHMIDT & DOHRMANN

*s/Thomas Waffenschmidt*
Thomas Waffenschmidt, Esquire
PA ID # 59214
Attorney for Defendant
161 W. Third St., PO Box 215
Williamsport,  PA  17703-0215
Tel:  (570) 323-8711
Fax:  (570) 323-4192
Date: April 24, 2014          E-Mail: twaffenschmidt@riederstravis.com

15

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH of PENNSYLVANIA, PENNSYLVANIA GAME COMMISSION, | : : : : : | CIVIL ACTION—LAW |
| Plaintiff | : : | CASE NO.  1:12-CV-1567 |
| vs. | : : | JUDGE: Christopher C. Conner |
| THOMAS E. PROCTOR HEIRS TRUST, | : : : | |
| Defendant | : : | [ELECTRONICALLY FILED] |

## Certificate of Service

I, Thomas Waffenschmidt, Esquire, hereby certify that on April 24, 2012 the foregoing *Defendant Thomas E. Proctor Heirs Trust's Brief in Support of Objections to the April 10, 2014 Report and Recommendation of the Honorable Susan E. Schwab* was filed with the Court's ECF System and served via the ECF System.

Respectfully submitted:

RIEDERS, TRAVIS, HUMPHREY, HARRIS, WATERS, WAFFENSCHMIDT & DOHRMANN

*s/Thomas Waffenschmidt*
Thomas Waffenschmidt, Esquire
PA ID # 59214
Attorney for Defendant
161 W. Third St., PO Box 215
Williamsport, PA  17703-0215
Tel:  (570) 323-8711
Fax:  (570) 323-4192
Date: April 24, 2012          E-Mail: twaffenschmidt@riederstravis.com

16