**Attorneys for Plaintiff**
Bradley C. Bechtel, Esquire
PA I.D. #49681
Audrey J. Broucek, Esquire
PA I.D. #208483
Commonwealth of Pennsylvania,
Pennsylvania Game Commission
2001 Elmerton Avenue
Harrisburg, PA 17110-9797
Tel: (717) 783-6530
Fax: (717) 772-0502
Email: brbechtel@pa.gov
        abroucek@pa.gov

**Attorneys for Defendant**
Thomas Waffenschmidt, Esquire
PA I.D. #59214
Christian J. Kalaus, Esquire
PA I.D. #89483
Rieders, Travis, Humphrey, Harris, Waters,
Waffenschmidt & Dohrmann
161 W. 3rd Street, P.O. Box 215
Williamsport, PA 17703-0215
Tel: (570) 323-8711
Fax: (570) 323-4192
Email: twaffenschmidt@riederstravis.com
        ckalaus@riederstravis.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH of PENNSYLVANIA, PENNSYLVANIA GAME COMMISSION, | : : : : : | CIVIL ACTION—LAW |
| Plaintiff | : : | CASE NO.  1:12-CV-1567 |
| vs. | : : | JUDGE: Christopher C. Conner |
| THOMAS E. PROCTOR HEIRS TRUST, | : : : | [ELECTRONICALLY FILED] |
| Defendant | : : | |

**Joint Case Management Plan**

Instructions: In many cases there will be more parties in the action than there are spaces provided in this form.  Each party shall provide all requested information. If the space on this form is not sufficient, the form should be retyped or additional pages attached.

No party may submit a separate Case Management Plan.  Disagreements among parties with respect to any of the matters below shall be set forth in the appropriate section.

Having complied with the meet and confer requirements set forth in the LOCAL RULES, or with any orders specifically modifying their application in the above-captioned matter, the parties hereby submit the following Joint Case Management Plan.

## 1.0 Principal Issues.

1.1 Separately for each party, please give a statement summarizing this case:

By Plaintiff:

This case involves the ownership of and title to the coal, oil, gas, petroleum, and mineral rights pertaining to approximately 2,481 acres, more or less, located in Davidson and Laporte Townships, Sullivan County, Pennsylvania.  Through the October 30, 1894 Proctor-Union Tanning Company Deed's exception and reservation (Sullivan County Deed Book 24, Page 53)—in which Thomas E. Proctor, Sr. and his wife, Emma H. Proctor, excepted and reserved to themselves, their heirs, and assigns all of the property's coal, oil, gas, petroleum, and mineral rights—the September 17, 1897 Grant-Proctor Quitclaim Deed (Sullivan County Deed Book 24, Page 790), and a majority of the Proctor heirs and assigns' assignment to the Thomas E. Proctor Heirs Trust ("the Trust") of their beneficial interest in and to the coal, oil, gas, petroleum, and mineral rights, the Trust claims to own and have title to a majority of the property's coal, oil, gas, petroleum, and mineral rights. The Commonwealth of Pennsylvania, acting through the Pennsylvania Game Commission ("the Game Commission"), has asserted a contrary ownership claim to these rights and has brought quiet-title actions under

Pennsylvania Rules of Civil Procedure 1061(b)(3) and (b)(4) against the Trust concerning the property's oil, gas, and mineral estate.

The effect of tax sales occurring on June 1, 1908 and of treasurer's deeds issued on December 1, 1908 are the central questions in the Game Commission's ownership claim and its quiet-title actions.  The Game Commission contends that one of its predecessor-in-title acquired title to the property's coal, oil, gas, petroleum, and mineral rights through the tax sales and treasurer's deeds pursuant to the principles put forth in *Hutchinson v. Kline*, 199 Pa. 564 (1901);  *F.H. Rockwell & Co. v. Warren County*, 228 Pa. 430 (1910);  and *Proctor v. Sagamore Big Game Club*, 155 F.Supp. 465 (W.D. Pa, 1958), a tax sale of the unseated land passed all title of the real estate fairly chargeable with the taxes and not separately assessed.

