# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF
PENNSYLVANIA, PENNSYLVANIA
GAME COMMISSION,

       Plaintiff,

v.

THOMAS E. PROCTOR HEIRS
TRUST and the MARGARET
PROCTOR TRUST,

       Defendants.

CASE NO. 1:12-CV-1567

Hon. Christopher C. Conner
United States District Judge

Hon. Susan E. Schwab
United States Magistrate Judge

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S
## MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

Laura A. Lange
   Pa. ID No. 310733
Paul K. Stockman (*pro hac vice*)
   Pa. ID No. 66951
MCGUIREWOODS LLP
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 15222
llange@mcguirewoods.com
pstockman@mcguirewoods.com

*Attorneys for Defendants /
Counterclaimants Charles Rice
Kendall and Ann P. Hochberg,
Trustees of the Thomas E. Proctor
Heirs Trust, and Bank of America,
N.A. and John J. Slocum, Jr., Trustees
of the Margaret O.F. Proctor Trust*

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND SUMMARY ...........................................................1

II.  BACKGROUND ....................................................................................2

III. ARGUMENT:  THE GAME COMMISSION'S MOTION SHOULD
BE DENIED ..........................................................................................4

    A.    The Game Commission Waived Sovereign Immunity by
Bringing Suit in this Court ......................................................4

    B.    The Counterclaim Is Not a Time-Barred Collateral Attack on
the Tax Sales ..........................................................................8

    C.    The Counterclaim Provides Sufficient Notice under Rule 8 .............10

    D.    The Counterclaim's Allegations Are Material, Sufficient, and
Pertinent to the Case and Should Not be Stricken ............................11

    E.    Game Commission Lessees Are Not Indispensable Parties .............15

IV. CONCLUSION.............................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*18 KT.TV, LLC v. Entest Biomed., Inc.*,
  No. 3:11cv244, 2011 WL 5374515 (M.D. Pa. Nov. 7, 2011) ...........................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................10

*Bartholomew v. Leech*,
  7 Watts 472 (Pa. 1838) ...................................................................................9

*Bastian v. Sullivan*,
  117 A.3d 338 (Pa. Super. Ct. 2015)..................................................................17

*Benoit v. Panthaky*,
  780 F.2d 336 (3d Cir. 1985) .............................................................................9

*Clark v. Barnard*,
  108 U.S. 436 (1883).........................................................................................6

*Commonwealth v. Berks County*,
  72 A.2d 129 (Pa. 1950)..............................................................................5, 7

*Coxe v. Wolcott*,
  27 Pa. 154 (1856).............................................................................................9

*Dep't of Gen. Servs. v. Frank Briscoe Co.*,
  466 A.2d 1336 (Pa. 1983)...........................................................................4, 5, 6

*Elliott v. Moffett*,
  74 A.2d 164 (Pa. 1950)...................................................................................15

*Forrester Lincoln Mercury, Inc. v. Ford Motor Co.*,
  No. 1:11-CV-1136, 2012 WL 1642760 (M.D. Pa. May 10, 2012) ...................13

*Herder Spring Hunting Club v. Keller*,
  143 A.3d 358 (Pa. 2016)........................................................................8, 14, 15

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*,
  11 F.3d 399 (3d Cir. 1993) .............................................................................16

*Lamb v. Irwin*,
    69 Pa. 436 (1871) .................................................................................. 9

*Njos v. United States*,
    No. 3:14-cv-1960, 2015 WL 5965227 (M.D. Pa. Oct. 13, 2015) ...................... 11

*Pa. Fish Com. v. Pleasant*,
    388 A.2d 756 (Pa. Commw. 1978) ........................................................... 7

*Pechin Leasing LLC v. Garland*,
    No. 53 WDA 2013, 2013 WL 11250213 (Pa. Super. Dec. 13,
    2013) ............................................................................................. 17, 18

*Price-Jeffries Co. v. Tillman*,
    312 A.2d 494 (Pa. Commw. 1973) ........................................................... 8

