IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNYSLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, PENNSYLVANIA GAME COMMISSION, | : CIVIL ACTION – LAW |
| | : |
| | : CASE NO. 1:12-CV-1567 |
| | : |
| Plaintiff, | : JUDGE: Christopher C. Conner |
| | : |
| v. | : MAGISTRATE JUDGE: |
| | : Hon. Susan E. Schwab |
| THOMAS E. PROCTOR HEIRS TRUST and the MARGARET PROCTOR TRUST, | : [ELECTRONICALLY FILED] |
| | : |
| Defendants. | : |
| | : |

**REPLY OF THE COMMONWEALTH OF PENNSYLVANIA, PENNSYLVANIA GAME COMMISSION, TO DEFENDANTS' AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO THE SECOND AMENDED COMPLAINT WITH COUNTERCLAIM**

NOW, this 13th day of October, 2017, comes the Plaintiff,

Commonwealth of Pennsylvania, Pennsylvania Game Commission (PGC),

by and through its counsel, and makes this REPLY against the above

Defendants and makes the following allegations in support thereof:

**THE PARTIES, JURISDICTION, APPLICABLE LAW, THE**

**PREMISES, AND THE TITLES**

1 – 24    The allegations and averments of Plaintiff's Second Amended

Complaint, Paragraphs 1 through 24 and the Exhibits thereto, are hereby

1

incorporated herein by reference as if fully set forth.  To the extent the Defendants aver or reply in a way that alleges new facts, legal conclusions or legal theories, all such averments and allegations, and the implications thereof, are denied.  To the extent such facts, legal conclusions or theories apply to something other than the property identified in the Second Amended Complaint, after reasonable investigation, the PGC is unable to form an opinion as to the truth or falsity of the averments and so the same are denied.

WHEREFORE, the PGC respectfully requests this Honorable Court to issue and order:

1.  Pursuant to Pa.R.C.P. 1061(b)(3) against the Defendants to admit the invalidity of any right, title or interest Defendant, or any of them claim in the oil and gas estate in, on and under the Premises consisting of approximately 2,481 acres, more or less, in Davidson and Laporte Townships, Sullivan County, Pennsylvania, most particularly admit the invalidity of any interest, right or claim pursuant to the Thomas E. Proctor Heirs Trust under Declaration of Trust dated October 28, 1980, which is recorded in Sullivan County in Book 1106, at page 879; or, in the alternative,

2.  Pursuant to Pa.R.C.P. 1061(b)(4) to grant possession of the oil

2

and gas estate in, on and under the Premises consisting of approximately

2,481 acres, more or less, in Davidson and Laporte Townships, Sullivan

County, Pennsylvania, which was sold at tax sales June 1, 1908, and for

which various deeds were dated December 1, 1908, as set forth in the

Second Amended Complaint, to the PGC; and,

3.      Such other relief as this Honorable Court may find just and

reasonable.

## AFFIRMATIVE DEFENSES

The PGC hereby incorporates by reference the responses to

Paragraphs 1 through 24 as if fully set forth.

25.      Paragraph 25 sets-forth a legal conclusion to which no response

is required.  To the extent a response is required to the allegation that the

Second Amended Complaint fails to state a claim, the allegation is denied.

26.      Paragraph 26 sets-forth a legal conclusion to which no response

is required.  To the extent a response is required to the allegation that the

PGC fails to establish a prima facie title to the Proctor Subsurface Estate in

the properties at issue, the allegation is denied.

27.      Paragraph 27 sets-forth a legal conclusion to which no response

is required.  To the extent a response is required to the allegation that the

claims asserted in the Second Amended Complaint are barred by the

doctrine of estoppel, the allegation is denied.

28.     Paragraph 28 set-forth a legal conclusion to which no response is required.  To the extent a response is required to the allegation that the claims asserted in the Second Amended Complaint are barred by the doctrine of laches, the allegation is denied.

29.     Paragraph 29 sets-forth a legal conclusion to which no response is required.  To the extent a response is required to the allegation that the claims asserted in the Second Amended Complaint are barred by the doctrine of waiver, the allegation is denied.

30.     Paragraph 30 sets-forth a legal conclusion to which no response is required.  To the extent a response is required, the PGC, after reasonable investigation, is unable to form an opinion as to the truth of the allegation because:

    a.     The "properties at issue" are not defined as either the properties in the Second Amended Complaint, or the properties in Paragraphs 3, 4 or 5 of Defendants' Counterclaim;

    b.     The "Proctor Subsurface Estate" is defined as "the subsurface estate, right and interests reserved by Thomas E. Proctor, Sr. and Emma H. Proctor and also specifically conveyed to Emma H. Proctor and her heirs" (Initial Paragraph 2), or alternatively as that

4

subsurface estate under the "Disputed Property" (Paragraph 9 of Defendants' Counterclaim) and "Disputed Property" is defined as State Game Lands 12, 13 and 36, which is comprised of 92,995.15 acres (Paragraph 5 of Defendants' Counterclaim); and,

    c.    The Defendants' Counterclaim, at best, pleads prima facie title to a subset of the "Disputed Property."

31.    Paragraph 31 sets-forth a legal conclusion to which no response is required. To the extent a response is required, the PGC, after reasonable investigation, is unable to form an opinion as to the truth of the allegation. By way of further answer, to the extent the averment relates to the six (6) unseated warrants claimed by PGC in its Second Amended Complaint, the averment is denied.

