IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,
PENNSYLVANIA GAME COMMISSION,

     Plaintiff,

     v.

THOMAS E. PROCTOR HEIRS TRUST and
the MARGARET O.F. PROCTOR TRUST,

     Defendants.

Case No. 1:12-CV-1567

Chief Judge Conner /
Chief Magistrate Judge Schwab

## STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Local Civil Rule 56.1, Plaintiffs Trustees of the Thomas E. Proctor Heirs Trust and Trustees of the Margaret O.F. Proctor Trust (collectively, the "Proctor Trusts"), identify the following undisputed material facts in support of their Motion for Partial Summary Judgment:

1.     By warrant dated January 22, 1793, the Commonwealth of Pennsylvania warranted a tract of land then located in Northumberland County to Josiah Haines (the "Josiah Haines Warrant").  *See* Full Abstract for Josiah Haines Warrant #659 ("Percheron Title Report"), Ex. 1,[1] at PGCP013636, PGCP013651-56; Title of Central Pennsylvania Lumber Company to Nineteen Warrants or Parts

---

[1] Exhibit references are to the exhibits in the Appendix; numbered exhibits are contemporaneous documents, and exhibits identified with letters are witness declarations and deposition transcripts.  Contemporaneous documents included in the appendix are authenticated through the declarations and deposition transcripts included in the Appendix.

of Warrants Containing 7704.8 Acres ("L-2 Title Report"), Ex. 2, at PGCP002759, PGCP002774.

2.     By patent dated June 27, 1794, the Commonwealth subsequently conveyed the Josiah Haines Warrant (also known as "Trap"), patented at 407¾ acres, to Daniel Brodhead.  *See* Percheron Title Report, Ex. 1, at PGCP013635-36, PGCP013657-58; L-2 Title Report, Ex. 2, at PGCP002759, PGCP002774-75.

3.     The Josiah Haines Warrant is located in what is now LeRoy Township, Bradford County.  *See, e.g.,* Percheron Title Report, Ex. 1, at PGC013588.

4.     Through a series of conveyances, Schrader Mining & Manufacturing Co. acquired ownership of the Josiah Haines Warrant.  *See* Percheron Title Report, Ex. 1, at PGCP013632-33, PGCP013872-76; L-2 Title Report, Ex. 2, at PGCP002817-20.

5.     By deed dated June 5, 1893, Schrader Mining & Manufacturing Co. conveyed the Josiah Haines Warrant to Thomas E. Proctor and Jonathan A. Hill. *See* Percheron Title Report, Ex. 1, at PGCP013632, PGCP013878-81; L-2 Title Report, Ex. 2, at PGCP002819-20.

6.     It was the routine practice of Thomas E. Proctor and Proctor & Hill to notify county commissioners when they became owners of interests in tracts of unseated land, pursuant to the Act of March 28, 1806, P.L. 644.  Following this practice, after their purchase of the Josiah Haines Warrant, Messrs. Proctor and Hill notified the Bradford County Commissioners of their interest in the tract.  *See infra* ¶¶ 6.a-d.  *See also infra* ¶¶ 7, 12, 16.

2

a.      Bradford County assessment records contain entries indicating that taxes on unseated land on certain parcels owned by Messrs. Proctor and Hill were paid by "Proctor and Hill," indicating to the County Commissioners that Proctor and Hill claimed an ownership interest in these properties.  *See* List of Unseated Lands in the County of Bradford and the Taxes Assessed Thereon ("Bradford County Assessment Book"), Ex. 3, at 108-11, 118-21, 128-31, 139-41, 154-61, 164-67, 170-71, 174-77, 180-81, 184-87, 190-91, 194-97, 200-01, Ex. 3.

b.      Following enactment of the Act of March 30, 1897, P.L. 11, which required tax sale notices beginning January 1, 1898 to identify "the names of the owners if known," Bradford County assessment records started to include a notation as to the owner of unseated lands.  As a result, starting in 1898, properties still owned at the time by Messrs. Proctor and Hill, including properties included in the deed from Schrader Mining & Manufacturing Co., were identified with the penciled notation "P+H" or "P+Hill."  *See, e.g.,* Bradford County Assessment Book, Ex. 3, at 184-87, 190-91, 194-97, 200-01, 204-07, 214-17, 220-21, 224-27, 230-31.

c.      Township assessment records for LeRoy Township reflect assessments of unseated land in the names of Proctor & Hill.  Percheron Title Report, Ex. 1, at PGCP14174-91.

d.      The record in the Pennsylvania Supreme Court appeal in *Gamble & Green v. Central Pennsylvania Lumber Co.,* No. 345 January Term, 1907, contains testimony concerning the business practices of Thomas

E. Proctor and Elk Tanning Company, specifically with respect to 1893
taxes for a particular parcel in Lewis and Cogan House Townships,
Lycoming County, Pennsylvania:

> (1)    Elk Tanning Company and Union Tanning Company
> were both subsidiaries of United States Leather Company.  *See* John
> Moody, *The Truth About the Trusts: A Description & Analysis of the
> American Trust System,* Ex. 4, at 281 (1904); Thomas T. Tabor, III,
> *Sunset Along Susquehanna Waters,* Ex. 5, § 8.3 (1972), at 490.

> (2)    Elk Tanning Company tax agent S.A. Rote testified that
> his duties in Spring 1894 included the payment of taxes on unseated
> land for Elk Tanning Company and Thomas E. Proctor, and in that
> capacity contacted B.S. Bentley, Mr. Proctor's attorney, to get
> information about the taxes he was obligated to pay on Mr. Proctor's
> holdings.  Paper Book of Appellants, *Gamble v. Central Pa. Lumber
> Co.* ("*Gamble* Paper Book")*,* Ex. 6, Appendix at 178-81, 188-89.

> (2)    Mr. Rote further testified that he thereafter traveled to
> Williamsport, consulted with Asher Updegraff (an official in the
> Lycoming County Treasurer's office) on the Proctor/Elk Tanning
> tracts one-by-one, including their acreages and the taxes due on each,
> and paid the taxes. *Gamble* Paper Book, Ex. 6, Appendix at 182-85,
> 187-88.

