# Exhibit 50

Oil and Gas Lease between C.G. Rice *et al.* and Exxon Corporation, Jan. 1, 1980

BOOK 994 PAGE 69
RECORDER'S OFFICE
BOOK 48 PAGE 1022

RECORDED
~0366
JUN 3 1981
REGISTER & RECORDER
Per ALBERT O. REMSNYDER

OCT 1 1 14 PM '81
FILED
SULLIVAN CTY.
mc·1|

BUR mc ⟩ 772302-001

Return To: EXXON COMPANY, U.S.A.
708 Boulevard Towers
1018 Kanawha Blvd., E.
Charleston, W. Va. 25301

052-0104
Producers 88 — Revised
Pennsylvania

OIL AND GAS LEASE
FIVE
(TEN YEAR PAID UP)

THIS AGREEMENT, made and entered into this __1st__ day of __January__, 1980, by and between

CHARLES G. RICE and LILY B. RICE, his wife; CHARLES G. RICE, HENRY O. PHIPPEN, JR. and FREDERICK M. PRYOR, Trustees under the will of Neil W. Rice; EMERY VAN D. RICE, single; NEIL R. AYER and HELEN H. AYER, his wife; RUTH Z. AYER DOUGHER, single; DAVID AYER and CHINA O. AYER, his wife; HILDA R. CURTIS and HARRY L. CURTIS, her husband; ETHAN AYER, single; ESTHER B. PROCTOR, single; MARY P. CASE, single; ANNE AYER MacNICHOL and EDWARD F. MacNICHOL, JR., her husband; ANNE M. H. PROCTOR, single; SETH RICE, single; FIRST NATIONAL BANK OF BOSTON and JOHN J. SLOCUM, JR., Trustees under the will of Margaret O. F. Proctor; GERALDINE M. CRAIG and CYRIL R. CRAIG, her husband; and ALVIN S. HOCHBERG, GEORGE M. NAYLOR and BOSTON SAFE DEPOSIT & TRUST COMPANY, Trustees under the will of Thomas E. Proctor, Jr.
BOOK 95 PAGE 1019
whose address for purposes of this lease as provided in paragraph 19 hereof is
c/o Mr. Alvin S. Hochberg, at Broude & Hochberg, 75 Federal Street, Boston, MA 02110
and/or c/o Mr. Charles G. Rice at Room 934, 50 Congress Street, Boston, MA 02109

TR 0101

BOOK 994 PAGE 70

_____, whose address is _____, hereinafter called lessor (whether one or more), and **EXXON CORPORATION** whose address is **P. O. Box 2305, Houston, TX 77001**, hereinafter called lessee; WITNESSETH THAT:

1. Lessor, for and in consideration of One Dollar and other valuable consideration DOLLARS ($1.00 & ovc) in hand paid, receipt of which is hereby acknowledged, and of the agreements of lessee hereinafter set forth, hereby grants, demises, leases and lets exclusively unto said lessee the lands hereinafter described for the purpose of prospecting, exploring by geophysical and other methods, drilling, mining, operating for and producing oil or gas, or both, including, but not as a limitation, casinghead gas, casinghead gasoline, gas-condensate (distillate) and any substance, whether similar or dissimilar, produced in a gaseous state or contained in such oil or gas, together with the right to construct and maintain pipelines, telephone and electric lines, tanks, powers, ponds, roadways, plants, equipment, and structures thereon to produce, save, store and take care of said oil and gas, and the exclusive right to inject air, gas, water, brine and other fluids from any source into the subsurface strata and any and all other rights and privileges necessary, incident to, or convenient for the economical operation of said land, alone or conjointly with neighboring land, for the production, saving and taking care of oil and gas and the injection of air, gas, water, brine, and other fluids into the subsurface strata, said lands being all lands in the State of Pennsylvania, the right, title and mineral interest to which is owned or claimed by any undersigned Lessor as an heir of that certain Thomas E. Proctor being the same Thomas E. Proctor who died December 7, 1894, specifically including but not limited to lands owned or claimed by lessor as heirs of Thomas E. Proctor in the Counties of Bradford, Sullivan, Lycoming, Clearfield, Elk, Cameron and Jefferson, and partially described in the following deeds:

A. Deed dated October 27, 1894, from Thomas E. Proctor, et ux, et al, to Union Tanning Company, recorded in Book 205 at Page 436 in the Bradford County Records, and in Book 24 at Page 59 of the Sullivan County Records.
B. Deed dated October 1, 1894, from Thomas E. Proctor, et ux, to Elk Tanning Company, recorded in Book 88 at Page 8 of the Clearfield County Records, and in Book 43 at Page 252 of the Elk County Records.
C. Deed dated October 2, 1894, from Thomas E. Proctor, et ux, to Elk Tanning Company, recorded in Book 144 at Page 398 of the Lycoming County Records, and in Book 24 at Page 72 of the Sullivan County Records.
D. Deed dated October 30, 1894, from Thomas E. Proctor, et ux, to Union Tanning Company, recorded in Book 24 at Page 53 of the Sullivan County Records.
E. Deed dated May 16, 1898, from Emma H. Proctor, et al, to Jonathan A. Hill, recorded in Book 223 at Page 58 of the Bradford County Records.

