# EXHIBIT A

# Declaration of Jay Wilkinson

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, PENNSYLVANIA GAME COMMISSION, | : : : : | CIVIL ACTION – LAW CASE NO. 1:12-CV-1567 |
| Plaintiff, | : : | JUDGE: Christopher C. Conner |
| v. | : : : | |
| THOMAS E. PROCTOR HEIRS TRUST and the MARGARET O.F. PROCTOR TRUST, | : : : | |
| Defendants. | : | |

## DECLARATION OF J.C. WILKINSON, III

1.    My name is Joseph C. Wilkinson, III, I am commonly referred to as "Jay Wilkinson". I am the founding member of Wilkinson Law, L.L.P. My Curriculum-vitae, which supplies my qualifications, is attached to this declaration at Tab A.

2.    Through my education, experience, training, and current and former employment, I have extensive experience with respect to oil and natural gas title issues in Pennsylvania and have rendered numerous oil and gas title opinions for properties throughout the Commonwealth.

3.    I have been provided with, and have reviewed, the pleadings filed by the parties in this case. I have also been provided with the motion for partial summary judgment and supporting materials filed by the Thomas E. Proctor Heirs

Trust and the Margaret O.F. Proctor Trust (the "Proctor Trusts"). I understand the issue to be resolved by the pending motion for partial summary judgment is whether the Proctor Trusts have an interest in the oil, gas, and mineral interests (the "Subsurface Estate") beneath a tract of land in LeRoy Township, Bradford County, Pennsylvania known as the Josiah Haines Warrant.

4.     I have been retained by the Commonwealth of Pennsylvania, Pennsylvania Game Commission ("Commission") to provide my opinions regarding the Commission's title to the Subsurface Estate and whether the Proctor Trusts have an interest in the Subsurface Estate.

5.     Based on my education, training and experience it is my opinion, with a reasonable degree of professional certainty, that: (1) the Proctor Trusts do not have an interest in the Subsurface Estate; and (2) the Commission has title to the Subsurface Estate.

6.     A summary of the grounds for my opinions is as follows:

a.     *Oil, Gas, and Minerals Title Opinion Concerning Lands of Commonwealth of Pennsylvania, State Game Lands No. 12, Josiah Haines Warrant, Leroy Township, Bradford County*, which is attached hereto and made a part hereof as Tab B.

b.     I am familiar with the titles to lands in the Commonwealth, and particularly in the northern tier counties of Bradford, Sullivan,

Lycoming and Tioga.

c.      I have personally performed courthouse research related to titles in Bradford, Sullivan, Lycoming and Tioga counties for over ten (10) years, particularly with regard to oil, gas, and mineral interests.

d.      I have searched hundreds of titles in Bradford, Sullivan, Lycoming and Tioga counties and have reviewed hundreds more, including a large number of titles where the predecessors to the Proctor Trusts have been in the chain of title.

e.      I am aware that counties across the Commonwealth assessed unseated land differently.  For instance, in Lycoming County, sometimes reserved minerals were assessed and sometimes not, likely based on whether the owners of the reservation reported their ownership or not.

f.      I have reviewed the title of the Commonwealth to the Josiah Haines Warrant in Bradford County, among others, and am familiar with the facts and circumstances surrounding that conveyance.

g.      The titles mentioned above show the Josiah Haines Warrant to be classified as unseated during 1904-1908.

h.      The titles mentioned above show the Josiah Haines Warrant was assessed as unseated, and there was no separate assessment for oil, gas

or minerals.

i.     Oil gas and minerals were assessable during the time period 1904-1908.

j.     The lack of a mineral assessment indicates no separate assessment was requested of the oil, gas and minerals in the Josiah Haines Warrant.

k.     After a diligent search of titles in Bradford County and Sullivan County, there is a pattern that the predecessors to the Proctor Trusts never ensured their reserved interests were separately assessed in Bradford County and Sullivan County.

l.     After a diligent search, there is no record that the predecessors to the Proctor Trusts ever challenged the assessment of the Josiah Haines Warrant as unseated.

m.     The Josiah Haines Warrant was sold for nonpayment of taxes in 1908 to Calvin H. McCauley, Jr.

n.     After a diligent search, there is no power-of-attorney, trust instrument, or other agency appointment indicating that Calvin H. McCauley, Jr., was an agent for anyone at this sale.

o.     The Act of 1815 imposed a two-year statute of repose within which to challenge a tax sale, after which the title of the purchaser

would be fee simple and not subject to challenge.

p.      After a diligent search, there is no record reflecting that Thomas E. Proctor or Jonathan A. Hill ever paid taxes on the Josiah Haines warrant.

q.      The tax sale of the Josiah Haines Warrant to Calvin H. McCauley, Jr. was held at the regular time and place according to the Act of 1815.

r.      The tax sale of the Josiah Haines Warrant to Calvin H. McCauley, Jr. was noticed according to the Act of 1815.

s.      No challenge to the Josiah Haines tax sale was filed.

t.      Neither Thomas E. Proctor nor Jonathan A. Hill redeemed the Josiah Haines warrant.

u.      The predecessors to the Proctor Trusts were certainly aware their interests were at risk, as they already had some property sold at tax sale to O.B. Grant in 1895, accepted a deed from O.B. Grant re-conveying their reserved interests, and had previously acquired unseated lands at tax sales. (*See* Sullivan County Deed Book 24, Page 790  - Being a Deed, dated September 17, 1897, from O.B. Grant conveying all right, title and interest in the oil, gas and minerals acquired by O.B. Grant at numerous unseated tax sales back to the heirs of Thomas E. Proctor).

7.    In addition to my education, training and experience, I have used as reference the following as a basis on which to support my opinions:

a.    The parties' pleadings in this matter.

b.    The Proctor Trusts' motion for partial summary judgment and supporting materials.

c.    The materials listed in the Materials Examined section of my Opinion of Title attached hereto at Tab B.

8.    My engagement with the Commission provides that I will be compensated at the rate of $250 per hour for my services along with reimbursement for incidental expenses.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed this 15th day of May, 2018.


