## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, PENNSYLVANIA GAME COMMISSION, | : | CIVIL ACTION – LAW |
| | : | |
| | : | CASE NO. 1:12-CV-1567 |
| | : | |
| Plaintiff, | : | JUDGE: Christopher C. Conner |
| | : | |
| v. | : | |
| | : | |
| THOMAS E. PROCTOR HEIRS TRUST and the MARGARET O.F. PROCTOR TRUST, | : | |
| | : | |
| Defendants. | : | [Electronically Filed] |

### PLAINTIFF'S RESPONSE TO DEFENDANTS RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Local Civil Rule 56.1, the Commonwealth of Pennsylvania, Pennsylvania Game Commission (the "PGC") hereby responds to Defendants' Response to the Plaintiff's Statement of Undisputed Material Facts In Support of Plaintiff's Motion for Partial Summary Judgment (ECF 129) ("SMF"):[1]

1-19.  Paragraph 1-19 of Plaintiff's Statement of Undisputed Material Facts

---

[1]    References herein to "Proctor Trusts Ex." are to the exhibits submitted by Defendants, the Thomas E. Proctor Heirs Trust and Margaret O.F. Proctor Trust (collectively the "Proctor Trusts") in support of their motion for partial summary judgment.  References herein to "PGC Ex." are to the exhibits submitted by the PGC in opposition the Proctor Trusts' motion, which are included in the PGC's appendix (ECF 126) filed with its Motion for Partial Summary Judgment.

1

In Support of Plaintiff's Motion for Partial Summary Judgment (ECF 125) are hereby incorporated herein as if fully set forth.

## RESPONSE TO COUNTERSTATEMENT OF FACTS

48.    The PGC hereby incorporates by reference Paragraphs 1-47, including each and every subparagraph, set forth in the Plaintiff's Response to Statement of Undisputed Material Facts in Support of Defendants' Motion for Partial Summary Judgment (ECF 121), as if fully set forth.

49.    Disputed.  It is disputed that for the period between 1894 and 1931, there were no separate assessments for severed oil, gas, mineral or coal rights for any property located in LeRoy Township, Bradford County.  In his declaration, Mr. Gass states that he examined assessment records for unseated land from the relevant time period and was unable to find any records regarding separate assessments for severed oil, gas, mineral or coal rights in *two townships* (LeRoy and Barclay Townships).  Glaringly absent from Mr. Gass's declaration is any statement that he was unable to find any records regarding separate assessments for severed oil, gas, mineral or coal rights in any assessment records for *Bradford County*.  In other words, that the assessment records for two townships in Bradford County do not reflect separate assessments for severed oil, gas, mineral or coal rights does not mean that there are no such records for any township in Bradford County.

To the extent this is material or relevant, it is not disputed that the Proctor

Trusts' predecessors did not ensure that their severed interests in the Josiah Haines Warrant were separately assessed, resulting in the loss of the severed interests at the 1908 tax sale of the Josiah Haines Warrant to Calvin H. McCauley, Jr.  It is disputed that severed oil, gas, mineral or coal rights were incapable of being assessed.  *See* PGC Ex. A (Declaration of J.C. Wilkinson, III).  *See also* Reply Declaration of Charles Rice Kendall In Support of Defendants Motion For Partial Summary Judgment and in Opposition to Plaintiff's Motion for Partial Summary Judgment, and the accumulated assessment records for McIntyre Township, Lycoming County which show a statement regarding assessment of severed interests (ECF 130, ECF 131); Proctor Trusts Ex. 59 (indicating taxes were requested on mineral rights only).

50.    Disputed.  The PGC's response to paragraph 49 is incorporated by reference.  By way of further response, these unauthenticated statements are hearsay.  No written document is attached showing such a Recapitulation Statement, and the statement by Mr. Gass as to what these Recapitulation Statements might say is hearsay.  There is no witness alive who can testify as to the statements in these documents or what the assessment office was notified about in order to assess.  The public record indicates that the predecessors to the Proctor Trusts took no steps at any time to protect their severed interests, nor to seek assessment of their interests with regard to the Josiah Haines Warrant, or any other warrants or tract in Bradford County, either before or after 1908.  *See* PGC Ex. A (Declaration of J.C. Wilkinson,

III).

