IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, PENNSYLVANIA GAME COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS E. PROCTOR HEIRS TRUST and the MARGARET O.F. PROCTOR TRUST,<br><br>Defendants. | Case No. 1:12-CV-1567<br><br>Chief Judge Conner /<br>Chief Magistrate Judge Schwab |

**SUPPLEMENTAL STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Local Civil Rule 56.1, Defendants Trustees of the Thomas E. Proctor Heirs Trust and Trustees of the Margaret O.F. Proctor Trust (collectively, the "Trusts"), identify the following additional undisputed material facts in support of their Motion for Partial Summary Judgment (ECF No. 94) and in opposition to Plaintiff's Motion for Partial Summary Judgment (ECF No. 123). These supplemental facts support the argument made in Section III of the Argument in the Trusts' Memorandum in Support of Motion for Partial Summary Judgment (ECF No. 118), *i.e.,* that the 1908 tax sale purchase by Calvin H. McCauley, Jr. operated as a *de facto* redemption that restored Thomas E. Proctor's heirs' title to the oil, gas and minerals associated with the subject property. These supplemental facts further support the argument made in Section VI of the Argument in the

1

Trusts' Memorandum in Support of Motion for Partial Summary Judgment (ECF No. 118), *i.e.,* that CPLC could not benefit from its own failure to comply with the law in order to obtain property rights to which it otherwise had no legitimate claim.

63. By letter dated August 19, 1931 to Central Pennsylvania Lumber Company ("CPLC"), John E. Potter (identified as "Examiner of Land Titles to the Board of Game Commissioners") wrote the following:

> I note in your [CPLC's] contract of sale an exception and reservation of oil, gas, coal and other minerals in, under or upon the said land which your company does not now own. . . .
>
> In this connection I may say that I have been furnished by the Game Commission with a copy of a letter from A. F. Jones, General Solicitor of your company, to the Game Commission, dated October 10, 1930. . . .
>
> The gist of this correspondence is that while the title to the land stood in the Central Pennsylvania Lumber Company, the title to the minerals, oil and gas stood in the heirs of Sherwood B. Davidge, under his exception and reservation in his deed to the Union Tanning Company . . . . Your company undertook to clear its title to the lands covered by this report by permitting the taxes for the year 1925 to become delinquent and by permitting the land to be sold at sale of unseated lands in 1926 to A. F. Jones, who is your General Solicitor. . . .
>
> The letter of Mr. Jones dated October 10, 1930 reports that your company [CPLC] considers itself under obligation to convey the minerals to the Davidge Estate, but that this report would probably show the title to stand of record in your company by virtue of the tax sale of 1926, and by inference the letter requests the consent of the Game Commission to your company's making such re-conveyance of the oil, gas and minerals at the present time . . . .
>
> Upon this subject I may say that ***I believe your company is under obligation to re-convey the oil, gas and minerals to***

2

*the Davidge Estate.  No doubt your company intended the tax sales of 1926 to clear your titles.  <u>It is probable, however, that the bids by Mr. Jones were paid with funds of your company and it is also probable that it was passably understood, without any need for discussion, that Mr. Jones would reconvey to your company his tax titles when they matured by expiration of the redemption period which deed of reconveyance he has in fact executed and delivered.  I am incl[in]ed to question whether under the circumstances state[d] the tax sales have any greater effect than that of redemption, in which case the title to the oil, gas and minerals would not be divested but still continue in the Davidge Estate.</u> . . . The primary purpose of unseated tax sales of course is to enforce the collection of taxes.  I know that such sales when bona fide made to disinterested bidders have been held by our Courts to pass title to both surface and minerals when the minerals are not separately assessed, yet I do not believe the decision of the Courts go so far as to hold that when an owner of the surface, under which minerals are excepted in his deed or in prior deeds of record and are not separately assessed, permits the taxes upon the surface to become delinquent in order to promote a tax sale and then such owner of the surface bids in such land himself, that the said surface owner, by such tax sale, divests the title of the mineral owner.*  I think the same is the situation when a corporation bids in the lands by its solicitor and pays the bids with its corporate funds, which I am assuming is the present case[.]  I am aware that the case of Hutchinson versus Kline, No. 199 Pennsylvania Reports, page 564 is cited in support of the doctrine that tax sales in the present case may divest the rights of the mineral owner.  However, careful reading and rereading of the facts and opinions of the Trial Court in that case which was confirmed on appeal to the Supreme Court, discloses no facts which justify the statement in the syllabus of the report.  The facts as I read them, do not indicate that Jerome Powell, purchaser at tax sale, was the owner of the surface prior to the sale, as the lands were assessed to Hamlin and Gilpin.  ***For this reason I will report these facts to the Game Commission for submission to the Attorney General with the recommendation***

> *that your company [CPLC] does not own the oil, gas and minerals* . . . .

