# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, PENNSYLVANIA GAME COMMISSION, | : CIVIL ACTION – LAW<br>:<br>: CASE NO. 1:12-CV-1567 |
| Plaintiff, | :<br>: JUDGE: Christopher C. Conner |
| v. | :<br>: |
| THOMAS E. PROCTOR HEIRS TRUST and the MARGARET O.F. PROCTOR TRUST, | :<br>:<br>: |
| Defendants. | :<br>: [Electronically Filed] |

## PLAINTIFF'S BRIEF IN SUPPORT OF OBJECTIONS TO REPORT AND RECOMMENDATION

PENNSYLVANIA GAME COMMISSION

DATE:  March 7, 2019

s/Bradley C. Bechtel
Bradley C. Bechtel, Chief Counsel
PA No. 49681
W. Creigh Martson, Assistant Counsel
PA No. 94759
2001 Elmerton Ave
Harrisburg, PA 17110-9797
(717) 783-6530
brbechtel@pa.gov
wmartson@pa.gov
*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

I.  INTRODUCTION .................................................................................................1

II.  ARGUMENT .....................................................................................................1

    A.  Standard of Review .................................................................................1

    B.  The Parties' Cross-Motions for Partial Summary Judgment ...............2

        1.  Seated versus unseated land ..........................................................2

        2.  Due process .....................................................................................8

            a.  The Court erred in concluding that the Proctor Trusts can assert a 14th amendment due process challenge to the tax sale .........................................9

            b.  The Court erred by not concluding that any due process challenge to the 1908 tax sale was time barred ...............................................................12

        3.  Whether McCauley was an agent of CPLC ...............14

    C.  The Proctor Trusts' Motion to Strike ...............................................16

III.  CONCLUSION .............................................................................................20

# TABLE OF AUTHORITIES

## Federal Cases

*Agnew v. United Leasing Corp.*, 680 Fed. Appx. 149 (4th Cir. 2017) .................13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................3

*Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195 (3d Cir. 2006) .................2

*Branco v. Norwest Bank Minnesota*, 381 F. Supp.2d 1274 (D. Haw. 2005) .................13

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) .................10

*Brown v. Astrue*, 649 F.3d 193 (3d Cir. 2011) .................2

*Carey v. Piphus*, 435 U.S. 247 (1978) .................9

*City of St. Paul v. Evans*, 344 F.3d 1029 (9th Cir. 2003) .................13

*D.H Overmyer Co. v. Frick Co.*, 405 U.S. 174 (1972) .................10

*Davis v. 24 Hour Fitness Worldwide, Inc.*, 75 F. Supp.3d 635 (D. Del. 2014) .................13

*In re Cicchetti*, 743 A.2d 431 (Pa. 2000) .................10

*Jennings v. McDowell*, 25 Pa. 387 (Pa. 1855) .................7

*Katzin v. United States*, 120 Fed. Cl. 199 (2015) .................18, 19

*Lewicki v. Washington County*, 431 Fed. Appx. 205 (3d Cir. 2011) .................14

*Nat'l Assistance Bureau, Inc., v. Macon Mem'l Intermediate Care Home, Inc.*, 714 F. Supp.2d 1192 (M.D. Ga. 2009) .................19

*Northumberland County v. Phila. & Reading Coal & Iron Co.*, 131 F.2d 562 (3rd Cir. 1942) .................3, 4, 5

*Palazzolo v. Rhode Island*, 533 U.S. 606 (2001) .................10

*Proctor v. Sagamore Big Game Club*, 166 F. Supp. 465
(W.D. Pa. 1958), *aff'd*, 265 F.2d 196 (3d. Cir. 1959) .................................. 12, 15, 16

*Santini v. Fuentes*, 795 F.3d 410 (3d Cir. 2015) .................................. 3

*Shelley v. Kraemer*, 334 U.S. 1 (1948) .................................. 9

*United States v. Clarke*, 445 U.S. 253 (1980) .................................. 11

*United States v. Dickinson*, 331 U.S. 745 (1947) .................................. 11

*United States v. Dow*, 357 U.S. 17 (1958) .................................. 11

## State Cases

*Bannard v. New York State Natural Gas Corp.*, 293 A.2d 41 (Pa. 1972) .................................. 3

