# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,
PENNSYLVANIA GAME COMMISSION,

      Plaintiff,

    v. | Case No. 1:12-CV-1567

THOMAS E. PROCTOR HEIRS TRUST and | Chief Judge Conner /
the MARGARET O.F. PROCTOR TRUST, | Chief Magistrate Judge Schwab

      Defendants.

## DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

Laura A. Lange
  Pa. ID No. 310733
MCGUIREWOODS LLP
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
llange@mcguirewoods.com

Paul K. Stockman
  Pa. ID No. 66951
KAZMAREK MOWREY CLOUD LASETER LLP
One PPG Place, Suite 3100
Pittsburgh, PA 15222
pstockman@kmcllaw.com

***Counsel for Defendants***

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

ARGUMENT ........................................................................................2

    I.      The Report and Recommendation Properly Held that the
           Evidence Raise a Question of Fact as to Whether the Land Was
           Seated. ....................................................................................2

    II.     If the 1908 Tax Sale Is Construed To Expropriate The Trusts'
           Severed Subsurface Interests, Then It Deprived the Trusts of
           Property Without Due Process of Law....................................5

    III.    The Report and Recommendation Properly Held that the
           Evidence Supports a Finding that McCauley Was an Agent of
           CPLC. ..................................................................................10

    IV.    The Report and Recommendation Properly Struck the
           Wilkinson Declaration Because It Offers Legal Conclusions
           That Are Inappropriate Expert Testimony .........................13

CONCLUSION ..................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Benoit v. Panthaky,*
  780 F.2d 336 (3d Cir. 1985) ...................................................9

*Carnegie Nat. Gas Co. v. Braddock,*
  597 A.2d 285 (Pa. Commw. 1991) ......................................11

*Casper v. SMG,*
  389 F.Supp.2d 618 (D.N.J. 2005) .........................................13

*City of N.Y. v. N.Y., New Haven & Hartford R.R. Co.,*
  344 U.S. 293 (1953) ................................................................5

*Coxe v. Wolcott,*
  27 Pa. 154 (1856) ...................................................10, 11, 13

*Day v. Swanson,*
  236 Pa. 493 (1912) .................................................................3

*Day v. Swanson,*
  84 A. .......................................................................................4

*Duke Power Co. v. Carolina Envtl. Study Grp., Inc.,*
  438 U.S. 59 (U.S. 1978) .........................................................6

*Fish v. Brown,*
  5 Watts 441 (Pa. 1836) ...........................................................2

*Foehl v. United States,*
  238 F.3d 474 (3d Cir. 2001) ...................................................9

*George v. Messinger,*
  73 Pa. 418 (1873) ...................................................................2

*Holman Enterprises v. Fidelity and Guar. Ins. Co.,*
  563 F.Supp.2d 467 (3d Cir. 2008) .......................................13

*Katzin v. United States,*
  120 Fed.Cl. 199 (2015) ....................................................14, 15

ii

*Kennedy v. Daily*,
    6 Watts 269 (Pa. 1837) ...................................................................................2, 3

*Knupp v. Syms*,
    50 A. 210 (Pa. 1901), *reaffirmed by Wheeler v. Knupp,* 55 A. 979
    (Pa. 1903)...............................................................................................................13

*Lund v. Heinrich*,
    410 Pa. 341, 189 A.2d 581 (1963)......................................................................12

*Mennonite Board of Missions v. Adams*,
    462 U.S. 791 (1983)..................................................................................................5

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)..................................................................................................5

*Nolt v. TS Calkins & Assocs., LP*,
    96 A.3d 1042 (Pa. Super. 2014) .........................................................................12

*Northumberland County v. Philadelphia & Reading Coal & Iron Co.*,
    131 F.2d 562 (3d Cir. 1942) ...............................................................................3, 4

*Palazzolo v. Rhode Island*,
    533 U.S. 606 (2001)..................................................................................................7

*Proctor v. Sagamore Big Game Club*,
    166 F. Supp. 465 (W.D. Pa. 1958)......................................................................11

*Romero v. Allstate Ins. Co.*,
    52 F.Supp.3d 715 (E.D. Pa. 2014)......................................................................13

*Schroeder v. City of N.Y.*,
    371 U.S. 208 (1962)..................................................................................................5

