# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, PENNSYLVANIA GAME COMMISSION, | |
| Plaintiff, | |
| v. | Case No. 1:12-CV-1567 |
| THOMAS E. PROCTOR HEIRS TRUST and the MARGARET O.F. PROCTOR TRUST, | Chief Judge Conner / Chief Magistrate Judge Schwab |
| Defendants. | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR OBJECTIONS TO THE REPORT AND RECOMMENDATION ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Laura A. Lange
   Pa. ID No. 310733
MCGUIREWOODS LLP
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
llange@mcguirewoods.com

Paul K. Stockman
   Pa. ID No. 66951
KAZMAREK MOWREY CLOUD LASETER LLP
One PPG Place, Suite 3100
Pittsburgh, PA 15222
pstockman@kmcllaw.com

*Counsel for Defendants*

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................1

ARGUMENT ...............................................................................................................3

    I.    CPLC Cannot Be Allowed to Misappropriate the Subsurface Estate Through Its Own Neglect of Duty..............................................3

    II.    The Absence of a Separate Assessment Is Not Conclusive Proof of a Title Wash. ...................................................................................5

    III.    McCauley's Purchase Operated as a Redemption. ...............................7

    IV.    The Deed Language Is Controlling. .....................................................11

    V.    The Tax Sale Is Void Because the County Failed to Provide Constitutionally Sufficient Notice......................................................13

CONCLUSION .........................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adamson v. Souder*,
    55 A. 182 (Pa. 1903) ............................................................................................. 10

*Alexander v. Ellis*,
    16 A. 770 (Pa. 1889) ............................................................................................. 11

*Armstrong v. Black Fox Min. & Develop. Corp.*,
    15 Pa. D. & C.3d 757 (Pa. Com. Pl. 1980) ............................................................ 7

*Brookback v. Benedum-Trees Oil Co.*,
    131 A.2d 103 (Pa. 1957) ....................................................................................... 13

*Appeal of Burk*,
    75 Pa. 141 (1874) ................................................................................................. 10

*Burns v. Baumgardner*,
    449 A.2d 590 (Pa. Super 1982) ............................................................................ 12

*In re Condemnation by County of Allegheny of Certain Coal, Oil,*
    *Gas, Limestone and Mineral Properties*,
    719 A.2d 1 (Pa. Cmwlth. 1998) ............................................................................ 13

*Cornwall Mt. Invs., LP. v. Thomas E. Proctor Heirs Trust*,
    158 A.3d 148 (Pa. Super 2017) ........................................................................ 5, 6

*Coxe v. Wolcott*,
    27 Pa. 154 (1856) ................................................................................................... 5

*Crain v. Warner*,
    87 Pa. Super. 605 (1926) ..................................................................................... 10

*Elliott v. Moffett*,
    74 A.2d 164 (Pa. 1950) ........................................................................................ 12

*F.H. Rockwell & Co. v. Warren County*,
    77 A. 665 (Pa. 1910) ..................................................................................... 5, 6, 7

*Foehl v. United States*,
   238 F.3d 474 (3d Cir. 2001) ...............................................................................14

*Harper v. McKeehan*,
   3 Watts & Serg. 238 (Pa. 1842) ...........................................................................7

*Herder Spring Hunting Club v. Keller*,
   143 A.3d 358 (Pa. 2016)..............................................................3, 4, 5, 7, 11, 12

*Huzzard v. Trego*,
   35 Pa. 9 (1859)................................................................................................9, 10

*Knupp v. Syms*,
   50 A. 210 (Pa. 1901) ............................................................................................10

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950)..............................................................................................10

*Neill v. Lacy*,
   110 Pa. 294 (Pa. 1885)..........................................................................................8

*New York State Nat. Gas Corp. v. Swan-Finch Gas Dev. Corp.*,
   173 F. Supp. 184 (W.D. Pa. 1959)......................................................................6, 7

*New York State Nat. Gas Corp. v. Swan-Finch Gas Dev. Corp.*,
   278 F.2d 577 (3d Cir. 1960) .................................................................................6

