## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, PENNSYLVANIA GAME COMMISSION, | |
| Plaintiff, | |
| v. | Case No. 1:12-CV-1567 |
| THOMAS E. PROCTOR HEIRS TRUST and the MARGARET O.F. PROCTOR TRUST, | Chief Judge Conner / Chief Magistrate Judge Schwab |
| Defendants. | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION OF THE DECEMBER 18, 2019 ORDER

Laura A. Lange
  Pa. ID No. 310733
1670 Sturbridge Drive
Sewickley, PA 15143
lange@proctortrust.com

Paul K. Stockman
  Pa. ID No. 66951
KAZMAREK MOWREY CLOUD LASETER LLP
One PPG Place, Suite 3100
Pittsburgh, PA 15222
pstockman@kmcllaw.com

***Counsel for Defendants***

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................1

PROCEDURAL HISTORY........................................................................2

QUESTIONS INVOLVED .........................................................................3

ARGUMENT .............................................................................................3

     I.     The Court's Findings Establish that CPLC Could Never
          Acquire the Subsurface Estate Through the Tax Sale.........................3

          A.     Because the Court Concluded That CPLC Properly
                   Reported, the Tax Sale Could Only Convey the Surface
                   Estate. ......................................................................................4

          B.     The Law Bars CPLC From Acquiring the Subsurface
                   Estate Through a Tax Sale Caused by its Own Acts. ...............7

     II.    The Opinion Disregards the Controlling Decision in *Elliott v.*
          *Moffett*................................................................................................12

     III.   The Opinion Overlooked that McCauley's Payment of the
          Purchase Price Extinguished the Unpaid Taxes..................................14

     IV.   The Court Erred In Holding That the Tax Sale of Seated Land
          Was Permissible in 1908. ...................................................................16

CONCLUSION ........................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*New York State Nat. Gas Corp. v. Swan-Finch Gas Dev. Corp.*,
    173 F. Supp. 184 (W.D. Pa. 1959) .........................................................................6

*New York State Nat. Gas Corp. v. Swan-Finch Gas Dev. Corp.*,
    278 F.2d 577 (3d Cir. 1960) ...................................................................................6

**State Cases**

*Beaupland v. McKeen*,
    28 Pa. 124 (Pa. 1857) ...........................................................................................11

*Breisch v. Coxe*,
    81 Pa. 336 (Pa. 1876) ......................................................................................7, 10

*Buchanan v. Moore*,
    13 Serg. & Rawle 304 (Pa. 1825) .........................................................................11

*Burns v. Baumgardner*,
    449 A.2d 590 (Pa. Super 1982) ...........................................................................13

*Chambers v. Wilson*,
    2 Watts 495 (Pa. 1834) ..........................................................................................9

*Coxe v. Gibson*,
    27 Pa. 160 (1856) ...........................................................................................11, 12

*Coxe v. Wolcott*,
    27 Pa. 154 (1856) ...................................................................................................9

*Day v. Swanson*,
    236 Pa. 493 (Pa. 1912) .........................................................................................17

*Elliott v. Moffett*,
    74 A.2d 164 (Pa. 1950) ..........................................................................1, 9, 12, 13

*F.H. Rockwell & Co. v. Warren County*,
    77 A. 665 (Pa. 1910) ..............................................................................................6

*Greiner v. Com.*,
    6 A.2d 67 (Pa. 1939) ........................................................................................14

*Herder Spring Hunting Club v. Keller*,
    143 A.3d 358 (Pa. 2016) .............................................................................*passim*

*Hess v. Westerwick*,
    76 A.2d 745 (Pa. 1950) ....................................................................................11

*Jedlicka v. Clemmer*,
    677 A.2d 1232 (Pa. Super. 1996) ...............................................................13, 14

*Knupp v. Syms*,
    50 A. 210 (Pa. 1901) ...............................................................................2, 15, 16

*Laird v. Hiester*,
    24 Pa. 452 (Pa. 1855) .......................................................................................16

*Lamb v. Irwin*,
    69 Pa. 436 (Pa. 1871) .......................................................................................14

*Patterson v. Brindle*,
    9 Watts 98 (Pa. 1839) .......................................................................................11

*Powell v. Lantzy*,
    34 A. 450 (Pa. 1898) ..................................................................................1, 7, 9

*Sanderson v. City of Scranton*,
    105 Pa. 469 (1888) .............................................................................................5