By Defendant:

This case involves the ownership of and title to the coal, oil, gas, petroleum, and mineral rights pertaining to approximately 2,481 acres, more or less, located in Davidson and Laporte Townships, Sullivan County, Pennsylvania.  Through the October 30, 1894 Proctor-Union Tanning Company Deed's exception and reservation (Sullivan County Deed Book 24, Page 53)—in which Thomas E. Proctor, Sr. and his wife, Emma H. Proctor, excepted and reserved to themselves, their heirs, and assigns all of the property's coal, oil, gas, petroleum, and mineral rights—the September 17, 1897 Grant-Proctor Quitclaim Deed (Sullivan County Deed Book 24, Page 790), and a majority of the Proctor heirs and assigns' assignment to the Thomas E. Proctor Heirs Trust ("the Trust") of their beneficial interest in and to the coal, oil, gas, petroleum, and mineral rights, the Trust owns and has title to a majority of the property's coal, oil, gas, petroleum, and mineral rights.   The Commonwealth of Pennsylvania, acting through the Pennsylvania Game Commission ("the Game Commission"), has asserted a contrary ownership claim to these rights and has brought quiet-title actions under Pennsylvania Rules of Civil Procedure 1061(b)(3) and (b)(4) against the Trust concerning the property's oil and gas estate.

The validity of tax sales occurring on June 1, 1908 and of treasurer's deeds issued on December 1, 1908 are the central questions in the Game Commission's ownership claim and its quiet-title actions. The Game Commission contends that one of its predecessor-in-title acquired title to the property's coal, oil, gas, petroleum, and mineral rights through the tax sales and treasurer's deeds. This contention is in error.

The alleged June 1, 1908 tax sales and December 1, 1908 treasurer's deeds were void, invalid, and passed no title to the property's coal, oil, gas, petroleum, and mineral rights, because: (1) the County lacked the statutory authority to assess, tax, or sell a mere naked reservation of coal, oil, gas, petroleum, and mineral rights, and did not do so; (2) the County lacked a sufficient basis to value, assess, or tax the coal, oil, gas, petroleum, and mineral rights; (3) the description of the property assessed and sold was legally deficient, in that, it failed to disclose and properly describe the nature and extent of the property involved; (4) the tax sales and treasurer's deeds did not include the coal, oil, gas, petroleum, and mineral rights, as they were severed from the surface estate  approximately 14 years before the purported tax sales and treasurer's deeds and only the surface estate was assessed and sold; (5) the tax sales and treasurer's deeds did not include the coal, oil, gas, petroleum, and mineral rights, as the Proctor heirs and assigns notified the appropriate authorities of the severance of the coal, oil, gas, petroleum, and mineral rights from the surface estate and paid all assessed taxes; (6) even if the Proctor heirs and assigns failed to notify the appropriate authorities of the severance of the property's coal, oil, gas, petroleum, and mineral rights from the surface estate, the statutorily mandated remedy for such a failure was the assessment of a fourfold-tax penalty, not the divestiture of title to these rights, and the duty to notify did not arise, as no taxable subsurface estate existed; (7) the tax sales and treasurer's deeds were irregular and failed to conform to the existing laws due to the failure to provide proper and timely notice of the delinquent taxes and tax sales and failure to properly recognize the sale in open court; (8) C.H. McCauley, Jr.'s purchase of the property at the June 8, 1908 tax sales served as a redemption, because he had a legal and moral obligation to pay the taxes for the defaulting owner and, at the time of the sales, was the defaulting owner's agent; (9) C.H. McCauley, Jr.'s purchase of the property at the June 8, 1908 tax sales was effectively a payment for the delinquent taxes, because he had a legal and moral obligation to pay the taxes for the defaulting owner and, at the

time of the sales, was the defaulting owner's agent; (10) C.H. McCauley, Jr. was responsible for registering the surface estate the Central Pennsylvania Lumber Company owned, which was the subject of the alleged June 8, 1908 tax sales and December 1, 1908 treasurer's deeds, so estoppel would prevent any claims that he acquired more than this surface estate assessed to the owner—the Central Pennsylvania Lumber Company; (11) C.H. McCauley, Jr. failed to register any property purportedly acquired by the June 8, 1908 tax sales and December 1, 1908 treasurer's deeds; therefore, no changes in ownership to the registered estates were effectuated by the  June 8, 1908 tax sales and December 1, 1908 treasurer's deeds; and (12) those contemporaneous parties familiar with the regular procedures of unseated land assessments and taxation, including C.H. McCauley, Jr. and other agents and affiliates of the United States Leather Company, made no claims of "title washing" against the Proctor heirs and assigns or other owners of excepted-and-reserved oil, gas, and mineral estates, so laches bars the Game Commission from attempting to apply this "title washing" theory more than 106 years after the fact. Furthermore, any alleged failure by the Proctor heirs and assigns to redeem the property's illegally taxed coal, oil, gas, petroleum, and mineral rights, any applicable statute-of-repose, and any applicable remedial statute do not bar the Trust from challenging the tax sales and treasurer's deeds, because the tax sales and treasurer's deeds were void and gave no authority to sell the property's coal, oil, gas, petroleum, and mineral rights.  Accordingly, the alleged June 8, 1908 tax sales and December 1, 1908 treasurer's deeds did not divest the Proctor heirs and assigns—and subsequently the Trust—of their ownership of and title to the property's coal, oil, gas petroleum, and mineral rights.