*Second State Enters. v. Mid-Atlantic Invs., LLC*,
    No. 1:14-CV-00433, 2014 WL 4091846 (M.D. Pa. Aug. 18, 2014)................ 16

*Spring-Ford Area Sch. Dist. v. Genesis Ins. Co.*,
    158 F. Supp. 2d 476 (E.D. Pa. 2001) ...................................................... 16, 17

*Stair v. Pennsylvania Game Commission*,
    368 A.2d 1347 (Pa. Commw. 1977) ......................................................... 7

*Texas v. Caremark, Inc.*,
    584 F.3d 655 (5th Cir. 2009) ................................................................. 6

*Trexler v. Africa*,
    33 Pa. Super. 395 (Pa. Super. 1907) ....................................................... 8

*United States v. Tsosie*,
    92 F.3d 1037 (10th Cir. 1996) ............................................................... 7

*Upper Pottsgrove Twp. v. Int'l Fid. Ins. Co.*,
    976 F. Supp. 2d 598 (E.D. Pa. 2013)....................................................... 18

*Wincovitch v. Edwin A. Abrahamsen & Assocs.*,
    No. 3:12-CV-01846, 2013 WL 1909578 (M.D. Pa. May 8, 2013) ................... 11

**Statutes and Court Rules:**

Act of April 5, 1782, 2 Sm.L. 13, as amended, 71 P.S. § 99 *et seq.* ........................4

Fed. R. Civ. P. 8 .................................................................................2, 10

Fed. R. Civ. P. 8(d) ...............................................................................14

Fed. R. Civ. P. 11(b)(3) ..........................................................................11

Fed. R. Civ. P. 12(f) ..............................................................................11

Fed. R. Civ. P. 13 .................................................................................7

Fed. R. Civ. P. 19 .............................................................................15, 18

Fed. R. Civ. P. 24 .................................................................................19

## I.      Introduction and Summary

Simply put, Plaintiff's motion to dismiss, strike or for more definite statement (ECF No. 67) is not well-taken.  Defendants (the "Proctor Trusts") are well within the law in bringing their counterclaims (ECF No. 66), and have alleged those counterclaims properly.  After all, is it Plaintiff (the "Game Commission") who initiated this action, by seeking to quiet title to the subsurface rights of only a small portion of the land over which the parties dispute ownership.  By filing its complaint in this Court, the Game Commission waived any sovereign immunity that it might otherwise have enjoyed, and submitted itself to this Court's jurisdiction.  The Proctor Trusts simply seek to have the Court resolve the parties' disputes more fully – disputes that share a common origin, and that present common questions of law and fact – to ensure judicial efficiency, prevent duplicative litigation, and avoid potentially-inconsistent outcomes.

Nor do any of the Game Commission's remaining challenges warrant dismissal, or justify striking of any allegations or claims:

- The Proctor Trusts' claims seek rulings on the legal effect of the underlying tax sales to resolve a current dispute, or allege that the sales were void *ab initio*.  As such, any statute of limitations that purportedly applies to tax sale challenges has no impact here.

1

- The Proctor Trusts' counterclaims provide with sufficient notice of the properties placed at issue, satisfying Rule 8's requirements.

- The Game Commission has not met its burden to demonstrate that any allegations are impertinent, immaterial or scandalous.

- Finally, this action seeks to obtain a determination of who owns the oil and gas rights beneath the properties at issue as between the Proctor Trusts and the Game Commission. Because no other parties are necessary to make that determination, all indispensable parties have been properly joined.

In sum, as the following discussion shows more completely, the Court should deny the Game Commission's motion to dismiss and should allow the Proctor Trusts' Counterclaim to proceed.

## II.    Background

Thomas E. Proctor, along with other entrepreneurs, formed the United States Leather Company in the late 1800s. They acquired large tracts of hemlock forest in north-central Pennsylvania and elsewhere, to secure supplies of hemlock bark, a key ingredient in tanning leather. Proctor and the other entrepreneurs and their heirs conveyed the surface of the acquired land in Pennsylvania to subsidiaries of the United States Leather Company, including Elk Tanning Company and Union Tanning Company, and reserved the oil, gas and minerals to themselves and their

2

heirs.  *See generally* Def'ts' Am. Ans. & Aff. Defs. with Ctrclms.