32.    Paragraph 32 sets-forth a legal conclusion to which no response is required. To the extent a response is required, the PGC, after reasonable investigation, is unable to form an opinion as to the truth of the allegation. By way of further answer, to the extent the averment relates to the six (6) unseated warrants claimed by PGC in its Second Amended Complaint, the averment is denied.

33.    The PGC avers that there was no separate assessment of the oil, gas, and mineral estates of the six warrants named in the Second Amended

Complaint.  After reasonable investigation, the PGC is unable to form an

opinion as to the truth or falsity of the Defendants' remaining averments,

therefore, they are denied.

34.     Paragraph 34 sets-forth a legal conclusion to which no response

is required.  To the extent a response may be required, the responses to

Paragraphs 31-33 hereof are hereby incorporated herein by reference.

35.      Paragraph 35 sets-forth a legal conclusion to which no

response is required.  To the extent a response may be required, the

responses to Paragraphs 31-34 hereof are hereby incorporated herein by

reference.  It is further denied that Calvin H. McCauley, Jr. was an agent for

Defendants' predecessors, or that he had a legal or moral obligation to pay

taxes for Defendants' predecessors.

36.     Paragraph 36 sets-forth a legal conclusion to which no response

is required.  To the extent a response may be required, after reasonable

investigation, the PGC denies the statements with regard to the six warrants

named in the Second Amended Complaint, as set forth above, and

incorporates by reference the responses to Paragraphs 31-35.

37.     Paragraph 37 sets-forth a legal conclusion to which no response

is required.  To the extent a response may be required, after reasonable

investigation, the PGC is unable to form an opinion as to the truth of the

Defendants' averments in Paragraph 37 and are therefore denied. By way of further response, the PGC hereby incorporates by reference the responses to Paragraphs 31-36 herein as if set-forth fully.

38.     Paragraph 38 sets-forth a legal conclusion to which no response is required. To the extent a response may be required, after reasonable investigation, the PGC is unable to form an opinion as to the truth of the Defendants' averments in Paragraph 38 and are therefore denied. By way of further response, the PGC hereby incorporates by reference the responses to Paragraphs 31-37 herein as if set-forth fully.

39.     Paragraph 39 sets-forth a legal conclusion to which no response is required. To the extent a response may be required, after reasonable investigation, the PGC is unable to form an opinion as to the truth of the Defendants' averments in Paragraph 38 and are therefore denied. By way of further response, the PGC hereby incorporates by reference the responses to Paragraphs 31-38 herein as if set-forth fully.

40.     Paragraph 40 sets-forth a legal conclusion to which no response is required. To the extent a response may be required, after reasonable investigation, the PGC is unable to form an opinion as to the truth of the Defendants' averments in Paragraph 40 and are therefore denied. To the contrary, pursuant to the principles set forth in Hutchinson v. Kline, 199 Pa.

564 (1901); <u>F.H. Rockwell & Co. v. Warren County</u>, 228 Pa. 430 (1910);

<u>Proctor v. Sagamore Big Game Club</u>, 155 F.Supp. 465 (W.D. Pa., 1958);

<u>Herder Spring v. Keller</u>, 143 A.3d 358 (2016); and, <u>Cornwall Mountain</u>

<u>Investments v. Thomas E. Proctor Heirs Trust, et al</u>, 158 A.3d 148

(Pa.Super. 2017), a purchaser of unseated land at a tax sale could, at all

times relevant to this litigation, acquire a title to the whole of an unseated

warrant that was not separately assessed.  By way of further response, the

PGC hereby incorporates by reference the responses to Paragraphs 31-39

herein as if set-forth fully.

41.    Paragraph 41 sets-forth a legal conclusion to which no response

is required.  To the extent a response may be required, after reasonable

investigation, the PGC is unable to form an opinion as to the truth of the

Defendants' averments in Paragraph 41 and are therefore denied.  By way of

further response, the PGC hereby incorporates by reference the responses to

Paragraphs 31-40 herein as if set-forth fully.

42.    Paragraph 42 sets-forth a legal conclusion to which no response

is required.  To the extent a response may be required, after reasonable

investigation, the PGC is unable to form an opinion as to the truth of the

Defendants' averments in Paragraph 42 and are therefore denied.  By way of

further response, the PGC hereby incorporates by reference the responses to

Paragraphs 31-41 herein as if set-forth fully.

43.     Paragraph 43 sets-forth a legal conclusion to which no response is required.  To the extent a response may be required, after reasonable investigation, the PGC is unable to form an opinion as to the truth of the Defendants' averments in Paragraph 43 and are therefore denied.  By way of further response, the PGC hereby incorporates by reference the responses to Paragraphs 31-42 herein as if set-forth fully.

44.     Paragraph 44 sets-forth a legal conclusion to which no response is required.  To the extent a response may be required, after reasonable investigation, the PGC is unable to form an opinion as to the truth of the Defendants' averments in Paragraph 44 and are therefore denied.  By way of further response, the PGC hereby incorporates by reference the responses to Paragraphs 31-38 herein as if set-forth fully.