> (3)    Mr. Rote further testified that, as part of its business
> activities, Elk Tanning Company compiled a "tax book" containing its

property tax information. For 1893, that was a bound volume; for later years, it was a collection of individual leaves later bound together. *Gamble* Paper Book, Ex. 6, Appendix at 182-84.

(4)   S.B. Bentley testified that he served as counsel for Thomas E. Proctor for 25 years prior to Mr. Proctor's death, looked after Mr. Proctor's unseated lands, and in that capacity reviewed assessments of unseated land "many, many times." *Gamble* Paper Book, Ex. 6, Appendix at 189-90, 194-95.

(5)   Mr. Bentley further testified that in his capacity as attorney for Mr. Proctor he received a request from Calvin H. McCauley, General Solicitor of the Elk Tanning Company, asking Mr. Bentley to prepare a statement of taxes. *Gamble* Paper Book, Ex. 6, Appendix at 189-91.

(5)   Mr. Bentley further testified that he therefore contacted Asher Updegraff, deputy to the Lycoming County Treasurer, and asked for a statement of the taxes for 1893 upon the lands of Thomas E. Proctor; that Mr. Updegraff prepared a statement of taxes; and that Mr. Bentley checked this statement to ensure that every tract was included. *Gamble* Paper Book, Ex. 6, Appendix at 192-93, 195-96, 198.

(6)   Records in the *Gamble* matter listed Thomas E. Proctor as the owner of unseated lands. *See Gamble* Paper Book, Ex. 6, Appendix at 200-01, 202, 204-05.

5

7.    The fact that correspondence notifying the Bradford County commissioners of interests in unseated land appears to have been lost or discarded, is not evidence that there were no such notifications provided by persons becoming owners of unseated land.  The prevailing practice was to record notified changes in ownership given to the County commissioners in assessment records, and to discard the correspondence reflecting such changes.  *See infra* ¶ 7.a-d; *see also supra* ¶ 6 *and infra* ¶¶ 10, 12, 16.

a.    By letter dated December 14, 1920, the Board of Game Commissioners (through John E. Potter, Examiner of Titles to the Board of Game Commissioners) sent a letter to the Commissioners of Bradford County, reporting that the Commonwealth of Pennsylvania had purchased certain tracts of land (including the Josiah Haines Warrant) from Central Pennsylvania Lumber Company ("CPLC"), and requesting that the properties be removed from the list of properties assessed for taxation.  L-2 Title Report, Ex. 2, at PGCP002883-84.

b.    By letter dated May 2, 1921, Attorney Leighton Campbell wrote to Mr. Potter, confirming that Mr. Campbell had "served Notice on the County Commissioners to remove the tracts from the list of properties assessed for taxation."  L-2 Title Report, Ex. 2, at PGCP002888.

c.    Thereafter, the 1921 assessment records indicated the owners of these tracts as the Commonwealth of Pennsylvania.  *See* List of Unseated Lands in the County of Bradford and the Taxes Assessed Thereon, Ex. 7, 148-51, 154-55.

     d.     There are no such notices of any sort contained in the office of the Recorder and Register of Deeds for Bradford County, in the Bradford County Historical Society, or in the Pennsylvania State Archives. *See* Declaration of Henry Farley, Ex. B; Declaration of Shirley Rockefeller, Ex. F; Affidavit of Jonathan Stayer, Ex. I.

     8.     By deed dated October 27, 1894 (the "Union Tanning Deed"), Thomas E. Proctor and his wife Emma H. Proctor, and Jonathan A. Hill and his wife Lucy M. Hill, conveyed certain interests with respect to the Josiah Haines Warrant to Union Tanning Co. *See* Percheron Title Report, Ex. 1, at PGCP013598, PGCP013632, PGCP013882-96; L-2 Title Report, Ex. 2, at PGCP002820-21.

     9.     The Union Tanning Deed provides that:

> And the same grantors herein Thomas E. Proctor and Jonathan A. Hill hereby expressly reserve, and save to themselves their heirs and assigns, all the minerals, coal, oil, gas, or petroleum found now or hereafter, on or under the surface of any or all of the lands described in each of the above mentioned parts or divisions, and conveyed by this Indenture, together with the right and privilege of ingress, egress, and regress upon said lands for the purpose of operating or developing, working, or removing the same.

*See* Percheron Title Report, Ex. 1, at PGCP013632, PGCP013894; *see also* L-2 Title Report, Ex. 2, at PGCP002821.

     10.     It was the routine practice of Union Tanning Company to notify county commissioners when it became the owner of interests in tracts of unseated

land, pursuant to the Act of March 28, 1806, P.L. 644.  Following this practice, after its purchase of the certain interests in the Josiah Haines Warrant, Union Tanning Company notified the Bradford County Commissioners of its interest in the tract, and Union Tanning Company paid taxes assessed against the Josiah Haines Warrant.  *See infra* ¶ 10.a-c; *see also supra* ¶¶ 6-7 *and infra* ¶¶ 12, 16.

     a.    Bradford County assessment records contain entries indicating that taxes on unseated land on certain parcels owned by Union Tanning Company were paid by "Union Tanning Co.," indicating to the County Commissioners that Union Tanning Company claimed an ownership interest in these properties.  *See* Bradford County Assessment Book, Ex. 3, at 144-51, 154-61, 164-67, 170-77, 180-87, 190-97, 200-07, 210-17, 220-21, 224-27, 230-31.

     b.    Following enactment of the Act of March 30, 1897, P.L. 11, which required tax sale notices beginning January 1, 1898 to identify "the names of the owners if known," Bradford County assessment records started to include a notation as to the owner of unseated lands.  As a result, starting in 1898, properties reported by Union Tanning Company were identified with the penciled notation "U.T.," "U.T.C." or "U.T.Co."  Bradford County Assessment Book, Ex. 3, at 184-97, 200-07, 210-17, 220-21, 224-27, 230-31, 236-39, 242-43.

     c.    It was the regular practice of United States Leather Company subsidiary companies to report their ownership interests in unseated lands pursuant to the Act of March 28, 1806, P.L. 644, and to pay taxes assessed

upon unseated lands.  For example, records in the *Gamble* matter listed Elk Tanning Company as the owner of unseated lands and reflected payment of taxes on behalf of Elk Tanning Company as assessed.  *See Gamble* Paper Book, Ex. 6, Appendix at 204-05, 213-22.