It being the purpose and intent of lessor to lease, and lessor does hereby lease, all lands in the State of Pennsylvania owned or claimed by lessor as heirs of Thomas E. Proctor, whether said lands are specifically above described or not.  BOOK -43 PAGE 1023

TRO 102

BOOK 943 PAGE 1024

_____ said lands being situated in the Borough/Township of _____, County of _____, State of Pennsylvania, and being bounded now or formerly substantially as follows, to-wit:

On the North by lands of _____
On the East by lands of _____
On the South by lands of _____   BOOK 991 PAGE 71
On the West by lands of _____

_____
_____
_____
_____
_____
_____
_____
_____
_____

being the same land conveyed to lessor by deed from _____ dated _____
recorded in Book _____ at Page _____, and by deed from _____
dated _____ recorded in Book _____ at Page _____, all in the Recorder's Office of said County and State, it being the purpose and intent of lessor to lease, and lessor does hereby lease, all strips or parcels of land owned by lessor which adjoin the lands above described.

2. Subject to the other provisions herein contained, this lease shall remain in force for a term of **five** years from this date (herein called "primary term") and as long thereafter as oil and gas, or either of them, is produced from the above described land or drilling operations are continuously prosecuted as hereinafter provided. "Drilling operations" includes operations for the drilling of a new well, the reworking, deepening or plugging back of a well or hole or other operations conducted in an effort to obtain or re-establish production of oil or gas; and drilling operations shall be considered to be "continuously prosecuted" if not more than 60 days shall elapse between the completion or abandonment of one well or hole and the commencement of drilling operations on another well or hole. If, at the expiration of the primary term of this lease, oil or gas is not being produced from the above described land but lessee is then engaged in drilling operations, this lease shall continue in force so long as drilling operations are continuously prosecuted; and if production of oil or gas results from any such drilling operations, this lease shall continue in force so long as oil or gas shall be produced. If, after the expiration of the primary term of this lease, production from the above described land should cease, this lease shall not terminate if lessee is then prosecuting drilling operations, or within 60 days after each such cessation of production commences drilling operations, and this lease shall remain in force so long as such operations are continuously prosecuted, and if production results therefrom, then as long thereafter as oil or gas is produced from the above described land.

3. The royalties to be paid by lessee are: (a) on oil, one-eighth of that produced and saved from said land, the same to be delivered at the wells or to the credit of lessor into the pipelines to which the wells may be connected; lessee may from time to time purchase any royalty oil in its possession, paying the market price therefor prevailing for the field where produced on the date of purchase, and lessee may sell any royalty oil in its possession and pay lessor the price received by lessee for such oil computed at the well; (b) on gas, including casinghead gas or other gaseous substance, produced from said land and sold or used off the premises or for the extraction of gasoline or other product therefrom, the market value at the well of one-eighth of the gas so sold or used, provided that on gas sold by lessee the market value shall not exceed the amount received by lessee for such gas computed at the mouth of the well, and on gas sold at the well the royalty shall be one-eighth of the amount realized by lessee from such sale. If the price of any mineral or substance upon which royalty is payable hereunder is regulated by any governmental agency, the market value or market price of such mineral or substance for the purpose of computing royalty hereunder shall not be in excess of the price which lessee may receive and retain.

4. If a well capable of producing gas in paying quantities located on the leased premises (or on acreage pooled or consolidated with all or a portion of the leased premises into a unit for the drilling or operation of such well) is at any time shut-in and no gas or gas-condensate therefrom is sold or used off the premises or for the manufacture of gasoline or other products, nevertheless such shut-in well shall be deemed to be a