_____

J.C. Wilkinson, III

# TAB A

Wilkinson Curriculum Vitae

## JOSEPH C. WILKINSON, III (Jay Wilkinson)

Oil and Gas Title Attorney
www.wilkinsonllp.com
jay@wilkinsonllp.com
570-525-3000

Jay Wilkinson is a well-known, respected and qualified oil and gas attorney with significant expertise in the unique title issues presented by the horizontal development of shale resources within the Appalachian basin. Jay's expertise has been honed through extensive research, publishing, and teaching on these title issues. Jay has assisted a number of mid-continent law firms expand their oil and gas practices to meet the recent demands for oil and gas title related services. In addition to his self-driven scholarship Jay's advice and experience is often sought after to assist in the litigation and arbitration of complex oil and gas title disputes.

**Recent Work History**:

> Wilkinson Law LLP (Eagles Mere PA) – 2004 to Present
>> Solo-practice providing oil and gas title related services to numerous private and publicly traded oil and gas exploration and production companies as well as some limited landowner representation.

> Bode and Werner PLLC (Dallas TX) – 2012 to Present
>> "Of-Counsel" providing title support to the firm's Oil and Gas Title Opinion practice in Pennsylvania and Ohio. Receiving support from the firm with respect to highly fractionalized oil and gas ownership and working interest calculations.

> Burnett and Thomason (Dallas TX) – 2010 to 2011
>> "Of-Counsel" Supervised a diverse team of attorneys providing Oil and Gas Title Opinions to numerous private and publicly traded oil and gas exploration and production companies. Responsible for the review and delivery of over fifty (50) Opinions of Title a week for much of my time at this firm.

> Burleson LLP (Houston TX) – 2009 to 2010
>> "Of-Counsel" Assisted Burleson LLP in the opening of its first office servicing the Appalachian basin. Provided input and training on unique Pennsylvania title circumstances. Rendered Oil and Gas Title Opinions for Burleson's extensive list of oil and gas exploration and production clients.

**Selected Oil and Gas Title Litigation Experience**:

> Expert Witness Services:

>> *Pennsylvania Game Commission v Proctor Heirs Trust*
>> Pennsylvania Middle District Docket No: 1:2012-CV- 01567
>>> Issue(s): Oil and Gas title dispute, Unseated Tax Sales

Wilkinson CV – Resume
Updated May 10, 2018
Page 2 of 3

*Pennsylvania Game Commission v Proctor Heirs Trust,*
Commonwealth Court 493 MD 2017
     Issue(s): Oil and Gas title dispute, Unseated Tax Sales

*Vavala v Astra and EQT* Elk County, 2008 CV 486
     Issue(s): Petition to Strike, Oil and Gas Title dispute

*Davidge v Meske,* Sullivan County, 2009 CV 2017
     Issue(s): Oil and Gas title dispute, 1967 Tax Sale

<u>Litigation Counsel (Partial Listing)</u>:

*Leonard v. Newman*, Sullivan County, 2012-CV-0034
*Appeal of Leonard v. Newman*, PA Superior Court, 1291 MDA 2016
     Issue(s): Oil and Gas title dispute, finality of judgment

*Rohe v Meehan*, Sullivan County, 2014-CV-00084
*Appeal of Rohe v Meehan*, PA Superior Court, 353 MDA 2016
     Issue(s): Interpretation of oil, gas and mineral reservation language

*Roberts v New Penn*, Tioga County, 2009-CV-0744
*Ochenrider v Hess*, Tioga County, 2009-CV-0035
     Issue(s): Petition to Strike, Oil and Gas Title dispute

*IDC v Davidge*, Wyoming County, 2009 CV 877
*IDC v Davidge*, Pennsylvania Superior Court, 1215-MDA-2010
*IDC v Davidge*, Commonwealth Court, 1564-CD-2011
*IDC v Davidge*, Pennsylvania Board of Property, 2011-BP-2011
     Issue(s): Oil and Gas title dispute and proper Jurisdiction for dispute

*Southwestern v Anadarko*, Lycoming County, 2012-CV-00563
*Northern Forest v Keta*, Lycoming County, 1988 CV 02,536
     Issue(s): Oil and Gas title dispute and Petition to Strike prior default

Szymkowitz v Roberts, McKean County, 1433-CD-2011
     Issue(s): Oil and Gas title dispute

Wilkinson CV – Resume
Updated May 10, 2018
Page 3 of 3

**Public Speaking, Scholarship and Memberships**:

Pennsylvania Oil and Gas Law and Practice – Co-Author:

In 2012, realizing the need for a complete legal practice guide to serve the increased demand for oil and gas legal reference materials , Jay Wilkinson co-authored the legal treatise Pennsylvania Oil and Gas Law and Practice, the first Pennsylvania specific treatise in this subject area.  Published by the George T. Bisel Company, Inc. (2012). Jay continues to update the manuscript as needed and required by the publisher.  *See* www.bisel.com

Presentations on Title Issues (Partial Listing):

2018    39th Annual Energy and Mineral Law Foundation Annual Institute, Nashville TN – *Quiet Title Actions-Burdens and Benefits*

2016    PBI 6th Annual Oil and Gas Law Colloquium, Pittsburgh, PA
*Title Wash Tax Sales – Herder Springs the Final Word*

2014    PBI Advanced Mineral Title Examination Course, Mechanicsburg PA
*Tax Sales, Ownership of Oil and Gas in and under Rivers and Railroads*

2013    PBI 5th Annual Oil and Gas Law Colloquium, Pittsburgh, PA
*Tax Sales and Title Wash Issues*

2013    PBI Hot topics in Oil and Gas Law, Mechanicsburg, PA
*Proper use of the Pennsylvania Dormant Oil and Gas Act*

Memberships: Pennsylvania Bar Association – Shale Energy Law Committee.
Energy and Mineral Law Foundation, American Association of Petroleum Landman

Education / Clerkships:

Dickinson College, Carlisle PA.  B.S. Economics, Geology Minor 1985
Penn State Dickinson School of Law, Carlisle PA,  J.D. 2003
Judicial Clerk, Hon. Judge Kevin A. Hess, Cumberland County, 2002-2003

Active Attorney Licenses:

Commonwealth of Pennsylvania, 2004 to present, PA Supreme Court ID 92416
State of Ohio,  2012 to present, Ohio Supreme Court ID 89933