51.    Disputed.  The PGC's response to paragraph 49 is incorporated by reference.  By way of further response, these unauthenticated statements are hearsay. No written document is attached showing such a Recapitulation Statement, and the statement by Mr. Gass as to what these state are hearsay.  There is no witness alive who can testify as to the statements in these documents or what the assessment office was notified about in order to assess.  The public record indicates that the predecessors to the Proctor Trusts took no steps at any time to protect their severed interests, nor to seek assessment of their interests with regard to the Josiah Haines Warrant, or any other warrants or tract in Bradford County, either before or after 1908.  *See* PGC Ex. A (Declaration of J.C. Wilkinson, III).

52.    Disputed.  It is disputed that for the period between 1894 and 1931, there were no separate assessments for severed oil, gas, mineral or coal rights for any property located in Barclay Township, Bradford County.  The PGC's response to paragraph 49 is incorporated by reference.  By way of further response, to the extent this is material or relevant, it is not disputed that the Proctor Trusts' predecessors did not ensure that their severed interests in the Josiah Haines Warrant were separately assessed, resulting in the loss of the severed interests at the 1908 tax sale of the Josiah Haines Warrant to Calvin H. McCauley, Jr.  It is further disputed that severed oil, gas, mineral or coal rights were incapable of being assessed.  *See*

4

PGC Ex. A (Declaration of J.C. Wilkinson, III). *See also* Reply Declaration of Charles Rice Kendall In Support of Defendants Motion For Partial Summary Judgment and in Opposition to Plaintiff's Motion for Partial Summary Judgment, and the accumulated assessment records for McIntyre Township, Lycoming County which show a statement regarding assessment of severed interests (ECF 130, ECF 131); Proctor Trusts Ex. 59 (indicating taxes were requested on mineral rights only).

53.    Disputed.  The PGC's response to paragraph 49 is incorporated by reference.  By way of further response, it is disputed that the Recapitulation Statement excludes assessment of oil, gas, mineral or coal properties.  To the contrary, the Recapitulation Statements, which are substantially similar to those in Lycoming County (ECF 130, Exhibit 53), inform the assessor to return both seated and unseated property without reference to the nature of the real property.  The notations in Lycoming County (ECF 130, Exhibit 53) indicate that assessment notations may be made for severed oil, gas, mineral or coal properties where the assessor has been notified of such interests.

54.    Disputed.  The PGC's response to paragraph 49 is incorporated by reference.  By way of further response, the alleged undisputed fact in paragraph 54 is disputed because it is unclear, misleading and irrelevant.  The assessments were made with reference to real property, which included at the time and still includes oil, gas, mineral or coal properties.  To the extent such interests are part of "real

property" the statement is disputed because real property is specifically referenced. To the extent the alleged undisputed fact seems to indicate the assessment of seated lands does not include oil, gas, mineral or coal properties, it is disputed and clear that is not the meaning. To the extent the alleged undisputed fact portends to indicate that the assessment of real property does not include real property interests of all types, including oil, gas, mineral or coal properties, the alleged undisputed fact is misleading. To the contrary, oil, gas and minerals were assessable at the time. *See* PGC Ex. A (Declaration of J.C. Wilkinson, III). *See also* Reply Declaration of Charles Rice Kendall In Support of Defendants Motion For Partial Summary Judgment and in Opposition to Plaintiff's Motion for Partial Summary Judgment, and the accumulated assessment records for McIntyre Township, Lycoming County which show a statement regarding assessment of severed interests (ECF 130, ECF 131); Proctor Trusts Ex. 59 (indicating taxes were requested on mineral rights only).

55. Disputed. The PGC's response to paragraph 49 is incorporated by reference. By way of further response, the alleged undisputed fact 55 is irrelevant to these proceedings as it concerns assessment procedures of seated lands. The statement itself is not accurate, as nothing in Exhibit 52 indicates the values of improvements were being valued separately from the land. Nothing in Exhibit 52 indicates that the oil, gas, minerals or coal was being valued separately from the land which was being valued. Exhibit 52 further indicates instructions purporting to be

from November of 1893, (which contains strikeouts in red pen at an unknown time by unknown persons), but which precedes documents which purport to be dated from 1922. This Exhibit is irrelevant in time, scope, unauthenticated, and incapable of being relied on as to authenticity. To the extent relevant, it contradicts the alleged undisputed facts numbers 51-54, because the letter indicates that the assessors did make note of coal mines (or coal rights) and valued land accordingly. Finally, it is disputed that Exhibit 52 is found in the public records of Bradford County.