Letter from Potter to CPLC, Aug. 19, 1931, Ex. 84, at PGC194-PGC198 (emphasis added).

64. In response to Mr. Potter's August 19, 1931 report, CPLC executed and delivered a deed to S. Richard Davidge conveying the oil, gas, coal and other minerals associated with the subject parcels, and stated that this deed "shows merely an intention to re-vest or confirm title to the reserve[d] estate." Letter from A.F. Jones to John E. Potter, Esq., Aug. 26, 1931, Ex. 85, at PGC223-PGC224.

65. By letter dated June 15, 1931, as produced from the business records of Defendant (the "PGC"), John E. Potter (identified as "Examiner of Land Titles to the Board of Game Commissioners") wrote the following to John J. Slautterback (identified as "Executive Secretary, Board of Game Commissioners"):

> It also seems to be a wide spread belief that the owner of land can permits his taxes to become delinquent and permit his land to be sold at tax sale and then buy it at such tax sale and so divest any outstanding claims to minerals or other interests and that such owner can thus use the method of tax sale of unseated land to improve his own title.
>
> The case of Hutchinson vs. Kline, 199 Pa. 564 is usually cited in support of this proposition. The Syllabus would seem to support this contention, but a careful reading of the whole report of that case does not disclose that Jerome Powell, who purchased at tax sale was the former owner who let his own taxes become delinquent.
>
> ***The practice of the Central Pennsylvania Lumber Company has been to let its land go to tax sale and have the lands bid in at tax sale by persons, whom from long continued dealings with the Company in making settlement for lands***

4

> *purchased by the Department of Forests and Waters and the Game Commission, I know to be the attorneys and Counsellors-at-Law for the said Corporation, and who, I surmise, pay their bids with the funds of the said Corporation and later re-convey the lands to the Corporation. I have been unwilling heretofore to recommend the acceptance of the title based wholly upon a tax sale where the taxes delinquent are those of the Corporation and the purchaser has been attorney of the Corporation*. . . .

Letter from Potter to Slautterback, June 15, 1931, Ex. 86, at PGC251-PGC252 (emphasis added).

67. Included among Mr. Potters' "long continued dealings with" CPLC was the December 14, 1920 purchase of properties that included the Josiah Haines Warrant at issue in the pending motions. *See* Plaintiff's Response to Statement of Undisputed Material Facts in Support of Defendants' Motion for Partial Summary Judgment (ECF No. 121), ¶ 39 ("The PGC does not dispute that it tasked John E. Potter with examining the titles to the Warrants and properties contained in Land Purchase Contract L-2."); *see also* L-2 Title Report, Ex. 2, at PGCP002842-47; Letter from Potter to Seth E. Gordon, Jan. 11, 1921, Ex. 49 (pages 117-118 of the L-2 Title Report).

68. The documents submitted herewith as Exhibits 84, 85 and 86 were produced by Plaintiff from its own business records in discovery in *Commonwealth of Pennsylvania, Pennsylvania Game Commission v. Thomas E. Proctor Heirs Trust* et al., No. 493 MD 2017 (Pa. Commw. Ct.).

Dated: December 21, 2018        Respectfully submitted,

/s/ Paul K. Stockman
Paul K. Stockman (Pa. ID No. 66951)

5

KAZMAREK MOWREY CLOUD LASETER LLP
One PPG Place, Suite 3100
Pittsburgh, PA 15222
Telephone: (404) 333-0572
Fax: (404) 812-0845
pstockman@kmcllaw.com

Laura A. Lange (Pa. ID No. 310733)
MCGUIREWOODS LLP
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
Telephone: (412) 667-6000
Fax: (412) 667-6050
llange@mcguirewoods.com