*Bedford Downs Mgmt. Corp. v. State Harness Racing Comm'n Valley
View Downs*, 926 A.2d 908 (Pa. 2007) .................................. 10

*Burns v. Baumgardner,* 449 A.2d 590 (Pa. Super. 1982) .................................. 28

*Cornwall Mt. Invs., L.P. v. Thomas E. Proctor Heirs Trust*,
158 A.3d 148 (Pa. Super. 2017) .................................. 3, 7, 11, 33

*Everhart v. Dolph*, 19 A. 431 (Pa. 1890) .................................. 3

*George v. Messinger*, 73 Pa. 418 (Pa. 1873) .................................. 5, 6, 7

*Herder Spring v. Keller*, 143 A.3d 358 (Pa. 2016) .................................. 12

*Senseing v. Pa. R.R. Co.*, 78 A. 91 (Pa. 1910) .................................. 10

*Stoetzel v. Jackson*, 105 Pa. 562 (Pa. 1884) .................................. 3

*Watson v. Davidson*, 87 Pa. 270 (Pa. 1878) .................................. 5, 6, 7

## Federal Constitution

U.S. Const. amend. XIV .................................................................................. 9

## Statutes & Rules

28 U.S.C. § 636(b)(1)(B) ............................................................................. 1, 2

Fed. R. Civ. P. 56 ........................................................................................... 1

M.D. Pa. Local Rule 72.3 .............................................................................. 2

## I.    INTRODUCTION

The Commission submits this brief in support of its objections to portions of Chief Magistrate Judge Susan E. Schwab's Report and Recommendation (Doc. 155, the "Report") regarding the "Proctor Trusts" motion to strike (Doc. 136) and the parties' cross-motions for partial summary judgment (Docs. 94 & 123).

The Commission urges this Court to: (i) decline to follow the Report to the extent it denies the Commission's pending motion for partial summary judgment (Doc. 123); (ii) decline to follow the Report to the extent it grants in part the Proctor Trusts' motion to strike (Doc. 136) the declaration and title opinion of the Commission's expert, Jay Wilkinson; and (iii) enter judgment for the Commission on its pending motion for partial summary judgment.

## II.    ARGUMENT

### A.    Standard of Review.

A district court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain matters pending before the Court. 28 U.S.C. § 636(b)(1)(B).  If a party timely and properly files a written objection to a Magistrate Judge's Report and Recommendation, the district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id*. at

636(b)(1)(C); *see also*, *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); M.D. Pa. Local Rule 72.3.

### B.    The Parties' Cross-Motions for Partial Summary Judgment.

### 1.    Seated versus unseated land.

The Report concluded that there is a genuine factual dispute, and therefore a ***trial is necessary***, about whether the Josiah Haines Warrant (the "Property") was seated or unseated ***in 1908***, thus precluding the Court from concluding as a matter of law whether the 1908 tax sale resulted in a title wash.  Doc. 155 at 25, 35.  That was error.

A court may grant summary judgment when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).  In addition, if the non-moving party has the burden of proof at trial, that party must set forth facts sufficient to establish the existence of an element essential to that party's case.  *Id*.

The public record establishes, and it is undisputed, that the Property was assessed and sold at the 1908 tax sale as unseated land.  The "***thin***" evidence offered

by the Proctor Trusts suggesting that the Property was, in fact, seated at the time of the 1908 tax sale, *see* Doc. 155 at 35 (emphasis added), even if considered in its totality and taken as true, cannot, as a matter of law, overcome a presumptively valid assessment and tax sale of the land as unseated. That is, even after taking all inferences and credibility determinations in favor of the Proctor Trusts, a reasonable jury could not find, as a matter of law, from the Proctor Trusts' "thin" evidence that the land should have been assessed and sold as seated. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (genuine issue of material fact exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party.); *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (same).