*Sheaffer v. McKabe*,
    2 Watts 421 (Pa. 1834) ...........................................................................................3

*United States v. Dickinson*,
    331 U.S. 745 (1947)..................................................................................................6

*United States v. Dow*,
    357 U.S. 17 (1958)....................................................................................................6

*United States v. One Toshiba Color Television*,
    213 F.3d 147 (3d Cir. 2000) (*en banc*) ............................................................10

*Walker v. City of Hutchinson, Kan.*,
    352 U.S. 112 (1956) ...........................................................................................5

**Other Authorities**

Federal Rule of Evidence 803(16) ............................................................................2

## INTRODUCTION

In denying the parties' cross-motions for summary judgment, Magistrate Judge Schwab correctly determined in the Report and Recommendation ("Report") that the evidence supported findings (i) that the Josiah Haines warrant was seated, (ii) that the tax sale scheme may be constitutionally deficient, and (iii) that the tax sale purchaser (Calvin McCauley, Jr.) was an agent of the Central Pennsylvania Lumber Company ("CPLC").  The Report further correctly held that the declaration of Jay Wilkinson should be stricken as improper legal opinion testimony.  These determinations, discerning factual disputes based on the submitted evidence, and the Report's corresponding rejection of the PGC's legal contentions, form the basis of the PGC's objections.  Specifically, the PGC seeks to have the Court discard the evidence that the land was seated and that McCauley was an agent because of the legal effect those factual determinations have on the tax sale – maintaining the Trusts' ownership of the severed subsurface rights.  Similarly, the PGC seeks to take procedural shortcuts to avoid the determination that the Trusts' due process rights were violated because that would render the sale void.   But the PGC's objections are unsupported by the evidence and the law and must be rejected.

Nonetheless, as the Trusts' own objections to the Report demonstrate, the Report made certain other incorrect legal conclusions that are contrary to Pennsylvania law and which, under Pennsylvania precedent, would warrant entry of summary judgment in the Trusts' favor.  Therefore, the Trusts agree that the Court should modify the Report, but differ in the outcome that the Trusts believe is

required on the record and under governing law: a grant of partial summary judgment in favor of the Trusts.

## ARGUMENT

### I.  The Report and Recommendation Properly Held that the Evidence Raise a Question of Fact as to Whether the Land Was Seated.

The undisputed evidence — CPLC's contemporaneous land records, recording CPLC's its development of its properties, including logging timber and stripping tanbark — shows that the Josiah Haines Warrant was seated at the time of the 1907 tax assessments.  (App. Ex. G, ECF No. 96-7).  In its summary judgment filings, the PGC asked the Court simply to discard this evidence, ignoring its clear admissibility under Federal Rule of Evidence 803(16).  (*See* ECF No. 120 at 26).   But neither the PGC nor the Court can simply ignore CPLC's land records, which establish that it was harvesting timber from the property prior to and during the assessment year, rendering the land seated and the tax sale of "unseated" land void. *See George v. Messinger,* 73 Pa. 418, 422 (1873) ("removal of the timber" from a tract "may seat it."); *Kennedy v. Daily*, 6 Watts 269, 273 (Pa. 1837).

Because the PGC cannot contradict CPLC's own land records, the PGC contends that the assessor's characterization of the land as "unseated" is conclusive. That is not the case, however, or none of the many decisions overturning "unseated" tax sales of "seated" would exist. *See, e.g., George v. Messinger,* 73 Pa. at 422; *Kennedy v. Daily*, 6 Watts at 272; *Fish v. Brown*, 5

Watts 441, 441 (Pa. 1836); *Sheaffer v. McKabe*, 2 Watts 421, 423 (Pa. 1834); *see also Day v. Swanson*, 236 Pa. 493, 495 (1912).

Indeed, the PGC's proposition is directly rejected by the Third Circuit decision upon which it primarily relies, *Northumberland County v. Philadelphia & Reading Coal & Iron Co.*, 131 F.2d 562, 568 (3d Cir. 1942).  In *Northumberland County*, the petitioners were precluded from offering evidence "as to the actual character of the land," to show the debtor was in fact personally liable for the taxes; reversing, the Third Circuit held that the failure to permit the evidence was prejudicial error.  *Id.*  Notably, the Third Circuit provided a thorough analysis of the unseated land tax sales and concluded that "[t]he rule thus laid down is that the question whether land is seated or unseated ***depends altogether upon what has been or is being done upon it***."  *Id.* at 566 (emphasis added).