*Powell v. Lantzy*,
   34 A. 450 (Pa. 1898).......................................................................4, 5, 8, 9, 10

*Proctor v. Sagamore Big Game Club*,
   166 F. Supp. 465 (W.D. Pa. 1958)........................................................................8

*Shearer v. Woodburn*,
   10 Pa. 511 (1849)..................................................................................................4

*Shupe v. Rainey*,
   100 A. 138 (Pa. 1917)..........................................................................................10

*United States v. One Toshiba Color Television*,
   213 F.3d 147 (3d Cir. 2000) (*en banc*) ............................................................14

iii

*Yocum v Zahner,*
    29 A. 778 (Pa. 1894) ............................................................................................. 11

**Statutes**

Act of March 13, 1815 ..................................................................................................... 11

Act of March 28, 1806 .................................................................................................. 3, 4

**INTRODUCTION**

PGC's Response Brief in Opposition to Defendants' Objections to Report and Recommendation (ECF No. 162) (the "Response"), in its effort to paper over the Report's infirmities, merely highlights them.  The PGC responds not with reasoned argument, but rather with an effort, devoid of any record support, to defame Thomas E. Proctor and his heirs, backed up only by the speculation of attorneys representing surface owners[1] and irrelevant material inserted into the Congressional Record by partisans in a tariff battle.  The PGC's filing scarcely requires response, but the Trusts nonetheless reply to ensure that the Court is not misled by PGC's ill-founded hyperbole, and to properly frame the issues for resolution.

First, it is the PGC that in fact seeks a "windfall," not the Trusts, as the PGC wrongly contends.  *See* Response, ECF No. 162, at 1.  The PGC claims through an entity (CPLC) that purportedly acquired tens of thousands of acres of property rights, that it recognized rightly belonged to the Proctor heirs, for token payments of $1.  And all of this would have been achieved through ***CPLC's*** own failure to pay taxes and its own purported failure to properly report ***its*** interest.  In essence,

---

[1] The PGC does not identify the author of the Pennsylvania Bar Association Quarterly article that it quotes at length, but it was written by Lester L. Greevy, Jr. and John A. Shoemaker, who are the Trusts' frequent adversaries in Pennsylvania litigation, and who exclusively represent surface owners seeking to benefit from unseated land tax sales and their successors-in-title.  *See, e.g.,* Greevy & Shoemaker, "Oil and Gas Law," *available at* http://www.greevy.com/oil-gas.html (noting that "Lester Greevy and John Shoemaker are well recognized for their experience representing landowners").

the PGC claims through what it argues was CPLC's deliberate misappropriation of property rights, and now the PGC wants this Court to approve that scheme.

Second, whatever CPLC's practice was, it was **not** a "tax avoidance scheme" for the benefit of the Proctor heirs, as the PGC claims without support. *See id.* at 1. As the record here reflects, the Proctor subsurface estate was assessed (where allowed), and the Proctor heirs paid taxes on their severed subsurface rights throughout Pennsylvania. *See, e.g.,* CSOF ¶¶ 56.a-f, 58, 60.c. Moreover, the record is clear that Proctor & Hill and Union Tanning also paid their taxes, and even CPLC paid taxes until it (for whatever reason) decided to let the properties go to tax sale. Thus, it is not "reasonable to surmise," as the PGC does, that CPLC's conduct more than a decade after the severance deed was to "avoid paying back taxes." *See* Response, ECF No. 162, at 3.

What the PGC's adopted speculation *does* admit is that the tax sale purchaser, McCauley, was unquestionably a "strawman" for CPLC. *See id.* at 3. The PGC further is constrained to admit that that it was **CPLC** that purposefully caused the lands to go to sale by "refusing or neglecting to pay the taxes assessed." *See id.* at 2. Although it is clear from the record evidence that neither McCauley nor CPLC sought to steal the Proctor heirs' property (as evidenced from their post-tax sale negotiations and the explicit recognition of the heirs' subsurface ownership in ensuing deed reservations), the PGC wants this Court to hold that they *did* steal the subsurface estate, and asks the Court to condone that conduct. The law should not and does not agree.