*Scott v. Bell*,
    25 A.2d 308 (Pa. 1942) ................................................................................2, 16

*Simpson v. Meyers*,
    47 A. 868 (Pa. 1901) ........................................................................................17

*Sugden v. Rothschild*,
    155 A. 864 (Pa. 1931) ......................................................................................17

*Wheeler v. Knupp*,
    55 A. 979 (Pa. 1903) ........................................................................................16

*Wilson v. A. Cook Sons Co.*,
  148 A. 63 (Pa. 1929) ................................................................................5

**State Statutes**

Act of 1806 ...................................................................................*passim*

Act of 1885 ...............................................................................................17

Act of June 6, 1887 ............................................................................4, 7, 10

Act of June 4, 1901 ...................................................................................16

Act of May 21, 1913 ..................................................................................17

## INTRODUCTION

In granting partial summary judgment in favor of the Pennsylvania Game Commission ("PGC"), the Court correctly evaluated the evidence, but made certain legal determinations that are inconsistent with controlling Pennsylvania authority.

***First***, the Court observed that CPLC properly reported its interest pursuant to the Act of 1806, but overlooked the impact that CPLC's reporting had on the effect of the tax sale. Only two options exist: either (1) CPLC accurately reported its ownership of the surface estate, rendering the tax sale inoperative as to the subsurface, *Herder Spring Hunting Club v. Keller*, 143 A.3d 358, 355-356, 360 (Pa. 2016); or (2) CPLC falsely reported its ownership, violating its duty under the Act of 1806, thereby estopping it from using its default to acquire the subsurface, *Powell v. Lantzy,* 34 A. 450, 451 (Pa. 1898). Under either scenario, CPLC could not acquire the subsurface at a tax sale.

***Second***, the post-tax sale deed confirms that the 1908 tax sale ***did not encompass*** the reserved subsurface estate. The PGC deed is expressly subject to the Proctor and Hill Reservation and states the PGC's title derives from the Proctor and Hill deed, not the tax deed. The Court's interpretation of "subject to" is contrary to *Elliott v. Moffett*, 74 A.2d 164, 167 (Pa. 1950). The Court failed to address *Elliott* and its holding that the same "subject to" language estops a party to the deed from claiming a reserved interest.

***Third***, the Court misconstrued the effect of McCauley's "purchase." Because McCauley was CPLC's agent, as the Court held, his tax sale purchase operated as payment of the ***defaulted taxes*** (not the statutory redemption amount),

operating as the equivalent to a redemption and keeping the title to the subsurface estate in Proctor and Hill. *See, e.g., Knupp v. Syms,* 50 A. 210, 212 (Pa. 1901).

**Fourth**, based upon a misreading of *Scott v. Bell*, 25 A.2d 308, 308 (Pa. 1942), the Court erroneously held that the misclassification of "seated" land as "unseated" had no effect on the validity of the tax sale. However, as *Scott* itself acknowledged, tax sales of "seated" land were invalid between 1901 and 1913, and *Scott* is thus inapplicable to the 1908 tax sale. *Id.* at 310. Consequently, because the Court held that the land was in fact "seated," the 1908 tax sale is void.

Based on undisputed facts that the Court recognized, CPLC as a matter of law could not acquire title to the subsurface estate through the 1908 tax sale. For these reasons, the Court should grant reconsideration and enter a partial summary judgment for the Trusts.

## PROCEDURAL HISTORY[1]

In August 2012, the PGC initiated this action by filing a quiet title claim against the Trusts seeking title to the oil, gas and minerals in and under certain lands. (ECF No. 1). The parties filed cross-motions for summary judgment as to one property – the Josiah Haines Warrant. (ECF No. 94; ECF No. 123). On February 21, 2019, Magistrate Judge Schwab entered a report and recommendation denying both cross-motions. (ECF No. 155). Both parties filed objections. On

---

[1] The Factual Background is omitted as the facts are set out in the Trusts' Concise Statement of Material Facts (ECF No. 95) and the Court's Memorandum Opinion (ECF No. 165).

December 18, 2019, the Court granted the PGC's motion for partial summary
judgment.  (ECF No. 166).

## QUESTIONS INVOLVED

1.     Does the Court's holding that CPLC reported the property for taxation
compel the conclusion that the tax sale did not encompass the subsurface estate?