The Trust is not the only entity whose interest in the property's coal, oil, gas, petroleum, and mineral rights will be jeopardized by the Game Commission's quiet-title actions.   A second, separate trust, the Margaret O.F. Proctor Trust, holds property for the benefit of certain heirs of Thomas E. Proctor, Sr. and Emma H. Proctor.  On December 7, 1894, Thomas E. Proctor, Sr. died testate.  He was survived by his widow, Emma H. Proctor, and four children: James Howe Proctor, Anne Steele Proctor Rice, Emily Waters Proctor Mandell, and Thomas Emerson Proctor, Jr.  In 1946, James Howe Proctor died testate.  He was survived by four children: Thomas Emerson Proctor II; John Riker Proctor; May Jackson Proctor Shiverick Case; and Esther Benedict-

Proctor.   James Howe Proctor's daughter, Martha Moore Proctor, predeceased him without any issue.  In 1973, Thomas Emerson Proctor II died testate.  He was survived by his wife Margaret Olivia Flint Proctor and no issue.  In his will, Thomas Emerson Proctor II left everything to his wife Margaret O.F. Proctor.  Upon her death on November 26, 1978, Margaret O.F. Proctor's residuary trust was funded through her will, thereby creating the Margaret O.F. Proctor Trust ("the MPT").  The MPT was funded with all of the assets Margaret O.F. Proctor inherited from Thomas Emerson Proctor II, including but not limited to, a fractional interest in the oil, gas, and mineral rights owned by Thomas E. Proctor, Sr. and Emma H. Proctor.

The MPT and the Trust are two separate entities, as the MPT has not assigned its rights to nor become part of the Trust.  The MPT owns and holds title to 6.25% of the oil, gas, and mineral rights formerly held by Thomas E. Proctor, Sr. and Emma H. Proctor, while the Trust owns and holds title to 93.75% of those rights.  That means that the MPT owns and holds title to 6.25% of the property's coal, oil, gas, petroleum, and mineral rights, while the Trust owns and holds title to 93.75% of these rights.  Because it owns and holds title to an interest in the property's coal, oil, gas, petroleum, and mineral rights, the MPT is a necessary and indispensable party that the Game Commission must join in its quiet-title actions.

1.2  The facts the parties <u>dispute</u> are as follows:

All facts not admitted in a responsive pleading or agreed upon in Section 1.2 in this *Joint Case Management Plan* are disputed.

<u>agree</u> upon are as follows:

(1) The Commonwealth of Pennsylvania, Pennsylvania Game Commission owns and has title to the surface estate pertaining to the approximately 2,481 acres, more or less, located in Davidson and Laporte Townships, Sullivan County, Pennsylvania.

1.3  The legal issues the parties <u>dispute</u> are set forth in number one (1) below.  Additional issues important to the consideration of the case and which are disputed are set forth as (2) through (14), as follows:

(1) Who owns and has title to the property's coal, oil, gas, petroleum and mineral rights?

(2) Did the alleged June 8, 1908 tax sales and December 1, 1908 treasurer's deeds fail to convey title to the property's coal, oil, gas, petroleum, and mineral rights when the Sullivan County taxing authorities lacked the statutory authority to assess and tax those rights?

(3) Did the alleged June 8, 1908 tax sales and December 1, 1908 treasurer's deeds fail to convey title to the property's coal, oil, gas, petroleum, and mineral rights when there was no basis for a valid assessment of those rights?

(4) Did the alleged June 8, 1908 tax sales and December 1, 1908 treasurer's deeds fail to convey title to the property's coal, oil, gas, petroleum, and mineral rights when those rights were not included in the assessments, tax sales, or treasurer's deeds, as they were severed from the surface estate approximately 14 years before the purported tax sales and treasurer's deeds and only the surface estate was assessed and sold?