("Counterclaim") (ECF No. 66) ¶ 6.[1]

By 1893, Thomas E. Proctor obtained title in fee to several properties in Bradford and Sullivan Counties (the "Disputed Property" at issue in this case).  In 1894, Proctor and his wife conveyed the surface of the Disputed Property to the Union Tanning Company, excepting and reserving unto themselves, their heirs and assigns (the "Proctor Heirs") "all the minerals, coal, oil, gas or petroleum found on or under the surface of the land."  In 1903, Union Tanning Company conveyed its ownership interest in the surface of the Disputed Property (excepting tanbark rights) to Central Pennsylvania Lumber Company ("CPLC"), a subsidiary of Central Leather Company that was later merged into U.S. Leather.  In 1908, CPLC allowed the surface estate to go to a tax sale, having its agent, Calvin H. McCauley, Jr., purchase the properties at the tax sales; McCauley conveyed the properties back to CPLC two years later.  *See id.* ¶¶ 2-4, 7-8, 15-16, 24-36.

Between 1924 and 1930, CPLC sold the surface of the Disputed Property to the Game Commission.  The Game Commission now claims ownership of the entirety of the Disputed Property, including the subsurface estate, by virtue of the tax sales.  *See id.* ¶ 48; *see generally* Second Amended Complaint (ECF No. 40).

---

[1] For present purposes, the Counterclaim's factual allegations are accepted as true.

The Game Commission brought this action, filing a complaint to quiet title to one portion of the Disputed Property. The Counterclaim seeks to resolve the parties' conflicting claims with respect to ***all*** of the Disputed Property. *See generally* Counterclaim. Each parcel of the Disputed Property presents essentially the same fact pattern, and involves the same legal questions. *See generally id.* ¶¶13-36.

III.   **Argument:  The Game Commission's Motion Should Be Denied.**

A.   **The Game Commission Waived Sovereign Immunity by Bringing Suit in This Court.**

Although the Game Commission ***ordinarily*** enjoys sovereign immunity, and cases against the Commonwealth involving title to land ***ordinarily*** are within the jurisdiction of the Board of Property,[2] that is not the case here. Because the Game Commission elected to bring suit in this Court, it waived any claim to sovereign immunity and can no longer insist upon proceeding in its own preferred internal forum. *See Dep't of Gen. Servs. v. Frank Briscoe Co.*, 466 A.2d 1336, 1340 (Pa. 1983) (holding that the Commonwealth waived sovereign immunity and the jurisdiction of the Board of Claims over a defendant's counterclaims by initiating the action in court).

---

[2] The Board of Property is a three-member tribunal (composed entirely of executive branch representatives) formed to resolve certain disputes relating to the Commonwealth's real property. *See generally* Act of April 5, 1782, 2 Sm.L. 13, *as amended,* 71 P.S. § 99 *et seq.*

4

*Briscoe* is instructive.  There, the Commonwealth brought suit against the defendant in Commonwealth Court, and the defendant contractor filed breach of contract counterclaims.  *Id.* at 1337-38.  If the defendant had sued in the first instance, it would have had to proceed in the Board of Claims, and on that basis Commonwealth Court dismissed the counterclaims.  *Id.* at 1340, 1338.  The Supreme Court reversed, holding that "[w]here, as here, the Commonwealth has initiated suit in the Commonwealth Court, the Commonwealth Court's statutory jurisdiction over 'civil actions or proceedings' includes jurisdiction to decide counterclaims which arise from the same underlying transaction."  *Id.* 1340.

The Supreme Court reasoned that because the Commonwealth initiated the action in court, the court obtained jurisdiction over the ***entire action***, which in turn "includes the entire case arising out of a single transaction or series of transactions, including a defendant's counterclaim, not just the Commonwealth's claim."  *Id.* at 1339; *see also Commonwealth v. Berks County,* 72 A.2d 129 (Pa. 1950) (holding that a party sued by the Commonwealth may assert a claim derived from the same transaction).  The Court further held that "judicial economy is advanced by allowing the parties to obtain a comprehensive disposition of the litigation in one proceeding."  *Briscoe*, 466 A.2d at 1339.