45.     Paragraph 45 sets-forth a legal conclusion to which no response is required.  To the extent a response may be required, after reasonable investigation, the PGC is unable to form an opinion as to the truth of the Defendants' averments in Paragraph 45 and are therefore denied.  By way of further response, the PGC hereby incorporates by reference the responses to Paragraphs 31-44 herein as if set-forth fully.

46.     Paragraph 46 sets-forth a legal conclusion to which no response

is required.  To the extent a response may be required, after reasonable investigation, the PGC is unable to form an opinion as to the truth of the Defendants' averments in Paragraph 46 and are therefore denied.  By way of further response, the PGC hereby incorporates by reference the responses to Paragraphs 31-45 herein as if set-forth fully.

WHEREFORE, the PGC respectfully requests this Honorable Court to issue and order:

1.   Pursuant to Pa.R.C.P. 1061(b)(3) against the Defendants to admit the invalidity of any right, title or interest Defendant, or any of them claim in the oil and gas estate in, on and under the Premises consisting of approximately 2,481 acres, more or less in Davidson and Laporte Townships, Sullivan County, Pennsylvania, most particularly admit the invalidity of any interest, right or claim pursuant to the Thomas E. Proctor Heirs Trust under Declaration of Trust dated October 28, 1980, which is recorded in Sullivan County in Book 1106, at page 879; or, in the alternative,

2.      Pursuant to Pa.R.C.P. 1061(b)(4) to grant possession of the oil and gas estate in, on and under the Premises consisting of approximately 2,481 acres, more or less in Davidson and Laporte Townships, Sullivan County, Pennsylvania, which was sold at tax sales June 1, 1908, and for

10

which various deeds were dated December 1, 1908, as set forth in the

Second Amended Complaint, to the PGC; and,

3.    Such other relief as this Honorable Court may find just and

reasonable.

## COUNTERCLAIM

1.    Admitted in part, denied in the remainder.  It is admitted that

there is a dispute between the parties with respect to the six warrants named

in Plaintiff's Second Amended Complaint.  After reasonable investigation,

the PGC is unable to form an opinion as to the nature and extent of the

dispute in regard to some unseated warrants located in Sullivan and Bradford

Counties, so the same is denied and strict proof thereof is demanded.

2.    Denied.  Sullivan County Deed Book 21, Page 376 (not 375),

speaks for itself and includes all or parts of the warrants named in

Defendants' Counterclaim Paragraph 2, but also includes various exceptions

and reservations and a larger number of other warrants not named.  The

quality of the title (which is a legal conclusion to which no response is

required) depends upon the chain of title prior to that time. It is specifically

denied that the Named Warrants comprise State Game Lands No. 13.  To the

contrary, some of the Named Warrants are part of State Game Lands 13.

3.    Denied.  Bradford County Deed Book 152, page 291 is a deed

to Thomas E. Proctor and Jonathan A. Hill; Bradford County Deed Book 169, page 326 is a deed to Thomas E. Proctor and Jonathan A. Hill; Bradford County Deed Book 197, page 270 is a deed to Thomas E. Proctor and Jonathan A. Hill; Sullivan County Deed Book 14, page 230 is a deed to Thomas E. Proctor and Jonathan A. Hill; Sullivan County Deed Book 14, page 233 is a deed to Jonathan A. Hill (Proctor is not mentioned);  Sullivan County Deed Book 14, page 658 is a deed to Thomas E. Proctor and J.A. Hill trading and doing business as Proctor and Hill; and, Sullivan County Deed Book 17, page 468 (not 463) is a deed to Thomas E. Proctor.  The deeds speak for themselves.  They include all or parts of the warrants named in Defendants' Counterclaim Paragraph 3, but also include various exceptions and reservations and a larger number of other warrants or tracts not named.  The quality of the title (which is a legal conclusion to which no response is required) depends upon the chain of title prior to that time. Because most of these deeds are not solely to Thomas E. Proctor, or not to Thomas E. Proctor at all, the quality of title also depends upon the chain of title after the date of the respective deed.  After reasonable investigation, the PGC has not completed title searches for all these properties and Defendants have not supplied any title searches or pled any title except for the bare assertion of title by deeds which, on their face, do not give Thomas E.

Proctor fee title.  It is specifically denied that the Named Warrants comprise

State Game Lands No. 12.  To the contrary, some of the Named Warrants

are part of State Game Lands 12.

4.      Denied.  Bradford County Deed Book 172, page 99 is a deed to

Thomas E. Proctor and Jonathan A. Hill.  The deed speaks for itself.  It

includes all or parts of the warrants named in Defendants' Counterclaim

Paragraph 4.  The quality of the title (whether in fee, fee simple, or a lesser

estate) depends upon the chain of title.  It is specifically denied that the

Named Warrants comprise State Game Lands No. 36.

5.      Denied.  State Game Lands 13 is comprised of approximately

49,528.70 acres and State Game Lands 36 is comprised of approximately

18,987.29 acres.  Neither the various Named Warrants nor the various

Referenced Warrants contain a total acreage of this magnitude.

**A. The Proctor Reservation**

6.      Denied.  After reasonable investigation, the PGC is unable to

form an opinion as to the truth or falsity of Defendants' Counterclaim

Paragraph 6 and the same is denied and strict proof demanded.

7.      Denied.  To the contrary, State Game Land 13 is much larger

than the deeds referenced by the Defendants in the Defendants'

Counterclaim.  Further, the deed referenced in Defendants' Paragraph 6 of

the Counterclaim speaks for itself.