11.     There is no evidence that Union Tanning Company incorrectly reported that it owned the full fee simple interest in all estates associated with the Josiah Haines Warrant, including the subsurface estates.  *See* Declaration of Paul K. Stockman ("Stockman Dec."), Ex. J, ¶ 23.

12.     The severance of the subsurface interest, and Thomas E. Proctor's exception and reservation of subsurface interests, was reported to Lycoming County tax officials.  *See infra* ¶ 12.a-b.  *See also supra* ¶¶ 6-7 *and infra* ¶ 16.

  a.     In particular, the Commonwealth has stipulated that:

    For each of the relevant years, 1908 through 1926, during which the tax sales of the surface estates took place, the Lycoming County Tax Assessor's records for McIntyre Township (Exhibits H through Z inclusive) contained a written statement by the Tax Assessor acknowledging the reservation of all minerals in Proctor Deed 144/398 in the following general form:

      For a description of reserve of all minerals refer to Recorders office of Lycoming County in Deed Book 144 page 398.

  *See* Stipulation, *Moore v. Commonwealth,* Ex. 8, ¶ 19.

  b.     The Deed recorded in the Lycoming County deed records at volume 144, page 398, conveys certain Lycoming County properties from Thomas E. Proctor to Elk Tanning Company, but provides as follows:

> The said Thomas E. Proctor, however, expressly reserves from this grant, to himself, his heirs and assigns, all the natural gas, coal, coal oil, petroleum, marble and all minerals of every kind and character in, upon or under the said lands hereinbefore mentioned and described, and hereby conveyed, and every part thereof, or which may at any time hereafter be discovered in, upon or under said lands, or any part thereof . . . .

*Gamble* Paper Book, Ex. 6, Appendix at 168-72.

13.   By deed dated May 5, 1903 (the "Union-CPLC Deed"), the Union Tanning Company conveyed certain interests with respect to the Josiah Haines Warrant to CPLC.  *See* Percheron Title Report, Ex. 1, at PGCP013598, PGCP013631-32, PGCP013901-07; L-2 Title Report, Ex. 2, at PGCP002822-23.

14.   The Union-CPLC Deed provides as follows:

> Reserving and excepting, nonetheless, unto the party of the first part, its successors, and assigns, all the hemlock bark, rock oak bark and chestnut oak bark upon said lands, timber and trees, with the rights of ingress, egress and regress for the purpose of cutting, peeling, curing, piling, storing and removing said bark in the usual and ordinary manner at any and all times within the period of twenty-five (25) years from the date hereof . . . .

*See* Percheron Title Report, Ex. 1, at PGCP013632, PGCP013904; *see also* L-2 Title Report, Ex. 2, at PGCP002823.

15.   The Union-CPLC Deed further provides:

> This deed is made, executed, delivered, and accepted for the purpose of vesting in the party of the second part, its successors and assigns, all the right, title, interest and estate but no greater than is now held and owned by the Union Tanning Company of, in, and to the lands hereinbefore mentioned and the timber, trees and wood thereon, subject to all the exceptions, reservations,

> covenants, stipulations, agreements and conditions
> continued in the recent deeds hereinbefore recited, and
> subject also to all the exceptions, reservations, covenants,
> stipulations, agreements and conditions hereinbefore
> stated. . .

*See* Percheron Title Report, Ex. 1, PGCP013905; *see also id.* at PGCP013632; L-2

Title Report, Ex. 2, at PGCP002823.

16.    It was the routine practice of CPLC to notify county commissioners

when it became the owner of interests in tracts of unseated land, pursuant to the

Act of March 28, 1806, P.L. 644.  Following this practice, after its purchase of

certain interests in the Josiah Haines Warrant, CPLC notified the Bradford County

Commissioners of its interest in the tract, and paid taxes assessed against the Josiah

Haines Warrant.  *See infra* ¶¶ 16.a-e.  *See also supra* ¶¶ 6-7, 10, 12.

    a.    Bradford County assessment records contain entries indicating

that taxes on unseated land on certain parcels owned by CPLC were paid by

"C.P.L. Co." or "Central Penna. Lumber Co.," indicating to the County

Commissioners that CPLC claimed an ownership interest in these properties.

Bradford County Assessment Book, Ex. 3, at 236-39, 242-43, 248-51, 254-

55, 260-63, 266-67, 272-75, 278-79, 284-87, 290-91.

    b.    Starting in 1907, Bradford County assessment records included

notations indicating that the owner of interests in certain tracts, including the

Josiah Haines Warrant, was "C.P.L. Co."  Bradford County Assessment

Book, Ex. 3, at 284-87, 290-91 (including notation that "C.P.L. Co. means

Central Pennsylvania Lumber Co.").

11

c.      In 1907, several warrants were divided for taxation purposes, including the Peter Z. Lloyd, Collinson Reed, James Simons, Robert Hiltzhimer and Andrew Tybout warrants. Bradford County Assessment Book, Ex. 3, at 286-87, 290-91.  In 1907, under prevailing law at the time, a single warrant could be divided for tax purposes only if the owner had requested such a division.  *See Reading v. Finney,* 73 Pa. 467, 47 (Pa. 1873). Because it is presumed that the assessors acted in accordance with the law, the only reasonable inference is that CPLC had requested that the tracts be subdivided for tax purposes, and thus that CPLC had notified the County commissioners of their interests in tracts of unseated land in Bradford County.

d.      Court records reflect that CPLC monitored the assessment and payment of taxes on its land holdings:

(1)      The record in *In re Appeal F.H. & C.W. Goodyear and Central Pennsylvania Lumber Company, from Decision of County Commissioners,* in which CPLC appealed certain assessments, states that the parties admitted that certain lands in Potter County "were assessed in the name of . . . Central Pennsylvania Lumber Company." *See* Petition and Appeal, *In re Appeal F.H. & C.W. Goodyear and Central Pennsylvania Lumber Company,* No. 92, March Term, 1908, Ex. 9; Evidence, *In re Appeal F.H. & C.W. Goodyear and Central Pennsylvania Lumber Company,* No. 92, March Term, 1908, Ex. 10.