BOOK 95 PAGE 1021

TRO 103

BOOK 994 PAGE 72    BOOK 95? PAGE 1022

well on the leased premises producing gas in paying quantities and this lease will continue in force during all of the time or times while such well is so shut-in, whether before or after the expiration of the primary term hereof. Lessee shall use reasonable diligence to market gas or gas-condensate capable of being produced from such shut-in well but shall be under no obligation to market such products under terms, conditions or circumstances which, in lessee's judgment exercised in good faith, are unsatisfactory. Lessee shall be obligated to pay or tender to lessor within 45 days after the expiration of each year in length (annual period) during which such well is so shut-in, as royalty, the sum of $640.00 provided that, if gas or gas-condensate from such well is sold or used as aforesaid before the end of any such annual period, or if, at the end of any such annual period, this lease is being maintained in force and effect otherwise than by reason of such shut-in well, lessee shall not be obligated to pay or tender, for that particular annual period, said sum of money. Such payment shall be deemed a royalty under all provisions of this lease. Royalty ownership as of the last day of each such annual period as shown by lessee's records shall govern the determination of the party or parties entitled to receive such payment. Such payment may be made or tendered to lessor or to lessor's credit in the _____SEE PARAGRAPH 19_____ Bank at _____ (which bank and its successors are royalty owner or owner's agent, and shall continue as depository for all such sums which lessee may pay hereunder regardless of changes in ownership of royalties). Lessee's failure to pay or tender or to properly or timely pay or tender any such sum as royalty shall render lessee liable for the amount due but it shall not operate to terminate this lease. The payment or tender of royalty under this paragraph on any well which is not being produced, hereinafter referred to as "shut-in-royalty", may be made by check or draft of lessee. mailed or delivered to the parties entitled thereto or to said bank on or before the date of payment.

5. The down cash payment is consideration for this lease according to its terms and shall not be allocated as rental for a period. Lessee may at any time, and from time to time, execute and deliver to lessor, or to the depository bank, or file for record a release or releases of this lease as to any part or all of said land or of any mineral or subsurface interval or any depths thereunder and thereby be relieved of all obligations as to the released land, mineral, horizon, zone or formation. If this lease is released as to all minerals, horizons, zones and formations under a portion of said land, the shut-in royalty and other payments computed in accordance therewith shall thereupon be reduced in the proportion that the acreage released bears to the acreage which was covered by this lease immediately prior to such release.

6. The respective amounts of all royalties and other payments hereunder are to be calculated in proportion to lessor's interest in the rights with respect to which each such payment is made; that is, in case lessor owns a less interest in any of the rights which are the subject of this lease than the full and entire interest therein, then the payments in respect to such rights which are herein provided for shall be paid lessor only in the proportion which lessor's interest in such rights bears to the full and entire interest in such rights.

7. If the leased premises are now, or shall hereafter be, owned in severalty or in separate tracts, the premises nevertheless shall be developed and operated as one lease, and all royalties and payments provided for hereunder shall be treated as an entirety and shall be divided among, and paid to, such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage.

8. If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the express and implied covenants hereof shall extend to the successors and assigns of the parties; and in the event of an assignment by lessee, lessee shall be relieved and discharged as to the leasehold rights so assigned from any liability to lessor thereafter accruing upon any of the covenants or conditions of this lease, either express or implied. No change in the ownership of said land or any interest therein or pertaining thereto, however accomplished, shall operate to enlarge the obligations or diminish the rights of lessee or require separate measuring or installation of separate tanks by lessee. Notwithstanding any actual or constructive knowledge of or notice to lessee, no change in ownership, whether by reason of death, conveyance or any other matter, shall be binding on lessee (except at lessee's option in any particular case) until 90 days after lessee has been furnished written notice thereof, and the supporting information hereinafter referred to, by the party claiming as a result of such change in ownership. Such notice shall be supported by original or certified copies of all documents and other instruments or proceedings necessary in lessee's opinion to establish the ownership of claiming party.

9. Lessee is granted the right, from time to time while this lease is in force, to pool into a separate drilling or production unit or units all or any part of the land covered by this lease with other land, lease or leases, or interests therein (whether such other interests are pooled by a voluntary agreement on the part of the owners thereof or by the exercise of a right to pool by the lessees thereof), when in lessee's judgment it is necessary or advisable in order to promote conservation, to properly develop or operate the land and interests to be pooled, or to obtain a multiple production allowable from any governmental agency having control over such matters. Any pooling hereunder may cover all oil and gas, or any one or more of the substances covered by this lease, and may cover one or more or all zones or formations underlying all or any portion or portions of the leased premises. Any unit formed by such pooling shall be of abutting or cornering tracts and shall not exceed 640 acres (plus a tolerance of 10%) for gas or gas-condensate and shall not exceed 80 acres (plus a tolerance of 10%) for any other substance covered by this lease; provided that if any governmental regulation or order shall prescribe a spacing pattern for the development of a field wherein the above described land, or a portion thereof, is located, or allocate a producing allowable based on acreage per well, then any such unit may embrace as much additional acreage as may be so prescribed or as may be permitted in such allocation of allowable. The area pooled and the zones or formations and substances pooled shall be set forth by lessee in a "declaration of pooling" filed for record in the county or counties in which the pooled area is located which declaration of pooling shall constitute a supplement to this lease. The unit shall become effective as provided in said declaration, or if said declaration makes no such provision, it shall become effective upon the date it is filed for record. In lieu of the royalties elsewhere herein specified, except shut-in gas well royalties, lessor shall receive on production from an area so pooled only such portion of the royalties which, in the absence of such pooling, would be payable hereunder to lessor on production from the land covered by this lease which is placed in the pooled area as the amount of the surface acreage in the land covered by this lease which is placed in the pooled area bears to the amount of the surface acreage of the entire pooled area. Nothing herein contained shall authorize or effect any transfer of any title to any leasehold, royalty or other interest pooled pursuant hereto. The commencement of a well, the conduct of other drilling operations, the completion of a well or of a dry hole, or the operation of a producing well on the pooled area, shall be considered for all purposes (except for royalty purposes) the same as if said well were located on, or such drilling operations were conducted upon, the lands covered by this lease whether or not such well is located upon, or such drilling operations are conducted upon, said lands. Lessee may terminate any pooling effected pursuant hereto at any time the pooled unit is not producing and no drilling operations are being conducted thereon by executing and filing of record in the county or counties in which the pooled area is located a written declaration of the termination of such pooling, provided that the pooling of all interests not covered by this lease which comprises a part of such pooled unit be also terminated in some effective manner.