# TAB B

Wilkinson Opinion of Title – Josiah Haines Warrant

# OIL, GAS AND MINERAL TITLE OPINION

Rendered to:

## Pennsylvania Game Commission

Concerning Lands of:

**Commonwealth of Pennsylvania**
**State Game Lands No. 12**

# Josiah Haines Warrant

**Leroy Township**
**Bradford County**

as of

July 8, 2016

Wilkinson Law LLP
jwilkinson@wilkinsonllp.com
570-525-3000

# WILKINSON LAW LLP

**303 Eagles Mere Avenue**
**PO Box 2**
**Eagles Mere, PA 17731**
**570-525-3000**
**888-908-8737 Fax**

J.C. Wilkinson, III (Jay)
jwilkinson@wilkinsonllp.com

PRIVILIGED AND CONFIDENTIAL

May 15, 2018

Commonwealth of Pennsylvania
Pennsylvania Game Commission
2001 Elmerton Avenue
Harrisburg PA 17110-9797

Attn:   Bradley C. Bechtel, Esq.
        William C. Martson, Esq.

Re:   **State Game Lands No. 12**
      **Josiah Haines Warrant**
      **407.75 Acres**
      **Leroy Township**
      **Bradford County, PA**

## ORIGINAL TITLE OPINION

**SUBJECT LANDS:** 407.75[1] Acres of land, being all of the Josiah Haines Warrant situated in Leroy Township, Bradford County, Pennsylvania and being a portion of the lands described in the Deed, dated December 14, 1920, from the Central Pennsylvania Lumber Company to the Commonwealth of Pennsylvania, recorded in Book 342, Page 376, in the official records of the Office of Recorder of Deeds of Bradford County PA.

---

[1] Acreage of Subject Lands is as stated in the original Survey Book C, Page 355.  Actual modern survey acreage is unknown.  See Comment No 3.

Pennsylvania Game Commission
Bradley C. Bechtel, Esq.
May 15, 2018

Subject Lands on State Game Lands No. 12 "Carto Map" as revised 11-15-02





*PGC – SGL 12 – Josiah Haines Warrant – 407.75 Acres – Leroy Township – Bradford County PA*
*Page 3 of 19*

Pennsylvania Game Commission
Bradley C. Bechtel, Esq.
May 15, 2018

Subject Lands as depicted RG-17 Survey Book C, Page 355 (Percheron Abstract 30)



Pennsylvania Game Commission
Bradley C. Bechtel, Esq.
May 15, 2018

Ladies and Gentleman:

Pursuant to your request, title has been examined to the above-referenced 407.75 acres, hereinafter referred to as the "Subject Lands." The following Opinion sets forth title as of July 8, 2016, in particular with regard to record title ownership of Oil, Gas, Minerals and related hydrocarbons and the right to explore, develop and produce same therefrom, organized as follows:

I.   **Materials Examined**

II.  **Ownership**

    1. *Surface Estate*

    2. *Oil, Gas and Mineral Estate*

    3. *Oil and Gas Leasehold Estate (Not Examined)*

III. **Encumbrances on Title**

    1. *Unreleased Liens and Mortgages*

    2. *Easements and Rights of Way*

    3. *Pending Suits, Judgments and Lis-Pendens*

IV.  **Title Analysis**

    1. *History of Title*

    2. *Assessments and Tax Sales*

V.   **Comments**

VI.  **Limitations**

**Exhibits – Chart of Title and Plats**

Recording references to volume and page numbers in this Opinion are to various indices in the public records of Bradford County, Pennsylvania, and unless otherwise indicated, to the Deed Book Records (DR), Mortgage Records (MR), Civil Court Records (CV), Tax Sale Records (TS) or Will Records (WR) of Bradford County. Where file numbers and film code numbers are used without designation, the references are to the Deed Book Records of Bradford County.

Pennsylvania Game Commission
Bradley C. Bechtel, Esq.
May 15, 2018

# I.
# MATERIALS EXAMINED

Our examination was limited to the following:

1. An Abstract of Title, dated July 14, 2016, prepared by Percheron LLC covering the Subject Lands from April 17, 1792 to July 8, 2016. This abstract and related materials were delivered digitally by CD-ROM disk as downloaded by PGC staff from the Pacer filing system for Case 1:12-cv-01567 at document 97-1 and containing 118 pages. This abstract will hereinafter be referred to as the "Percheron Abstract ___ [2]";

2. An Abstract of Title, dated November 22, 1920, examined by John E. Potter, Esq., Examiner of Titles to the Board of Game Commissioners. This abstract and related materials were delivered digitally by CD-ROM disk as downloaded by PGC staff from the Pacer filing system for Case 1:12-cv-01567 at document 98-1 and containing 135 pages. This abstract will hereinafter be referred to as the "Potter Abstract ___;

3. Images of Unseated Land Records from the Bradford County Historical Society as photographed and obtained by Gregory S. Gass, a consultant for the Proctor defendants, as set forth in the Pacer records for the middle district of Pennsylvania in docket No. 1:12-cv-01567 at record entries 96-4, 99, 100, 101, 102, 104-1, hereinafter referred to as the "Gass Exhibits"; and

4. Various maps and plats of the Subject Lands as referenced herein.

# II.
# OWNERSHIP

Our examination of the Materials Examined reflects that as of July 8, 2016, subject to the Comments set forth herein, record title to the Subject Lands was vested as follows:

1. **SURFACE ESTATE**

   Commonwealth of Pennsylvania                                  100%

2. **OIL, GAS AND MINERAL ESTATE**

   Commonwealth of Pennsylvania                                  100%

---

[2] For ease of cross reference to source abstract instruments, page numbers will be indicated here and refer to the actual page number in the electronic document as determined by the PDF software viewer, here Adobe Acrobat.

Pennsylvania Game Commission
Bradley C. Bechtel, Esq.
May 15, 2018

3.      **OIL & GAS LEASEHOLD ESTATE**

Pursuant to your instructions a full examination of the leasehold estate is beyond the scope of this Opinion, nevertheless, your attention is directed to the **Memorandum of Restricted Surface Use Cooperative Agreement for Exercise of Production for Oil and Gas**, the "PGC Agreement" (DR 201303448) and the related **First Amendment of the Restricted Surface Use Cooperative Agreement for Exercise of Production for Oil and Gas**, the "PGC Amendment" (DR 201502035). These Agreements were recorded by Memorandum and pursuant to your instructions we have not reviewed the underlying agreement(s).