56.     Paragraph 56 is disputed in whole, and in all its subparts. It is disputed that the customary practice of Thomas E. Proctor was to report the severance of subsurface interests to County officials and it is averred that the customary practice in Bradford and Sullivan Counties appears from the public record to be not to report the severance of subsurface interests. *See* PGC Ex. A (Declaration of J.C. Wilkinson, III). The customary practice of U.S. Leather Company is not only irrelevant to the issues in this case, but also is not evidenced by documents placed in record by the Proctor Trusts.

a.     Disputed. The assessment record for McIntyre Township, Lycoming County for 1905 are irrelevant to this proceeding. These records are most certainly not found in the public records of Bradford (or Sullivan) Counties. To the extent relevant, these records show that mineral rights in unseated lands could be assessed.

b.    Disputed.    The assessment record for McIntyre Township, Lycoming County for 1907 are irrelevant to this proceeding.  These records are most certainly not found in the public records of Bradford (or Sullivan) Counties.  To the extent relevant, these records show that mineral rights in unseated lands could be assessed.

c.    Disputed.    The assessment record for McIntyre Township, Lycoming County for 1908 are irrelevant to this proceeding.  These records are most certainly not found in the public records of Bradford (or Sullivan) Counties.  To the extent relevant, these records show that mineral rights in unseated lands could be assessed.

d.    Disputed.    The assessment record for McIntyre Township, Lycoming County for 1909 are irrelevant to this proceeding.  These records are most certainly not found in the public records of Bradford (or Sullivan) Counties.  To the extent relevant, these records show that mineral rights in unseated lands could be assessed.

e.    Disputed.  The maps do not establish that there was no coal production un McIntyre Township "during this time period," which is unspecified. Whether there was coal production in McIntyre Township, Lycoming County "during this time period" is irrelevant to this proceeding.  These records are most certainly not found in the public records of Bradford (or Sullivan) Counties.  f.

8

f.     Disputed.  There is no indication what is "near" or "far" with respect to the Josiah Haines Warrant, not what "this time period" means.  To the contrary, it is certain there was oil and gas production in Pennsylvania from and after the drilling of Drake's Well in 1859 and the possibility of oil and gas was well known.

57.    Disputed.  The assessments in Lycoming County are irrelevant.  To the extent relevant, the documents found at Reply App. Ex. 53-56 reference both surface and subsurface estates.  The alleged Undisputed Fact 57 is not a "fact", but is rather a lament that the records over a century ago did not anticipate the Proctor Trusts predecessors' failing to report their severed interests (in another County), the purchase of the unseated warrant by a stranger to the title, the sale back of that title to Central Pennsylvania Lumber Company, a subsequent sale to the Commonwealth, the passage of a hundred years, the development of the Marcellus Shale Gas Play, the baseless claim of the Proctor Trusts to interests long lost and ignored, and the necessity of litigants in this more modern era desiring records to be kept a certain way in Lycoming County so as to infer something in Bradford County.  The willful ignorance of the Proctor Trusts, or a landman, to understand what they are reading is not a fact.

58.    Disputed.  To the contrary, there is a pattern that the Proctor Trusts predecessors did not monitor or pay taxes on the reserved subsurface interests in

Bradford and Sullivan Counties. *See* PGC Ex. A (Declaration of J.C. Wilkinson, III).

59.    Disputed.  The unauthenticated letters found in Reply App. Exhibits 60-66 do not mention anything with regard to the Josiah Haines Warrant, the 1908 tax sale, or oil and gas.  It is entirely unclear what property is referenced.  It is completely unknowable what the response was to the self serving letters.  However, it is clear from the record that neither Calvin H. McCauley, Jr., nor Central Pennsylvania Lumber Company, nor the Commonwealth ever purchased oil, gas, mineral or coal rights from the Proctor Trust or their predecessors.  None of the letters in Reply App. Exhibits 60-66 are in the public records of any county in Pennsylvania.  The public record does not indicate, support, or evidence, in any way, that Calvin H. McCauley, Jr. and CPLC recognized that the 1908 tax sale had no impact on the former Proctor Subsurface Estate.