Whether a tract of land is seated or unseated depended altogether upon the *appearance it presented to the assessor at the time of the assessment. Northumberland County v. Phila. & Reading Coal & Iron Co.*, 131 F.2d 562, 566 (3rd Cir. 1942). If it had been or was being improved by clearing or cultivation, or by the erection of a building upon it, or if the property showed such permanent improvements as indicate a personal responsibility for the taxes, it was the assessor's duty to enter it upon the seated list. *Id*. *See also Bannard v. New York State Natural Gas Corp.*, 293 A.2d 41 (Pa. 1972); *Stoetzel v. Jackson*, 105 Pa. 562, 567 (1884); *Everhart v. Dolph*, 19 A. 431, 432 (Pa. 1890).

As explained by the Third Circuit in *Northumberland County*, the difference in the then-legislative treatment of the problems of delinquent tax collection involved in the two types of land "is quite understandable." 131 F.2d at 565. In the case of seated lands, the owners mostly resided on the lands and they or their tenants nearly always had goods or chattels thereon. *Id*. Under those circumstances collection from the owner was feasible and it was the method adopted. *Id*. In the case of unseated lands, however, there were never goods or chattels on the lands "subject to distraint." *Id*. The owners were very frequently nonresidents of the county and often land speculators. *Id*. The land was, thus, the only reasonably certain and tangible security for the tax and its sale was the logical method of collection. *Id*. at 566. "The rule thus laid down is that the question whether land is seated or unseated depends altogether upon what has been or is being done upon it, the court indicating that personal liability for taxes arises as a direct consequence of the improvement itself." *Id*. at 566.

Here, the Proctor Trusts have offered no evidence that an *assessor looking at the Property at the time of the assessment* would have seen any evidence of buildings, other permanent improvements or "cultivation" – *i.e.*, clearing, tilling and growing crops. Doc. 155 at 34 (noting that the Proctor Trusts "have not presented any evidence about how the land would have appeared at the time of the assessment"). Instead, the "thin" evidence offered by the Proctor Trusts, at best,

shows that there was occasional peeling and tan bark harvesting on the land from 1905-1907.  Doc. 155 at 34, 35.  As a matter of law, that is not evidence that would tend to establish that there was, at the time of the 1908 tax sale, "on the lands goods or chattels subject to distraint," such that the land should have been assessed as seated.  *See Northumberland County*, 131 F.2d at 565-66.

The two cases relied upon by the Report to deny a conclusion that that the 1908 tax sale resulted in a title wash and, consequently, partial summary judgment to the Commission, are distinguishable on their facts and, moreover, demonstrate why the Proctor Trusts' argument fails as a matter of law.  *See* Doc. 155 at 31-32, citing *George v. Messinger*, 73 Pa. 418 (Pa. 1873) and *Watson v. Davidson*, 87 Pa. 270 (Pa. 1878).

In *Messinger*, the sale of the land for taxes was as unseated. The landowner claimed that there was a residence upon the tract and that there was also cultivation, which made it seated and invalidated the purchase.  On review, the Pennsylvania Supreme Court reversed, finding that the land was seated based on ***extensive evidence that there was an abundance of personal property upon the land out of which the taxes could have been collected***.  Indeed, quite the opposite of the facts in this case, the facts in *Messinger* established that:

> Dilworth was the owner of the land. In the autumn of 1859, he set men to work upon it. They built two houses and a barn. During the winter, one of the men remained upon it. In each year thereafter some land was cleared, and potatoes, hay, oats, rye and vegetables were raised thereon.

> Two or three more houses were erected thereon. So that in 1864 there
> were four houses standing upon it, and from three to four acres of
> improved land. During all these years, several families continued to
> reside upon the land. Most of the time several teams, sleds, wagons
> and chains were kept there. The personal property kept on the land in
> 1863 and in 1864, was worth from $ 500 to $ 600, besides the logs cut
> thereon, which were worth from $ 400 to $ 500 more. In 1865 the log
> barn was torn down, and a framed barn built.

*Messinger*, 73 Pa. at 422-23.

In *Watson*, as in *Messinger*, the sale of the land for taxes was as unseated.