The Court then pointed to the decision in *Kennedy v. Daily*, 6 Watts 269 (Pa. 1837), a case on which the Trusts have also principally relied, in which "the plaintiffs were permitted to prove that the land was in fact seated when it was assessed as unseated" because, as the Pennsylvania Supreme Court held "'[i]n all controversies, as in the present instance, it becomes an important inquiry whether the land sold was seated or unseated, at the time it was assessed; for if the former, it has been repeatedly decided that the sale is void.'" *Northumberland*, 131 F.2d at 566 (quoting *Kennedy* and citing further cases to support uniform application of the rule).  The Third Circuit explicitly refused to give dispositive effect to the assessor's listing of land as unseated, as the PGC urges here, explaining that the rule in *Kennedy* "was necessarily based upon the proposition that land which is in

3

fact seated is not subject to taxation as unseated land ***even though the assessor has mistakenly so listed it***." *Id.* at 567 (emphasis added). Accordingly, "the actual character of land rather than its classification by the assessor determines the way in which taxes on it are to be collected…." *Id.*

"The act thus clearly contemplated that the true character of land as seated ***should always be open to inquiry*** in determining the validity of proceedings taken to collect the taxes upon it." *Id.* (emphasis added). Here, the only evidence of "the true character of land" presented at summary judgment demonstrates that CPLC harvested tanbark and lumber from the Property between 1905 and 1907. This cultivation rendered the Property seated at the time of the tax assessment, and an unseated tax sale of lands that were in fact seated is automatically void, given that tax sales of seated land were, in 1908, prohibited by statute. *See, e.g., Day v. Swanson*, 84 A. at 959.[1]

---

[1] Moreover, the Trusts have recently discovered additional evidence that CPLC had 10 million feet of cut logs from its 1907 peeling and logging in its "logging district" on its properties in Bradford County that were valued at $1,000,000. *See e.g., 200 Men Are in Heroic Fight*, Williamsport Sun-Gazette (September 18, 1908); *Exciting Contest to Keep Flames From Many Cut Logs*, Harrisburg Daily Independent (September 18, 1908); *Th Good Fight Against Fire Brings Result*, Williamsport Sun-Gazette (September 19, 1908) (collectively attached as Exhibit 1). At the very least, the Trusts should be permitted to have the "true character" of the land be determined at trial. *Northumberland Cty*, 131 F.2d at 568.

## II.    If the 1908 Tax Sale Is Construed To Expropriate The Trusts' Severed Subsurface Interests, Then It Deprived the Trusts of Property Without Due Process of Law.

It is undisputed that Bradford County's only attempt to provide notice of the June 1908 tax sale was an advertisement in two local newspapers. (SOF, ECF No. 95, ¶24.)  This method of "notice" is one that the Supreme Court and courts across the country have found constitutionally inadequate.  *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983); *see also Schroeder v. City of N.Y.,* 371 U.S. 208, 211, 212-13 (1962) (notice by posting and publication is insufficient where the property owner's identity was "readily ascertainable" from deed records); *Walker v. City of Hutchinson, Kan.*, 352 U.S. 112, 116 (1956) (notice only by publication is insufficient where the property owners were listed in official records); *City of N.Y. v. N.Y., New Haven & Hartford R.R. Co.*, 344 U.S. 293, 296 (1953) ("Notice by publication is a poor and sometimes a hopeless substitute for actual service of notice.").  That alone is dispositive of this dispute, and mandates entry of judgment in the Trusts' favor.

But the PGC seeks to prevent a decision on the merits, recognizing tacitly that the tax sale at issue here cannot pass constitutional muster and deprives the Trusts of their constitutional due process rights, claiming in error that the Trusts lack standing to challenge and are time-barred from raising the constitutional deprivation.  However, as the Report properly determined, this Court can quickly discard each of the PGC's arguments.