2

For these reasons, the Court should modify the Report, and enter an order granting the Trusts' motion for summary judgment.

## ARGUMENT[2]

### I. CPLC Cannot Be Allowed to Misappropriate the Subsurface Estate Through Its Own Neglect of Duty.

In the PGC's "cut and paste" opening manifesto, the argument is made that a ***duty*** to report ownership existed under the Act of March 28, 1806, P.L. 644. Although that contention is partially accurate, in that the Act of 1806 required reporting, the partisan authors of that article (arguing on behalf of their clients, surface owners) contended that it was the owners of the severed subsurface who had the duty to report. This argument was presented to and rejected by the Pennsylvania Supreme Court in *Herder Spring Hunting Club v. Keller*, 143 A.3d 358, 368 (Pa. 2016). Notably, the Court disagreed and held that the ***duty*** to report the severance fell upon the grantee. *Id.* at 368. While that holding had no practical impact on the outcome in that case, because the defaulting surface owner did not subsequently acquire the "washed" property, it does here.

Applying *Herder Spring's* holding here, ***CPLC clearly had the duty to report*** its ownership interest in the surface estate. *Id.* The crux of the Report's

---

[2] The PGC contends that the Trusts' objections should be rejected because they purportedly failed to file a brief in support of their objections to the Report. *See* Response, ECF No. 162, at 8. It is unclear what the PGC understands Document No. 160 to be, but in counsel's experience the objections and supporting argument (or brief) are typically encompassed in a single document. Indeed, when the PGC filed objections to the Report and Recommendation denying its motion to dismiss the Trusts' counterclaims, it filed a single document. ECF No. 78.

3

finding, and thus the PGC's argument, is the contrary contention that CPLC did not have any duty to report.  Indeed, the PGC asks this Court to focus only on the "consequences" of a failure to report, and overlooks the duty actually imposed under the law.  The PGC even falsely asserts that "[w]hen CPLC took title to the surface, it had no affirmative duty to report the prior severance and Proctor Reservation to the county commissioners."  Response, ECF No. 162, at 7.  That is simply wrong.  CPLC *did* have such a duty, in that it had to report *its* interest in the property *and it was obligated to do so correctly*.  Act of March 28, 1806, P.L. 644; *Herder Spring*, 143 A.3d at 368.  There is no avoiding that requirement.  CPLC cannot benefit from any failure to make a proper report of its (limited) holdings.  *Powell v. Lantzy,* 34 A. 450, 451 (Pa. 1898) ("one cannot profit by his own wrong, and build up or acquire a title founded upon his own neglect of duty….").

In addition, CPLC had the duty to pay taxes, under both the law and its covenant to Union Tanning.  Because CPLC was in possession of the land at the time the 1907 taxes were assessed, it was *chargeable with its payment.*  *Powell,* 34 A. at 451 (the party "in possession of the land when the tax was assessed, and upon that ground *was chargeable with its payment*.") (emphasis added); *Shearer v. Woodburn*, 10 Pa. 511, 513 (1849) (the "power to take care of land carries with it *a power to pay the assessed taxes*, or to redeem if it be sold as unseated by the treasurer") (emphasis added).  CPLC also had a separate duty to pay the tax under its covenant to pay the taxes in the deed from Union Tanning.  Union Tanning-CPLC Deed, Ex. 1 to Def.'s Appendix of Evidence, ECF No. 97-1, at 64 ("the party of the second part for itself and its successors and assigns, hereby covenants

4

and agrees to pay all remaining taxes upon said lands, timber and bark during the joint possession thereof, including all taxes that may be levied and assessed upon any increased valuation, by reason of improvements or developments made on said lands."). And the law is clear that CPLC cannot benefit from its own breach of duty. *Coxe v. Wolcott*, 27 Pa. 154, 159 (1856) ("it would be a gross fraud in him to suffer the land to be sold for the very taxes he had bound himself to pay"); *Powell*, 34 A. at 451 ("one cannot profit by his own wrong, and build up or acquire a title founded upon his own neglect of duty…."). The PGC does not address these cases or the principles they set out.