2.     Does the law bar CPLC from acquiring the subsurface estate through
a tax sale caused by its own acts?

3.     Does an explicit recognition of the subsurface reservation in the
PGC's deed estop it from claiming the subsurface?

4.     Does McCauley's payment of the purchase price constitute payment
of the defaulted taxes, restoring the status quo?

5.     Does the prohibition of seated tax sales at the time of the 1908 tax sale
voids the sale, given that the property was seated?

## ARGUMENT

## I.    The Court's Findings Establish that CPLC Could Never Acquire the Subsurface Estate Through the Tax Sale.

The Pennsylvania Supreme Court held that the *grantee* to a deed severing
the surface and subsurface estates had the duty to report the ownership interests
pursuant to the Act of 1806.  *Herder Spring Hunting Club v. Keller*, 143 A.3d 358,
368-69 (2016) ("the obligation" was on the "subsequent owners to inform the
commissioners of the land owned to allow the commissioners to impose an
appropriate tax.").  This duty is critical here "because the county commissioners
were tasked with assessing unseated property for taxation purposes ***based on what***

3

***was reported by the owners***." *Id.* at 360 (emphasis added). Consequently, CPLC had an affirmative duty to report its ownership in the Premises' ***surface estate*** so that the commissioners would "impose an appropriate tax." *Id.* at 369.

Here, the Court properly concluded that "both Union Tanning and CPLC reported their unseated property interest to the Bradford County commissioner as required by the Act of 1806." (Opinion, ECF No. 165, at 30) (citing unseated land assessment books, which "compel the conclusion that the companies properly reported their unseated interests to Bradford County."). As a result, either (1) CPLC accurately reported its ownership of the surface estate, excluding the subsurface from the tax sale's scope; or (2) CPLC falsely reported its ownership, violating its duty under the Act of 1806, thereby estopping it from using its violation to acquire the subsurface estate.[2] Either way, CPLC could not acquire the Proctor subsurface estate through the tax sale, either in its own name or through a "straw man."[3]

### A.  Because the Court Concluded That CPLC Properly Reported, the Tax Sale Could Only Convey the Surface Estate.

The evidence of reporting here is dispositive because the scope of the tax assessment and ensuing sale was "based on what was reported." *Herder Spring,*

---

[2] CPLC also violated its contractual obligation to pay the taxes and the duty imposed by the Act of Jun. 6, 1887, P.L. 363, No. 248 ("all taxes levied upon unseated lands, within the counties of this Commonwealth, ***shall be paid by the owner or owners of such unseated lands*** within the year for which the same are levied….").

[3] As the Court recognized, McCauley purchased the property at the tax sale as agent for CPLC.

143 A.3d at 360.  After a severance is reported, the county must assess and tax the severed estates separately.  *Id.* at 355-356 (quoting *Wilson v. A. Cook Sons Co.*, 148 A. 63, 64 (Pa. 1929); *see also Sanderson v. City of Scranton*, 105 Pa. 469, 469 (1888) ("Where the surface of lands and the minerals in place thereunder have been severed by the agreement or conveyance of the owner, and the respective divisions have become vested in different owners, the municipal authorities are bound to levy their taxes according to the ownership and value of these divisions. And each owner can be made responsible only for the tax on his interest, whether underlying strata or surface.").  Thus, because the evidence shows that CPLC "properly reported" its interest, the 1907 assessment and 1908 tax sale encompassed ***only CPLC's surface estate*** of the Josiah Haines Warrant, leaving the subsurface estate untouched.

That distinguishes this case from *Herder Spring*.  There, the Court explained that there was "no evidence" that the grantee reported under the Act of 1806.  143 A.3d at 360 ("[t]here is no evidence in the record that [the grantees of the surface estate] complied with the Act of 1806…which required anyone becoming a holder of unseated land to provide notice to the county commissioners of the transfer of ownership.").  The "lack of reporting" was relevant in *Herder Spring* because it "had the practical effect of having the property assessed and taxed as a whole," including the surface and subsurface.  *Id.* at 370; *see id.* at 372 (explaining that if no reporting occurred, the commissioners "would have assessed and taxed the Eleanor Siddons Warrant in its entirety").