(5) Did the alleged June 8, 1908 tax sales and December 1, 1908 treasurer's deeds fail to convey title to the property's coal, oil, gas, petroleum, and mineral rights when those rights were not included in the assessments, tax sales, or treasurer's deeds, as the Proctor heirs and assigns notified the appropriate authorities of the severance of these rights from the surface estate and paid all assessed taxes?

(6) If the Proctor heirs and assigns failed to notify the appropriate authorities of the severance of the property's coal, oil, gas, petroleum, and mineral rights from the surface estate, did the alleged June 8, 1908 tax sales and December 1, 1908 treasurer's deeds fail to convey title to the property's coal, oil, gas, petroleum and mineral rights when the statutorily mandated remedy for such a failure was the assessment of a fourfold-tax penalty, not the divestiture of title to those rights?

(7) If the Proctor heirs and assigns failed to notify the appropriate authorities of the severance of the property's coal, oil, gas, petroleum, and mineral rights from the surface estate, did the alleged June 8, 1908 tax sales and December 1, 1908 treasurer's deeds fail to convey title to the property's coal, oil, gas, petroleum and mineral rights when the duty to notify did not arise, as no taxable subsurface estate existed?

(8) Did the alleged June 8, 1908 tax sales and December 1, 1908 treasurer's deeds fail to convey title to the property's coal, oil, gas, petroleum, and mineral rights when the tax sales were irregular and failed to conform to the existing laws due to the failure to provide proper and timely notice of the delinquent taxes and tax sales and failure to properly recognize the sale in open court?

(9) Did the alleged June 8, 1908 tax sales and December 1, 1908 treasurer's deeds fail to convey title to the property's coal, oil, gas, petroleum, and mineral rights when C.H. McCauley's purchase of the property at the June 8, 1908 tax sales served as a redemption, because he had a legal and moral obligation to pay the taxes for the defaulting owner and, at the time of the tax sales, was the defaulting owner's agent?

(10) Did the alleged June 8, 1908 tax sales and December 1, 1908 treasurer's deeds fail to convey title to the property's coal, oil, gas, petroleum, and mineral rights when C.H. McCauley's purchase of the property at the June 8, 1908 tax sales was effectively a payment for the delinquent taxes, because he had a legal and moral obligation to pay the taxes for the defaulting owner and, at the time of the sales, was the defaulting owner's agent?

(11) Does the Proctor heirs and assigns' alleged failure to redeem the property's coal, oil, gas, petroleum, and mineral rights bar the Trust from challenging the June 8, 1908 tax sales and December 1, 1908 treasurer's deeds when the Proctor heirs and assigns were not required to redeem the property's illegally taxed, coal, oil, gas, petroleum, and mineral rights, because the June 8, 1908 tax sales and December 1, 1908 treasurer's deeds were void and gave no authority to sell the property's coal, oil, gas, petroleum, and mineral rights?

(12) Does any applicable statute-of-repose bar the Trust from challenging the June 8, 1908 tax sales and December 1, 1908 treasurer's deeds when the tax sales and treasurer's deeds were void and gave no authority to sell the property's coal, oil, gas, petroleum, and mineral rights?

(13) Does any applicable remedial statute bar the Trust from challenging the June 8, 1908 tax sales and December 1, 1908 treasurer's deeds when the tax sales and treasurer's deeds were void and gave no authority to sell the property's coal, oil, gas, petroleum, and mineral rights?

(14) Is the Margaret O.F. Proctor Trust a necessary and indispensable party that the Game Commission must join in its quiet-title actions?

agree upon are as follows:

(1) The Court has jurisdiction over the action and all claims raised in the pleadings.

(2) This Court is the proper venue for this action and all claims raised in the pleadings.

(3) Pennsylvania substantive law and Federal procedural law apply to this case.

1.4 Identify any unresolved issues as to service of process, personal jurisdiction, subject matter jurisdiction, or venue:

None at this time.

1.5 Identify any named parties that have not yet been served:

None.

1.6 Identify any additional parties that:

Plaintiff intends to join:

Plaintiff is considering the necessity of joining the MPT, the existence of which Plaintiff was not aware at the time of filing the Amended Complaint.

Defendant intends to join:

None.

1.7 Identify any additional claims that:

Plaintiff intends to add:

Plaintiff may file a substantially similar claim against the MPT.

Defendants intend to add:

At this time, the Trust is not aware of any claims that need to be added.  The Trust, however, reserves the right to add any claims that are identified during discovery.

## 2.0 Disclosures.

The undersigned counsel certify that they have made the initial disclosures required by Federal Rules of Civil Procedure 26(a)(1) or that they will do so within the time provided by that rule.