Moreover, federal courts uniformly hold that when a state initiates a lawsuit, it waives its sovereign immunity to "the full extent required for [the lawsuit's]

5

complete determination." *Clark v. Barnard,* 108 U.S. 436, 448 (1883); *see also Texas v. Caremark, Inc.*, 584 F.3d 655, 659 (5th Cir. 2009). "Generally, the Court will find a waiver" where, as here, "the state voluntarily invokes federal court jurisdiction." *Caremark*, 584 F.3d at 659.

Here, the Game Commission voluntarily invoked federal court jurisdiction, and thus subjected itself to counterclaims that arise out of the same transactions or occurrences forming the subject matter of its suit. *Id.* The Game Commission brings a claim to quiet title to a subset of the Disputed Property. The Counterclaim arises from the same series of transactions, raises the same legal questions that will already be decided by this Court, and merely broadens the lawsuit to provide a more comprehensive resolution of the parties' dispute in one forum and one lawsuit. As in *Briscoe,* resolving the Proctor Trusts' counterclaims in this Court, rather than in the Board of Property, advances "judicial economy…by allowing the parties to obtain a comprehensive disposition of the litigation in one proceeding." 466 A.2d at 1339.

In arguing that the Proctor Trusts' counterclaims should be submitted to the Board of Property, the Game Commission misplaces reliance on *Stair v. Pennsylvania Game Commission*, 368 A.2d 1347 (Pa. Commw. 1977). In *Stair*, the court found only that an action ***initiated by the individual party*** in the Board of Property, alleging ownership of certain property, was properly under the Board's

jurisdiction. *Id.* at 1347. The court did not address, and had no reason to address, whether the Game Commission had waived its sovereign immunity. In fact, the Game Commission fails to cite a single case addressing waiver of sovereign immunity ***where the state initiated the action***.

Put otherwise, although the Proctor Trusts might have had to present most of their claims in the Board of Property, ***had they initiated the action,*** that is not the case before the Court. Here, once the Game Commission brought the dispute into this Court's jurisdiction, the Proctor Trusts had the ability – and indeed, may well have had the obligation under Rule 13 – to raise their claims as counterclaims in this action. *See United States v. Tsosie*, 92 F.3d 1037, 1043 (10th Cir. 1996) ("When the [sovereign] institutes a suit, it thereby consents by implication to the full and complete adjudication of all matters and issues which are reasonably incident thereto.").

In sum, because the Game Commission "voluntarily submit[ted] to court jurisdiction by its institution of a suit, it at once render[ed] available, as a defense to the adverse party, such of the latter's claims as have grown out of the transaction which gave rise to the sovereign's suit." *Pa. Fish Com. v. Pleasant*, 388 A.2d 756, 759 (Pa. Commw. 1978) (citing *Commonwealth v. Berks Cty.*, 72 A.2d 129, 130 (Pa. 1950)). Accordingly, the Game Commission has waived its immunity from suit, and its motion to dismiss should be denied.

**B.    The Counterclaim Is Not a Time-Barred Collateral Attack on the Tax Sales.**

Equally without merit is the Game Commission's contention that all "claims, or discussions or objections to the form or manner of the tax sales are outside the Statute of Limitations."  Brief in Support of Plaintiff's Motion to Dismiss (ECF No. 68), at 5.  Initially, the Game Commission's assertion is inaccurate, as the Counterclaim's quiet title claim – whose timeliness is unchallenged here – is an appropriate vehicle for testing the validity of titles obtained at tax sales, *Price-Jeffries Co. v. Tillman*, 312 A.2d 494 (Pa. Commw. 1973), and moreover the statute of limitations cannot "put validity into a void tax sale," *Trexler v. Africa*, 33 Pa. Super. 395, 410 (Pa. Super. 1907).  In any event, the Game Commission's argument simply does not apply here, as the Counterclaim does not challenge the tax sales' "form or manner."  Instead, the Proctor Trusts' claims all relate to the legal effect of the tax sales, or contend that those sales are void *ab initio*.