8.     Denied.  State Game Lands 12 is comprised of approximately 24,479 acres, and State Game Lands 36 is comprised of approximately 18,987.29 acres, for a total of 43,466.29 acres.  Bradford County Deed Book 205, page 436 is a deed from Thomas E. Proctor and wife, and Jonathan A. Hill, and wife, to Union Tanning Company.  The deed speaks for itself, but contains approximately 26,548.7 acres.  By its very terms, any reserved interest would have been owned by both Thomas E. Proctor and wife and Jonathan A. Hill and wife.  After reasonable investigation, the PGC is unable to form an opinion as to whether all of the warrants named as being owned by Defendants are included within Deed Book 205, page 436, nor whether all the warrants are on Game Lands, so the same is denied and strict proof demanded.

9.     Denied.  To the contrary, much of the minerals, coal, oil, gas or petroleum under the "Disputed Property," has nothing at all to do with the Defendants.  By way of further reply, there is no definition of the "Bradford County and Sullivan County Properties," the reservations which allegedly constitute the "Proctor Reservation."  After reasonable investigation, the PGC denies that either of these terms make any sense whatsoever, and strict proof is demanded.

10.     Denied.  After reasonable investigation, the PGC is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 10 of Defendants' Counterclaim.  By way of further reply, the averments contained in Paragraph 11 of Plaintiff's Second Amended Complaint are hereby incorporated by reference as if set-forth fully herein.

11.     Denied.  After reasonable investigation, the PGC is unable to form an opinion as to the truth or falsity of Defendants' Counterclaim Paragraph 11, so the same is denied.

12.     Denied.  Paragraph 12 of Defendants' Counterclaim is a conclusion of law, to which no response is required, so the same is denied and strict proof demanded.  By way of further reply, if this reconveyance by O.B. Grant operated to return all interests as they were prior to the tax sale (which is denied), that includes the interests of Jonathan A Hill.

13.     Denied.  Paragraph 13 is a legal conclusion to which no response is required.  To the extent a response is required, Defendants pleading does not support this conclusion of law by deed reference or other legal theory, so the same is denied and strict proof demanded.

14.     Denied.  It is averred to the contrary upon information and belief, that the tax assessment record is devoid of any reference to the

Proctor Reservation or the Proctor Subsurface Estate.

15.    Denied.  To the contrary, the deeds speak for themselves.  After reasonable investigation, the PGC is currently without information sufficient to form an opinion whether or not all interests of Union Tanning Company in the "Disputed Property" was conveyed as stated, so the same is denied and strict proof demanded.

16.    Denied.  The instruments speak for themselves.  After reasonable investigation, the PGC is currently without information sufficient to form an opinion whether or not all interests of Union Tanning Company in the "Disputed Property" were reserved as stated, so the same is denied and strict proof demanded.

17.    Denied.  After reasonable investigation, the PGC is without knowledge or information sufficient to form an opinion as to the truth or falsity of Paragraph 17, so the same is denied.

18.    Denied.  To the contrary, at best, a portion of the "Disputed Property" was assessed in the name of CPLC.  The remainder of Paragraph 18 of Defendants' Counterclaim is a legal conclusion to which no response is required.

19.    Denied.  After reasonable investigation, the PGC is unable to form an opinion as to the truth or falsity of Defendants' Counterclaim

16

Paragraph 19, so the same is denied.  To the extent an answer is deemed

necessary the PGC avers that the subsurface interests in the Disputed

Property were most assuredly assessed somewhere, at sometime.

20.    Denied.  After reasonable investigation, the PGC is unable to

form an opinion as to the truth or falsity of Defendants' Counterclaim

Paragraph 20, so the same is denied and strict proof demanded.

21.    Denied.  After reasonable investigation, the PGC is unable to

form an opinion as to the truth or falsity of Defendants' Counterclaim

Paragraph 21, so the same is denied and strict proof demanded.

22.    Denied.  After reasonable investigation, the PGC is unable to

form an opinion as to the truth or falsity of Defendants' Counterclaim

Paragraph 22, so the same is denied.

23.    Denied.  After reasonable investigation, the PGC is unable to

form an opinion as to the truth or falsity of Defendants' Counterclaim

Paragraph 23, so the same is denied.

**B.    The Tax Sales**

24.     Denied.  After reasonable investigation, the PGC is unable to

form an opinion as to the truth or falsity of Defendants' Counterclaim

Paragraph 24, so the same is denied.

25.     Denied.  After reasonable investigation, the PGC is unable to

form an opinion as to the truth or falsity of Defendants' Counterclaim

Paragraph 25, so the same is denied.

26.    Denied.  After reasonable investigation, the PGC is unable to

form an opinion as to the truth or falsity of Defendants' Counterclaim

Paragraph 26, so the same is denied.  To the contrary, the averment does not

appear to be supported by the course of conduct of the parties or the

Defendants' allegations in its Counterclaim.

27.    Denied.  After reasonable investigation, the PGC is unable to

form an opinion as to the truth or falsity of Defendants' Counterclaim

Paragraph 27, so the same is denied.

28.    Denied.  After reasonable investigation, the PGC is unaware

of any evidence Calvin H. McCauley, Jr., was an attorney and real estate

agent for CPLC in 1908.