(2)      In *In the Matter of the Appeal of the Central Penna. Lumber Co. from the Decision of the Commissioners of Potter County for the Year 1908,* CPLC challenged the assessment of certain tracts of land in Potter County, taking the matter to the Pennsylvania Supreme Court.  *See Appeal of Central Pa. Lumber Co.,* 81 A. 204 (Pa. 1911); *Central Pa. Lumber Co.'s Appeal,* 37 Pa. C.C. 605, 20 Pa. D. 187 (C.C.P. Potter C'ty 1910).

(3)      The First Annual Report of the Central Pennsylvania Lumber Company for the Fiscal Year Ended December 31, 1903 reflects the payment of taxes on "land and timber," but not the payment of taxes on reserved subsurface interests.  First Annual Report, Ex. 31.

e.      In connection with the Commonwealth's 1937 purchase of certain lands located in Lewis Township, Lycoming County ("SGL 133"), the Commonwealth, as part of its title examination, obtained an affidavit from R.G. Brownell, the President of CPLC.  In that affidavit, Mr. Brownell states (i) that "in May, 1903, the Central Pennsylvania Lumber Company acquired from Elk Tanning Company a large tract of land in Lycoming County, Pennsylvania, including" the lands at issue in that transaction, which CPLC sold to third parties in 1924; and (ii) "that during the said period said Central Pennsylvania Lumber Company regularly and continuously paid all taxes assessed and payable upon said . . . tract . . . ."

13

Exhibit A to Complaint, *Pa. Game Comm'n v. Thomas E. Proctor Heirs Trust,* No. 493 MD 2017 (Pa. Commw.), Ex. 11, at 159-60.

17.     There is no evidence that CPLC incorrectly reported that it owned the full fee simple interest in all estates associated with the Josiah Haines Warrant, including the subsurface estates.  *See* Stockman Dec., Ex. J, ¶ 24.

18.     In 1905, tanbark was harvested from 60 acres of the Josiah Haines Warrant, yielding 300,900 net tons of bark, utilizing the services of Laquin Lumber Co. as bark jobber.  This yielded 189,500 feet of hemlock lumber, sent to Schrader Mill.  *See* CPLC Ledger Folio 135-1, Ex. 12; *see also* CPLC Plat for Josiah Haines Warrant, Ex. 13.

19.     In 1906, tanbark was harvested from 201 acres of the Josiah Haines Warrant, yielding 1,000,000 net tons of bark, utilizing the services of Laquin Lumber Co. as bark jobber.  *See* CPLC Ledger Folio 135-1, Ex. 12; *see also* CPLC Plat for Josiah Haines Warrant, Ex. 13.

20.     In 1907, tanbark was harvested from 149½ acres of the Josiah Haines Warrant, yielding 104,300 net tons of bark, utilizing the services of Laquin Lumber Co. as bark jobber.  *See* CPLC Ledger Folio 135-1, Ex. 12; *see also* CPLC Plat for Josiah Haines Warrant, Ex. 13.

21.     For 1907, the interests in the Josiah Haines Warrant attributed to CPLC were assessed by Bradford County as unseated land, and given a value of $2,460.  The following taxes were assessed against the Josiah Haines Warrant for 1907: county tax of $14.76, poor tax of $4.92, school tax of $8.61, road tax of

$9.84, and township tax of $6.15.  *See* Bradford County Assessment Book, Ex. 3, at 286-87; L-2 Title Report, Ex. 2, at PGCP002824.

22.    Taxes assessed against the interests in the Josiah Haines Warrant attributed to CPLC for 1907 were not paid prior to June 8, 1908.  *See* Bradford County Assessment Book, Ex. 3, at 286-87; L-2 Title Report, Ex. 2, at PGCP002824.

23.    On June 8, 1908, the interest in the Josiah Haines Warrant attributable to CPLC was sold by the W.F. Waters, the Treasurer of Bradford County at tax sale, to recover unpaid 1907 taxes. *See* L-2 Title Report, Ex. 2, at PGCP002824-27; Bradford County Assessment Book, Ex. 3, at 287.

24.    The only notice given to any persons claiming an interest in the Josiah Haines Warrant that the property was to be sold at Treasurer's Sale for unpaid taxes, prior to the June 8, 1908 tax sale, were advertisements in Bradford County newspapers that did not identify current or former owners.  *See Reporter Journal and Bradford Republican,* Apr. 9, 1908, Ex. 14; *Reporter Journal and Bradford Republican,* Apr. 16, 1908, Ex. 15; *Reporter Journal and Bradford Republican,* Apr. 23, 1908, Ex. 16; *Reporter Journal and Bradford Republican,* Apr. 30, 1908, Ex. 17; *The Bradford Argus,* Apr. 9, 1908, Ex. 18; *The Bradford Argus,* Apr. 16, 1908, Ex. 19; *The Bradford Argus,* Apr. 23, 1908, Ex. 20; *The Bradford Argus,* Apr. 30, 1908, Ex. 21; *The Bradford Argus,* May 7, 1908, Ex. 22; *The Bradford Argus,* May 14, 1908, Ex. 23; *The Bradford Argus,* May 21, 1908, Ex. 24; *The Bradford Argus,* May 28, 1908, Ex. 25; *The Bradford Argus,* June 4, 1908, Ex. 26.