10. Lessee shall have the right to use, free of cost, oil, gas and water produced on said land for its operations thereon except water from wells of lessor. Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing. No part of the surface of the leased premises shall, without the written consent of lessee, be let, granted or licensed by lessor to any other party for the location, construction or maintenance of structures, tanks, pits, reservoirs, equipment, or machinery to be used for the purpose of exploring, developing, or operating adjacent lands for oil, gas or other minerals.

11. Lessee shall bury below plow depth its pipe lines on the leased premises when requested by a lessor owning an interest in the surface. No well shall be drilled nearer than 200 feet of any house or barn now on said premises without the written consent of the owner of the surface on which such house or barn is located. Lessee shall pay for damages to growing crops caused by its operations on said lands.

12. ~~Lessor hereby warrants and agrees to defend the title to the lands herein described, but if the interest of lessor covered by this lease is expressly stated to be less than the entire fee or mineral estate, lessor's warranty shall be limited to the interest so stated;~~ Lessee may purchase or lease the rights of any party claiming any interest in said land and exercise such rights as may be obtained thereby but lessee shall not suffer any forfeiture nor incur any liability to lessor by reason thereof. Lessee shall have the right at any time to pay for lessor, any mortgage, taxes or other lien on said lands, in the event of default of payment by lessor, and be subrogated to the rights of the holder thereof, and any such payments made by lessee for lessor may be deducted from any amounts of money which may become due lessor/under this lease.
                                                                                                                                                as royalty
13. All express provisions and implied covenants of this lease shall be subject to all applicable laws, governmental orders, rules and regulations. This lease shall not be terminated in whole or in part, nor lessee held liable in damages, because of a temporary cessation of production or of drilling operations due to breakdown of equipment or due to the repairing of a well or wells, or because of failure to comply with any of the express provisions or implied covenants of this lease if such failure is the result of the exercise of governmental authority, war, armed hostilities, lack of market, act of God, strike, civil disturbance, fire, explosion, flood, or any other cause reasonably beyond the control of lessee.

BOOK 743 PAGE 1025

BOOK 743 PAGE 1026

TR0104

BOOK 994 PAGE 73

14. This lease and all provisions thereof shall be applicable to and binding upon the parties and their respective heirs, devisees, personal representatives, successors and assigns. Reference herein to lessor and lessee shall include reference to their respective heirs, devisees, personal representatives, successors and assigns. Should any one or more of the parties named above as lessors not execute this lease, it shall nevertheless be binding upon the party or parties executing the same. This lease may be signed in counterpart.

15. Lessee shall act as a reasonable prudent operator to protect this leasehold from drainage. Further, lessee agrees to use due diligence, as a reasonable prudent operator in developing this leasehold, should oil, gas or any similar substance as covered by this lease, be discovered in paying quantities.

16. Notwithstanding anything in this lease to the contrary:

    A. After expiration of the primary term or any extension hereof, this lease shall terminate except as to those lands covered hereby that are within an area of Five Thousand (5000) acres around each well drilled on the leased premises or on acreage pooled therewith which is producing, capable of producing, or around each such well for which drilling or reworking operations have commenced. For purposes hereof, the Five Thousand (5000) acres around each said well shall be in the form of a square with the well located in the middle thereof and lessee shall, within ninety (90) days, after the completion of such well file in the appropriate county records an instrument entitled "Designation of Retained Acreage" which shall set forth the lands covered by this lease that are being retained by lessee under the terms of this lease that are within the said Five Thousand (5000) acres around each well. Lessee agrees to provide lessor with a certified copy of such instrument through its agent or agents provided for herein.

    B. If, after the expiration of the primary term of this lease or any extension thereof as provided in Paragraph 17, production from any well should cease and such well not be shut-in, this lease will terminate insofar and only insofar as it affects the leased premises contained within the square of the Five Thousand (5000) acres designated around such well as provided in Paragraph 16A if there is any period of more than sixty (60) days, during which no drilling operations, as defined in the lease, are conducted upon or production is obtained from such lands. Provided however, if lessee has drilled more than one well hereunder and such additional well or wells maintain this lease according to its terms, the leased premises contained within the boundaries of the Five Thousand (5000) acre square designated around such producing well as provided in Paragraph 16A, shall not be subject to the terms of this paragraph for so long as such well produces.