For purposes of this Opinion we have assumed that the PGC is fully familiar with all of the terms and provisions of the PGC Agreement and the PGC Amendment. The PGC is aware that both agreements may continue to bind the PGC lands, including the Subject Lands, to Chief and their partners granting Chief and others the exclusive rights to produce the oil and gas from the lands covered therein.


## III.
## ENCUMBRANCES ON TITLE


1.      **UNRELEASED LIENS AND MORTGAGES**

None in the Materials Examined.


2.      **EASEMENTS, RIGHTS OF WAY AND RESTRICTIONS**

ESMT1:
Grantor:           Union Tanning Company
Grantee:           Susquehanna and New York Railroad Company
Document:          Deed
Date:              1-16-1903
Recorded:          DR 251-207, Potter Abstract 81
Grants:            A strip of land 100' in width 50' on each side of the central line of the Susquehanna & New York Rail Road as further described therein
Examiners Notes:   See Comment No. 4


3.      **PENDING SUITS, JUDGMENTS AND LIS-PENDENS**

SUIT1:
Plaintiff:         Commonwealth of Pennsylvania, Pennsylvania Game Commission
Defendant:         Thomas E. Proctor Heirs Trust et al

Pennsylvania Game Commission
Bradley C. Bechtel, Esq.
May 15, 2018

|  |  |
|---|---|
| Date Filed: | 8-10-2012 |
| Court: | Middle District of Pennsylvania |
| Docket No: | 1:12-cv-01567 |
| Examiners Notes: | Still Pending |

\* \* \* \* \*

## IV.
## TITLE ANALYSIS

## 1.    HISTORY OF TITLE

The early title in and to the Subject Lands traces via mesne conveyances from the Commonwealth of Pennsylvania to Robert Barclay of London England and then via specific devise in his will to his son Charles Barclay (Potter Abstract 37).

By Deed, dated October 5, 1853, Charles Barclay conveys a large tract of land containing over 20,000 acres, including the Subject Lands, to Edward Overton et al (DR 39-481, Potter Abstract 37).

By a series of Deeds, in April of 1854 Edward Overton et al convey partial interests, (1/40 interests) in the Subject Lands and other lands to various parties (Potter Abstract 41-59, Percheron Abstract 8)

By Deed, dated April 20,1855, Edward Overton et al convey a large tract of land containing over 18,000 acres, including the Subject Lands, to Charles W. Beresford (DR 44-56, Potter Abstract 60).

By Deed, dated April 21, 1855, Charles W. Beresford conveys the same large tract of land containing over 18,000 acres, including the Subject Lands, to Joseph Oat et al trustees for "The Schrader Land Company" (DR 44-124, Potter Abstract 62).

By Deed, dated March 2, 1868, the trustees for the Schrader Land Company convey the same large tract of land containing over 18,000 acres, including the Subject Lands, to the Schrader Mining and Manufacturing Co. (DR 85-188, Percheron Abstract 33).

By Deed, dated June 5, 1893, the Schrader Mining and Manufacturing Co. conveys a large tract of land containing over 15,000 acres, including the Subject Lands, to Thomas E. Proctor and Jonathan A. Hill (DR 197-270, Percheron Abstract 39).

Pennsylvania Game Commission
Bradley C. Bechtel, Esq.
May 15, 2018

By Deed, dated October 27, 1894, Thomas E. Proctor and Jonathan E. Hill, joined by their spouses, convey a large tract of land stated to contain 14,200 Acres, including the Subject Lands, to the Union Tanning Company, severing the oil, gas and minerals from the surface and reserving the oil, gas and mineral estate for themselves, their heirs and assigns (DR 205-436, Percheron Abstract 43).

By Deed, dated May 25, 1903, the Union Tanning Company conveys the surface of a large tract of land, stated to contain 16,350.3 Acres, including the Subject Lands, to the Central Pennsylvania Lumber Company (DR 251-520, Percheron Abstract 60).

By Treasurer Deed[3], dated June 8, 1908, A.C. Blackwell the Deputy Treasurer of Bradford County conveys the Subject Lands described as "410 Acres of unseated land in Leroy Township, assessed in the warrantee name of Josiah Haines" to Calvin H. McCauley, Jr. (TS 7 -189, Percheron Abstract 74).

By Deed, dated December 6, 1910, Calvin H. McCauley, Jr. and wife, Florence M. McCauley convey 45 tracts of land, including the Subject Lands, to the Central Pennsylvania Lumber Company (DR 300-401, Percheron Abstract 76).

By Deed, dated December 14, 1920, the Central Pennsylvania Lumber Company conveys a tract of land stated to contain 7,492.9 Acres, including the Subject Lands, to the Commonwealth of Pennsylvania (DR 342-376, Percheron Abstract 81).

**********

[3] This Deed is not of record in the Office of the Recorder of Deeds in Bradford County. Nevertheless, see *Woodhouse Hunting Club, Inc. v. Hoyt*, 2018 PA Super 78, 327 MDA 2017 holding that that so long as the record contains reliable indicia that the sale occurred comporting with the terms of the Act, that evidence is sufficient to find that a deed was issued.