a.    Disputed.  Reply Ex. 60 is a letter from James Proctor to C.H. McCauley, Esquire which speaks to desiring a meeting in October of 1909.  The letter contains no indication why they were to meet and is wholly irrelevant and incompetent as evidence as to any issues in this case.

b.    Disputed.  This subparagraph does not support the contention that C.H. McCauley, Jr. and Central Pennsylvania Lumber Company recognized that the 1908 tax sales (presumably with regard to the Josiah Haines Warrant which is at

issue) had no impact on the former Proctor subsurface estate. There is no evidence that any of the tracts mentioned are part of the Josiah Haines Warrant, nor even that they are in Bradford County and simply is incompetent for the purpose for which it is offered. There is no indication C.H. McCauley, Jr. either sought such a letter, or even responded to such a letter, let alone in a manner indicating he (or CPLC) recognized any interests of James Proctor.

c.    Disputed.    Presumably after not receiving a satisfactory response, James Proctor again wrote C.H. McCauley, Jr. over two years later requesting advice on what properties were owned by Proctors (despite their monitoring and paying taxes). Although the letters indicate some response, the response appears to have been to deflect Mr. Proctor to someone else (not recognize any subsurface estate) and to limit the inquiry to the coal in the mentioned McIntyre Tract (which is not at issue in this case). The letter is incompetent to show anything with respect to the recognition of C.H. McCauley, Jr., CPLC, or anyone else with regard to the Josiah Haines Warrant.

d.    Disputed. Paragraph 59(d) is purportedly offered to support the contention the C.H. McCauley, Jr. and CPLC recognized that the 1908 tax sale had no effect on the Proctor subsurface estate. However, the proffered letter is unauthenticated hearsay that is neither to, or from C.H. McCauley, Jr., not Central Pennsylvania Lumber Company, does not identify any land whatsoever and is

wholly incompetent hearsay for the purpose offered.

e.     Disputed.  Paragraph 59(e) is purportedly offered to support the contention the C.H. McCauley, Jr. and CPLC recognized that the 1908 tax sale had no effect on the Proctor subsurface estate.  However, the proffered letter is unauthenticated hearsay that clearly identifies the land as 700 acres near Trout Run which is not in Bradford County and is not in dispute in this case.  As such it is wholly incompetent hearsay for the purpose offered.

f.     Disputed.  Paragraph 59(e) is purportedly offered to support the contention the C.H. McCauley, Jr. and CPLC recognized that the 1908 tax sale had no effect on the Proctor subsurface estate.  However, the proffered letter is unauthenticated hearsay that fails to identify the land referenced.  Presumably, the drill records relate to either the McIntyre Tract or the 700 acres near Trout Run, which is not in Bradford County, and neither of which are at issue in this case.  As such it is wholly incompetent hearsay for the purpose offered.

g.     Disputed.  Paragraph 59(e) is purportedly offered to support the contention the C.H. McCauley, Jr. and CPLC recognized that the 1908 tax sale had no effect on the Proctor subsurface estate.  However, the proffered letter is unauthenticated hearsay that clearly identifies the land referenced as being none of the land at issue in the present case, nor in Bradford County. As such it is wholly incompetent hearsay for the purpose offered.

12

60.    Disputed.    The letters found in Rep. App. Exhibit s 67-71 are unauthenticated hearsay not found in the public record and are removed from the issues in this case both in time and space.  None of them concern the Josiah Haines Warrant, nor any other warrant identified as being part of this case.  As such they are not competent evidence of potential purchase by CPLC of subsurface rights that went through the 1908 tax sales.

a.    Disputed.    The PGC's response to paragraph 60 is hereby incorporated herein by reference as if fully set forth.  Paragraph 60(a) and the letter referenced therein (Exhibit 67) clearly referenced the Rock Run property or any other properties that the Proctor Trusts Predecessors "might have" in Pennsylvania. The letter also references those properties in which Jonah A. Hill had a 2/3 interest and the Proctor Estate a 2/3 interest, where the public record clearly shows that the properties at interest in this litigation were either owned 50% by each prior to the 1908 tax sale, or 100% by the Proctor Estate prior to the 1908 tax sale.  As such, this is unauthenticated hearsay which is wholly incompetent for the purpose offered. To the extent relevant at all, the letter indicates that the old Carbon Run mine (the location of which the writer was uncertain but is referenced as being on one of two warrants only one of which may be in dispute – John Barron, Jr., although there are two John Barron Jr. Warrants – and there is no indication of what county those warrants may be in) had been "abandoned some years ago".  There is no indication