*Watson*, 87 Pa. at 270. The plaintiff, who claimed title through an 1870 tax sale,

sought to eject the defendants from the property. The defendants claimed that the

land was seated by continuous occupancy for lumbering purposes disclosed by the

evidence. The defendants' evidence established that their predecessor-in-title,

Green:

> about 1857, [ ] commenced cutting and removing timber from the tract,
> drawing it to the river and running it to market. The timber was cut and
> run to the river by jobbers who, during the whole of the year, except
> when engage in running the lumber to market, occupied buildings or
> shanties on the tract, the materials for the erection of which were
> furnished by Green. These lumbering operations of Green continued
> until his death, from which time until December 1869, when the
> assessment of taxes for 1870 was made the land was unoccupied.

*Id*. at 270. The trial court, based on this evidence regarding more than a decade of

sustained lumbering operations and occupied buildings on the tract, allowed the

issue of the seated character of the land to be presented to a jury, who found for the

defendant. *Id*. at 273. The trial court, in instructing the jury, explained in part that:

> Whatever the use and occupation it is essential that it be visible, and such as could be and ought to be seen and known by the assessor. A tract of woodland on which the assessor can see no use and occupancy is not seated. Cutting a few trees, squaring them and leaving them in the woods, would not make a tract seated, nor would giving out a job for a single winter or lumbering season, the jobber building a shanty and abandoning it when the lumbering was done before the assessment. Occasional cutting and taking away timber from a tract would not be enough to require the assessor to place it on the seated list. When the owner of a timber tract, in person or by others under him, enters thereon to take out the timber, carries on the business for so long a time and in such a manner continuously from year to year as to show an actual and permanent occupancy of the tract, with use thereof, and personal property thereon from year to year, and so that the appearance of the land itself indicates to the assessor that there is an occupation of the same by the claimant for the purpose or business of lumbering, it is seated, and it is the duty of the assessor to so assess it.

*Watson*, 87 Pa. at 272.

On appeal, the Pennsylvania Supreme Court, affirmed, concluding that "[w]hile the jury might have found a different verdict, the [defendants'] ***evidence was not so weak as to be withdrawn***, with a peremptory instruction to find a verdict for the plaintiff." *Id*. at 274 (emphasis added).

The Proctor Trusts' "thin" evidence that there was occasional peeling and tan bark harvesting on the land from 1905-1907 falls well short of that offered in *Messinger* and *Watson* and those cases demonstrate why, based on the record evidence, there is no disputed issue of fact precluding the Court from concluding, as a matter of law, that the 1908 tax sale resulted in a title wash. *See also Jennings v. McDowell*, 25 Pa. 387, 389 (Pa. 1855) (in contest between purchaser at treasurer's

7

sale and intruder, evidence of temporary use of portions of tract for sugar making in the spring of same year the taxes were assessed did not render tract seated so as to prevent its sale for taxes).

Finally, nobody in the chain of title ever challenged the designation of the Property as "unseated," despite it being listed as such on assessment books as such for over a decade before the 1908 tax sale. The Proctor Trusts claim, without any public record evidence, that CPLC, *et al*., diligently monitored assessment and payment of taxes on their land holdings. If the Property was not "unseated," then the appropriate actions would have been to notify the county commissioners, have the assessment changed, and pay taxes within the applicable periods for the statue of repose.

### 2.    Due process.

The Report rejected the Proctor Trusts' due process challenge to the 1908 tax sale. Doc. 155 at 58. The Court concluded, correctly, that the 1908 tax sale was not void because the tax authority provided notice of the tax sale by publication only. *Id*. But the Court never should have reached the *merits* of the Proctor Trusts' due process challenge to the tax sale. That is because the Proctor Trusts have no viable due process claim.

**a.     The Court erred in concluding that the Proctor Trusts can assert a 14th amendment due process challenge to the tax sale.**

The Report did not address the Commission's argument that the Proctor Trusts cannot "borrow" someone else's personal due process rights and related claims for their alleged deprivation.  *See* Doc. 155 at 36-58.

The Proctor Trusts assert that they can challenge the 1908 tax sale based on alleged 14th Amendment due process violations that were visited upon their predecessors-in-interest at the time of the sale.  The Proctor Trusts claim that because they have succeeded to their predecessors' *property rights* in the subsurface estate, they have a sufficiently personal stake in challenging the tax sale on due process grounds.  But, the Proctor Trusts cannot escape the fact that any alleged deprivation of due process was not visited upon the subject property, but on the Trusts' predecessors-in-interest themselves.