Standing to assert a constitutional violation requires only "a personal stake in the outcome of the controversy." *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 72 (U.S. 1978). The owners of the subsurface estate at the time of the 1908 tax sale were the heirs of Thomas E. Proctor, and the Trusts undisputedly have succeeded to those heirs' property rights, giving them an unquestionable personal stake in challenging any attempt to deprive them of their own property.

The PGC fails to cite any case supporting its standing argument.[2] Instead, the PGC attempts to rely upon cases involving federal condemnations, which hold that only the owner at the time of the taking (not subsequent owners) is entitled to compensation. This principle, the PGC suggests, should also extend to notice violations under the due process clause. Plaintiff's reliance on these takings cases is misplaced.[3]

The other decisions PGC cites actually support the Trusts' position, by making clear that a constitutional violation does not accrue until an ownership dispute actually arises. *See United States v. Dickinson*, 331 U.S. 745, 748-49 (1947) (rejecting the government's claim that the taking was barred by the statute of limitations and noting that "[t]he Fifth Amendment expresses a principle of

---

[2] The PGC vaguely references cases involving third-party standing that have no application here. The Trusts are the owners of the property and have the requisite personal stake in the due process determination.

[3] For instance, *United States v. Dow*, 357 U.S. 17, 20–21 (1958), considered the statutory language of the Assignment of Claims Act, which provided that only the owner at the time of the taking was entitled to compensation.

6

fairness and not a technical rule of procedure enshrining old or new niceties regarding 'causes of action'—when they are born, whether they proliferate, and when they die."); *Palazzolo v. Rhode Island*, 533 U.S. 606, 627 (2001) (rejecting the state's attempt to prohibit a new owner from asserting a takings claim). In *Palazzolo*, for example, the state's regulatory scheme deprived the property of its economic use, but the state claimed it was not a taking because the owner took title to the property after the enactment of the regulatory scheme. 533 U.S. at 614-15. The Supreme Court rejected the state's attempt to hold that "the postenactment transfer of title would absolve the State of its obligation to defend any action restricting land use, no matter how extreme or unreasonable," explaining it would "in effect…put an expiration date on the Takings Clause." *Id.* The Court explained that "[f]uture generations, too, have a right to challenge unreasonable limitations on the use and value of land." *Id.* "It would be illogical, and unfair, to bar a regulatory takings claim because of the post-enactment transfer of ownership where the steps necessary to make the claim ripe were not taken, or could not have been taken, by a previous owner." *Id.* at 628.

Although these "takings" cases have no application here, the Supreme Court's reasoning actually undermines the PGC's position. In each of those cases, the takings claim ripened ***after*** the owner was put on notice of the loss of property rights. Here, the constitutional deficiency stems from the ***lack of notice***. It is illogical to contend that the Proctor heirs' constitutional rights, and the constitutional rights of their successors the Trusts, could have expired in the complete absence of any notice to them that those rights had been violated. Nor

7

can the PGC's undisclosed belief (for more than 90 years) that the tax sale conveyed the subsurface estate preclude the Trusts' challenge.  Instead, it is clear that the constitutional deficiency did not ripen until the PGC asserted its quiet title claim.

Because there is no caselaw supporting its position, the PGC attempts to convert the Trusts' assertion that the tax sale was void, and could not convey valid title, into an affirmative Section 1983 claim (which it is not), contending that any such claim is time-barred.  But as the PGC acknowledges, any Section 1983 claim would be against the County, for its constitutional violations, and that is simply not the case presented here.  (ECF No. 158 at 19).  Instead, because the PGC *now* (almost 100 years after it acquired the surface estate) claims that the tax sale also conveyed the subsurface, the Trusts can assert that any such tax sale purporting to convey the subsurface estate is void due to the failure to comport with due process. Indeed, if the tax sale is properly held to encompass only CPLC's reported surface estate, the due process inquiry does not come into play.