## II. The Absence of a Separate Assessment Is Not Conclusive Proof of a Title Wash.

As the Trusts have shown, the Report and the PGC both err in contending that there must be a separate assessment of oil and gas rights to prevent their conveyance at a tax sale. The PGC conflates two distinct arguments in arguing otherwise, by contending that the Pennsylvania Supreme Court case in *F.H. Rockwell & Co. v. Warren County*, 77 A. 665 (Pa. 1910), is inapplicable. The PGC believes, apparently, that *Rockwell* was overruled. *See* Response, ECF No. 162 at 12 (citing *Herder Spring*, 143 A.3d at 373-74 and *Cornwall Mt. Invs., LP. v. Thomas E. Proctor Heirs Trust*, 158 A.3d 148, 156-57 (Pa. Super 2017)). But the PGC misreads *Herder Spring's* and *Cornwall's* disposition of *Rockwell*. *Herder Spring* involved a ***facial*** challenge to the notion that an unseated tax sale could

5

*ever* convey severed subsurface interests.³ The Trusts cite *Rockwell* for a different proposition: that the failure to assess subsurface interests ***is not dispositive evidence*** that the severance was not reported. That is because, under *Rockwell*, any such an assessment would be ineffective, improper and futile in the absence of any actual development in the vicinity that could form a basis for valuation. *Rockwell*, 77 A. at 666.

The Third Circuit recognized this distinction in *New York State Nat. Gas Corp. v. Swan-Finch Gas Dev. Corp.*, 278 F.2d 577, 579-80 (3d Cir. 1960). In *Swan-Finch*, the Court held that the absence of a separate assessment of subsurface rights is not evidence that reporting did not occur, and is not dispositive of the scope of an ensuing assessment. *Id.* The PGC failed to address that holding, which remains binding here (despite *Herder Spring*'s erosion of *Swan-Finch*'s broader pronouncements about the effect of unseated tax sales on severed subsurface interests).

While the separate assessment of subsurface rights in areas where a basis to assess existed is necessarily conclusive proof that the transaction was reported, the ***absence*** of a separate assessment does not conclusively prove the opposite – *i.e.*, that the transaction was not reported – in the face of contrary evidence of the sort proffered here. *Rockwell*, 77 A. at 666; *New York State Nat. Gas Corp. v. Swan-*

---

³ The argument in *Cornwall* has no relevance to this case because, in *Cornwall*, the severed subsurface estate was assessed separately and the issue was whether an assessment of "minerals" included the oil and gas rights. 158 A.3d at 156. Because the Proctor subsurface estate was separately assessed, the court held that the Proctor subsurface estate was reported to the taxing authorities. *Id.* at 161.

6

*Finch Gas Dev. Corp.*, 173 F. Supp. 184, 193 (W.D. Pa. 1959), *aff'd,* 278 F.2d 577 (3d Cir. 1960) ("In any event, an owner does not lose title by virtue of failure to have his gas assessed. Any failure to have property assessed might be the subject of contention between the taxing authorities and the owner, but does not assist a stranger to the title claiming ownership."); *see also Armstrong v. Black Fox Min. & Develop. Corp.*, 15 Pa. D. & C.3d 757, 762–63 (Pa. Com. Pl. 1980) ("Even if the coal were not separately assessed, as Black Fox alleges, this does not in any way vest title in the Duppstadts…If the coal rights in the 54 acre tract were not separately assessed, this is a matter between the taxing authorities and the owner of the coal estate. A purchaser at a tax sale of the surface estate would not be able to rely on this to claim he purchased the coal estate as well.") (citing *Swan-Finch*, 173 F. Supp. 184).