By contrast, as the Court properly concluded here, the evidence shows that CPLC reported its interest.  Therefore, the tax assessment and sale included only CPLC's interest (the surface estate), and did not extend to the subsurface.  *See Herder Spring*, 143 A.3d at 360; *New York State Nat. Gas Corp. v. Swan-Finch Gas Dev. Corp.*, 278 F.2d 577, 579 (3d Cir. 1960) ("a tax deed conveys only such interest as was actually assessed to the defaulting taxpayer.").  As such, title to the subsurface estate was unaffected by the 1908 tax sale.  CPLC's post-tax sale acts – negotiations by McCauley to purchase subsurface estates (ECF No. 129, ¶ 60) and its lease and deed to the PGC recognizing Proctor's and Hill's continued subsurface ownership (ECF No. 95, ¶ 34-38) – are consistent with this outcome.

The Court overlooked this dispositive effect of CPLC's reporting, and instead, appeared to require a separate assessment of the subsurface estate. (Opinion at 29).  However, **reporting** is the critical inquiry under *Herder Spring*, not a separate assessment.[4]  Because the tax assessment could encompass only

---

[4] The absence of a separate assessment shows only that there was no development of the subsurface on which to base a valuation – a necessary prerequisite for any assessment of subsurface rights.  *F.H. Rockwell & Co. v. Warren County*, 77 A. 665, 666 (Pa. 1910) ("[a] mere naked reservation of oil and gas in a deed without any other facts to base a valuation upon is not sufficient to warrant the assessment of taxes."); *see also New York State Nat. Gas Corp. v. Swan-Finch Gas Dev. Corp.*, 173 F. Supp. 184, 193 (W.D. Pa. 1959), *aff'd,* 278 F.2d 577 (3d Cir. 1960).  In fact, the evidence demonstrated that Bradford County assessed subsurface rights only where actual production occurred, placing them on the list of "seated" lands.  (ECF No. 129, ¶¶ 53-55).  Indeed, the Proctor and Hill subsurface estate was assessed on the seated list following the severance because of coal mining.  (ECF No. 129, ¶¶ 55 & 60.c).

CPLC's reported interest in the Premises, the tax sale could not alter title to the subsurface.

Because the Court overlooked the effect CPLC's reporting had on the tax sale's scope, the Court should grant reconsideration, deny the PGC's motion for partial summary judgment, and grant summary judgment to the Trusts.

### B.    The Law Bars CPLC From Acquiring the Subsurface Estate Through a Tax Sale Caused by its Own Acts.

It is a universal principle that "one cannot profit by his own wrong, and build up or acquire a title founded upon his own neglect of duty."  *Powell v. Lantzy*, 34 A. 450, 451 (Pa. 1896).  The following duties precluded CPLC from acquiring the subsurface estate:

- CPLC had the statutory duty to report its interest in the surface estate *only*, so that any assessment and sale would encompass only the surface estate.  *Herder Spring*, 143 A.3d at 360, 368-69 (citing the Act of 1806).

- CPLC had the contractual duty to pay taxes pursuant to its deed from Union Tanning (ECF No. 97-1, at 64), instilling reliance that the properties would not be lost at a tax sale.

- CPLC had a statutory duty to pay the taxes assessed on its land.  *See* Act of Jun. 6, 1887, P.L. 363, No. 248 ("all taxes levied upon unseated lands… ***shall be paid by the owner or owners of such unseated lands*** within the year for which the same are levied….") (emphasis added); *Breisch v. Coxe*, 81 Pa. 336, 346 (Pa. 1876) ("[T]he

payment of taxes is a duty, and a failure to perform it is the fault of the owner.").

In order for CPLC to have acquired the subsurface estate via tax sale, the Court would have to find that CPLC (1) violated its duty to report its ownership pursuant to the Act of 1806, and (2) violated its duty to pay the taxes, which led to the tax sale. Either failure by CPLC bars it from acquiring the Proctor and Hill subsurface estate. The Court, however, focused solely on CPLC's failure to pay taxes in rejecting the estoppel argument, ignoring CPLC's duty to report.