2.1 Separately for each party, list by name and title/position each person whose identity has been disclosed.

Disclosed by Plaintiff:

| Name | Title/Position |
|------|----------------|
| None. | |

Disclosed by Defendant:

| Name | Title/Position |
|------|----------------|

None.

## 3.0 Early Motions.

Identify any motion(s) whose early resolution would <u>likely</u> have a significant effect either on the scope of discovery or other aspects of the litigation:

<u>Nature of Motion</u>                    <u>Moving Party</u>        <u>Anticipated Filing Date</u>

At the present time, the Trust and the Plaintiff are not aware of any such motions.  The Trust and Plaintiff, however, reserve the right to file such motions in accordance with the Federal Rules of Civil Procedure and the deadlines set forth by this Court.

## 4.0 Discovery.

4.1 Briefly describe any discovery that has been completed or is in progress:

By Plaintiff:

None.

By Defendant:

None.

4.2 Describe any <u>discovery</u> that all <u>parties agree</u> should be conducted, indicating for each discovery undertaking its purpose or what kinds of information will be developed through it (e.g., "plaintiff will depose Mr. Jones, defendant's controller, to learn what defendant's revenue recognition policies were and how they were applied to the kinds of contracts in this case"):

The Trust and Plaintiff will serve interrogatories, requests-for-the-production-of-documents, and requests-for-admission on each other to obtain information and documents supporting their respective positions.

4.3 Describe any <u>discovery</u> that one or more parties want(s) to conduct but <u>to which another party objects</u>, indicating for each such discovery undertaking its purpose or what kinds of information would be developed through it:

At this time, the Game Commission and the Trust are not aware of any objectionable discovery that either wishes to conduct.  This response may change as discovery proceeds.

4.4 Identify any <u>subject area limitations on discovery</u> that one or more parties would like imposed, at the first stage of or throughout the litigation:

At this time, the Game Commission and the Trust are not aware of any subject area limitations on discovery that either wishes imposed. This response may change as discovery proceeds.

4.5 For each of the following discovery tools, <u>recommend the per-party or per-side limitation</u> (specify a number) that should be fixed, subject to later modification by stipulation or court order on an appropriate showing (where the parties cannot agree, set forth separately the limits recommended by plaintiff(s) and by defendant(s)):

    4.5.1  Depositions (excluding experts) to be taken by:

        Plaintiff: 5                Defendant: 5

    4.5.2  Interrogatories to be served by:

        Plaintiff: 50               Defendant: 50

    4.5.3  Document production requests to be served by:

Plaintiff: 50                    Defendant: 50

4.5.4  Requests for admission to be served by:

Plaintiff: 50                    Defendant: 50

4.6 Discovery of electronically-stored information.

 X  Counsel certify that they have conferred about the matters addressed in M.D.Pa. LR 26.1 and that they are in agreement about how those matters will be addressed in discovery.

__ Counsel certify that they have conferred about the matters addressed in M.D.Pa. LR 26.1 and that they are in agreement about how those matters will be addressed in discovery with the following exceptions:

**5.0 Protective Order.**

5.1 If entry of a protective order is sought, attach to this statement a copy of the proposed order.  Include a statement justifying the propriety of such a protective order under existing Third Circuit precedent.

N/A.

5.2 If there is a dispute about whether a protective order should be entered, or about certain terms of the proposed order, briefly summarize each party's position below:

N/A.

**6.0 Scheduling.**

6.1 Final date for joining additional parties:

Plaintiff: November 26, 2014.

Defendant: November 26, 2014.

6.2 Final date for amending pleadings:

Plaintiff: November 26, 2014.

Defendant: November 26, 2014.

6.3 All fact discovery commenced in time to be completed by: March 13, 2015.

6.4 All potential dispositive motions should be filed by: July 14, 2015.

6.5 Reports from retained experts due:

From Plaintiff by: April 13, 2015.

From Defendant by: May 13, 2015.

6.6 Supplementations due: June 12, 2015.

6.7 All expert discovery commenced in time to be completed by: June 12, 2015.

6.8 This case may be appropriate for trial in approximately :

__ 240 days from the filing of the action in this court.

__ 365 days from the filing of the action in this court.

__ days from the filing of the action in this court.

445 days from the initial case management conference.

6.9 Suggested Date for the final Pretrial Conference:

October 2015 (month/year)

6.10   Trial

      6.10.1 Suggested Date for Trial
               November 2015 (month/year)

## 7.0   Certification of Settlement Authority.

I hereby certify that the following individual(s) have settlement authority.