For example, the Proctor Trusts allege that their ownership of the subsurface rights were reported and known to the taxing authorities.  *See* Counterclaim (ECF No. 66) ¶14.  Therefore, the assessments of the surface estate resulted in a tax sale of *only* the surface estate, and had no legal impact on the Proctor Trusts' ownership of the subsurface rights.  *See Herder Spring Hunting Club v. Keller*, 143 A.3d 358, 368 (Pa. 2016).  Similarly, if a tax sale purchaser is an agent of the defaulting surface owner, the sale operates as a redemption, and restores the

property to its pre- sale ownership – a fact that was known to and acknowledged by CPLC and its successors-in-interest. *See, e.g., Lamb v. Irwin,* 69 Pa. 436, 442 (1871); *Coxe v. Wolcott,* 27 Pa. 154, 159 (1856); *Bartholomew v. Leech*, 7 Watts 472, 473-74 (Pa. 1838). In either case, the question is not whether the tax sale was proper in "form or manner," but rather is what the tax sale in fact conveyed, if anything.

Moreover, as with void tax sales, the statute of limitations cannot bar the Proctor Trusts' challenge that the notice of the tax sale was constitutionally deficient. *See, e.g., Benoit v. Panthaky*, 780 F.2d 336, 338-39 (3d Cir. 1985) (holding that statutes of limitations "are ineffective to preclude a claim of voidness based on 'jurisdictional' defects in a tax foreclosure proceeding" and that "[c]onstitutionally inadequate notice to the owner of the property sold at a tax foreclosure is a jurisdictional defect").[3]

---

[3] As an aside, there is also no merit to the Game Commission's contention that the alleged absence of "separate" subsurface assessments necessarily means (as a matter of law) that the assessments and sales at issue included both the surface and subsurface, *see* Second Am. Compl. (ECF No 40) ¶¶ 17-18, and the Game Commission's corresponding request that the Court disregard the Proctor Trusts' explanation for the lack of separate assessments. The Proctor Trusts' allegations – namely, that tax assessors could not assess severed subsurface rights absent production, and that the counties therefore stated affirmatively that they did not assess severed oil and gas rights at the time, *see* Counterclaim (ECF No. 66) ¶¶19-23) – do *not* challenge the underlying tax assessment of the surface estate or the validity of the tax sale. Rather, these allegations merely refute, properly, the Game Commission's unsupportable allegation that the tax sale had to have included *all* of the Disputed Property's estates.

## C.    The Counterclaim Provides Sufficient Notice under Rule 8.

The Court should also reject the Game Commission's request for dismissal or a more definite statement because of the purported insufficiency of the Counterclaim's allegations.  Rule 8 requires only that a party provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

This pleading standard, as applied here, simply does not require the "County, Township, acreage, Patent book, metes and bounds" details that the Game Commission demands.  In fact, the Counterclaim already provides sufficient information to identify the Disputed Property, identifying warrant names, counties, the deeds through which the Proctor Trusts claim an interest (setting out metes and bounds descriptions, acreages and township names for the 65 warrants involved), the chain of deeds through which the Game Commission acquired the surface interest (which also provide metes and bounds legal descriptions, acreages and township names for the same warrants), and the associated State Game Land in which the properties are situated.  *See* Counterclaim (ECF No. 66) ¶¶1-5, 7-8, 15, 43 and 45.  This is more than sufficient to meet Rule 8's pleading standard. Indeed, the Game Commission failed to cite any authority for its assertion that more is required under Rule 8 – a tacit but powerful concession that the Counterclaim's

allegations are fully sufficient, and the Game Commission's motion to dismiss, or for a more definite statement, should be denied.

### D.    The Counterclaim's Allegations Are Material, Sufficient, and Pertinent to the Case and Should Not be Stricken.

Also without substance is the Game Commission's further request that the Court strike certain paragraphs of the counterclaims under Rule 12(f) and Rule 11(b)(3) as "immaterial, insufficient and impertinent."