29.    Denied.  The response to Defendants' Counterclaim Paragraph

28 is hereby incorporated herein by reference as if fully set forth.

30.    Denied.  With respect to the six unseated warrants named in

the Second Amended Complaint, the PGC provided the recording references

on Exhibit B to the Second Amended Complaint.  After reasonable

investigation, the PGC is without knowledge or information sufficient to

form an opinion as to the truth or falsity of whether McCauley "gave

notice," or "recorded any [other] tax deeds associated with the Disputed Property."

31.    Denied.  After reasonable investigation, the PGC is without knowledge or information sufficient to form an opinion as to the truth or falsity of Defendants' Counterclaim Paragraph 31.  To the contrary, the PGC incorporates it response to Defendants' Counterclaim Paragraph 30 as if fully set forth.

32.    Denied.  The PGC avers to the contrary the tax sales to O.B. Grant for the six unseated warrants named in the Second Amended Complaint and the tax sales to McCauley for the same unseated warrants were all acknowledged in open court as set forth on Exhibit B to the Second Amended Complaint.  As no other tax sales are pled, the PGC is without knowledge or information sufficient to form an opinion as to the truth or falsity, so the same is denied and strict proof demanded.

33.    Denied.  After reasonable investigation, the PGC is unable to form an opinion as to the truth or falsity of Defendants' Counterclaim Paragraph 33.

34.    Denied.  The response to Defendants' Counterclaim, Paragraph 33, is hereby incorporated herein by reference as if fully set forth.

35.    Denied.  After reasonable investigation, the PGC is currently

19

without sufficient knowledge or information to form an opinion as to the truth or falsity of Defendants' Counterclaim Paragraph 35.

36.    Denied.  To the contrary, in 1910, McCauley and his wife conveyed their interests as acquired by tax sale to CPLC via quitclaim deeds for the six warrants named in the Second Amended Complaint.  After reasonable investigation, the PGC is currently without sufficient information to form a belief as to how many other warrants in the Disputed Property may have gone through tax sale at the same time with the same purchaser and with the same result, so the same is denied.

37.    Denied.  After reasonable investigation, the PGC is without sufficient information to form a belief as to how all warrants in Bradford and Sullivan County with regard to the casually defined "Disputed Property," were assessed during this time period, so the same is denied.  By way of further answer, the tax assessment records for the six unseated warrants showed the sale to McCauley during the time period 1908 to 1910.

**C.    Post-Tax Sale Transactions Demonstrate that CPLC and the Game Commission Did Not Believe that the Tax Sales "Washed" the Proctor Subsurface Estate**

38.    Denied.  With respect to the first sentence of Defendants' Counterclaim Paragraph 38, the averment is specifically denied.  To the

contrary, CPLC was aware of the law relating to tax sales of unseated land.
With respect to the second sentence of Defendants' Counterclaim Paragraph
38, the averment is specifically denied. To the contrary, there were
numerous conveyances from CPLC to PGC over time and the instruments
speak for themselves.

39.    Denied. To the contrary, the deed referenced in Defendants'
Counterclaim Paragraph 39 does not convey the "surface estate," of State
Game Lands 12. By way of further answer, the deed at Bradford County
Deed Book 376, page 99 speaks for itself and also contains the language:

> [B]ut all the right, title and interest of the Central Pennsylvania
> Lumber Company, its successors and assigns, in possession, remainder or
> reversion in the said minerals and rights above mentioned [including the
> sentence quoted in Defendants' Counterclaim Paragraph 39], are hereby
> granted and conveyed to the Commonwealth of Pennsylvania.

40.    Denied. The deed in Bradford County Deed Book 377, page
208 (which includes the "at 211" reference of Defendants in this Paragraph
of Defendants' Counterclaim) speaks for itself and also contains the
language (immediately following the ellipses):

> [B]ut hereby conveying all interest of the above named grantor
> [CPLC], its successors and assigns in possession, remainder or reversion in
> said oil, gas, coal or other minerals, in, under and upon the two tracts herein
> described, the intention of the grantor being not to make any additional
> reservations.

By way of further answer, the deed referenced in Defendants'

Counterclaim Paragraph 40 does not convey, "State Game Lands 36," but merely a portion thereof.

41.    Denied.  To the contrary, there is no evidence that shows or will show that CPLC did not believe that the unspecified 1908 tax sale of unspecified property had any effect on the Proctor reservation or the unspecified Union Tanning 1903 reservation of bark rights.  The response to Paragraph 16 of Defendants' Counterclaim is hereby incorporated herein by reference as if fully set forth.

42.    Denied.  After reasonable investigation, the PGC is without knowledge or information sufficient to form an opinion as to the truth or falsity of the conclusions stated in Paragraph 42 of Defendants' Counterclaim, so the same are denied.  To the contrary, it is averred that the protective actions of CPLC, Union Tanning and Elk Tanning are not relevant to the question of whether the entire estate passed through tax sale on specified warrants by operation of law.

43.    Denied.  To the contrary, all of CPLC's interests in State Game Land No. 13 were not conveyed in 1924 by the referenced deed.

44.    Denied.  After reasonable investigation, the PGC is without sufficient information to form an opinion as to the truth or falsity of Defendants' Counterclaim Paragraph 42, so the same is denied.  By way of

further reply, the PGC hereby incorporates by reference its responses to

Paragraphs 16, 41, and 42 of this response to Defendants' Counterclaim.