25.     At the June 8, 1908 tax sale, the purchaser of the interest in the Josiah Haines Warrant attributed to CPLC was Calvin H. McCauley, Jr. ("McCauley"). L-2 Title Report, Ex. 2, at PGCP002823; Bradford County Assessment Book, Ex. 3, at 286-87.

26.     As of June 8, 1908, McCauley was an agent of CPLC.

a.      On April 29, 1903, CPLC prepared articles of incorporation that listed McCauley as "Treasurer."  Abstract of Title, Ex. 27, at PGPC002127; Articles of Incorporation, Ex. 28; Microfilm Copy of Articles of Incorporation, Ex. 29;

b.      On May 22, 1903, the Deputy Secretary of the Commonwealth provided notice of CPLC's incorporation to the Auditor General of Pennsylvania, listing McCauley as CPLC's Treasurer.  *See* Certificate of Incorporation, May 22, 1903, Ex. 30.

c.      The First Annual Report of the Central Pennsylvania Lumber Company for the Fiscal Year Ended December 31, 1903 lists "Calvin H. M'Cauley, Jr." as "Real Estate Agent."  First Annual Report, Ex. 31.

d.      On April 23, 1904, a letter was sent to "Mr. C. H. M'Cauley, Jr., R.E. Agt., C. P. L. Company, Williamsport, Pa.," in reply to a letter from McCauley.  Letter from F.W. Simmons to McCauley, Apr. 23, 1904, Ex. 32.

e.      On September 4, 1905, Mr. A.E. Borcher, Woods Foreman, sent a letter to "Mr. C.H. M'Cauley, Jr., Real Estate Agent, Williamsport, Penna." relating to the "amount of bark and timber removed from the

16

Alexander McMullen warrant by the C.P.L. Co. . . ."   Letter from A.E. Borcher to McCauley, Sept. 4, 1905, Ex. 33.

      f.     On December 19, 1905, Mr. W. E. Henderson, CPLC Land and Timber Superintendent, sent a letter to "Mr. C.H. McCauley, Jr., Real Estate Agent, Williamsport, Pa." on CPLC letterhead.  This letter bears a stamp indicating that it was received by the "Central Penn'a Lum. Co. Real Estate Dept." on December 20, 1905.  Letter from W.E. Henderson to McCauley, Dec. 19, 1905, Ex. 34.

      g.     The 1906 edition of *Boyd's Directory of Williamsport* lists McCauley as "real estate agt" at the same address as CPLC's business.  *See* BOYD'S DIRECTORY OF WILLIAMSPORT 1906 at 147, 320, Ex. 35.

      h.     The 1907 edition of *Boyd's Directory of Williamsport* lists McCauley as "attorney" at the same address as CPLC's business.  *See* BOYD'S DIRECTORY OF WILLIAMSPORT 1907 at 147, 316, Ex. 36.

      i.     The 1908 edition of *Boyd's Directory of Williamsport* lists McCauley as "asst gen solicitor" at the same address as CPLC's business. *See* BOYD'S DIRECTORY OF WILLIAMSPORT 1908 at 149, 323, Ex. 37.

      j.     On May 5, 1908, McCauley notarized the verification of F.W. Simmons, CPLC President, in *In the Matter of the Appeal of the Central Penna. Lumber Co. from the Decision of the Commissioners of Potter County for the Year 1908.  See* Petition and Appeal, *In re Appeal of Central Pa. Lumber Co.,* No. 179, June Term, 1908, Ex. 38.

k.      The 1909 edition of *Boyd's Directory of Williamsport* lists McCauley as "attorney" at the same address as CPLC's business (residing at 754 Grace Street).  *See* BOYD'S DIRECTORY OF WILLIAMSPORT 1909 at 149, 326, Ex. 39.

l.      On February 8, 1910, McCauley appeared at a hearing in the Potter County Court of Common Pleas as an attorney for CPLC in *In re Appeal F.H. & C.W. Goodyear and Central Pennsylvania Lumber Company, from Decision of County Commissioners.  See* Evidence, *In re Appeal F.H. & C.W. Goodyear and Central Pennsylvania Lumber Company,* No. 92, March Term, 1908, Ex. 10. *See also Goodyear's Appeal,* 37 Pa. C.C. 577 (C.C.P. Potter C'ty 1910) (noting McCauley's appearance for CPLC).

m.      On February 9, 1910, McCauley appeared at a hearing in the Potter County Court of Common Pleas as an attorney for CPLC in *In the Matter of the Appeal of the Central Penna. Lumber Co. from the Decision of the Commissioners of Potter County for the Year 1908.  See* Evidence, *In re Appeal of Central Pa. Lumber Co.,* No. 179, June Term, 1908, Ex. 40.  *See also Central Pa. Lumber Co.'s Appeal,* 37 Pa. C.C. 605, 20 Pa. D. 187 (C.C.P. Potter C'ty 1910) (noting McCauley's appearance for CPLC).

n.      On April 12, 1910, a census-taker for the decennial United States Census completed a schedule for Williamsport, Pennsylvania listing McCauley and his family at their residence at 754 Grace Street.  The census-taker listed McCauley's "trade or profession" as "Lawyer," and the "general

18

nature of industry, business, or establishment in which this person works" as "Lumber Co."  1910 Manuscript census schedule, Ex. 51.

      o.    On September 8, 1910, McCauley appeared as counsel for CPLC, as appellant, in the Pennsylvania Supreme Court, and submitted a writ of certiorari in *In the Matter of the Appeal of the Central Pennsylvania Lumber Company from the Decision of the Commissioners of Potter County for the Year 1908.  See* Certiorari, *In re Appeal of Central Pa. Lumber Co.,* No. 273, January Term, 1910, Ex. 41.  *See also Appeal of Central Pa. Lumber Co.,* 81 A. 204 (Pa. 1911) (noting McCauley's appearance for CPLC); Paper Book of Appellants, *In re Appeal of Central Pa. Lumber Co.,* No. 273, January Term, 1910, Ex. 42.

      o.    On November 2, 1914, McCauley, Jr. executed a notarized declaration stating the following:

> TO ALL TO WHOM THESE PRESENTS SHALL COME, I, CALVIN H. M'CAULEY, JR., of the City of Williamsport, County of Lycoming and State of Pennsylvania, send Greeting:

> WHEREAS, WILLIAM SIMONS, Treasurer of Elk County, by six certain deeds bearing date the eighth day of June in the year of our Lord one thousand nine hundred and fourteen (1914) . . . did for the consideration of Six Hundred and Eighty-five and 38/100 ($685.38) Dollars, grant and convey unto me, the said Calvin H. M'Cauley, Jr., and to my heirs and assigns, all those six (6) certain pieces, parcels or lots of land situate in Elk County, Pennsylvania . . . .