17. In consideration of the premises hereinbefore set forth and as part of the bonus paid hereunder, lessor herein and hereby grants to lessee the exclusive option to extend the primary term of this lease as to the acreage covered hereby for an additional five (5) years beyond the initial primary term. Lessee shall have the right to extend said primary term by making payment to lessor, or to lessor's credit in the depository bank named herein, on or before the expiration of the primary term of an amount equal to 125% of the initial consideration or bonus herein being paid, and the lease will automatically be amended and thereafter be treated as if the original primary term had been ten (10) years. If lessee so exercises its extension rights, lessee may likewise further extend the lease in the same manner on or before the end of the primary term as extended to ten (10) years for another five year period by paying to lessor or lessor's bank 150% of the initial payment; and at the end of fifteen (15) years for another five years by paying 175% of the initial payment.

18. All notices required in this lease shall be in writing.

19. For convenience of both parties, lessors collectively or singly may from time to time designate one or more persons as their attorney and agent with full powers to act in all respects as if said designees had been lessors of this lease. Until lessee is advised differently in writing, Alvin S. Hochberg and Charles G. Rice, singly or jointly, are hereby designated as lessors' attorneys and agents, together with full powers of substitution to act for them and in their behalfs as if they were lessors of this lease, including the right to negotiate, revise, amend in any way, extend or otherwise deal with this lease and the property generally. Such attorneys may, at their written election, and lessors hereby grant the said attorneys the right to receive all monies payable to the lessors as agents for the lessors under the provisions of this lease. Until so further advised, lessee shall communicate to Hochberg at Broude & Hochberg, 75 Federal Street, Boston, Mass. 02110 and to Rice at Room 934, 50 Congress Street, Boston, Mass. 02109, copies to one being considered for all purposes as being sent to and received by the other. Lessors agree that lessee shall be held harmless and without any liability for any act or payment made pursuant to the request or direction of said attorneys.

20. This lease is granted without warranty of title either express or implied by the lessors, either collectively or individually.

21. Lessee shall keep lessor promptly informed of operations conducted under or related to this lease and grants lessor the right at all reasonable times to enter onto the property, to the extent that lessee has such right, and to the records of lessor which concern or relate to this lease for purposes of examination and inspection, provided, however, lessee shall not be obligated to grant lessor access to, examination or inspection of any confidential materials, records, or data, the release or publication of which would impair lessee's operations or any interpretation or opinions of any material, data, or records.

BOOK 95 PAGE 1023

TR 0105

BOOK 994 PAGE 74
BOOK 95 PAGE 1024

22. As used in this lease, the term "production" means production in paying quantities.

IN WITNESS WHEREOF, this lease is executed as of the day and year first above written.

| | | | |
|---|---|---|---|
| _Charles G. Rice_ | SS# 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 | _Anne Ayer MacNichol_ | SS# 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 |
| _Lily B. Rice_ | | _Edward F. MacNichol, Jr._ | SS# 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 |
| _Charles G. Rice, Trustee u/w/o Neil W. Rice_ | SS# 04-6242819 | Anne M. H. Proctor | SS# 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 |
| _Henry O. Phippen, Jr., Trustee u/w/o Neil W. Rice_ | SS# 04-6242819 | _Seth Rice_ | SS# 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 |
| _Frederick M. Pryor, Trustee u/w/o Neil W. Rice_ | SS# 04-6242819 | First National Bank of Boston, Trustee u/w/o Margaret O. F. Proctor  SS# 04-6434022  By_____ | |
| _Emery Van D. Rice_ | SS# 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 | | |
| _Neil R. Ayer_ | SS# 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 | John J. Slocum, Jr., Trustee u/w/o Margaret O. F. Proctor  SS# 04-6434022 | |
| _Helen H. Ayer_ | | Geraldine M. Craig | |
| _Ruth Z. Ayer Dougher_ | SS# 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 | Cyril R. Craig | |
| | | Alvin S. Hochberg, Trustee u/w/o Thomas E. Proctor, Jr.  SS# 04-6093076 | |
| _David Ayer_ | SS# 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 | George M. Naylor, Trustee u/w/o Thomas E. Proctor, Jr.  SS# 04-6093076 | |
| _China O. Ayer_ | | | |
| _Hilda R. Curtis_ | SS# 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 | Boston Safe Deposit & Trust Co., Trustee u/w/o Thomas E. Proctor, Jr.  SS# 04-6093076 | |
| _Harry L. Curtis_ | SS# 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 | By_____ | |
| _Ethan Ayer_ | SS# 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 | | |
| Esther B. Proctor | SS# 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 | This instrument prepared by: M. E. Matthew, Jr. 708 Boulevard Tower 1018 Kanawha Boulevard, E. Charleston, WV  25301 | |
| Mary P. Case | SS# 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 | | |