Pennsylvania Game Commission
Bradley C. Bechtel, Esq.
May 15, 2018

2.    **ASSESSMENTS AND TAX SALES**

**Statement of Taxes for 1907 from the Potter Abstract 73**

```
                         STATEMENT OF TAXES
                              for 1907
      #114
                       LeRoy Township  Bradford County

Year No. Acres Warrantee        Val.   Co.   Rd.   Sch.  Town   Int.   Total
1907 ~~   199  Adlum, John      $500  4.00  2.00  1.75  1.25   .27   13.02
 "    "   237  Biddle, M. J.     592  4.73  2.37  2.07  1.48   .32   14.72
 "    "   440  Barron, John Sr. 1100  8.80  4.40  3.85  2.75   .60   24.15
 "    "    91  Biddle, Clement   275  2.19  1.09   .96   .68   .15    8.82
 "    "   403  Boyd, John       1008  8.07  4.03  3.53  2.52   .55   22.45
 "    "   348  Graydon, Andrew   870  6.96  3.48  3.05  2.18   .47   19.89
 "    "   290  Gratz, Hiram      825  6.60  3.30  2.89  2.06   .45   19.05
 "    "   333  Gratz, Bernard    832  6.65  3.33  2.91  2.08   .45   19.17
 "    "   410  Haines, Joseph   2460 19.68  9.84  8.61  6.15 1.33   49.36
 "    "   444  Henry, Joseph    1110  8.88  4.44 14.43  2.77 1.35   50.05
 "    "   486  Pennington, Benj.1215  9.72  4.86  4.25  3.04   .66   26.28
 "    "   227  Reed, Collinson   570  4.56  2.28  2.00  1.43   .31   14.33
 "    "    35     "       "      350  2.80  1.40  1.23   .88   .19   10.25
 "    "   452  Shoemaker, James 1130  9.04  4.52  3.96  2.83   .60   24.70
 "    "   257  Simons, James     645  5.16  2.58  2.26  1.61   .35   15.71
 "    "    47     "       "      375  3.00  1.50  1.31   .94   .20   10.70
      4,699.0
             NOTE:-- Above total includes also Costs of $3.75 each case.

                       ---000:0:000---
```

Pennsylvania Game Commission
Bradley C. Bechtel, Esq.
May 15, 2018

    The Tracts as listed on the prior page were sold separately in 1908 to Calvin H. McCauley, Jr. per Copy of Entry From Treasurers Sales Book 2, Page ---- (Potter Abstract 76)

COPY OF ENTRY FROM

#115          Treasurers Sales Book 2, Page ----

Sale of 1908  LeRoy Twp.

    Acreage same as above in each case.

    Each of Above sold separately, same warrantee.

    Tax, costs and interest as indicated in each case at Total.

*10/3*    Date June 8, 1908.               PGCP 002824
*72.*

        Purchaser -- Calvin H. McCauley, Jr.

        Bid -- Same as the Total in each of above cases.

---000:0:000---

    #116         All Deeds acknowledged Dec. 17, 1908 by

      A. C. Blackwell, Deputy Treasurer of Bradford County

        in open Court of Common Pleas

        Treasurer's Deed Book Vol. 7,

          pages 174 to 195.

---000:0:000---

W. F. Waters, Treasurer,
Deed to
Calvin L. McCauley Jr.

Dec. 17, 1908, A.C. Blackwell Deputy Treasurer of Bradford County, came into open Court and in due form of law acknowledged a deed to Calvin H. McCauley Jr. dated June 8, 1908, in consideration of Forty nine and 36/100 Dollars for 410 acres of unseated land in LeRoy Township, assessed in the warrantee name of Josiah Haines

Sold June 8, 1908.

Pennsylvania Game Commission
Bradley C. Bechtel, Esq.
May 15, 2018

Schedule of Payment of Taxes (Potter Abstract 84):



```
                    Schedule Payment of Taxes for all tracts Game Commission 10.
        #126         LeRoy & Barclay et al Twps.    Bradford County

    Year    Warrantee    Owner                        By Whom Paid, etc.

    Beginning to 1838  Robert Barclay credited with payment of taxes on tax record and No Sales on
                       Sales Book

    1838-39  All Tracts --------              Paid S. Rhodes

    40 to 53     "     Robert Barclay          credited "Paid"

    54 - 55      "                             Paid Edw. Overton

    56-57        "                             Paid S. Land Co. by J. McFarlane

    58-59        "                             Paid J. McFarlane

    60 to 63     "                             Paid J. McFarlane for S. Land Co.

    64-65        "                             Paid B. S. Russell for Barclay Coal Co.

    66-67        "                             Paid C. L. Ward for S. Land Co.

    68-71        "                             Paid J. Powell for S. Mfg. & Mining Co.

    72-81        "                             Paid Joseph Powell

    82-93        "                             Paid Schraeder Mining & Mfg. Co.

    94 to 1902   "                             Paid Union Tanning Co.

    03-06        "                             Paid Central Penna. Lumber Co.

    1907      M. Gratz, C. Hall, W. Parker, & W. Wilson tracts Paid Central Penna. Lumber Co.
                                                                Others Sold

    1908                                        Paid Central Penna. Lumber Co.

    09-19                                       Paid Central Penna. Lumber Co.

    1920         Not paid.
```

The Percheron Abstract at pages 91 to 117 contains photographic images of Assessment Books for various years for Leroy Township.  The reports provided by Gregory S. Gass for the Proctor Defendants ("Gass Exhibits") contain photographic images of the Unseated Land books from 1890 through 1930.  Following is a table summarizing the information relative to the Subject Lands as revealed by the Gass Exhibits for selected years:

| Year | Acres | Warrantee Name | Value | Paid by - Notes Etc |
|------|-------|----------------|-------|---------------------|
| 1901 | 410 | Haines Josiah | 1845 | Dec 11 1901 by Union Tanning Company |
| 1902 | 410 | *Hines Joseph [sic]* | 1845 | Dec 18 1902 by Union Tanning Company |
| 1903 | 410 | *Hines Joseph [sic]* | 1845 | Dec 22 1903 by CPL Co. |
| 1904 | 410 | *Hines Joseph [sic]* | 2460 | Dec 25 1904  Central Penna Lumber Co. |
| 1905 | 410 | *Hines Joseph [sic]* | 2460 | Nov 17 1905  CPL Co. |
| 1906 | 410 | *Hines Joseph [sic]* | 2460 | Dec 4 1906 Central Penna Lumber Co. |
| 1907 | 410 | Josiah Haines | 2460 | Sold June 8, 1908 to Calvin H. McCauley |
| 1908 | 410 | Josiah Haines | 2460 | Dec 24 1908 Central Penna Lumber Co. |
| 1909 | 410 | Josiah Haines | 2460 | Dec 17 1909 Central Penna Lumber Co. |
| 1910 | 410 | Josiah Haines | 520 | Dec 21 1910 Central Penna Lumber Co. |

Pennsylvania Game Commission
Bradley C. Bechtel, Esq.
May 15, 2018

The Potter Abstract, the Percheron Abstract and the Gass Exhibits all consistently indicate that the Subject Lands were assessed as Unseated Lands with <u>no</u> indications in any of the abstracts of a separate assessment of the oil, gas and mineral estate.