13

that the purpose of this letter was for the purchase of any rights by CPLC, nor even that C.H. McCauley, Jr. was working for a purchaser as opposed to working for Jonathan A. Hill or even the Proctors by 1920. There is no response to indicate what was done in the interim between 1908 and 1920 to result in this letter. As such, this letter is unauthenticated hearsay, not in the public record, and incompetent for the purposes offered.

b. Disputed. The PGC's response to paragraph 60 is hereby incorporated herein by reference as if fully set forth. Paragraph 60(b) and the letter referenced therein (Exhibit 68) contains no reference as to what property or operations are referenced. As such, this is unauthenticated hearsay which is wholly incompetent for the purpose offered. The map included with Exhibit 69 is undated, but appears to predate the 1908 tax sale, with no reference to CPLC or McCauley. Additionally, the coal lands marked (speculatively by C.H. McCauley, Jr.) do not show coal lands on the Josiah Haines Warrant or any other warrant identifiable as being at issue in this case. As such, this is unauthenticated hearsay which is wholly incompetent for the purpose offered.

c. Disputed. The PGC's response to paragraph 60 is hereby incorporated herein by reference as if fully set forth. Paragraph 60(c) and the letter referenced therein (Exhibit 70) contains no indication as to what property is referenced. As such, this is unauthenticated hearsay which is wholly incompetent

for the purpose offered. There is no indication this letter is in the public record of Bradford County and it is removed from the issues in this case by more than ten years.  To the extent relevant, the letter indicates that at some point in 1920, there were taxes assessed on the severed subsurface estate, in contradiction to Undisputed Fact 49 and 52.

       d.    Disputed.   The PGC's response to paragraph 60 is hereby incorporated herein by reference as if fully set forth.  Paragraph 60(d) and the letter referenced therein (Exhibit 71) contains no indication as to what property is referenced.  As such, this is unauthenticated hearsay which is wholly incompetent for the purpose offered. There is no indication this letter is in the public record of Bradford County and it is removed from the issues in this case by more than ten years.

       61.   Disputed.  The unauthenticated hearsay exhibits (Rep. App. Exhibits 72-82) are irrelevant, not in the public record, hearsay (not subject to an exception) and not competent for the purpose offered.  Ostensibly, these letters are offered to prove title of the Proctor estate to oil, gas, minerals and coal under the disputed property.  There is no way of knowing whether these letters concerned the properties in dispute, as the Proctor Heirs did own outright oil, gas, mineral and coal rights under several properties in Bradford County (which has been stipulated, see ECF 89).  None of them are temporal in time to the 1908 tax sale.

a.      Disputed.  The PGC's response to Paragraph 61 is incorporated herein by reference.  In addition, the letter, Rep. App. Ex. 72, references no location or county, does not contain any admission, or statement against interest and is not to a party in this case by which any knowledge or understanding of the content can be imputed.  It is simply incompetent to prove any of the issues in this case.

b.      Disputed.  The PGC's response to Paragraph 61 is incorporated herein by reference.  In addition, the letter, Rep. App. 73, references only being "near Forksville", which does not indicate whether it is part of the disputed property or the undisputed property, See Stipulation, ECF 89).  The letter is not to a party in this case by which any knowledge or understanding of the content can be imputed.  It is simply incompetent to prove any of the issues in this case.

c.      Disputed.  The PGC's response to Paragraph 61 is incorporated herein by reference.  In addition, the letter, Rep. App. 74, references no location. The letter is not to a party in this case by which any knowledge or understanding of the content can be imputed.  It is simply incompetent to prove any of the issues in this case.

d.      Disputed.  The PGC's response to Paragraph 61 is incorporated herein by reference.  In addition, the letter, Rep. App. 75, references no property or even what may have been the subject of the "papers" that were allegedly signed. The letter is not to a party in this case by which any knowledge or understanding of

the content can be imputed.  It is simply incompetent to prove any of the issues in this case.