The Supreme Court has recognized that 14th amendment rights are *personal* in nature, and cannot be asserted vicariously.  *See Shelley v. Kraemer*, 334 U.S. 1, 22 (1948).  Any alleged deprivation of procedural due process in connection with a tax sale of unseated land in 1908 is a claimed constitutional tort.  *See Carey v. Piphus*, 435 U.S. 247, 266-67 (1978).  Constitutional torts are *personal* in nature and can only follow *personal* involvement in the alleged wrongful conduct.  Any such "due process" claims related to the tax sale, therefore, were personal to the Proctor

9

Trusts' predecessors-in-title, would have ripened at the time of the tax sale, do not run with the land, and can be waived. *See*, *e.g.*, *Senseing v. Pa. R.R. Co.*, 78 A. 91 (Pa. 1910); *Broadrick v. Oklahoma*, 413 U.S. 601, 610-11 (1973); *McGowan v. Maryland*, 366 U.S. 420, 429 (1961); *D.H Overmyer Co. v. Frick Co.*, 405 U.S. 174, 175 (1972); *Bedford Downs Mgmt. Corp. v. State Harness Racing Comm'n Valley View Downs*, 926 A.2d 908, 923 (Pa. 2007); *In re Cicchetti*, 743 A.2d 431, 443 n.1 (Pa. 2000).

Although the Proctor Trusts' attempted to equate their procedural due process claim with *regulatory* taking cases, such comparison is misguided. In *Palazzolo v. Rhode Island*, 533 U.S. 606, 628 (2001), the Supreme Court noted that, *in contrast with direct condemnations and physical occupations*, a regulatory scheme's impact on a parcel may not be immediately apparent. Thus, an as-applied regulatory taking claim may not ripen – as when a permit application is denied or administrative remedies are exhausted – until the parcel is in different ownership than when the regulatory scheme was enacted. In this circumstance, it does little violence to the owner-as-of-date-of-taking rule to allow the subsequent owner to bring a regulatory taking claim. *See*, *e.g.*, *Machipongo Land & Coal Co., Inc. v. Commonwealth*, 799 A.2d 751, 761-63 (Pa. 2002) (property designated as unsuitable for surface mining could be challenged by trust acquiring property after designation).

On the other hand, a property owner can maintain a physical taking claim *only* if she owned the property as of the date of the alleged taking. The right to compensation is *not* passed to a subsequent purchaser. *United States v. Dow*, 357 U.S. 17, 20 (1958) (owner at time Government takes possession rather than owner at earlier or later date is one who has claim for a taking and is to receive payment); *United States v. Dickinson*, 331 U.S. 745, 751 (1947) ("[T]he land was taken when it was taken and an obligation to pay for it then arose."); *United States v. Clarke*, 445 U.S. 253, 258 (1980) (usual rule is that the time of invasion constitutes act of taking and it is that event that gives rise to the claim for compensation) (quoting *Dow*, 357 U.S. at 22).

The same rule would necessarily apply to the Proctor Trusts' due process claims in this context. Any claim of deprivation of procedural due process rights ripened, if at all, upon conclusion of the 1908 unseated land tax sale. That claim belonged to the owner of the unseated land at the time of the sale, not its successor-in-interest. A successor could not complain about the lack of particular process in an alleged tax sale because they would lack standing to assert any claim for the deprivation of procedural due process. No process at all, as it relates to the tax sale, was owed to the successor-in-interest. And any such "due process" claim would be against the governmental entity that sold the property at the tax sale (*i.e.*, the

County), and not against the person or entity that purchased the property at the tax sale.

In short, any complaint regarding deprivation of procedural due process resulting from the tax sale would need to be lodged by the owner at the time of the sale and not by a successor-in-interest.

> **b.    The Court erred by not concluding that any due process challenge to the 1908 tax sale was time barred.**

Assuming, *arguendo*, the Proctor Trusts can "borrow" their predecessors' personal due process rights, the Court erred by not concluding that any such claim is long-barred by applicable statutes of limitation and repose. *See* Doc. 155 at 48.