Simply put, the due process violation did not accrue until the PGC contended that the 1908 tax sale deprived the Trusts of their title to the subsurface rights.  Prior to that, all interested parties (including the PGC) recognized that the tax sale did *not* divest the Proctor heirs of their subsurface rights, in the Josiah Haines Warrant or otherwise.  Indeed, McCauley subsequently represented the Proctor heirs in their negotiations to sell portions of the Josiah Haines Warrant's coal rights that *he* purportedly had purchased at tax sales.  CPLC even reserved the right of way to build a railway to the Proctor and Hill coal mines in its deed to the

8

PGC.  And CPLC specifically referenced the subsisting Proctor subsurface estate in both its board's approval of the sale and in the deed transferring the surface estate to the PGC.  There simply was no reason at the time to challenge the tax sale, or its deprivation of property without due process, because everyone believed that title to the subsurface remained in the Proctor heirs.  Now, 100 years later, the PGC for the first time is claiming that the tax sale encompassed the Proctor subsurface estate, and thus, deprived the heirs of their property without notice.

In any event, the law is clear that the statute of limitations cannot protect a constitutionally void tax sale.  *Benoit v. Panthaky*, 780 F.2d 336, 338–39 (3d Cir. 1985) (statutes of limitations and repose "are ineffective to preclude a claim of voidness based on 'jurisdictional' defects in a tax foreclosure proceeding," and "Constitutionally inadequate notice to the owner of the property sold at a tax foreclosure is a jurisdictional defect." (citations omitted)).  Indeed, as the Third Circuit has explained, "forfeiture obtained without proper notice to a claimant is void, and that the passage of time could not transmute this nullity into a binding judgment." *Foehl v. United States*, 238 F.3d 474, 480 (3d Cir. 2001).  As such, the PGC cannot hide behind the statute of limitations in order to avoid the determination that the 1908 tax sale violated the Trusts' constitutional rights to due process, rendering the tax sale void.

As set forth in the Trusts' motion for partial summary judgment and their objections to the Report and Recommendation, the absence of any attempt at actual

notice under the tax sale scheme violated the Trusts' constitutional rights.[4]

Therefore, summary judgment should be entered in favor of the Trusts. *United States v. One Toshiba Color Television*, 213 F.3d 147, 153 (3d Cir. 2000) (*en banc*) (explaining that the "focus" on the due process inquiry "has always been on the ***procedures*** in place to effect notice.").

## III.   The Report and Recommendation Properly Held that the Evidence Supports a Finding that McCauley Was an Agent of CPLC.

As set forth in the Trusts' objections to the Report, the Report improperly concluded that McCauley's agency would not operate as a redemption if the land is unseated – contrary to countless cases under Pennsylvania law.  (ECF No. 160 at 20-24 of 35).  Presumably recognizing this legal flaw in the Report, the PGC takes issue with the Report's conclusion that the evidence demonstrates that McCauley was an agent of CPLC.  Specifically, the PGC claims that no evidence outside of "the public record of Bradford County" can be considered in deciding McCauley's agency.  However, there is no such "public record" limitation in the Federal Rules of Evidence generally, nor in the context of quiet title actions specifically.  Indeed, in *Coxe v. Wolcott*, 27 Pa. 154 (1856), the Pennsylvania Supreme Court relied on testimonial evidence in holding that an agent of the assessed owner could not

---

[4] The Court need not consider what due process would be required for surface owners, who presumably would be aware that taxes would be assessed and payable annually (in contrast to the owners of subsurface property rights that were assessable and taxable only when there was actual production in the vicinity). Moreover, holding that the tax sale scheme violates due process will not impact tax sales of un-severed lands, given that the property owners will have acquired all rights through adverse possession in the intervening years.

acquire unseated land from the tax sale purchaser and sell it to a third party at the direction of the owner without it operating as a redemption. *Id.* at 154-55, 158-59. This evidence of agency was not limited to the "public record." *Id.* at 155.

In support of this counter-factual argument, the PGC relies solely on a single district court decision. (ECF No. 158 at 20) (citing *Proctor v. Sagamore Big Game Club*, 166 F. Supp. 465 (W.D. Pa. 1958)). However, in *Sagamore*, the parties agreed that the evidence of agency would be restricted to the "public record," presumably because the hunting club was claiming bona fide purchaser status (that is, that it had no actual or constructive knowledge of the purchaser's agency). The PGC has never contended that it is protected as a "bona fide purchaser" within the applicable Pennsylvania statute (and thereby has waived it), and in any case the PGC cannot qualify as a bona fide purchaser because it cannot show that it "ha[d] no notice of outstanding rights of others, and act[ed] in good faith." *Carnegie Nat. Gas Co. v. Braddock*, 597 A.2d 285, 288 (Pa. Commw. 1991). The PGC's own records establish that it was aware that McCauley was CPLC's agent at the time of the 1908 tax sale. Indeed, the PGC's own title examiner acknowledged that CPLC's "practice… to let its land go to tax sale and have the lands bid in at tax sale by ***persons…I know to be the attorneys and Counsellors-at-Law for the said Corporation***" would render the tax sale a redemption, "***in which case the title to the oil, gas and minerals would not be divested***…." SSOF ¶ 63, 66 & Exs. 84 &