Thus, *Herder Spring* and *Rockwell* simply dictate that the absence of a separate assessment has no determinative evidentiary value.  And "[w]hat estate was assessed is a question of fact." *Swan-Finch*, 173 F. Supp. at 192 (citing *Harper v. McKeehan*, 3 Watts & Serg. 238, 246 (Pa. 1842)).  Therefore, the Report incorrectly concluded that the assessment must have encompassed the Subsurface Estate as a matter of law, and the PGC incorrectly asks this Court to perpetuate that error.

### III. McCauley's Purchase Operated as a Redemption.

Almost 100 years ago, the PGC recognized that CPLC's scheme of utilizing its attorneys and officers to purchase its lands at tax sales would not **"have any greater effect than that of redemption, in which case the title to the oil, gas and**

*minerals would not be divested*…." (SSOF ¶ 63 & Ex. 84).  Despite this recognition, based on its title examiner's extensive experience with CPLC's tax sales, the PGC now claims in error that CPLC's scheme resulted in the acquisition of subsurface rights because "there was no personal obligation on the owner for the payment of taxes" on unseated lands.

The PGC contends that the law allows an owner of land to purchase his own property at a tax sale, but every case where such an "owner" was the tax sale purchaser involve current owners whose property went to sale based on a pre-acquisition default in paying a *pre-ownership* tax assessment (*i.e.,* where the current owner thus of course had no legal obligation to pay).  *See, e.g., Powell,* 34 A. at 451 (current owner purchased property at tax sale based on pre-ownership assessment); *Proctor v. Sagamore Big Game Club*, 166 F. Supp. 465, 477 (W.D. Pa. 1958) (tax sale was based on pre-ownership and pre-severance assessment). Moreover, *Neill v. Lacy*, 110 Pa. 294 (Pa. 1885), did not even involve a "title wash."  Instead, Neil, who was the owner of the subsurface estate, paid taxes on the entire property and then sued Lacy and the other surface owners to *force* them to pay their proportionate share of the taxes.  *Id*.  The Court (in a *per curiam* decision) held that because Neill and Lacy were not tenants in common, Lacy was not personally liable to Neill for the taxes.  *Id*. at 297.  The Court did not decide, or even discuss, the effect of a tax sale.

Consequently, there simply is no legal support to contend that CPLC could allow its land to go to a tax sale in order to misappropriate the Proctor Subsurface Estate, property it did not own and to which it had no rightful claim.  And CPLC's

8

use of McCauley as an admitted "straw man" does not alter that outcome. If anything, it makes it impossible for the sale to operate as anything other than a redemption. In this regard, the legal effect of McCauley's purchase is not principally a matter of tax law — rather, it arises out of agency law and gives effect to the fiduciary duty an agent owes his principal. McCauley owed CPLC a fiduciary duty to protect his principal's property, and not to benefit personally from his principal's default. An agent's purchase is ***clearly*** a redemption where the agent explicitly promises to pay taxes – in that event, the agent's wrongful benefit at its principal's expense is clear. But an agent's fiduciary duty is not so closely circumscribed:

> Whenever one person is placed in such relations to another, by the act or consent of that other, or by the act of a third person or of the law, that he becomes interested for him, or interested with him in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interests he has become associated.

*Powell*, 34 A. at 451; *see also Huzzard v. Trego*, 35 Pa. 9, 9 (1859).

Thus, an agent's duty of loyalty prevents the agent from benefiting from a principal's breach regardless of whether the agent personally undertook to fulfill the duty that was breached.

In consequence, even if it is true, as the PGC contends, that McCauley was purchasing the property on his own behalf, and not to redeem for CPLC,[4] his role

---

[4] That is a fanciful proposition, given that McCauley "sold" the properties back to CPLC for only $1, a fraction of what he actually paid as a purchase price at the tax sale.