### i. CPLC Had a Statutory Duty to Report

The Court acknowledged the duty to report under the Act of 1806, but neglected its effect, and *who* had that duty. The Court recognized that CPLC "properly reported," (Opinion at 30), but then states that "CPLC had no obligation to ensure that Proctor and Hill reported their mineral estate for separate assessment…" and that "Proctor and Hill could have been deemed 'in default' for failing to report their severed estate…." (Opinion at 36.)[5] Under the Act of 1806 and the holding in *Herder Spring*, **CPLC** had the obligation to ensure the severance was reported, and Proctor and Hill could not be deemed "in default" as they "***were***

---

[5] This misapprehension led to the conclusion that CPLC could then strengthen purportedly defective title. (Opinion at 36.) Even if the subsurface estate were somehow in "default," that would have no impact on CPLC's title. The severed estates are two separate estates in land and CPLC's surface title did not suffer from any purported defects. "Title washing" permitted a party to clear defective title, not to acquire a separate, neighboring estate in land.

*not required* to report their reservation of rights under the reporting requirements of the Act of 1806." 143 A.3d at 360 (emphasis added).

Thus, it was CPLC's obligation to ensure it accurately reported under the Act of 1806. CPLC's compliance with its statutory duty would prevent the subsurface from being included in the ensuing assessment. *Id.* at 360, 368-69. Conversely, the tax sale could only encompass the subsurface estate if CPLC failed to comply with its statutory duty. CPLC's neglect of this *duty to report* would estop CPLC from acquiring the subsurface estate. *Powell,* 34 A. at 451; *Coxe v. Wolcott*, 27 Pa. 154, 159 (1856); *Chambers v. Wilson*, 2 Watts 495, 502 (Pa. 1834) ("It would be a fraud to permit her to gain a title by the non-performance of a duty which the law throws upon her."); *see also Elliott v. Moffett*, 74 A.2d 164, 168 (Pa. 1950) (an owner "cannot take advantage of his violation of that duty by purchasing the property at a tax sale occasioned by his own default."). Therefore, under either scenario, CPLC could not acquire the subsurface estate through a tax sale.

## ii. <u>CPLC Had the Contractual and Statutory Duty to Pay Taxes</u>

Additionally, CPLC had both a contractual and statutory duty to pay the assessed taxes, thereby preventing it from taking advantage of its own default.

First, CPLC *bound* itself to pay the taxes on the land in its deed from Union Tanning. (ECF No. 97-1, at 64) ("the party of the second part [CPLC] for itself and its successors and assigns, hereby covenants and agrees to pay all remaining taxes upon said lands, timber and bark during the joint possession thereof, including all taxes that may be levied and assessed upon any increased valuation,

9

by reason of improvements or developments made on said lands.").  The Court overlooked this covenant, instead believing that "[t]here likewise was no contract or other agreement obligating CPLC to pay the taxes."  (Opinion at 35).

Second, the Act of June 6, 1887, P.L. 363, created a statutory duty on the "owner or owners" of unseated lands to pay the taxes levied on their unseated lands.  Act of June 6, 1887, P.L. 363, Section 1 ("all taxes levied upon unseated lands…*shall be paid by the owner* or owners of such unseated lands….").[6]  The Act of 1887 is controlling and conflicts with the Court's statement that "[m]ere ownership of the unseated land created no obligation on CPLC to pay the assessed taxes."  (Opinion at 35).

Because CPLC had both the legal duty to report the severance (and its resulting partial estate) and the contractual and legal duty to pay the taxes, it is estopped from acquiring the subsurface estate through the tax sale.

### iii.  Equity Requires that CPLC Bear the Loss in the Absence of Any Legal Duty.

Regardless of the legal duties imposed on CPLC to report and pay its taxes, equitable considerations still preclude CPLC from acquiring the subsurface estate.  Quiet title actions call for a court to exercise principles of equity, and the Pennsylvania Supreme Court has held that "in accordance with an equitable

---

[6] Caselaw also imposed a legal and moral obligation on CPLC to pay the taxes assessed on its holdings.  *See, e.g., Breisch*, 81 Pa. at 346 ("[T]he payment of taxes is a duty, and a failure to perform it is the fault of the owner.").  Additionally, because the Court found that the land was seated at the time, CPLC would have been personally liable for the taxes.

principle of universal application…, where a loss must necessarily fall on one of two innocent persons, ***it shall be borne by him whose act occasioned it***." *Beaupland v. McKeen*, 28 Pa. 124, 131–32 (Pa. 1857) (emphasis added); *see also Buchanan v. Moore*, 13 Serg. & Rawle 304, 306 (Pa. 1825) ("If both were equally innocent, a loss, in consequence of the acts or declarations of the one, ought not to be borne by the other.").  This "universal" equitable principle precludes CPLC from acquiring another's estate in land because of its own acts.