For Plaintiff:

   Bradley C. Bechtel

   Chief Counsel

   2001 Elmerton AvenueHarrisburg, PA  17110

   (717)783-6530 Daytime Telephone


For Defendant:

   Ann P. Hochberg
   Trustee for the Thomas E. Proctor Heirs Trust
   c/o Broude & Hochberg, LLP
   75 Federal Street, Suite 1300
   Boston, MA 02110
   Tel: (617) 748-5100

   Charles R. Kendall
   Trustee for the Thomas E. Proctor Heirs Trust
   c/o Broude & Hochberg, LLP
   75 Federal Street, Suite 1300
   Boston, MA 02110
   Tel: (617) 748-5100

## 8.0  Alternative Dispute Resolution ("ADR").

8.1 Identify any ADR procedure to which this case already has been assigned or which the parties have agreed to use.

ADR procedure: None at this time.

Date ADR to be commenced: N/A.

Date ADR to be completed: N/A.

8.2 If the parties have been unable to agree on an ADR procedure, but one or more parties believes that the case is appropriate for such a procedure, identify the party or parties that recommend ADR and the specific ADR process recommended:

N/A.

8.3 If all parties share the view that no ADR procedure should be used in this case set forth the basis for that view:

This case involves the determination of ownership of and title to the property's coal, oil, gas, petroleum, and mineral rights. That determination will require the resolution of complex legal and factual issues that the Court is better equipped to handle.

## 9.0 Consent to Jurisdiction by a Magistrate Judge

Indicate whether all parties agree, pursuant to 28 U.S.C. § 636(c)(1), to have a magistrate judge preside as the judge of the case with appeal lying to the United States Court of Appeals for the Third Circuit:

All parties agree to jurisdiction by a magistrate judge of this court: __Y _X_N.

If parties agree to proceed before a magistrate judge, please indicate below, which location is desired for the proceedings:

_____ Scranton/Wilkes-Barre

_____ Harrisburg

**10.0   Other Matters.**

Make any other suggestions for the case development process, settlement, or trial that may be useful or necessary to the efficient and just resolution of the dispute.

   None.


**11.0   Identification of Counsel.**

Counsel shall be registered users of the court's Electronic Case Files System (ECF) and shall file documents electronically in accordance with the Local Rules of Court and the Standing Order RE: Electronic Case Filing Policies and Procedures.  Electronic filing is required unless good cause is shown to the Chief Judge why counsel cannot comply with this policy.  Any request for waiver of electronic filing must be filed with the Clerk's Office prior to the case management conference.  The Chief Judge may grant or deny such request.

Identify by name, address and telephone number lead counsel for each party. Also please indicate ECF User status below.

Dated: August19, 2014          *s/Bradley C. Bechtel*
                               Bradley C. Bechtel, Esquire
                               PA I.D. #49681
                               Attorney for Plaintiff Commonwealth of
                               Pennsylvania, Pennsylvania Game Commission
                               Commonwealth of Pennsylvania, Pennsylvania
                                    Game Commission
                               2001 Elmerton Avenue
                               Harrisburg, PA 17110-9797
                               Tel:  (717) 783-6530
                               Fax:  (717) 772-0502
                               E-Mail: brbechtel@pa.gov
                               _X ECF User
                               ___Waiver requested (as separate document)

        \_\_\_Fed.R.Civ.P. 7.1 (statement filed if necessary)\*

Dated: August 19, 2014     *s/Thomas Waffenschmidt*
                           Thomas Waffenschmidt, Esquire
                           PA I.D. #59214
                           Attorney for Defendant Thomas E. Proctor
                           Heirs Trust
                           Rieders, Travis, Humphrey, Harris, Waters,
                                 Waffenschmidt & Dohrmann
                           161 W. Third St., P.O. Box 215
                           Williamsport, PA 17703-0215
                           Tel:  (570) 323-8711
                           Fax:  (570) 323-4192
                           E-Mail: twaffenschmidt@riederstravis.com
                           _X_ ECF User
                           \_\_\_Waiver requested (as separate document)
                           \_\_\_Fed.R.Civ.P. 7.1 (statement filed if necessary)\*

\*Fed.R.Civ.P. 7.1 requires a nongovernmental corporate party to file a statement with the initial pleading, first entry of appearance, etc., that identifies any parent corporation and any publicly held corporation that owns 10% or more of its stock, or state there is no such corporation.