Initially, "striking a pleading is viewed as a drastic remedy" and "extreme measure," and "such motions are generally disfavored" and "rarely granted." Therefore, "[i]n practice, courts should exercise this discretion and strike pleadings only when those pleadings are both redundant, immaterial, impertinent, or scandalous' and prejudicial to the opposing party." *Njos v. United States*, No. 3:14-cv-1960, 2015 WL 5965227, at *9 (M.D. Pa. Oct. 13, 2015) (internal quotation omitted).  Courts thus require that the moving party demonstrate prejudice before striking a pleading, or show that the allegations have no possible relation to the controversy.  *Wincovitch v. Edwin A. Abrahamsen & Assocs.*, No. 3:12-CV-01846, 2013 WL 1909578, at *1 (M.D. Pa. May 8, 2013).

Here, the challenged allegations are pertinent to the Proctor Trusts' defenses and counterclaims.  The intent, understanding and recognition of the effect of the tax sales by CPLC and the Game Commission itself – their "beliefs," as it were – are critical to the claims in this case.  If either CPLC or the Game Commission

11

acknowledged the Proctor Heirs' continuing ownership of the subsurface rights after the tax sales, these admissions weigh heavily in favor of the Proctor Trusts' claims. While the Game Commission questions the Proctor Trusts' ability to demonstrate such intentions, the language in the deeds and circumstantial evidence already bear this out, and at a minimum support the inferences that the Proctor Trusts draw in their pleading. Just because the Game Commission doubts the Proctor Trusts' ultimate ability to convince the Court to draw the same inferences, that does not warrant striking the allegations at the outset.

Further, while the Proctor Trusts do not allege that the Game Commission engaged in "fraud," and do not attempt to bring a claim sounding in fraud. The Game Commission's theory of liability for its affirmative claims – if its view of CPLC's "intent" is accurate – rests on its predecessor-in-title CPLC's gross negligence or active misconduct. Specifically, the Game Commission can have title to the Disputed Property only if CPLC negligently or fraudulently (1) failed to comply with its legal obligation to report its ownership (of the surface estate) truthfully, (2) failed to pay taxes, (3) repurchased the properties at the tax sale through a "straw buyer," its officer and agent, and (4) failed to inform the Proctor Heirs, its co-tenants, of its default, the resulting tax sales, or its agent's purchase of the property. Here, the Proctor Trusts have factually supported this alternative

theory with factual allegations that describe those careless or fraudulent defaults on CPLC's part that necessarily underlay the Game Commission's title claims.

It does not matter whether these allegations may be inconsistent with other of the Proctor Trusts' claims. The Proctor Trusts properly plead alternative theories of liability to support their ownership rights. "[P]arties may plead for relief under alternative theories…and [s]uch alternative pleadings are common, encouraged, and employed as a matter of general practice in modern civil litigation." *Forrester Lincoln Mercury, Inc. v. Ford Motor Co.*, No. 1:11-CV-1136, 2012 WL 1642760, at *6 (M.D. Pa. May 10, 2012) (Conner, J.).

In particular, under one theory, CPLC properly reported that it owned only the surface estate, and as such, the assessment of the surface estate did not encompass the subsurface rights (and the tax sale therefore did not affect the Proctor Heirs' subsurface ownership). Alternatively, if (as the Game Commission contends) CPLC failed to report its ownership interest properly, it could not acquire title to the subsurface rights even if the assessment and tax sales purported to include the subsurface estate because, *inter alia*:

- McCauley, as an agent of CPLC, had a legal and moral obligation to pay taxes for CPLC, and therefore, his purchase of the property at the tax sales served as payment of the deficient taxes and/or a redemption;

- CPLC was estopped from acquiring a greater interest in the property as a result of its own failure to register its ownership of the surface estate properly and to pay the assessed taxes; and

- the notice provisions of the Act of 1815 (on their face and as applied here) violate the due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

The Proctor Trusts are well within their rights under Rule 8(d) to plead these alternative theories. *18 KT.TV, LLC v. Entest Biomed., Inc.*, No. 3:11cv244, 2011 WL 5374515, at *6 (M.D. Pa. Nov. 7, 2011) (Rule 8(d) "allows for the pleading of alternative theories in the same complaint, even if those theories are inconsistent.").