45.    Denied.  To the contrary, CPLC did not convey all of its

interests in State Game Lands Nos. 12 and 36 by the two referenced deeds.

By way of further response, the responses to Paragraphs 39 and 40 of this

Response to Defendants' Counterclaim are hereby incorporated herein by

reference as if fully set forth.

46.    Denied.  The PGC does not own all oil, gas and mineral rights

on Pennsylvania State Game Lands.  However, the PGC specifically denies

the characterization as the "bulk" of State Game Lands, as well as the

implication of Defendants' characterization that any such recognition means

that the PGC does not own the oil, gas and mineral rights it has claimed in

this case.

47.    Denied.  To the contrary, the PGC has asserted that rights of

Thomas E. Proctor were conveyed at tax sales of unseated properties and

that some of them would be owned by the PGC.

48.    Denied.  The PGC entered into a Restricted Surface Use

Cooperative Agreement for Exercise of Production Rights for Oil and Gas,

dated February 2, 2013, with Chief Exploration and Development, LLC.

This Agreement was for a tract on State Game Lands 36 designated as 36A-

13.  It included 5,870 acres of the total of 18,987.29 acres of State Game Lands No. 36.  This Agreement provided for payment of a bonus on "net acres" after title work revealed the owner of the oil and gas.  The PGC entered into a Restricted Surface Use Cooperative Agreement for Exercise of Production Rights for Oil and Gas dated October 1, 2013, with Chief Exploration and Development, LLC.  This Agreement was for a tract on State Game Lands 12 designated as 12A-13.  It included 19,133 acres of the 24,479.20 acres of State Game Land No. 12.  This Agreement also provided for payment of a bonus on "net acres" after title work revealed the owner of the oil and gas.  Any payments not identified as due and owing to PGC are paid into escrow.

### COUNT 1 – QUIET TITLE

49.    The PGC hereby incorporates by reference the responses set forth in the foregoing paragraphs as though fully set forth herein.

50.    Denied.  After reasonable investigation, the PGC is without information sufficient to form an opinion as to the truth or falsity of Defendants' Counterclaim Paragraph 50, so the same is denied.

51.    Denied.  It is specifically denied that Defendants hold title to the natural gas and oil contained in the "Disputed Property."  To the contrary, the Defendants have neither plead a prima facie case of ownership

nor demonstrated title to, "[t]he natural gas and oil contained in the Disputed Property."

52.    Denied.  It is specifically denied that the PGC took actions to cloud any title actually owned by Defendants.  To the contrary, and upon information and belief, it was the actions (and inaction) of the Defendants' predecessors that placed a cloud, if any, upon title in the "Disputed Property," actually owned by the Defendants.

53.    Admitted in part; denied in the remainder.  It is admitted that the PGC has made claims to ownership of oil and gas under portions of State Game Lands 12, 13 and 36, to the extent such lands are "associated with the Disputed Property," and entered into agreements as set forth in Paragraph 48, above.  It is specifically denied that the PGC claimed ownership of interests actually owned by Defendants or attempted to convey Defendants' interests in the oil and gas associated with the "Disputed Property."  By way of further response, the reponses to Paragraphs 47 and 48 are hereby incorporated herein by reference as if fully set forth.

54.    Denied.  Defendants' Counterclaim Paragraph 54 is a conclusion of law to which no response is required, so the same is denied. To the extent a response is required, the PGC specifically denies that the unspecified 1908 tax sales and tax deeds had no effect on the title of the

Proctor Heirs (including the Trusts) to unspecified property of the "Proctor Subsurface Estate." To the contrary, the numerous deeds and tax sales had an effect on the title held by the Defendants predecessors to the "Proctor Subsurface Estate."

55.     Denied.  Defendants' Counterclaim Paragraph 55 is a conclusion of law to which no response is required, so the same is denied. To the extent a response is required, it is specifically denied that the unspecified 1908 tax sales and tax deeds did not affect the title to the unspecified interests of the Proctor Heirs (including the Trusts).  To the contrary, upon information and belief, the Defendants' predecessors were noticed of the regular, biennial tax sales and declined the opportunity to be heard.

56.     Denied.  Defendants' Counterclaim Paragraph 56 is a conclusion of law to which no response is required, so the same is denied. To the extent a response is required, it is specifically denied that the unspecified 1908 tax sales and tax deeds did not affect the title to the unspecified interests of the Proctor Heirs (including the Trusts).  To the contrary, upon information and belief, the unspecified "Tax Deeds" were not the product of fraud.

57.     Denied.  Paragraph 57 of Defendants' Counterclaim states a

conclusion of law to which no response is required, so the same is denied.

To the extent a response is required, it is specifically denied that the

unspecified 1908 tax sales and tax deeds had no effect on the title of the

Defendants' predecessors (including the Trusts). By way of further

response, the PGC specifically denies that there was not sufficient basis to

value, assess, or tax the natural gas or oil rights, and avers there could be no

assessment of those reserved rights when they were not reported to the tax

assessor. In addition, the PGC avers that there was oil and gas production in

the Commonwealth, in areas sufficiently similar to those on State Game

Lands 12, 13, and 36, to give rise to a belief in Defendants' predecessors that

there was something to reserve; whether there was production from the

"Disputed Property" or unspecified, "nearby areas" is irrelevant in the face

of production in similar areas of the Commonwealth. Finally, the PGC avers

there was production in areas of the Commonwealth similarly situated as

State Game Lands 12, 13 and 36 that, even if this is relevant, it is incorrect,

and there was sufficient basis to value interests actually reported.