> NOW, KNOW YE, THAT I, CALVIN H. M'CAULEY, JR., do hereby acknowledge and declare that the said amount of Six Hundred and Eighty-five and 38/100 ($685.38) Dollars,

consideration money as aforesaid, was and is the proper money
of the Central Pennsylvania Lumber Company, a corporation
organized and existing under the laws of the State of
Pennsylvania, and that my name in the said deeds is used only
in trust for it, the said Central Pennsylvania Lumber Company,
its successors and assigns, and for no other uses, trusts or
purposes whatsoever, and that I, my heirs, executors, and
administrators, shall and will, at any time hereafter, upon the
request and at the proper costs and charges of the Central
Pennsylvania Lumber Company, its successors and assigns,
assign by good and sufficient assignment the said deeds for the
said premises, together with all my right, title and interest
therein, free from all incumbrances imposed thereon by me, in
such manner as it, the said Central Pennsylvania Lumber
Company, its successors and assigns, by its counsel, learned in
the law, shall be reasonably required. . . .

Declaration of Trust, Ex. 43.  *See also* Appendix, *Proctor v. Sagamore Big
Game Club,* No. 12715 (3d Cir.), Ex. 44, at 108a.

> (1)    There is no evidence in the record to suggest that such a
> declaration was prepared solely for properties in Elk County sold in
> 1914.  *See* Stockman Dec., Ex. J, ¶ 25.

> (2)    The only reasonable inference is that McCauley prepared
> similar declarations for each of the CPLC properties he purchased at
> tax sale.

> p.    On March 27, 1916, a letter was sent by CPLC, on CPLC
> letterhead, to Mr. L.M. Otto, Jr., Assistant Engineer, Building.  The
> engraved letterhead indicates that the letter is from "Calvin H. McCauley,
> Jr., Assistant General Solicitor," and is signed by Calvin H. McCauley, Jr.,

20

"Assistant General Solicitor."  Letter from McCauley to L.M. Otto, Jr., Mar. 27, 1916, Ex. 45.

q.     On May 15, 1916, a letter was sent by CPLC, on CPLC letterhead, to Mr. L.M. Otto, Jr., Building, asking Mr. Otto to "fix our map books" according to a property description contained in the letter.  The engraved letterhead indicates that the letter is from "Calvin H. McCauley, Jr., Assistant General Solicitor," and is signed by Calvin H. McCauley, Jr., "Assistant General Solicitor."  Letter from McCauley to L.M. Otto, Jr., May 15, 1916, Ex. 46.

r.     On April 4, 1917, the *Williamsport Sun-Gazette* reported that CPLC had, at its regular annual meeting on April 3, 1917, elected McCauley as a director and as "junior assistant general solicitor."  *Williamsport Sun-Gazette,* Apr. 4, 1917, Ex. 47.

s.     On May 21, 1937, the Commonwealth purchased the lands comprising SGL 133 that were formerly owned by CPLC.  Certain of the parcels comprising the SGL 133 purchase were sold to McCauley by the Treasurer of Lycoming County on June 25, 1908, and were subsequently quitclaimed by McCauley and his wife to CPLC.  The PGC's title compilation for SGL 133 includes "Notes of Examination" prepared by E. Bruce Taylor, "Abstractor, Board of Game Commissioners."  The "Notes of Examination" state that McCauley, in purchasing properties at the 1908 tax sale, "apparently was acting for the Central Pennsylvania Lumber

Company." Exhibit A to Complaint, *Pa. Game Comm'n v. Thomas E. Proctor Heirs Trust,* No. 493 MD 2017 (Pa. Commw.), Ex. 11, at 80, 150.

       t.    On September 6, 1957, a Stipulation was executed by counsel for the Plaintiffs and Defendants in *Thomas E. Proctor, 2nd, et al. v. The Sagamore Big Game Club, et al.,* Civil Action No. 432-Erie (W.D. Pa.) (the "*Sagamore* Case"), stipulating that "Calvin H. McCauley, Jr., was continuously during the years 1912 to 1916, both inclusive, a member of the Board of Directors of Central Pennsylvania Lumber Company, its Assistant General Counsel and its Real Estate Agent . . . ." Stipulation, Ex. 48.

27.    Throughout the period from 1904-1916, Calvin H. McCauley, Jr. purchased, at tax sales, CPLC's interests in more than 100 properties. *See, e.g.,* Percheron Title Report, Ex. 1, at PGCP013917-20 (including McCauley deed quitclaiming 45 Bradford County tracts to CPLC); Abstract of Title, Ex. 27, at PGPC002134-66 (including McCauley deed quitclaiming 60 Sullivan County tracts to CPLC); Exhibit A to Complaint, *Pa. Game Comm'n v. Thomas E. Proctor Heirs Trust,* No. 493 MD 2017 (Pa. Commw.), Ex. 11, at 78-80 (including McCauley deed quitclaiming 56 Lycoming County tracts to CPLC); Declaration of Trust, Ex. 43 (relating to 6 tracts in Elk County).

28.    There is no evidence in the record that Calvin H. McCauley, Jr. renounced his status as an agent of CPLC prior to June 8, 1908. *See* Stockman Dec., Ex. J, ¶ 26; *see also supra* ¶ 26.