TR0106

BOOK 43 PAGE 1027
BOOK 994 PAGE 75
BOOK 43 PAGE 1028

STATE OF Massachusetts
COUNTY OF Suffolk

On this, the 24th day of April, 1980, before me Erwin R. Griffin, the undersigned officer, personally appeared CHARLES G. RICE and LILY B. RICE, his wife, known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____
Erwin R. Griffin
Notary Public
Title of Officer

MY COMMISSION EXPIRES April 6, 1984

STATE OF Massachusetts
COUNTY OF Suffolk

On this, the 24th day of April, 1980, before me Erwin R. Griffin, the undersigned officer, personally appeared CHARLES G. RICE, HENRY O. PHIPPEN, JR. and FREDERICK M. PRYOR, Trustees under the will of Neil W. Rice, known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____
Erwin R. Griffin
Notary Public
Title of Officer

MY COMMISSION EXPIRES April 6, 1984

BOOK 95 PAGE 1025

TR0107

BOOK 994 PAGE 76
BOOK 950 PAGE 1026

STATE OF _Massachusetts_
COUNTY OF _Suffolk_

On this the _24th_ day of _April_, 1980, before me _Ennio R. Graffi_, the undersigned officer, personally appeared EMERY VAN D. RICE, single, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_Ennio R. Graffi_
_Notary Public_
Title of Officer

MY COMMISSION EXPIRES
_April 6, 1984_


STATE OF _Massachusetts_
COUNTY OF _Suffolk_

On this, the _14th_ day of _May_, 1980, before me _Neil R. Ayer & Helen H. Ayer_, the undersigned officer, personally appeared NEIL R. AYER and HELEN H. AYER, his wife, known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_Susan Pollock_
_Notary Public_
Title of Officer

MY COMMISSION EXPIRES
_February 25, 1983_

BOOK 43 PAGE 1029

TR 0108

BOOK 994 PAGE 77
BOOK ⁻43 PAGE 1030

STATE OF _Massachusetts_
COUNTY OF _Suffolk_

On this, the _19th_ day of _May_, 1980, before me _Ruth Z. Ayer Dougher_, the undersigned officer, personally appeared RUTH Z. AYER DOUGHER known to me (or satisfactorily proven) to be the person(s) whose name(s) is are, subscribed to the within instrument, and acknowledged that __he__ executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____
Title of Officer

MY COMMISSION EXPIRES
_February 25, 1983_


STATE OF _Massachusetts_
COUNTY OF _Suffolk_

On this, the _19th_ day of _May_, 1980, before me _David Ayer & China Ayer_, the undersigned officer, personally appeared DAVID AYER and CHINA O. AYER, his wife, known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____
Title of Officer

MY COMMISSION EXPIRES
_February 25, 1983_

BOOK 95_ PAGE 1027

TRO 109

BOOK 994 PAGE 78
BOOK 95 PAGE 1028

STATE OF _Massachusetts_
COUNTY OF _Suffolk_

On this, the _14th_ day of _May_, 1980, before me _Hilda R Curtis & Harry L Curtis_, the undersigned officer, personally appeared HILDA R. CURTIS and HARRY L. CURTIS, her husband, known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_[signature]_
_Notary Public_
Title of Officer

MY COMMISSION EXPIRES
_February 25, 1983_


STATE OF _Massachusetts_
COUNTY OF _Suffolk_

On this, the _14th_ day of _May_, 1980, before me _Ethan Ayer_, the undersigned officer, personally appeared ETHAN AYER, single, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein conatined.

In witness whereof, I hereunto set my hand and official seal.

_[signature]_
_Notary Public_
Title of Officer

MY COMMISSION EXPIRES
_February 25, 1983_

BOOK 43 PAGE 1031

TR 0110

BOOK 43 PAGE 1032

BOOK 994 PAGE 79

STATE OF _Massachusetts_
COUNTY OF _Suffolk_

On this, the _14th_ day of _March_, 1980, before me _Anne Ayer MacNichol_ _Edward F. MacNichol, Jr._ the undersigned officer, personally appeared ANNE AYER MacNICHOL and EDWARD F. MacNICHOL, JR., her husband, known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____
Title of Officer

MY COMMISSION EXPIRES
_February 25, 1983_


STATE OF _____
COUNTY OF _____

On this, the _____ day of _____, 1980, before me _____, the undersigned officer, personally appeared ANNE M. H. PROCTOR, single, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that she executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