**V.**
**COMMENTS**

**SCOPE OF EXAMINATION**
**COMMENT NO. 1**:

In preparation of this report I relied primarily on the contents of two (2) abstracts of title. The Percheron LLC abstract work was performed in the year 2016. The Potter Abstract work was likely performed in the year 1920. As is typical in any Pennsylvania title examination process the abstractors for both Percheron and Potter likely conducted their research in person at the Bradford County Courthouse. Additionally, both abstracts provide references to early instruments that were located in counties from which Bradford county was formed or the land records from the land office of the Commonwealth of Pennsylvania. Due to advancements in copying technology the Percheron Abstract includes actual copies of most of the instruments located and referenced therein. The Potter Abstract does not contain copies of the actual instruments but rather contains summarized notes of the instruments located. Both the Percheron Abstract and the Potter Abstract appear to be complete and diligently performed by individuals with proficient abstracting skills. The Potter Abstract includes an Opinion of Title dated November 22, 1920 authored by attorney John E. Potter which includes a review of the abstract as well as some typical requirements that should be completed prior to closing on the proposed transaction. The Percheron Abstract and the Potter Abstract are consistent in their coverage of the public records pertaining to the Subject Lands, with the Potter Abstract having far greater coverage of title events pre-1868.

I note that the records related to assessments as provided by both Percheron LLC and Gregory S. Gass (Proctor Expert) were not located within the Official Records of the Office of the Chief Assessor of Bradford County, but rather were located and photographed at the Bradford County Historical Society. I am not aware of the reason for the removal of the records from the Courthouse to the Historical Society but in my experience in counties throughout north central Pennsylvania this is not atypical. It is my understanding that the Assessment Office is not subject to the same record keeping requirements as the Office of the Recorder of Deeds and accordingly the assessment offices throughout the Commonwealth often donate or discard records that they consider to no longer be relevant to the administration of their duties. As transfers based on these assessments are nearly always memorialized in deeds or other records located and properly indexed within the office of the Recorder of Deeds, and also subject to Statutes of Limitations based upon record dates, the continued maintenance of these "ancient" records by the assessment office may not be necessary under Pennsylvania law.

Pennsylvania Game Commission
Bradley C. Bechtel, Esq.
May 15, 2018

**1908 UNSEATED TAX SALE - "TITLE WASH"**
**COMMENT NO. 2:**

      With the discovery of the Marcellus Shale in the Commonwealth of Pennsylvania there came renewed focus on the impact of tax sales on severed oil gas and mineral estates.   Every historical abstract that I have reviewed clearly directed the commencement of a new chain of title after every unseated tax sale based on the holdings of early Pennsylvania case law.  Nevertheless, with the high upfront bonuses being paid for leasing rights and the increased exploration in parts of the Commonwealth that have not been productive for oil and gas ever, it did not take long for the courts to be faced with decisions analyzing the effect of these early tax sale laws.   Despite the predictions of recent legal commentary[4], in July of 2016 the Pennsylvania Supreme Court came down with the decision in *Herder Spring v Keller*[5] that confirmed prior precedent.

      After an extensive review of the historical law regarding tax sales of unseated land in Pennsylvania, the *Herder Springs* court concluded that based on early tax sale statutory law and prior common law precedent an unseated tax sale, absent a separate assessment for the severed oil and gas estate, will rejoin the previously severed oil and gas estate with the surface estate.   Thus, confirming that the concept known as "Title Washing" continues to the be the law of the Commonwealth of Pennsylvania.

**1.**       **Application of "Title Wash" to Subject Lands**

      Here, it is clear that the Subject Lands were exposed to a Tax Sale in 1908.  Here, it is also clear that the immediately prior to the tax sale the Subject Lands were classified as Unseated Lands by the officials of Bradford County for taxation purposes.  The Materials Examined indicate that for the year 1907 the Subject Lands were assessed as Unseated Lands in Leroy Township, Bradford County, PA.  The Subject Lands contained a county valuation of 2,460 and were subject to taxes totaling $44.28[6].  CPL did not pay the taxes due and owing against the Subject Lands and the Subject Lands were thus advertised[7] to be sold, pursuant to the then applicable statute, on the second Monday in June of the following year - June 8, 1908.

      Based upon entries in the Unseated Land books as revealed in the Gass Exhibits and elsewhere in the Materials Examined the Subject Lands were purchased at the June 8, 1908 tax sale by Calvin H. McCauley, Jr. for $49.36.  A copy of the record (TS 7-189) indicating that a Deed from the Treasurer of Bradford County was made to Calvin H. McCauley, Jr. can be found

---

[4] See e.g. Ronald L. Hicks, Jr. & David G. Oberdick, Debunking The Myths Surrounding Natural Gas Title Washing: "How Can One's Title Be Divested if Natural Gas Was Not And Cannot Be The Subject Of A Proper Real Estate Tax Assessment," 85 Pa. Bar Q. 14 (2014)

[5] See *Herder Spring Hunting Club v. Keller*, 143 A.3d 358 (Pa. 2016)

[6] The relative price worth of $44.28 from 1907 to 2017 is $1,290 using the Consumer Price Index calculator accessed on May 1, 2018 at https://www.measuringworth.com/calculators.

[7] The Proctor Exhibits at Pacer 105-1 thru 170-2, reveal proper advertisements appearing in the Bradford Argus and the Bradford Republican throughout April and May of 1908.  See Exhibit attached hereto.

Pennsylvania Game Commission
Bradley C. Bechtel, Esq.
May 15, 2018

at the Percheron Abstract 79.  More than two years after the purchase of the Subject Lands, Calvin H. McCauley, Jr. conveyed the Subject Lands and other lands to the Central Pennsylvania Lumber Company (DR 301-401, Percheron Abstract 76).