       e.     Disputed.  The PGC's response to Paragraph 61 is incorporated herein by reference.  In addition, the letter, Rep. App. 76, references no property or even what may have been the property subject of the "lease" that was allegedly signed.  The letter is not to a party in this case by which any knowledge or understanding of the content can be imputed.  It is simply incompetent to prove any of the issues in this case.

       f.     Disputed.  The PGC's response to Paragraph 61 is incorporated herein by reference.  In addition, the letter, Rep. App. 77, references no property or even what may have been the property subject of the "option" that were allegedly mailed.  The letter is not to a party in this case by which any knowledge or understanding of the content can be imputed.  It is simply incompetent to prove any of the issues in this case.

       g.     Disputed.  The PGC's response to Paragraph 61 is incorporated herein by reference.  In addition, the letter, Rep. App. 78, tends to show that McCauley, Jr. and CPLC were leasing coal without reference to the Proctor Heirs or George A. Hill, and thus, actually tends to show the opposite of what is inferred by the Proctor Trusts.  More importantly, the letter is not to a party in this case by which any knowledge or understanding of the content can be imputed.  It is simply

17

incompetent to prove any of the issues in this case.

h.    Disputed.  The PGC's response to Paragraph 61 is incorporated herein by reference.  In addition, the letter, Rep. App. 79, references no property, although it refers to a "Frazer".  There is no evidence that such a Frazer operation is, or was, on any property in dispute in this case or any other.  The letter is not to a party in this case by which any knowledge or understanding of the content can be imputed.  It is simply incompetent to prove any of the issues in this case.

i.    Disputed.  The PGC's response to Paragraph 61 is incorporated herein by reference.  In addition, the letter, Rep. App. Ex. 80, references no property, although references to Frazer seem to be to the same, unidentified, Frazer operation mentioned in Rep. App. Ex 79.  There is no evidence that such a Frazer operation is, or was, on any property in dispute in this case or any other.  The letter is not to a party in this case by which any knowledge or understanding of the content can be imputed.  It is simply incompetent to prove any of the issues in this case.

j.    Disputed.  The PGC's response to Paragraph 61 is incorporated herein by reference.  In addition, the letter, Rep. App. 81, references no property.  The references to the "3 tracts mentioned" is never explained and there is no indication these are, or ever were, at issue in this case or any other.  The letter is not to a party in this case by which any knowledge or understanding of the content can be imputed.  It is simply incompetent to prove any of the issues in this case.

18

k.      Disputed.  The PGC's response to Paragraph 61 is incorporated herein by reference.  In addition, the letter, Rep. App. 80, references no property. The letter is not to a party in this case by which any knowledge or understanding of the content can be imputed.  It is simply incompetent to prove any of the issues in this case.

62.      Disputed.  These records were not in the public record at the time of the 1908 tax sale or the 1910 sale to CPLC.  Furthermore, the Exhibit (Rep. App. Ex 83) contains language explaining that the exceptions in the deed to the Commonwealth were for purposes of removing the oil, gas, minerals and coal from the warranty (see page 002358).  The affidavits indicate the properties listed (including Josiah Haines) were, in fact, unseated at the time of conveyance from 1894 to 1912 (see page 002362, 002363).  To the extent these are relevant, they tend to disprove several of the Proctor Trusts' key arguments.  The document clearly shows the knowledge and intent of the PGC that the 1908 Tax Sales were relied upon to cure all prior defects and irregularities in the chain of title (see page 2327).

Respectfully submitted,

PENNSYLVANIA GAME COMMISSION

DATE:  September 14, 2018          s/Bradley C. Bechtel
                                  Bradley C. Bechtel, Chief Counsel
                                  PA No. 49681
                                  W. Creigh Martson, Assistant Counsel
                                  PA No. 94759
                                  2001 Elmerton Ave

19

Harrisburg, PA 17110-9797
(717) 783-6530
brbechtel@pa.gov
wmartson@pa.gov
*Attorneys for Plaintiff*

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on September 14, 2018, I filed the attached document with the

Court's ECF system such that all counsel of record will be served automatically.


s/Bradley C. Bechtel
Bradley C. Bechtel