The 1908 tax sale occurred and is presumed valid. *See Herder Spring v. Keller*, 143 A.3d 358, 365 (Pa. 2016). The Proctor Trusts were certainly on notice of allegedly defective tax sales in their chains of title *decades ago* when they litigated the very same "title washing" issues before the federal district court. *See Proctor v. Sagamore Big Game Club*, 166 F. Supp. 465 (W.D. Pa. 1958), *aff'd*, 265 F.2d 196 (3d. Cir. 1959). Indeed, the Proctor Trusts cannot, with any semblance of a straight face, assert they only just "discovered" that their property was sold at a tax sale in 1908 when they were served with a copy of the Commission's complaint in this case. The Proctor Trusts have been actively litigating "title washing" cases for over a decade and were on notice of allegedly defective tax sales in their chains of title decades before the Commission commenced this action. *See Proctor*, *supra*.

12

Where, as here, the Proctor Trusts' due process "defense" is mirror image of an actual due process claim they could have asserted themselves, they cannot avoid statutes of limitations and repose by sitting on their due process claim and waiting for someone else to seek to quiet title. The Report did not address this argument by the Commission. *See* Doc. 155 at 44-49.

In *City of St. Paul v. Evans*, 344 F.3d 1029 (9th Cir. 2003), the court addressed the issue of whether the City could assert a time-barred claim as an affirmative defense to defendant's counterclaim. While recognizing that courts generally allow time-barred claims to be asserted as counterclaims, it noted that courts have not allowed plaintiffs to revive time-barred claims in response to a defendant's counterclaims. In support of this rule, the court noted that "[a] plaintiff cannot engage in a subterfuge to characterize a claim as a defense [to] avoid a temporal bar." *Id*. at 1035. Other courts have applied the rule articulated in *City of St. Paul*. *See*, *e.g.*, *Agnew v. United Leasing Corp.*, 680 Fed. Appx. 149 (4th Cir. 2017); *Davis v. 24 Hour Fitness Worldwide, Inc.*, 75 F. Supp. 3d 635 (D. Del. 2014); *Branco v. Norwest Bank Minnesota*, 381 F. Supp. 2d 1274 (D. Haw. 2005).

Here, the Proctor Trusts, the parties asserting the purported "defense," seek *affirmative recovery* from the Commission on an identical quiet title *counterclaim*. In doing so, they "abandoned [their] right to seek solace in the status of a defendant." *City of St. Paul*, 344 F.3d at 1036. Their time-barred due process claim cannot be

13

resuscitated by any rule allowing such claims to be raised as affirmative defenses.

Moreover, the Proctor Trusts were not deprived of their purported "due process" rights by the Commission. If a due process violation occurred at all, it occurred in 1908. The defendant would be *the County*, not the Commission. Clearly, the Proctor Trusts, assuming they can borrow their predecessors' due process rights, cannot sue the County for an alleged procedural due process violation that occurred over 100 years ago. *See Lewicki v. Washington County*, 431 Fed. Appx. 205 (3d Cir. 2011) (two-year statute of limitations applied to former property owners' § 1983 action against county alleging tax sale violated owners' constitutional rights).

The Proctor Trusts should, therefore, be precluded from getting functionally equivalent relief against the Commission in the context of a quiet title action.

### 3. Whether McCauley was an agent of CPLC.

The Report correctly concluded, based on well-settled Pennsylvania law, that if the land was unseated, then it is *legally* irrelevant that McCauley was acting as CPLC's agent for the 1908 tax sale. Doc. 155 at 63. But the Court also concluded, based on non-public record materials offered by the Proctor Trusts, including materials post-dating the 1908 tax sale, that there was a genuine factual dispute about whether McCauley was acting as CPLC's agent for the 1908 tax sale. *Id*. at 62-63. That was error.

14

There is no genuine factual dispute about whether McCauley was acting as CPLC's agent for the 1908 tax sale.  This is because none of the "evidence" offered by the Proctor Trusts to demonstrate that McCauley was purportedly acting as CPLC's for the 1908 tax sale is, or was, in the public record of Bradford County, such that an examiner of such records could acquire any knowledge as to the purported relationship between McCauley and CPLC.  *See Proctor*, 166 F. Supp. at 479-480.  The public record controls.  *Id.* (public records of county could not be impeached by facts offered in evidence).