11

86 (emphasis added). Thus, the PGC's actual notice of McCauley's agency (and even its effect) preclude it from now disputing this fact.[5]

The PGC's argument is further undercut because several of the documents cited as evidence *are* in fact "public records." CPLC's corporate records filed with the Commonwealth reflect McCauley's roles as a CPLC officer. McCauley's representation of CPLC in various court cases was also a matter of public record. Even the quitclaim deeds themselves collectively reflect the relationship between CPLC and McCauley – no stranger purchases hundreds of CPLC's properties, over a ten-year period, for real money, simply to return them to CPLC for $1. Thus, the PGC cannot simply ignore the evidence that establishes McCauley as an agent of CPLC at the time of the tax sale. The evidence is overwhelming and undisputed.

Here, the PGC cannot escape the fact that McCauley was an agent and thus that, under controlling law, his purchase operates as a redemption and restores the

---

[5] Even if the constraints of constructive notice applied, Pennsylvania law provides that "[i]t is always the duty of a purchaser of real estate to investigate the title of his vendor, and the purchaser must exercise due diligence in this regard." *Nolt v. TS Calkins & Assocs., LP*, 96 A.3d 1042, 1048 (Pa. Super. 2014) (quoting *Ohio River Junction R. Co. v. Pennsylvania Co.*, 72 A. 271, 273 (Pa. 1909)). Thus, constructive notice includes "what they could have learned by inquiry of the person in possession and of others who, they had reason to believe, knew of facts which might affect the tit[l]e…." *Lund v. Heinrich*, 410 Pa. 341, 189 A.2d 581, 585 (1963); *Nolt*, 96 A.3d at 1048 (explaining that a purchaser must "ask[] the possessor about title, as well as any other people the purchaser has reason to believe would know about the status of the property's title."). Here, CPLC expressly informed the PGC that the Proctor and Hill reservation remained valid. It specifically sold the surface estate subject to the reservation. It previously leased the property to the PGC subject to the reservation. There is no question that the PGC was aware that Proctor and Hill retained the subsurface rights.

12

status quo, including the Proctor heirs' title to the subsurface. *Wolcott*, 27 Pa. at
159; *Knupp v. Syms,* 50 A. 210, 212 (Pa. 1901), *reaffirmed by Wheeler v. Knupp,*
55 A. 979 (Pa. 1903).

## IV. The Report and Recommendation Properly Struck the Wilkinson Declaration Because It Offers Legal Conclusions That Are Inappropriate Expert Testimony

It is well-established that expert testimony that purports to opine on legal
issues intrudes on the "Court's role as the legal expert" and is improper and
inadmissible. *Romero v. Allstate Ins. Co.*, 52 F.Supp.3d 715, 723 (E.D. Pa. 2014).
Indeed, "the District Court must ensure that an expert does not testify as to the
governing law of the case" because, in doing so, "the Court would essentially be
abdicating its duties" as the legal expert. *Id.* 722-23 (internal quotation marks
omitted). Thus, the "district court must limit expert testimony so as to not allow
experts to opine on 'what the law required' or 'testify as to the governing law.'"
*Holman Enterprises v. Fidelity and Guar. Ins. Co.,* 563 F.Supp.2d 467, 472 (3d
Cir. 2008). "The rule prohibiting experts from providing their legal opinions or
conclusions is so well established that it is often deemed a basic premise or
assumption of evidence law—a kind of axiomatic principle. In fact, every circuit
has explicitly held that experts may not invade the court's province by testifying on
issues of law." *Casper v. SMG*, 389 F.Supp.2d 618, 621 (D.N.J. 2005) (internal
quotation marks and citations omitted).