as CPLC's agent precludes him from doing so. *Powell*, 34 A. at 451; *Huzzard*, 35 Pa. at 9; *Knupp v. Syms,* 50 A. 210, 212 (Pa. 1901).[5] And Florence McCauley's joinder in the quitclaim deed does not alter the effect of the tax sale. It was a regular and customary practice in Pennsylvania at the time to have a spouse join in a deed to ensure that there were no inchoate dower rights that would limit the conveyance. *See, e.g., Adamson v. Souder,* 55 A. 182, 183 (Pa. 1903) (a wife "joined in the deed of her husband . . . , as wives do daily, only for the purpose of passing any inchoate right of dower that she might have had in the land"); *Crain v. Warner,* 87 Pa. Super. 605, 608 (1926) ("The purpose of the wife's joining in her husband's deed is to bar her inchoate right of dower"); *see also Shupe v. Rainey,* 100 A. 138, 140 (Pa. 1917); *Appeal of Burk*, 75 Pa. 141, 147 (1874) (explaining that husband's agreement to sell land can only be enforced if wife signs the deed).

Finally, the PGC contends that there is no probative evidence of McCauley's agency, and that it is somehow "belied" by evidence in the public record. What is in fact "belied" is the PGC's argument, given that the Report found there was sufficient evidence of McCauley's agency. And the supporting records are not only publicly available (given that he was listed as their real estate agent, treasurer

---

[5] The PGC's contention that Proctor or his heirs "could have outbid" McCauley at the sale, *see* Response, ECF No. 162, at 12, is disingenuous, given that the only "notice" given of the tax sale was designed to conceal, rather than disclose, the sale from the property's true owners. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 315 (1950) ("Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed.").

and attorney in the Commonwealth's corporate and court records), but PGC's own title examiner ***knew*** that McCauley was an agent of CPLC.

In sum, because McCauley was CPLC's agent at the time of the 1908 tax sale (and the PGC has not submitted any evidence to the contrary), his purchase (whether adverse to or at the direction of CPLC)[6] operated as a redemption, restoring the status quo and leaving "the title precisely as though the sale had not been made." *Yocum v Zahner,* 29 A. 778, 779 (Pa. 1894); *Alexander v. Ellis,* 16 A. 770, 771-72 (Pa. 1889).

## IV. The Deed Language Is Controlling.

The PGC claims it is not bound by the reservations set out in its deed, claiming that *Herder Spring* rejected the argument. The PGC misreads *Herder Spring,* which actually compels a decision in the Trusts' favor. *Herder Spring* involved a generic clause stating "this conveyance is subject to all exceptions and reservations as are contained in the chain of title." 143 A.3d at 378. The Court held that this generic clause was insufficient to estop the grantee in that case, but went on to explain that where "the deed ***specifically mention[s] the name of the person*** who had a claim upon the land, ***in contrast to*** the deed in the case at bar ***which generically*** stated that the deed was subject to any reservations" the parties would be bound. *Id.* (emphasis added). The reservation language in the PGC Deed is not some "generic" reservation, it "specifically mention[s] the name of the

---

[6] Notably, the PGC ignores the fact that McCauley's tax sale purchase constituted a payment of the taxes. Act of Mar. 13, 1815, P.L. 177, Sec. 1. That alone warrants summary judgment in the Trusts' favor.

11

person[s] who had a claim upon the land" – "Thomas E. Proctor et al." *Id.* Indeed, it spells out the Proctor & Hill reservation as it was set out in the 1894 Deed. Thus, the PGC is bound by the recognition of title in Proctor & Hill. *See also Elliott v. Moffett*, 74 A.2d 164, 167 (Pa. 1950).

The PGC also attempts to downplay the effect of the reservation language, claiming that it only served to limit CPLC's warranty of title. But such an interpretation is unwarranted under the law, and irrational given the more straightforward methods of limiting a warranty in a deed and the overriding principle that the language of the deed must be given effect. Indeed, the sole case in which the PGC (and the Report) rely upon for this theory, again, rested on a generic "subject to" clause. *Burns v. Baumgardner*, 449 A.2d 590, 593 (Pa. Super 1982) (claiming "it was not unusual for conveyances to be made subject to all recorded covenants, easements and restrictions, **without specific enumeration**.") (emphasis added). In addition, the restriction in that case never applied to the tract at issue. *Burns'* reasoning has no application here because the recitation of the Proctor Reservation was not some generic "subject to all recorded reservations" clause. It specifically **enumerated** the Proctor Reservation, and provided the recorded deed reference. The PGC fails to address this flaw.