There is no doubt that ***CPLC's actions*** caused the tax sale.  (Opinion at 31) ("CPLC intentionally failed to pay the assessed taxes" and "CPLC's default induced a treasurer's sale").  Thus, even absent any affirmative "legal" duty, CPLC must bear the loss because its conduct led to default.  This equitable result aligns with two overarching principles espoused by the Pennsylvania Supreme Court with regard to tax sales: (1) "the purpose of tax sales is not to strip the taxpayer of his property but to insure the collection of taxes," *Hess v. Westerwick*, 76 A.2d 745, 748 (Pa. 1950); and (2) "[a] law… authorizing the redemption of lands sold for taxes, ought to receive a liberal and benign construction in favor of those whose estates will be otherwise divested," *Patterson v. Brindle*, 9 Watts 98, 101 (Pa. 1839) (internal quotations and citation omitted).[7]

_____

[7] The decision in *Coxe v. Gibson*, 27 Pa. 160, 165 (1856), does not support a different result.  First, several of the quotes attributed to *Gibson* are from the defendants' arguments on appeal, and not the Pennsylvania Supreme Court's opinion.  (*See, e.g.,* Opinion at 36) (reciting that preventing a party of disputed land from purchasing title at a tax sale "would involve the absurdity that each claimant would have a claim on his adversary to keep the taxes paid, and failing to do so, acquire no title at a sale for their non-payment," a statement from defendants'

Accordingly, the Trusts respectfully ask the Court to reconsider its conclusion that the Pennsylvania Supreme Court would reward a landowner's deliberate default.

## II.   The Opinion Disregards the Controlling Decision in *Elliott v. Moffett*.

The Opinion contravenes settled precedent by rejecting the principle that "one claiming under a deed is bound by any recognition it contains of title in another." *Elliott v. Moffett*, 74 A.2d 164, 167 (Pa. 1950). The Court did not address this controlling principle; instead, the Court held that the "subject to" language merely limited the warranty. (Opinion at 37) (citing a non-controlling Superior Court decision). However, the deed in *Elliott* used the same "subject to" language. 74 A.2d at 167 ("***Subject***, nevertheless, ***to*** the right of redemption vested in the said Hiram Davis, his heirs and assigns.") (emphasis added). This language

---

argument on appeal); (*id.* at 34) (reciting defendant's argument that neither Felt nor the subsequent buyers "were bound" to pay the taxes). Although Westlaw mistakenly included that argument section under Westlaw's "Opinion" heading, the text of the Pennsylvania Supreme Court's opinion follows the text "The opinion of the court was delivered by Woodward, J." Historical reporters summarized both sides' arguments prior to setting out the Court's opinion, and Westlaw misstates where the opinion begins in several of these cases.

Second, the Court in *Gibson* only allowed *bona fide* owners of "defective title" to purchase the land at a tax sale, explaining that if the defendant had been implicated in the initial fraud, his subsequent tax sale purchase would have operated as a redemption. *Gibson*, 27 Pa. at 165; *see also* Black, Tax Titles, § 274 (explaining *Gibson* as allowing only a claimant with "voidable or radically defective title" to purchase the land at a tax sale). Here, CPLC did not hold voidable or defective title prior to the tax sale. Instead, the tax sale at issue here is equivalent to the first, fraudulent sale in *Gibson*.

was held sufficient to estop the parties to the deed from claiming that Davis'
interest had been eliminated.  *Id.*

Critically, the Superior Court decision on which the Court relies involved a
generic statement that the deed was "subject to all recorded covenants, easements
and restrictions, ***without specific enumeration***."  *Burns v. Baumgardner*, 449 A.2d
590, 593 (Pa. Super 1982)) (emphasis added); *see also Herder Spring*, 143 A.3d at
361 (the deed "generically provided, '[t]his conveyance is subject to all exceptions
and reservations as are contained in the chain of title,' ***without specifying the
Keller reservation***.") (emphasis added).  Here, as in *Elliott*, the deed ***specifically
enumerated*** the Proctor and Hill Reservation, not only by name and deed
reference, but also spelling out the nature of the reserved interest:  "all the
minerals, coal, oil, gas or petroleum found now or hereafter on, or under the
surface of any or all of the lands above described in each of the above mentioned
parts or divisions; together with the right and privilege of ingress, egress, regress
upon said lands for the purpose of prospecting for, or developing, working or
removing the same."  (ECF No. 95, ¶ 38.)