Finally, the Game Commission takes issue with Defendants' estoppel claim, contending that neither it nor its predecessors-in-title could be estopped from claiming that the tax sale at issue conveyed the entire property. However, the Pennsylvania Supreme Court has held that **only** the party "becoming" an owner of property had the legal obligation to register its ownership interest with the taxing authorities. *Herder Spring*, 143 A.3d at 372 (explaining that governing law "imposed a reporting duty only on a party 'becoming a holder of unseated land,'" not the party who retained the severed subsurface estate). If CPLC either purposefully or negligently registered the entire property, rather than its more

14

limited interest, effectively representing that it owned both the surface and subsurface estates, then any assessment of the entire estate (as opposed to the surface only) is due to CPLC's own wrongful conduct and it cannot benefit from such conduct. The Game Commission can only claim title as good as its predecessor CPLC. Finally, both CPLC and the Game Commission are estopped from claiming title to the subsurface rights because the post-tax sale deeds recognize title in the Proctor Heirs. *See, e.g., Elliott v. Moffett*, 74 A.2d 164, 167 (Pa. 1950) ("[i]t is a well established principle that one claiming under a deed is bound by any recognition it contains of title in another"); *see also Herder Spring*, 143 A.3d at 378.

Put simply, although the Game Commission wants to prevent the Proctor Trusts and the Court from digging into the facts relating to CPLC's conduct, it is necessary to do so in order to resolve the parties' dispute, as the Game Commission's title is only as good as the title that CPLC could have lawfully conveyed. Accordingly, none of the allegations in the counterclaims are redundant, immaterial, impertinent, or scandalous, and there is no ground for imposing the extreme and disfavored relief the Game Commission seeks.

### E.    Game Commission Lessees Are Not Indispensable Parties.

Finally, there is no need to join any additional parties. Under Rule 19, the threshold inquiry is whether a party is "necessary" to the proceedings. *See, e.g.,*

*Spring-Ford Area Sch. Dist. v. Genesis Ins. Co.*, 158 F. Supp. 2d 476, 482-83 (E.D.

Pa. 2001) (citing *Scott Paper Co. v. Nat'l Cas. Co.*, 151 F.R.D. 577, 578-79 (E.D.

Pa. 1993)).  A party is "necessary" only if:

> (1) in the person's absence complete relief cannot be accorded among
>     those already parties, or
>
> (2) the person claims an interest relating to the subject of the action
>     and is so situated that the disposition of the action in the person's
>     absence may
>
> > (i)    as a practical matter impair or impede the person's ability
> >        to protect that interest or
> >
> > (ii)   leave any of the persons already parties subject to a
> >        substantial risk of incurring double, multiple, or
> >        otherwise inconsistent obligations by reason of the
> >        claimed interest.

Fed.R.Civ.P. 19(a).  If a court does not find that a party is "necessary" to the

proceedings, the party is, by definition, not "indispensable" to the action.  *See*

Fed.R.Civ.P. 19; *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d

399, 404 (3d Cir. 1993).

   If an independent basis of liability is not asserted by or against the party

seeking to be joined, and the remaining parties may obtain complete relief without

that other party's presence, and otherwise would not suffer any prejudice, the other

party is not indispensable.  *Second State Enters. v. Mid-Atlantic Invs., LLC*, No.

1:14-CV-00433, 2014 WL 4091846, at *4-5 (M.D. Pa. Aug. 18, 2014).

Here, the only request for judgment involves the Game Commission and the Proctor Trusts and a determination **as between those two parties** of who owns the oil and gas rights beneath the properties at issue.  A quiet title action deals with ownership interests in the disputed property, and neither the Proctor Trusts nor the Game Commission allege that a third party has a claim to title to the subsurface rights or seeks any judgment that would impair the rights of those parties.  As in *Second State*, the Game Commission's conclusory assertions that unnamed third parties would be impacted, or that there is a risk of inconsistent obligations, do not suffice to demonstrate that those unnamed parties are indispensable.  Because the present dispute involves only the determination of whether the Proctor Trusts or the Game Commission own the subsurface rights, no other party is necessary to that determination.