58.    Denied. Paragraph 57 of Defendants' Counterclaim states a

conclusion of law to which no response is required, so the same is denied.

To the extent a response is required, it is specifically denied that the

unspecified 1908 tax sales and tax deeds had no effect on the title of the

Defendants' predecessors (including the Trusts).  By way of further response, the PGC avers that fourteen years without insisting on a separate assessment or creating a record that a separate assessment was requested or demanded proves that no such reporting of the separate estate was made.

59.    Denied.  The PGC is without sufficient information to form a belief as to the truth of the sentences contained in Defendants' Counterclaim Paragraph 59, so the same are specifically denied.  To the contrary, upon information and belief, CPLC believed it was transferring all interests it owned, including subsurface interests, to the PGC.

60.    Denied.  Defendants' Counterclaim Paragraph 60 is a conclusion of law to which no response is required, so the same is denied. To the extent a response is required, the PGC avers that the Defendants are bound by the tax sales in their chains of title, the inaction of Defendants' predecessors, and the law that existed at the time of those sales.

61.    Denied.  Defendants' Counterclaim Paragraph 61 is a conclusion of law to which no response is required, so the same is denied. To the extent a response is required, the law does not support the theory put-forth by Defendants that a tax sale of unseated land does not pass all interests not separately assessed; the Defendants' averments are, therefore, specifically denied.

28

62.    Denied.  Defendants' Counterclaim Paragraph 62 is a conclusion of law to which no response is required, so the same is denied.

63.    Denied.  Defendants' Counterclaim Paragraph 63 is a conclusion of law to which no response is required, so the same is denied.

64.    Denied.  Defendants' Counterclaim paragraph 64 is a conclusion of law to which no response is required, so the same is denied. To the extent a response is required, the PGC avers that the Act of 1815, on its face or as applied, did afford due process to the Defendants predecessors, as discussed and set forth in *Herder Spring v. Keller*, 143 A.3d 358 (Pa. 2016).

65.    Admitted.

**COUNT II – CONVERSION**

66.    The PGC hereby incorporates by reference the responses set forth in the foregoing paragraphs as though fully set forth herein.

67.    Denied.  It is specifically denied that the PGC deprived the Defendants of anything; to the contrary, it has sought a legal determination of the title to six unseated warrants as set forth and described in the Second Amended Complaint.

68.    Denied.  The PGC has permitted the use of its property and lawfully allowed the production of natural gas from State Game Lands 12

29

and 36 in accordance with PGC title.  The response to Paragraph 48 is hereby incorporated herein by reference as if fully set forth.

69.    Denied.  It is specifically denied that the Defendants have suffered any damages as a result of the unauthorized production and sale of natural gas from the Disputed Property in any amount.  To the contrary, the Defendants have suffered no damages as alleged.

**COUNT III – UNJUST ENRICHMENT**

70.    The PGC hereby incorporates by reference the responses set forth in the foregoing paragraphs as though fully set forth herein.

71.    Denied.  Defendants' Counterclaim paragraph 71 is a conclusion of law to which no response is required, so the same is denied. To the extent a response is required, the PGC hereby incorporates the responses to Defendants' Counterclaim Paragraph 48 as if fully set forth.

72.    Denied.  Defendants' Counterclaim paragraph 72 is a conclusion of law to which no response is required, so the same is denied. To the extent a response is required, the PGC hereby incorporates the responses to Defendants' Counterclaim Paragraph 48 as if fully set forth.

73.    Denied.  Defendants' Counterclaim paragraph 73 is a conclusion of law to which no response is required, so the same is denied. To the extent a response is required, the PGC hereby incorporates the

responses to Defendants' Counterclaim Paragraph 48 as if fully set forth.

74.    Denied.  Defendants' Counterclaim paragraph 74 is a conclusion of law to which no response is required, so the same is denied. To the extent a response is required, the PGC hereby incorporates the responses to Defendants' Counterclaim Paragraph 48 as if fully set forth.

WHEREFORE, the PGC respectfully requests this Honorable Court to grant judgment in its favor and against the Defendants as follows:

a.    That the Court enter an order finding no conversion or unjust enrichment;

b.    That the Court enter judgment that the PGC has title with respect to the oil, gas, and minerals where the law and facts show as vested in the PGC; and,

c.    That the Court grant such other relief as it shall deem just and equitable under the circumstances.

## AFFIRMATIVE DEFENSES

75.    The PGC hereby incorporates by reference the responses set forth in the foregoing paragraphs as though fully set forth herein.