29.    As of June 8, 1908, CPLC knew that "A tax title cannot be sustained where it appears by the books of the Treasurer and by other records that an agent

of the owners of unseated land bought in the land at tax sale . . . and that before the majority of the deed paid the taxes, and that these had been accepted by the Treasurer." *Gamble* Paper Book, Ex. 6, Argument at 55 (quoting *Knupp v. Syms,* 50 A. 210 (Pa. 1901)).

30.    Calvin H. McCauley did not record a treasurer's deed conveying to him the Josiah Haines Warrant. *See* Percheron Title Report, Ex. 1, PGCP013631.

31.    By deed dated December 6, 1910, Calvin H. McCauley, Jr. and Florence M. McCauley, in consideration of a payment of $1.00, "grant[ed], remise[d], release[d] and quit-claim[ed]" to CPLC "[a]ll their right, title, interest and estate of, in, and to" forty-five parcels, including the Josiah Haines Warrant. *See* Percheron Title Report, Ex. 1, at PGCP013917-20; *see also id.* at PGCP013631; L-2 Title Report, Ex. 2, at PGCP002830-31.

32.    From June 6, 1908 through December 6, 1910, CPLC acted as though it retained ownership of the Josiah Haines Warrant.

    a.    Bradford County assessment records contain entries indicating that 1908, 1909 and 1910 taxes on parcels purchased by McCauley at the 1908 tax sale, including the Josiah Haines Warrant, were paid by "C.P.L. Co." or "Central Pa. Lumber Co."  Bradford County Assessment Book, Ex. 3, at 296-301, 304-05; List of Unseated Lands in the County of Bradford and the Taxes Assessed Thereon, Ex. 7, at 2-5, 8-9, 14-17, 20-21.  *See also* Exhibit A to Complaint, *Pa. Game Comm'n v. Thomas E. Proctor Heirs Trust,* No. 493 MD 2017 (Pa. Commw.), Ex. 11, at 159-60 (affidavit of CPLC President R.G. Brownell, attesting "that during the said period said

Central Pennsylvania Lumber Company regularly and continuously paid all taxes assessed and payable upon said . . . tract").

     b.    The R.G. Brownell affidavit, submitted in connection with the Commonwealth's 1937 purchase of the properties comprising SGL 133, stated (i) that "in May, 1903, the Central Pennsylvania Lumber Company acquired from Elk Tanning Company a large tract of land in Lycoming County, Pennsylvania, including" the lands at issue in that transaction, which CPLC sold to third parties in 1924; and (ii) "that during said period said Central Pennsylvania Lumber Company had exclusive possession of said . . . tract and its title thereto and possession thereof was never questioned, attacked or threatened by any one . . . ."  Exhibit A to Complaint, *Pa. Game Comm'n v. Thomas E. Proctor Heirs Trust,* No. 493 MD 2017 (Pa. Commw.), Ex. 11, at 159-60.

33.    By lease dated April 21, 1916, Central Pennsylvania Lumber Company leased to the Commonwealth of Pennsylvania certain tracts of land, including the Josiah Haines Warrant, for the purpose of establishing a state game reserve.  *See* L-2 Title Report, Ex. 2, at PGCP002845-46.

34.    On or about March 24, 1920, CPLC and the Commonwealth of Pennsylvania entered into a contract for sale of certain properties, including the Josiah Haines Warrant, from CPLC to the Commonwealth.  *See* L-2 Title Report, Ex. 2, at PGCP002842-44.

35.    The agreement for sale from CPLC to the Commonwealth provided in part as follows:

> RESERVING AND SAVING unto Thomas E. Proctor and Jonathan A. Hill, their heirs and assigns, all the minerals, coal, oil gas or petroleum found now or hereafter on, or under the surface of any or all of the lands described in each of the above mentioned parts or divisions; together with the right and privilege of ingress, egress and regress upon said lands for the purpose of prospecting for, or developing, working or removing the same, as fully as the said minerals and rights were excepted and reserved in deed dated Oct. 27, 1894 from Thomas E. Proctor et al to the Union Tanning Company, recorded in the office for recording deeds in Bradford County in deed book Vol. 205, page 436.

> The deed would be subject to all the reservations, exceptions, covenants and stipulations contained in said recited deed from Thos. E. Proctor, et al to the Union Tanning Company, and in deed from the Union Tanning Company to the Central Pennsylvania Lumber Company dated May 25, 1903, recorded in the office for recording deeds in Bradford County in Deed Book 251, page 520, on June 11, 1913.

*See* L-2 Title Report, Ex. 2, at PGCP002843-44.

36.     CPLC's Board of Directors, by resolution dated April 6, 1920, approved the sale of property to the Commonwealth, including the Josiah Haines Warrant, and the execution of a special warranty deed for the subject properties containing "a complete description of said lands together with all exceptions, reservations, covenants and stipulations to be embodied in said deed as follows," including the following reservation:

> RESERVING AND SAVING unto Thomas E. Proctor and Jonathan A. Hill, their heirs and assigns, all the minerals, coal, oil gas or petroleum found now or hereafter on, or under the surface of any or all of the lands described in each of the above mentioned parts or

> divisions; together with the right and privilege of ingress, egress and regress upon said lands for the purpose of prospecting for, or developing, working or removing the same, as fully as the said minerals and rights were excepted and reserved in deed dated Oct. 27th., 1894 from Thomas E. Proctor et al to the Union Tanning Company, recorded in the office for recording deeds in Bradford County in deed book Vol. 205, page 436.
>
> Also subject to all the reservations, exceptions, covenants and stipulations contained in said recited deed from Thomas E. Proctor et al to the Union Tanning Company, and in deed from the Union Tanning Company to the Central Pennsylvania Lumber Company, above recited, dated May 25, 1903, of record as aforesaid in deed book Vol. 251 page 520.

*See* L-2 Title Report, Ex. 2, at PGCP002823.

37.    By deed dated December 14, 1920 (the "CPLC-PGC Deed"), CPLC conveyed to the Commonwealth 7,492.9 acres of land, including the Josiah Haines Warrant.  *See* Percheron Title Report, Ex. 1, at PGCP013922-27; *see also id.* at PGCP013631; L-2 Title Report, Ex. 2, at PGCP002873-82.