BOOK 95 PAGE 1029

_____
Title of Officer

MY COMMISSION EXPIRES
_____

TRD111

BOOK 994 PAGE 80
BOOK 95_ PAGE 1030

STATE OF _Massachusetts_
COUNTY OF _Suffolk_

On this, the _2nd_ day of _June_, 1980, before me _Bradley R. Cook_, the undersigned officer, personally appeared SETH RICE, single, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_Bradley R. Cook_
_Notary Public_
Title of Officer

MY COMMISSION EXPIRES

_Nov. 10, 1983_

RECORDED

OCT 1 1981

_[signature]_
REGISTER AND RECORDER
_[signature]_

STATE OF _____
COUNTY OF _____

On this, the _____ day of _____, 1980, before me _____, the undersigned officer, personally appeared _____, who acknowledged himself to be the _____ of FIRST NATIONAL BANK OF BOSTON, a corporation, Trustee under the will of Margaret O. F. Proctor, and that he as such _____, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself as _____.

In witness whereof, I hereunto set my hand and official seal.

_____
Title of Officer

MY COMMISSION EXPIRES

_____

FILED
LYCOM___ ___NTY
Nov 5 11 42 AM '81
MARY G. MUSSER
RECORDER OF DEEDS

BOOK _43 PAGE 1033

TR0112

05728

-0367  RECORDED BOOK 994 PAGE 81

RECORDERS OFFICE
Oct 1 1 14 PM '81
FILED
SULLIVAN CTY.
BvR-94
mc-71

JUN 3 1981
REGISTER & RECORDER
Per ALBERT O. REMSNYDER

BvR } 992302-001
mc

Return To: EXXON COMPANY, U.S.A.
708 Boulevard Towers
1018 Kanawha Blvd., E.
Charleston, W. Va. 25301

DC1-0184
Producers 88 — Revised
Pennsylvania

**OIL AND GAS LEASE**
**FIVE YEAR PAID UP**

THIS AGREEMENT, made and entered into this __1st__ day of __January__, 1980, by and between

CHARLES G. RICE and LILY B. RICE, his wife; CHARLES G. RICE, HENRY O. PHIPPEN, JR. and FREDERICK M. PRYOR, Trustees under the will of Neil W. Rice; EMERY VAN D. RICE, single; NEIL R. AYER and HELEN H. AYER, his wife; RUTH Z. AYER DOUGHER, single; DAVID AYER and CHINA O. AYER, his wife; HILDA R. CURTIS and HARRY L. CURTIS, her husband; ETHAN AYER, single; ESTHER B. PROCTOR, single; MARY P. CASE, single; ANNE AYER MacNICHOL and EDWARD F. MacNICHOL, JR., her husband; ANNE M. H. PROCTOR, single; SETH RICE, single; FIRST NATIONAL BANK OF BOSTON and JOHN J. SLOCUM, JR., Trustees under the will of Margaret O. F. Proctor; GERALDINE M. CRAIG and CYRIL R. CRAIG, her husband; and ALVIN S. HOCHBERG, GEORGE M. NAYLOR and BOSTON SAFE DEPOSIT & TRUST COMPANY, Trustees under the will of Thomas E. Proctor, Jr.  BOOK 95  PAGE 1031
whose address for purposes of this lease as provided in paragraph 19 hereof is c/o Mr. Alvin S. Hochberg, at Broude & Hochberg, 75 Federal Street, Boston, MA 02110 and/or c/o Mr. Charles G. Rice at Room 934, 50 Congress Street, Boston, MA 02109



TR0113

BOOK 994 PAGE 82
BOOK 95 PAGE 1032
BOOK 43 PAGE 1012

_____, whose address is
_____, hereinafter called lessor (whether
one or more), and ___EXXON CORPORATION___
whose address is ___P. O. Box 2305, Houston, TX  77001___, hereinafter called lessee; WITNESSETH THAT:

1. Lessor, for and in consideration of One Dollar and other valuable consideration DOLLARS ($1.00 & ovc.) in hand paid, receipt of which is hereby acknowledged, and of the agreements of lessee hereinafter set forth, hereby grants, demises, leases and lets exclusively unto said lessee the lands hereinafter described for the purpose of prospecting, exploring by geophysical and other methods, drilling, mining, operating for and producing oil or gas, or both, including, but not as a limitation, casinghead gas, casinghead gasoline, gas-condensate (distillate) and any substance, whether similar or dissimilar, produced in a gaseous state or contained in such oil or gas, together with the right to construct and maintain pipelines, telephone and electric lines, tanks, powers, ponds, roadways, plants, equipment, and structures thereon to produce, save, store and take care of said oil and gas, and the exclusive right to inject air, gas, water, brine and other fluids from any source into the subsurface strata and any and all other rights and privileges necessary, incident to, or convenient for the economical operation of said land, alone or conjointly with neighboring land, for the production, saving and taking care of oil and gas and the injection of air, gas, water, brine, and other fluids into the subsurface strata, said lands being all lands in the State of Pennsylvania, the right, title and mineral interest to which is owned or claimed by any undersigned Lessor as an heir of that certain Thomas E. Proctor being the same Thomas E. Proctor who died December 7, 1894, specifically including but not limited to lands owned or claimed by lessor as heirs of Thomas E. Proctor in the Counties of Bradford, Sullivan, Lycoming, Clearfield, Elk, Cameron and Jefferson, and partially described in the following deeds:

   A. Deed dated October 27, 1894, from Thomas E. Proctor, et ux, et al, to Union Tanning Company, recorded in Book 205 at Page 436 in the Bradford County Records, and in Book 24 at Page 59 of the Sullivan County Records.
   B. Deed dated October 1, 1894, from Thomas E. Proctor, et ux, to Elk Tanning Company, recorded in Book 88 at Page 8 of the Clearfield County Records, and in Book 43 at Page 252 of the Elk County Records.
   C. Deed dated October 2, 1894, from Thomas E. Proctor, et ux, to Elk Tanning Company, recorded in Book 144 at Page 398 of the Lycoming County Records, and in Book 24 at Page 72 of the Sullivan County Records.
   D. Deed dated October 30, 1894, from Thomas E. Proctor, et ux, to Union Tanning Company, recorded in Book 24 at Page 53 of the Sullivan County Records.
   E. Deed dated May 16, 1898, from Emma H. Proctor, et al, to Jonathan A. Hill, recorded in Book 223 at Page 58 of the Bradford County Records.

It being the purpose and intent of lessor to lease, and lessor does hereby lease, all lands in the State of Pennsylvania owned or claimed by lessor as heirs of Thomas E. Proctor, whether said lands are specifically above described or not.

TRO114

BOOK 994 PAGE 82
BOOK 95 PAGE 1032
BOOK 43 PAGE 1012

_____, whose address is
_____, hereinafter called lessor (whether one or more), and ___EXXON CORPORATION___
whose address is ___P. O. Box 2305, Houston, TX  77001___, hereinafter called lessee; WITNESSETH THAT:

1. Lessor, for and in consideration of One Dollar and other valuable consideration DOLLARS ($1.00 & ovc.) in hand paid, receipt of which is hereby acknowledged, and of the agreements of lessee hereinafter set forth, hereby grants, demises, leases and lets exclusively unto said lessee the lands hereinafter described for the purpose of prospecting, exploring by geophysical and other methods, drilling, mining, operating for and producing oil or gas, or both, including, but not as a limitation, casinghead gas, casinghead gasoline, gas-condensate (distillate) and any substance, whether similar or dissimilar, produced in a gaseous state or contained in such oil or gas, together with the right to construct and maintain pipelines, telephone and electric lines, tanks, powers, ponds, roadways, plants, equipment, and structures thereon to produce, save, store and take care of said oil and gas, and the exclusive right to inject air, gas, water, brine and other fluids from any source into the subsurface strata and any and all other rights and privileges necessary, incident to, or convenient for the economical operation of said land, alone or conjointly with neighboring land, for the production, saving and taking care of oil and gas and the injection of air, gas, water, brine, and other fluids into the subsurface strata, said lands being all lands in the State of Pennsylvania, the right, title and mineral interest to which is owned or claimed by any undersigned Lessor as an heir of that certain Thomas E. Proctor being the same Thomas E. Proctor who died December 7, 1894, specifically including but not limited to lands owned or claimed by lessor as heirs of Thomas E. Proctor in the Counties of Bradford, Sullivan, Lycoming, Clearfield, Elk, Cameron and Jefferson, and partially described in the following deeds:

   A. Deed dated October 27, 1894, from Thomas E. Proctor, et ux, et al, to Union Tanning Company, recorded in Book 205 at Page 436 in the Bradford County Records, and in Book 24 at Page 59 of the Sullivan County Records.
   B. Deed dated October 1, 1894, from Thomas E. Proctor, et ux, to Elk Tanning Company, recorded in Book 88 at Page 8 of the Clearfield County Records, and in Book 43 at Page 252 of the Elk County Records.
   C. Deed dated October 2, 1894, from Thomas E. Proctor, et ux, to Elk Tanning Company, recorded in Book 144 at Page 398 of the Lycoming County Records, and in Book 24 at Page 72 of the Sullivan County Records.
   D. Deed dated October 30, 1894, from Thomas E. Proctor, et ux, to Union Tanning Company, recorded in Book 24 at Page 53 of the Sullivan County Records.
   E. Deed dated May 16, 1898, from Emma H. Proctor, et al, to Jonathan A. Hill, recorded in Book 223 at Page 58 of the Bradford County Records.

It being the purpose and intent of lessor to lease, and lessor does hereby lease, all lands in the State of Pennsylvania owned or claimed by lessor as heirs of Thomas E. Proctor, whether said lands are specifically above described or not.

TRO114