<u>Chart of the "Title Wash" of the Subject Lands  - 1908 Tax Sale</u>



Pennsylvania Game Commission
Bradley C. Bechtel, Esq.
May 15, 2018

## 2.    Analysis of 1920 Deed to the Commonwealth of Pennsylvania

As a result of the application of the "Title Wash" to the Subject Lands, the analysis of the conveyance of the Subject Lands from the Central Pennsylvania Lumber Company ("CPL") to the Commonwealth of Pennsylvania is central to the ownership of the oil, gas and minerals as set forth herein (the "1920 Deed"). If CPL effectively reserved the oil, gas and minerals via the 1920 Deed then the oil, gas and mineral estate would have remained with CPL and its successors. However, if the 1920 Deed does not reserve the oil, gas and minerals in favor of CPL, then the oil, gas and mineral estate would be vested with the Commonwealth of Pennsylvania. By the 1920 Deed, dated December 14, 1920, the Central Pennsylvania Lumber conveys 7,492.9 Acres including the Subject Lands to the Commonwealth of Pennsylvania (DR 342-376), with the following language concerning the oil, gas and minerals:

> "This conveyance is made subject to all the minerals, coal, oil, gas or petroleum found now or hereafter on or under the surface or any or all of the lands described in each of the above mentioned parts or divisions; together with the right and privilege or [sic] ingress, egress and regress upon said lands for the purpose of prospecting for, or developing, working or removing the same, as fully as said mineral rights were excepted and reserved in deed dated October 27, 1894, from Thomas E. Proctor et al to the Union Tanning Company, recorded in the office for the recordeing [sic] in Bradford County in deed book Vol. 205, page 436.

> Also subject to all the reservations, exceptions, covenants and stipulations contained in said recited deed from Thomas E. Proctor et al to the Union Tanning Company, and in a deed from the Union Tanning Company to the Central Pennsylvania Lumber Company, above recited, dated May 25, 1903, of record as aforesaid in deed book Vol. 251 page 520.

> . . . . . .

> Together with all and singular the improvements, ways, waters, water-courses, rights, liberties, priviliges, hereditaments and appurtenances, whatsoever thereunto belonging, or in anywise appertaining, and the reversions and remainders, rents, issues and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of the said party of the first part, in law, equity, or otherwise howsoever, of, in and to the same and every part thereof.

> To have and to hold the said described tracts of land with the hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said party of the second part, its successors and assigns, to and for the only proper use and behoof of the said party of the second part, its successors and assigns forever."

Here, the 1920 Deed does not contain clear language of reservation in favor of CPL. If CPL had desired to reserve the oil, gas and minerals in the 1920 Deed they could have by employing standard reservation language as follows:  EXCEPTING and RESERVING unto the grantor, its

Pennsylvania Game Commission
Bradley C. Bechtel, Esq.
May 15, 2018

successors and assigns, all oil, gas and minerals in and under the above conveyed land[8]. CPL did not do so, and instead conveyed "subject to" prior reservations. As a result of our analysis and interpretation of the Title Wash as set forth above these prior reservations were extinguished by the 1908 Tax sale – Title Wash. Significantly here, the 1920 Deed also contained a complete Habendum Clause which served to transfer the oil, gas and minerals, then vested in CPL, to the Commonwealth.[9]


**PLATS, SURVEY AND ACREAGE**
**COMMENT NO. 3**:

Your attention is directed to the Plats depicting the location of the Subject Lands. These are copies of Plats provided with the abstract materials or from PGC files which are intended to depict the location of the Subject Lands. As far as we are aware, the location of the Subject Lands as depicted on the Plats is correct. However, we have made no independent inspection of the Subject Lands or attempted to verify the accuracy of the Plats. The original survey of the Subject Lands contains a stated acreage of 407.75 acres. From 1880 thru 1894 the Subject Lands were assessed as containing 388 acres. From 1895 thru 1920 the Subject Lands were assessed as 410 Acres (*See* Potter Abstract 85). The Materials Examined do not contain a recent survey of the Subject Lands. This Opinion does not cover any matter of conflict or discrepancy with respect to survey, area or boundary.


**ROADS, RAILROADS, AND WATERWAYS**
**COMMENT NO. 4**:

Your attention is directed to the references to roads, railroads and waterways as indicated on the Plats and within the Materials Examined. The Materials Examined did not include sufficient information for us to determine the ownership of the oil, gas and minerals in and under the roads, railroads and waterways, if any, that may traverse the Subject Lands. The PGE should conduct further investigation into the possible existence of roads, railroads and waterways that may traverse the Subject Lands including the rail road referenced hereinabove as ESMT1.


**VI.**
**LIMITATIONS**

This Opinion does not cover any matters not revealed by the Materials Examined, which may include any of the following: (a) area, boundaries, location of the land, wells and

---

[8] In the 1920 Deed, CPL did effectively reserve a right-of-way by inserting the language "Also excepting and reserving unto the grantor, its successors and assigns, a right-of-way . . ."

[9] See *Yuscavage v. Hamlin*, Supreme Court of Pennsylvania, 391 Pa. 13 (1957) holding that a conveyance of "all the surface or right of soil" along with the Habendum Clause covers every vestige of interest which the Grantor then had.

Pennsylvania Game Commission
Bradley C. Bechtel, Esq.
May 15, 2018

improvements, rights of parties in possession, and other matters ascertainable only by investigation and/or survey on the ground; (b) forgeries, non-delivery of deeds and conveyances, incapacity of parties due to mental condition, minority or marital status, execution by a person other than true owner but having identical name, and other matters of execution, acknowledgment, delivery and genuineness not apparent on the face of the documents examined; (c) mechanics', materialmen's, repairmen's, employees', contractors', operators', tax and other liens and charges not of record; (d) bankruptcy, insolvency, reorganization, moratorium and similar laws; (e) rights reserved to or vested in any governmental, statutory or public authority with respect to zoning, the regulation of oil and gas operations and production, or otherwise regulating or restricting activity on or use of the premises; (f) rules, regulations and orders of the Pennsylvania Department of Environmental Protection, the Federal Energy Regulatory Commission, or any other public authority, including possible price regulation or dedication of gas reserves to interstate commerce; (g) matters relating to title to fixtures or personal property not revealed by the Materials Examined, including Uniform Commercial Code filings; (h) matters relating to environmental conditions and laws and liability for contamination arising therefrom; (i) the effect of state and federal securities laws and regulations; (j) unsubmitted and unrecorded agreements and understandings, (k) ingress and egress to the Subject Lands or any other access matters; (l) incomplete or illegible instruments supplied by any party; and (m) we do not warrant the Materials Examined in any manner. Furthermore, this Opinion is rendered solely and exclusively for the use and benefit of the Pennsylvania Game Commission and for no other party, and may not be used or relied upon by any other person or entity or quoted in whole or in part or otherwise referred to in any report or document furnished to any person or entity without prior written consent of the undersigned.