The Report erred by accepting the Proctor Trusts' argument that the presumption of regularity associated with, and the admissible facts recited in, the 1908 treasurer's deed to McCauley, and the *prima facie* showing of a valid, final tax sale to McCauley as an individual, based on the public record, can be overcome, in 2018, by "evidence" outside of the Bradford County public record at the time of the 1908 tax sale, including "evidence" that did not even exist at the time of each sale.

The federal district court in *Proctor* flatly rejected the argument that the court could, based on documents existing outside of the county's public records at the time, conclude that McCauley was an agent for CPLC.  Indeed, in *Proctor*, the Proctor Trusts' predecessor-in-interest conceded that the county's public records ***must*** control:

> ***From the public records of Elk County, C. H. McCauley, Jr. appears***
> ***as a complete stranger to the title. His tax deed was not assigned to***

> ***Central Pennsylvania Lumber Company, but his conveyance was direct to the grantees of the Central Pennsylvania Lumber Company***, that is, the Eisenhuths, Excerpt 15. As this court understands it, the only attack plaintiffs [i.e., Proctor] made against the sale of 1914 is that McCauley was the attorney and land agent for the Central Pennsylvania Lumber Company, therefore, in some way an estoppel is sought to be raised because there exists, ***but not of record***, a declaration of trust executed by McCauley wherein any lands he purchased were to be held in behalf of his employer, the Central Pennsylvania Lumber Company. ***However, no title examiner from the public record could acquire such knowledge as to the relationship between McCauley and his employer. This court understands that counsel for the plaintiffs [i.e., Proctor] concedes that the public records control.*** Mr. Carroll [i.e., Proctor's attorney] stated to the court, 'We say that one examining the title to this tract of land in Elk County is not obliged under any circumstances to go beyond what might appear on the public records of the several offices in Elk County.

*Proctor*, 166 F. Supp. at 479-480 (emphasis/bracketed material added).

Based on the public records of Bradford County at the time of the 1908 tax sale, which is the *only* relevant record, there is simply no basis on which to infer that McCauley intended to, or did, redeem the Property for CPLC. There is, therefore, no genuine factual dispute about whether McCauley was acting as CPLC's agent for the 1908 tax sale.

### C.    The Proctor Trusts' Motion to Strike.

The Report grants in part grant in part and denies in part the Proctor Trusts' motion to strike (Doc. 136) the declaration and accompanying title opinion of the Commission's expert, Jay Wilkinson.

More specifically, Chief Magistrate Judge Schwab recommend that the Court strike Wilkinson's discussion of the Pennsylvania Supreme Courts decision in *Herder Spring* because "[s]uch testimony pertaining to 'the governing law' is indisputably inadmissible."  Doc. 155 at 16 (citations omitted).  Chief Magistrate Judge Schwab also recommend that the Court strike Wilkinson's "legal conclusions": (1) that the Proctor Trusts do not have an interest in the Subsurface Estate; (2) that the Commonwealth has title to the Subsurface Estate, (3) that 100% of both the surface estate and the oil, gas, and mineral estate is vested in the Commonwealth; (4) that the 1908 tax sale resulted in a "title wash" that extinguished the prior reservation of oil, gas, and mineral rights; and (5) that the 1920 deed from CPLC to the Commonwealth does not contain clear language of reservation in favor of CPLC.  Chief Magistrate Judge Schwab concluded that opinion testimony on such legal issues is not helpful, and allowing such would allow Wilkinson to usurp the role of the Court in this case.  Doc. 155 at 16.

The Report recognized that, because *the Court* is the trier of fact in this case, Wilkinson's declaration and accompanying title opinion could not usurp the role of the Court, yet struck the subject the portions of Wilkinson's declaration and accompanying title opinion because the "Court is not acting as the trier of fact" at the summary judgment stage.  Doc. 155 at 15, n.8.  That was error.