Magistrate Judge Schwab correctly applied these principles in concluding
that the conclusory legal arguments of Jay Wilkinson — a practicing lawyer — do

not qualify as admissible expert analysis, and properly held that the Wilkinson declaration should be stricken because it offers improper legal opinions regarding title to the mineral estate.

The PGC contends that the Report erred because title work is "intertwined" with legal questions. But Wilkinson's title work is factually and legally irrelevant to the outcome of this case. There is simply no need to perform title work here. The Trusts have presented all the relevant deeds in the chain of title (except of course the tax sale deed, which the parties agree was never recorded) (SOF ¶ 30). (*See* App. Ex. 1, ECF No. 97). And the chain of title itself is not disputed – it is the legal effect of the tax sale and the subsequent explicit references to the Proctor and Hill reservation. This Court will decide those questions by applying governing law.

The PGC misplaces reliance on *Katzin v. United States,* 120 Fed.Cl. 199 (2015). *Katzin* is not only non-binding, but is unpersuasive and distinguishable on its facts. *Katzin* involved a boundary dispute. *Id.* at 201-202. The plaintiff's expert opined on the location of the disputed property and the chain of title based upon his own research and examination of historical documents. *Id.* at 211-12. Notably, the court recognized the inadmissibility of legal opinions, explaining "[a] witness cannot be allowed to give an opinion on a question of law....There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge…." *Id.* at 211 (quoting *Specht v. Jensen,* 853 F.2d 805, 807 (10th Cir. 1988)). In reviewing the caselaw, the court found that the plaintiff's expert was "not instructing the court on the law and its

application." *Id.* at 212.  Thus, the opinion in *Katzin* was not based upon the expert's construction and interpretation of relevant case law, unlike the Wilkinson Declaration.

Thus, this is not a situation where the expert offered an opinion solely based upon his own research and expertise, but one where the declarant ***examined the law and applied it to the facts as provided to him*** [6]  Because the Wilkinson Declaration is a purely legal opinion that does not assist the trier of fact, the Report properly excluded it.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the Trusts' Motion for Partial Summary Judgment and Objections to the Report and Recommendation, both of which are incorporated by reference herein, the Trusts respectfully request that the Court enter an order (i) overruling the PGC's Objections to the Report and Recommendation and (ii) modifying the Report and Recommendation insofar as it

---

[6] Interestingly, Wilkinson omits from his title opinion the issues of federal constitutional due process, straw men sales, and permissive redemption, all of which he addressed in the "Title Wash" chapter he wrote for the Pennsylvania Oil and Gas Law and Practice treatise.  *See* J.C. Wilkinson, III, *Title Wash,* Pennsylvania Oil and Gas Law and Practice §§ 8.1, 8.4 & 8.6 (1st ed. 2012). Notably, Wilkinson discusses "The Lumber Company 'Title Wash'" referencing McCauley as a known straw man and recognizes that if the tax sale purchaser sells to the original owner, it operates as a redemption, yet he does not mention those topics in his "title opinion."  Also, Wilkinson failed to address the impact of the PGC's acknowledgement of the Proctor Reservation in its subsequent sale of a portion of the land.  *See* Deed of Exchange dated April 8, 1969 and recorded in Book number 594 at page 371 of the Bradford County Records (ECF No. 145-1).

denies the Trusts' Motion for Partial Summary Judgment and enter summary judgment in the Trusts' favor.

Dated: March 21, 2019                    Respectfully submitted,

                                         /s/ *Laura A. Lange*
                                         Laura A. Lange
                                             Pa. ID No. 310733
                                         McGuireWoods LLP
                                         260 Forbes Avenue, Suite 1800
                                         Pittsburgh, PA  15222
                                         llange@mcguirewoods.com

                                         Paul K. Stockman
                                             Pa. ID No. 66951
                                         Kazmarek Mowrey Cloud Laseter LLP
                                         One PPG Place, Suite 3100
                                         Pittsburgh, PA 15222
                                         pstockman@kmcllaw.com

## CERTIFICATE OF COMPLIANCE:

I hereby certify that the foregoing brief complies with the 5,000-word word-count limit in that it contains 4,332 words, computed using the word count feature of Microsoft Word.

Dated:  March 21, 2019              /s/ *Laura A. Lange*