The PGC also fails to address the fact that CPLC claims its source of title in the deed from the 1903 deed Union Tanning deed, which in turn claims its source from Proctor's deed to Union Tanning. Thus, the Proctor and his heirs were the **source** of CPLC's claimed title, not strangers to it. The PGC seems to claim that because Proctor was not a party to the 1920 deed transaction itself (i.e. grantor or

12

grantee), that he and his heirs are automatically strangers. But the stranger to title rule only applies to a party who *never* was in the chain of title. *In re Condemnation by County of Allegheny of Certain Coal, Oil, Gas, Limestone and Mineral Properties*, 719 A.2d 1, 3 (Pa. Cmwlth. 1998) (reservation was in favor of an entity that never owned or held an interest in the property, and therefore, was a stranger). Otherwise, under the PGC's theory, reserved interests would never survive a subsequent deed transfer because the reservation owner would not be a "party" to that subsequent deed.

Finally, the PGC entirely ignores the principle that the Court should "ascertain and effectuate what the parties intended," and "effect must be given to *all* the language of the instrument and no part shall be rejected if it can be given a meaning…." *Brookback v. Benedum-Trees Oil Co.,* 131 A.2d 103, 107 & n.6 (Pa. 1957) (emphasis in original). Even if the reservation language does not estop the PGC (although it should), it is irrefutable evidence that the tax sale *did not* encompass the Subsurface Estate. To give the language in the deeds any effect, which the law requires, the reservation establishes that CPLC understood that (1) the taxes assessed only its surface interest in the Premises (because the Subsurface Estate was reported), and (2) McCauley's "purchase" at the tax sale operated as a redemption.

### V. The Tax Sale Is Void Because the County Failed to Provide Constitutionally Sufficient Notice.

The PGC does not raise any argument or address the U.S. Supreme Court or Third Circuit decisions that demonstrate the facial insufficiency of the purported

13

pre-sale "notice," and the resultant violation of the Trusts' due process rights. This is likely because they cannot distinguish the cases that found even more generous notice schemes insufficient, making the constitutional deprivation in this case especially clear. Although contained in a different section of its response, the PGC contends that the Proctor Reservation's appearance in a recorded deed is "not enough" to protect the Trusts' interests. ECF No. 162 at 9. Perhaps that may have been true under Pennsylvania's tax laws, but that is *not* the case with the Fourteenth Amendment.

Due Process requires that the government have procedures in place that are reasonably calculated to ensure notice will be given. *United States v. One Toshiba Color Television*, 213 F.3d 147, 155 (3d Cir. 2000) (*en banc*). Here, there is no question that the only procedure employed was notice by publication, without any attempt to name the impacted property owners, notify the property owners, or even to determine who they were (through a simple review of recorded deeds housed in the same building as the County treasurer's office). Such a "glaring lack of effort" on the part of the County dictates that constitutional due process was not met. *See Foehl v. United States*, 238 F.3d 474, 480 (3d Cir. 2001).

Accordingly, any tax sale that purports to include the Subsurface Estate would be an unconstitutional deprivation of property without due process of law.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the Trusts' Motion for Partial Summary Judgment, which is incorporated by reference herein, the Trusts respectfully request that the Court enter an order modifying the Report and

14

Recommendation insofar as it denies the Trusts' Motion for Partial Summary Judgment and enter summary judgment in the Trusts' favor.

Dated: March 28, 2019

Respectfully submitted,

/s/ *Laura A. Lange*
Laura A. Lange
   Pa. ID No. 310733
MCGUIREWOODS LLP
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
llange@mcguirewoods.com

Paul K. Stockman
   Pa. ID No. 66951
KAZMAREK MOWREY CLOUD LASETER LLP
One PPG Place, Suite 3100
Pittsburgh, PA 15222
pstockman@kmcllaw.com