This is precisely the type of recitation that *Elliott* holds as binding.
Construing *Elliott*, *Herder Spring* explained that where a "deed specifically
mention[s] the name of the person who had a claim upon the land," the parties to
the deed are thereafter estopped from claiming title to that reserved interest.
*Herder Spring*, 143 A.3d at 378.  Thus, the PGC is bound by this recognition of
title and is estopped from claiming title to the subsurface estate.  *Elliott*, 74 A.2d at
167; *see also Jedlicka v. Clemmer*, 677 A.2d 1232, 1234–35 (Pa. Super. 1996)

13

("one who claims title to property through another…is bound by earlier acts or declarations of his predecessor and takes the title *cum onere.*").

Furthermore, the Court's presupposition that the tax sale "washed" the subsurface puts the cart before the horse. CPLC's explicit reference to the Proctor and Hill reservation, and its omission of the purported tax title, is competent contemporaneous evidence that the tax sale ***did not*** convey the subsurface. "[A]ll acts and declarations of the owner of land made during the continuation of his interest tending to show the character or ***extent of his possession or interest***…are competent evidence…." *Jedlicka*, 667 A.2d at 1234-35 (emphasis added); *see also Greiner v. Com.*, 6 A.2d 67, 69 (Pa. 1939) (applying the rule to the Commonwealth agencies). The explicit recognition of the Proctor and Hill subsurface in the deed supports the Court's finding that CPLC "properly reported" its interests, *supra* Section I.A, which establishes that the taxes assessed only CPLC's surface interest in the Premises.

Thus, it is clear that CPLC and the PGC understood that Proctor's and Hill's title to the subsurface remained valid and they are bound by that determination.

## III.  The Opinion Overlooked that McCauley's Payment of the Purchase Price Extinguised the Unpaid Taxes.

As this Court properly concluded, McCauley was CPLC's agent at the time of the 1908 tax sale. (Opinion at 27-28). Under settled law, an agent's purchase at a tax sale is equivalent to a redemption. *Lamb v. Irwin*, 69 Pa. 436, 442–43 (Pa. 1871) ("The finding of the alleged agency would have vitiated the treasurer's sale"); (*see also* ECF No. 153, ¶ 63 & ECF No. 153-2, Ex. 84 (admissions by the

14

PGC's agent that purchases by CPLC's attorneys and officers would not "have any greater effect than that of redemption, in which case the title to the oil, gas and minerals would not be divested…."). This is because an agent's payment of the tax sale purchase price is treated as ***payment of the underlying assessed taxes***. *Knupp v. Syms*, 50 A. 210, 212 (Pa. 1901); *see also* Black, Tax Titles, § 273 ("his purchase is deemed merely a mode of paying the taxes and leaves the title in precisely the position it would have occupied if the payment had been made before instead of after the land was put up for sale. This rule rests on such obvious principles as to require no justification.") (citations and footnote omitted).

The Court misconstrued that McCauley's payment had to be the amount owed to redeem the property under the statute (including a 25% premium to the tax sale purchaser). (Opinion at 34 n. 14).[8] The law, however, treats an agent's payment of the purchase price as the payment of the defaulted taxes.[9] *Knupp v. Syms* is on point. There, the owners' agent purchased the land at a tax sale and made a "payment" of the sale price, equal to the amount of the unpaid taxes, to the treasurer in the following December. *Id.* The Court held that this payment "must be deemed equivalent to a redemption." *Id.*; *see id.* (by making the payment "long

---

[8] The redemption money is owed to the tax sale purchaser (McCauley). Thus, the logic does not follow that McCauley would have to pay ***himself*** the redemption money in order for his purchase to operate as a redemption. Because he is an agent of CPLC, his payment is treated as a payment on his principal's behalf. Additionally, as the evidence shows, the purchase money was CPLC's money.

[9] While the ***effect*** is that of a redemption (in that it restores the status quo), it is not controlled by statutory redemption requirements.

before the time for redemption had expired, he, by the consent of the purchaser-himself being the purchaser-did for his principals all they were bound to do to save their land."); *see also Wheeler v. Knupp*, 55 A. 979, 979 (Pa. 1903) (explaining that in *Syms*, because the tax "had been in fact paid before the maturity of the treasurer's deed [two years after the sale]…this was equivalent to a redemption").