Indeed, Pennsylvania courts faced with similar quiet title actions involving subsurface rights have held – even applying Pennsylvania's broader notion of what parties are "necessary"[4] – that lessees to oil and gas rights are not indispensable parties.  *See, e.g., Bastian v. Sullivan*, 117 A.3d 338, 343-44 (Pa. Super. Ct. 2015) (oil and gas companies leasing subsurface rights did not have a "right…essential to the merits of the case") (internal quotation omitted); *Pechin Leasing LLC v.*

---

[4] Federal courts have recognized that the federal standard for "indispensability" is not as broad as Pennsylvania's standard.  *See, e.g., Spring-Ford Area Sch. Dist.*, 158 F. Supp. 2d at 482.

17

*Garland*, No. 53 WDA 2013, 2013 WL 11250213, at *3 (Pa. Super. Dec. 13, 2013) (explaining that oil and gas lessees do not have "an interest in land sufficient to confer indispensable party status in an action to quiet title").[5]  Accordingly, because the unnamed lessees would not be deemed necessary parties even under Pennsylvania's stricter standard, they clearly are not indispensable under Rule 19.

As Pennsylvania courts have explained "lessees quite simply do not have a legal right to control and dispose of property, could seek no redress, and do not require joinder" in a quiet title action.  *Pechin*, 2013 WL 11250213, at *3. Otherwise "all assignees of oil and gas leases would be indispensible [sic] parties to every issue trying the title to the land those leases encumber. This is not the law." *Id.* (citation omitted).  The rights that any lessee would claim in this action are not ownership rights and thus those parties are not indispensable, and need not be joined.  As such, the Game Commission's motion should be denied.[6]

---

[5] Although *Pechin* is an unpublished opinion, it may be cited as persuasive precedent.  *See Upper Pottsgrove Twp. v. Int'l Fid. Ins. Co.*, 976 F. Supp. 2d 598, 602 (E.D. Pa. 2013) (citing unpublished Superior Court opinion).

[6] If the Game Commission truly believed that the (yet unnamed) absent parties are indispensable, the Game Commission should have sought to join those parties by amendment, or should have moved to compel their joinder under Rule 19.  Indeed, if any absent parties believed that the resolution of this case would prejudice their interests, those parties may seek to intervene under Rule 24.  In no event is a dismissal the appropriate way of remedying the absence of any purportedly-necessary parties.

## IV.    Conclusion

For the foregoing reasons, the Court should deny the Game Commission's motion and allow the Proctor Trusts' claims to proceed.

Dated:  January 17, 2017                    Respectfully submitted,

*/s/ Laura A. Lange*
Laura A. Lange (Pa. ID No. 310733)
Paul K. Stockman (*pro hac vice*;
   Pa. ID No. 66951)
McGuireWoods LLP
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 15222
llange@mcguirewoods.com
pstockman@mcguirewoods.com

*Attorneys for Defendants /*
*Counterclaimants Charles Rice*
*Kendall and Ann P. Hochberg,*
*Trustees of the Thomas E. Proctor*
*Heirs Trust, and Bank of America, N.A.*
*and John J. Slocum, Jr., Trustees of the*
*Margaret O.F. Proctor Trust*

19

**CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATION**

The undersigned hereby certifies that the foregoing brief complies with the

word-count limit of Local Rule 7.8(b) as it contains 4,351 words as calculated by

the Microsoft Word, 2010 version.

Dated:  January 17, 2017                    */s/ Laura A. Lange*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that today a true and correct copy of the foregoing document has been served via the Court's CM/ECF system upon Bradley C. Bechtel, Esq., 2001 Elmerton Avenue, Harrisburg, PA 17110-9797 (brbechtel@pa.gov).

Dated:  January 17, 2017                    */s/ Laura A. Lange*