76.    The Defendants' claims are moot or otherwise not justiciable.

77.    The Defendants' claims are unripe or otherwise not justiciable.

78.    The Defendants fail to establish prima facie title.

31

79.    The Defendants' claims fail to state a claim upon which relief can be granted.

80.    The Defendants' claims are barred by the doctrine of estoppel.

81.    The Defendants' claims are barred by the doctrine of laches.

82.    The Defendants' claims are barred by the statute of limitations.

83.    The Defendants' claims are barred by the statute of frauds.

84.    The Defendants' claims are barred by the doctrine of waiver.

85.    The Defendants' claims are barred as a collateral attack.

86.    The Defendants' claims are barred by the doctrine of *res judicata*.

WHEREFORE, the PGC respectfully requests this Honorable Court to grant judgment in its favor and against the Defendants as follows:

a.    That the Court enter an order finding no conversion or unjust enrichment;

b.    That the Court enter judgment that the PGC has title with respect to the oil, gas, and minerals where the law and facts show as vested in the PGC; and,

c.    That the Court grant such other relief as it shall deem just and equitable under the circumstances.

## COUNTERCLAIM

## COUNT I  TORTIOUS INTERFERENCE

87.     The PGC hereby incorporates by reference the responses set forth in the foregoing paragraphs as though fully set forth herein.

88.     Chief Operating, LLC (Chief), and the PGC entered into Restricted Surface Use Cooperative Agreements for the Exercise of Production Rights for Oil and Gas on portions of State Game Lands 12 and 36 as referenced herein in Paragraph 48.

89.     Upon information and belief, Chief has secured all consents and agreements necessary, including from Defendants and Defendants' predecessors, to explore for and produce oil and gas from State Game Lands 12 and 36 in the areas covered by the Agreements referenced in Paragraph 48.

90.     The PGC forewent bidding its interests in State Game Lands 12 and 36 because Chief was in a unique business position to complete and pay for all necessary title work and surveys, and conduct orderly development of oil and gas.

91.     At the time of the filing of the Second Amended Complaint and the Defendants' Counterclaims, areas of dispute on State Game Lands 12 and 36 had not been identified and no discussion between the PGC and

Defendants occurred with regard to whether or not an actual dispute exists.

92.     Upon information and belief, Defendants are aware of Chief's agreements with PGC as referenced in Paragraph 48 and of Chief's orderly title and survey work in connection with said agreements.

93.     The chains of title for the properties comprising State Game Lands 12 or 36 are in different counties; the tax sale dates are different; the specific facts are different; and, the deeds and reservations present in the chains of title are different from the chains of title for the properties comprising State Game Lands 13.

94.     Upon information and belief, the Defendants are aware, or should be aware, of these differences between these properties.

95.     Defendants' Counterclaims purposefully and improperly conflate the circumstances relating to all the properties to which they could possibly claim an interest.

96.     The Counterclaims purposefully and improperly conflate the scope of the property included in the "Proctor Subsurface Estate," as the whole of State Game Lands 12, 13 and 36, and totally ignore the complex web of agreements and consents under which Chief operates.

97.     The Defendants filed their Counterclaims against the PGC intending to harm the PGC by compelling it to expend time and resources to

defend against claims with respect to State Game Lands 12 and 36 which have no basis in fact and would not exist had the orderly development and research been completed by Chief.

98.    The PGC has in-fact been compelled to expend time and resources to defend against such claims.

99.    The PGC lost the benefit of its bargain with Chief because of the Defendants' intentional and improper assertion of a claim to all of State Game Lands 12 and 36, and the orderly determination of issues at less cost to the PGC which was bargained-for by PGC in the Agreements with Chief.

100.    There is no justification or privilege that is, "[s]anctioned by the rules of the game which society has adopted," (*Empire Trucking v. Reading Anthracite Coal*, 71 A.3d 923 at 934 (Pa. Super. 2013)) excusing Defendants' Counterclaim with respect to the whole of State Game Lands 12 and 36, when the actual claim remains unidentified and unripe.

101.    The amount of time and resources spent to defend these claims is in excess of $75,000.00.

WHEREFORE, the PGC respectfully requests this Honorable Court to grant judgment in its favor and against the Defendants as follows:

a.    That the Court enter an order declaring that the Defendants tortiously interfered with the PGC's contractual relationship with a third

party;

b.     That the Court enter judgment against the Defendants for

damages suffered by PGC, prejudgment interest, and costs; and,

c.     That the Court grant such other relief that it shall deem just and

equitable under the circumstances.


                                        Respectfully submitted,
                                        PENNSYLVANIA GAME COMMISSION


DATE: October 13, 2017          /s/ *Bradley C. Bechtel*
                                Bradley C. Bechtel, Chief Counsel
                                PA No. 49681
                                W. Creigh Martson, Assistant Counsel
                                PA No. 94759
                                2001 Elmerton Avenue
                                Harrisburg, PA  17110-9797
                                FAX:  (717)772-0502
                                (717)783-6530
                                brbechtel@pa.gov
                                wmartson@pa.gov
                                *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I, Bradley C. Bechtel, Esquire, Chief Counsel of the Pennsylvania Game Commission, hereby certify the foregoing Reply of the Commonwealth of Pennsylvania, Pennsylvania Game Commission, to Defendants' Amended Answer and Affirmative Defenses to the Second Amended Complaint with Counterclaims was served upon the following via the Court's CM/ECF system this 13th day of October 2017:

Thomas Waffenschmidt, Esquire
The Waffenschmidt Law Firm, LLC
811 S. Market Street
South Williamsport, PA 17701
tom@waffenlaw.com


Paul K. Stockman, Esquire
Laura A. Lange, Esquire
McGuireWoods LLP
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 15222
llange@mcguirewoods.com
pstockman@mcguirewoods.com


/s/ *Bradley C. Bechtel*
Chief Counsel