38.    The CPLC-PGC Deed provided as follows:

> This conveyance is made subject to all the minerals, coal, oil, gas or petroleum found now or hereafter on, or under the surface of any or all of the lands above described in each of the above mentioned parts or divisions; together with the right and privilege o[f] ingress, egress and regress upon said lands for the purpose of prospecting for, or developing, working or removing the same, as fully as the said minerals and rights were excepted and reserved in deed dated Oct. 27, 1894 from Thomas E. Proctor et al to the Union Tanning Company, recorded in the office for recording deeds in Bradford County in deed book Vol. 205, page 436.

26

> Also subject to all the reservations, exceptions,
> covenants and stipulations contained in said recited deed
> from Thomas E. Proctor et al to the Union Tanning
> Company, and in deed from the Union Tanning Company
> to the Central Pennsylvania Lumber Company, above
> recited, dated May 25, 1903, of record as aforesaid in
> deed book Vol. 251 page 520.

*See* Percheron Title Report, Ex. 1, PGCP013922-27; *see also id.* at PGCP013631;

L-2 Title Report, Ex. 2, at PGCP002881.

39.     In connection with the December 14, 1920 purchase of properties

from CPLC, including the Josiah Haines Warrant, the Board of Game

Commissioners retained John E. Potter to examine the titles of the properties in

advance of the conveyance.  *See* L-2 Title Report, Ex. 2, at PGCP002842-47;

Letter from Potter to Seth E. Gordon, Jan. 11, 1921, Ex. 49 (pages 117-118 of the

L-2 Title Report, which were withheld by Plaintiff in their production of the

document in discovery).

40.     By letter dated November 22, 1920, Mr. Potter sent a letter to CPLC

reporting on his title examination.  After reciting the exceptions and reservations

quoted in paragraph 34 above, as set forth in the agreement for sale, Mr. Potter

stated that "[i]n the preparation of this report, therefore, no references are made to

any exceptions, reservations or adverse conveyances which are included in the

above exceptions contained in the agreement for sale."  Mr. Potter signed his letter

as "Examiner of Titles to the Board of Game Commissioners."  L-2 Title Report,

Ex. 2, at PGCP002843-44.

41.     Mr. Potter, in his November 22, 1920 letter, referred to a May 27,

1867 contract with Towanda Tanning Company and stated that "[s]atisfactory

evidence must be furnished that all rights and privileges under this contract have been long since abandoned."  L-2 Title Report, Ex. 2, at PGCP002845.

42.     W.E. Rice, CPLC's General Solicitor, wrote in response to Mr. Potter's November 22, 1920 letter by letter dated December 8, 1920.  In response to Mr. Potter's inquiry about the contract with Towanda Tanning Company, Mr. Rice wrote that the contract, together with all other property of Towanda Tanning Company, was conveyed to Thomas E. Proctor.  Mr. Rice did not mention the 1908 tax sale to McCauley in his letter.  L-2 Title Report, Ex. 2, at PGCP002849-50.

43.     On January 11, 1921, Mr. Potter wrote to Seth E. Gordon, Secretary of the Board of Game Commissioners, stating that "I hereby certify that I have made a careful examination of the record title of the Central Pennsylvania Lumber Company to a certain tract of land," including the Josiah Haines Warrant, "and find the same to be now vested in the said Central Pennsylvania Lumber Company in fee simple, free and clear of all encumbrances of record, except the reservations expressly set forth in the Agreement for sale in this case."  Letter from Potter to Seth E. Gordon, Jan. 11, 1921, Ex. 49.

44.     There is no evidence that Thomas E. Proctor or any of his heirs sold an interest in the Josiah Haines Warrant to the Commonwealth of Pennsylvania.  *See* Declaration of Charles Rice Kendall ("Kendall Dec."), Ex. F, ¶ 6; Stockman Dec., Ex. J, ¶ 27.

45.     By deed dated December 30, 1924, Elk Tanning Company, as successor-by-merger to Union Tanning Company, quitclaimed all of its rights in

the Josiah Haines warrant to CPLC, as reserved in the Union-CPLC Deed.  *See*

Percheron Title Report, Ex. 1, PGCP013929-30; *see also id.* at PGCP013631.

46.     The Thomas E. Proctor Heirs Trust and Margaret O.F. Proctor Trust

are the heirs of Thomas E. Proctor.  *See* Kendall Dec., Ex. F, ¶ 7.

47.     The heirs of Thomas E. Proctor have been actively leasing the Josiah

Haines Warrant for oil and gas development since at least 1980.  *See* Oil and Gas

Lease, Jan. 1, 1980, Ex. 50.

Dated: April 17, 2018                    Respectfully submitted,

                                         */s/ Paul K. Stockman*
                                         Paul K. Stockman (admitted *pro hac vice*)
                                              Pa. ID No. 66951
                                         KAZMAREK MOWREY CLOUD LASETER LLP
                                         One PPG Place, Suite 3100
                                         Pittsburgh, PA 15222
                                         Telephone: (404) 333-0572
                                         Fax: (404) 812-0845
                                         pstockman@kmcllaw.com

                                         Laura A. Lange
                                              Pa. ID No. 310733
                                         MCGUIREWOODS LLP
                                         260 Forbes Avenue, Suite 1800
                                         Pittsburgh, PA 15222
                                         Telephone: (412) 667-6000
                                         Fax: (412) 667-6050
                                         llange@mcguirewoods.com

## CERTIFICATE OF SERVICE:

I hereby certify that a true and correct copy of the foregoing was electronically filed with the Clerk of Court today via the Court's CM/ECF, and that, pursuant to Local Civil Rule 5.7, participants in the case who are registered ECF users will be served by the ECF system. Any persons so designated on the ECF receipt will be served by first class mail.

Dated:  April 17, 2018                    _/s/ *Paul K. Stockman*_____