Very truly yours,

J.C. Wilkinson, III

The Bradford Argus – April 23, 1908

# Treasurer's Sale of Unseated Lands.

In pursuance of the several Acts of Assembly having reference to the assessment of taxes upon unseated lands in the Commonwealth of Pennsylvania, and the sale of the same for the non payment thereof, the undersigned, Treasurer of Bradford County, will expose to public sale at the Treasurer's Office, in the Borough of Towanda, on the second Monday of June next, being,

## JUNE 8, 1908,

At one o'clock, p. m., the several tracts under the following names, warrantee or owners, unless prior payment of taxes and interest at per cent. interest thereon be made. Interest will be collected from January 1, 1907, on 1906 taxes; and from January 1, 1908, on 1907 taxes. Also 50 cents will be collected on each tract for advertising:

| No. Acres | Warrantee Names. | Year. | Amount of Taxes. 1906 | 1907 |
|---|---|---|---|---|
| | **BARCLAY TOWNSHIP** | | | |
| 234¼ | Adlum, John | | | 37 63 |
| 204 | Biddle, Mark J. | | | 18 99 |
| 25 | Biddle, William M. | | | 2 35 |
| 150 | Biddle, James | | | 29 70 |
| 438 | Barrow, John, Jr. | | | 46 72 |
| 96 | Cunningham, D. H. (1-10 interest). | | | 45 |
| 214 | Erwin, Richard | | | 39 53 |
| 23 | Groff, John | | | 2 17 |
| 20 | Hilzheimer, Thomas. | | | 2 92 |
| 157 | Hilzheimer, Jacob | | | 14 76 |
| 40 | Hilzheimer, Robert | | | 3 76 |
| 25 | Hilzheimer, Jacon | | | 2 35 |
| 238 | Ladley, Andrew. (1-10 interest) | | | 2 23 |
| 100 | Ladley, Andrew. (1-10 interest) | | | 2 35 |
| 30 | Ladley, Joseph. (1 10 interest) | | | 28 |
| 330 | Ladley, Joseph. (1-10 interest) | | | 3 10 |
| 434 | Ladley, Peter. (1-10 interest) | | | 4 09 |
| 160 | Reed, Collinson | | | 25 30 |
| 211 | Shoemaker, James | | | 19 83 |
| 212 | Stewart, Walter. (1-10 interest) | | | 1 99 |
| 58 | Tybout, Andrew | | | 7 97 |
| | **LeROY TOWNSHIP.** | | | |
| 199 | Adlum, John | | | 9 00 |
| 237 | Biddle, M. J. | | | 10 63 |
| 432 | Biddle, W. N. | | | 63 31 |
| 440 | Barron, John, Sr | | | 19 80 |
| 150 | Boynton, Peter | | | 6 78 |
| 91 | Biddle, Clement | | | 4 93 |
| 403 | Boyd, John | | | 18 14 |
| 343 | Grayden, Andrew | | | 15 42 |
| 390 | Gratz, Hiram | | | 14 83 |
| 333 | Gratz, Bernard | | | 14 98 |
| 230 | Gratz, Simeon | | | 10 35 |
| 444 | Henry, Joseph | | | 44 96 |
| 410 | Haines, Josiah | | | 44 28 |
| 466 | Pennington, Benjamin | | | 21 48 |
| 341 | Patton, John | | | 15 39 |
| 227 | Reed, Collinson | | | 10 27 |
| 35 | Reed, Collinson | | | 1 65 |
| 452 | Shoemaker, James | | | 20 35 |
| 257 | Simons, James | | | 11 61 |
| 47 | Simons, James | | | 4 75 |
| 174 | Beck, Henry | | | 17 62 |
| 160 | Groff, John | | | 16 20 |
| 380 | Dundas, Thom s. | | | 38 48 |
| 291 | Biddle, James | | | 29 44 |
| | **MONROE TOWNSHIP.** | | | |
| 17 | Cunningham, D. H. (1-10 interest) | | | 4 |
| 65 | Moore, John | | | 1 24 |
| 144 | Stewart, Walter. (1-10 interest) | | | 16 |
| 45 | Woodruff, Hannah | | 1 10 | 1 01 |
| | **OVERTON TOWNSHIP.** | | | |
| 370 | Betz, John | | | 12 58 |
| 868 | Betz, James | | | 131 34 |
| 104 | Cooley, Henry | | | 3 64 |
| 200 | Castator, George | | | 6 80 |
| 273 | Erwin, Richard | | | 31 70 |
| 10 | Ellis, Marcy | | 38 | |
| 384 | Fritz, Samuel. | | | 13 04 |
| 266 | Fritz, John | | | 8 77 |
| 437 | Hardy, Samuel | | | 29 71 |
| 437 | Hardy, James | | | 14 86 |
| 282 | Hilzheimer, Jacob | | | 38 85 |
| 400 | Hampton, Jonathan | | | 13 60 |
| 100 | Ladley, Andrew. (1-10 interest) | | | 34 |
| 30 | Moore, John | | 1 14 | 1 62 |
| 40 | Seeley, Henry | | | 27 20 |
| 65 | Seeley, Peter | | | 13 60 |
| 382 | Seeley, Joseph | | | 26 98 |
| 30 | Tybout, Andrew | | | 1 02 |
| 35 | Tybout, Andrew | | | 86 |
| 50 | Woodruff, Hannah | | 2 66 | 1 70 |
| 264 | Haines, John F. (owner) | | 17 63 | 18 78 |
| 316 | Haines, John F. (owner) | | 36 44 | 12 78 |

Treasurer's Office, Towanda, Pa., April 9, 1908.

W. F. WATERS, County Treasurer.