17

The stricken portions of Wilkinson's declaration and title opinion do not usurp the role of the Court simply because they contain discussion of the governing law and legal issues involved in a complex chain of title.  Title work is *necessarily* intertwined with "legal" questions.  Deeds are legal documents with legal import. There is no way to search a title and divorce the "legal" import of the documents from the facts of the documents.  Simply because at the end of the day the Wilkinson's declaration and title opinion touches upon and addresses certain legal issues associated with deeds and other documents in the chain of title regarding ownership of the oil, gas and minerals in the Premises, does not make the stricken portions of his declaration and title opinion inadmissible.

*Katzin v. United States*, 120 Fed. Cl. 199 (2015), which was cited by the Commission in opposition to the Proctor Trusts' motion to strike but not addressed by the Report, is instructive.  In that case, there was a title question regarding Puerto Rican land law.  The United States, which had moved for summary judgment, filed a motion strike the declaration of the Katzins' land title expert, Dennis Martinez, as well as a title report.  The court declined to strike the expert declaration and title report.  The expert declaration was derived from a review of a century of boundary descriptions and transfer information.  The purpose was to assist the trier of fact to understand the foundational facts at issue.  The district court cited another case in which expert testimony of a title examiner was permitted because the subject matter

18

was outside the understanding of the typical juror and would assist in understanding the evidence. *See Katzin*, 120 Fed. Cl. at 212 (citing *Nat'l Assistance Bureau, Inc. v. Macon Mem'l Intermediate Care Home, Inc.*, 714 F. Supp.2d 1192 (M.D. Ga. 2009)). The court concluded that "the fact Mr. Martinez states an opinion as to an ultimate issue in this case does not usurp the role of the court," and "here, where the court is acting as the trier of fact, the dangers which can be presented by such 'ultimate issue'[opinion] are minimal if not nonexistent." *Katzin*, 120 Fed. Cl. at 212 (citing *Martin v. Indiana Mich. Power Co.*, 292 F.Supp.2d 947, 959 (W.D. Mich. 2002)) (emphasis added).

Here, just like the expert in *Katzin*, Wilkinson's declaration and title opinion is based upon his expertise in oil and gas titles and is the result of hours of research of the public record solely to assist this Court in deciding the issues before it in the pending motions for summary judgment. Wilkinson's declaration and title opinion helps navigate the complex decades-long chain of title in this case. Wilkinson is not instructing the Court on the law and its application. Rather, his declaration and title opinion is derived from an extensive review of the public record and assists the Court in understanding the foundational facts at issue in the case. That his declaration and title opinion touches on the ultimate issue in this case is a faux danger where this Court is the trier of fact.

## III.    CONCLUSION.

The Commission, for these reasons, urges this Court to sustain the Commission's objections to the Report and enter partial summary judgment for the Commission.

Respectfully submitted,

PENNSYLVANIA GAME COMMISSION

DATE:  March 7, 2019

s/Bradley C. Bechtel
Bradley C. Bechtel, Chief Counsel
PA No. 49681
W. Creigh Martson, Assistant Counsel
PA No. 94759
2001 Elmerton Ave
Harrisburg, PA 17110-9797
(717) 783-6530
brbechtel@pa.gov
wmartson@pa.gov
*Attorneys for Plaintiff*

## **<u>CERTIFICATE OF COMPLIANCE</u>**

I hereby certify that this Brief contains less than 5,000 words as calculated by the word count feature on the word processing program used to prepare this Brief and, therefore, complies with M.D. Local Rule 7.8.

<u>s/Bradley C. Bechtel       </u>
Bradley C. Bechtel

## **CERTIFICATE OF SERVICE**

I hereby certify that, on March 7, 2019, a true and correct copy of the foregoing OBJECTIONS TO REPORT AND RECOMMENDATION was filed electronically by way of the Court's CM/ECF system, which will send notice to all registered users, including the following:

Chief Magistrate Judge Susan E. Schwab
U.S. District Court
Middle District of Pennsylvania
228 Walnut Street,
P.O. Box 983
Harrisburg, PA 17108

Paul K. Stockman
Kazmarek Mowrey Cloud Laseter LLP
One PPG Place, Suite 3100
Pittsburgh, PA 15222

Laura A. Lange
Courtney S. Schorr
McGuireWoods LLP
Tower 260
260 Forbes Avenue, Suite 1800
Pittsburgh, Pennsylvania 15222

s/Bradley C. Bechtel
Bradley C. Bechtel