"The unseated land laws are intended to enforce the payment of taxes, and their purpose is fulfilled when the duty is performed." *Laird v. Hiester*, 24 Pa. 452, 464 (Pa. 1855). Here, the payment of taxes was fulfilled with McCauley's payment of the purchase price, which exceeded the amount of the defaulted taxes.

Accordingly, when an agent of the defaulting taxpayer purports to purchase property at an unseated tax sale, Pennsylvania law treats it as a payment of overdue tax on the principal's behalf, and thus as "equivalent to a redemption." *Syms,* 50 A. at 212.

## IV.    The Court Erred In Holding That the Tax Sale of Seated Land Was Permissible in 1908.

The Court properly concluded that the Josiah Haines warrant was in fact "seated" at the time of the 1907 assessment, but the Court then held that the tax sale was nonetheless valid, citing *Scott v. Bell*, 25 A.2d 308 (Pa. 1942). In *Scott*, the court held that whether the land was seated or unseated for a 1930 tax sale was irrelevant because the operative statute ***at the time*** permitted the sale of "seated" land. *Id.* at 309. However, as *Scott* itself acknowledged, tax sales of "seated" land were invalid between 1901 and 1913. *Id.* at 310 (explaining that the Act of June 4, 1901, P.L. 364 invalidated all sales of "seated" land and that such tax sales were

16

not restored until the Act of May 21, 1913, P.L. 285); *see also Sugden v. Rothschild*, 155 A. 864, 865 (Pa. 1931) (explaining that the "Act of June 4, 1901, P. L. 364, since it furnished a complete and exclusive system for the recovery of taxes from the seated lands…actually or impliedly repealed all earlier statutes bearing on the subject"); *Day v. Swanson*, 236 Pa. 493, 495 (Pa. 1912) (holding 1904 sale of seated land for taxes was invalid). Thus, the controlling law at the time of the 1908 tax sale prohibited the sale of seated land.[10]

Because the Court properly found the evidence indicated the land was in fact seated, the tax sale was without authority and thereby void.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the Trusts' Motion for Partial Summary Judgment, which is incorporated by reference herein, the Trusts respectfully request that the Court grant reconsideration and enter an order denying the Game Commission's Motion for Partial Summary Judgment and granting the Trusts' Motion for Partial Summary Judgment in the Trusts' favor.[11]

---

[10] An important foundation to the Act of 1885 was that the treasurer was authorized to sell both seated and unseated lands. However, the Act of 1901 eliminated the treasurer's authority to sell seated land, which reestablished the need to determine the true nature of the land for a valid tax sale. *See Simpson v. Meyers*, 47 A. 868, 870–71 (Pa. 1901) (permitting a tax sale without jurisdiction "would be to deprive the appellee of his land without legal authority, and to forfeit it through the unauthorized act of the treasurer").

[11] Because resolution in favor of the Trusts' on any of the arguments raised in the motion for partial summary judgment would efficiently resolve the remaining claims, the Trusts ask the Court to determine that there is no just reason for delay, and direct entry of a partial final judgment pursuant to Rule 54(b), so

Dated: January 9, 2020                    Respectfully submitted,

                                          /s/ *Laura A. Lange*
                                          Laura A. Lange
                                             Pa. ID No. 310733
                                          1670 Sturbridge Drive
                                          Sewickley, PA 15143
                                          lange@proctortrust.com

                                          Paul K. Stockman
                                             Pa. ID No. 66951
                                          KAZMAREK MOWREY CLOUD LASETER LLP
                                          One PPG Place, Suite 3100
                                          Pittsburgh, PA 15222
                                          pstockman@kmcllaw.com

### CERTIFICATE OF COMPLIANCE:

I hereby certify that the foregoing brief complies with the 5,000-word word-count limit, in that it contains 4,973 words, computed using the word count feature of Microsoft Word.

Dated:  January 9, 2020                   /s/ *Laura A. Lange*

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed with the Clerk of Court today via the Court's CM/ECF, and that, pursuant to Local Civil Rule 5.7, participants in the case who are registered ECF users will be served by the ECF system.

Dated:  January 9, 2020                   /s/ *Laura A. Lange*

---

that the parties may seek review in the Court of Appeals as opposed to proceeding to address the idiosyncratic issues that exist for the remaining properties.