# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,　　:　CIVIL ACTION – LAW
PENNSYLVANIA GAME COMMISSION,　　:
　　　　　　　　　　　　　　　　　:　CASE NO. 1:12-CV-1567
　　　　　　　　　　Plaintiff,　　　:
　　　　　　　　　　　　　　　　　:　JUDGE: Christopher C. Conner
　　　　　　　v.　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
THOMAS E. PROCTOR HEIRS TRUST and　:
the MARGARET O.F. PROCTOR TRUST,　　:
　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Defendants.　　　:
　　　　　　　　　　　　　　　　　:　[Electronically Filed]

## PLAINTIFF'S BRIEF IN OPPOSITION
## TO DEFENDANTS' MOTION FOR RECONSIDERATION

DATE:  January 23, 2020　　　　　Bradley C. Bechtel, Chief Counsel
　　　　　　　　　　　　　　　PA No. 49681
　　　　　　　　　　　　　　　W. Creigh Martson, Assistant Counsel
　　　　　　　　　　　　　　　PA No. 94759
　　　　　　　　　　　　　　　PENNSYLVANIA GAME COMMISSION
　　　　　　　　　　　　　　　2001 Elmerton Ave
　　　　　　　　　　　　　　　Harrisburg, PA 17110-9797
　　　　　　　　　　　　　　　(717) 783-6530
　　　　　　　　　　　　　　　brbechtel@pa.gov
　　　　　　　　　　　　　　　wmartson@pa.gov

　　　　　　　　　　　　　　　*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................. 1

II.   ARGUMENT ...................................................................................................... 1

   A.   The Court Did Not "Overlook" The Effect Of CPLC's Purported
        Reporting On The Scope Of The Tax Sale ................................................ 2

   B.   No "Duties" Precluded CPLC From Acquiring The Subsurface
        At A Tax Sale ............................................................................................... 6

        1.   CPLC had no statutory duty to report .......................................... 9

        2.   CPLC had no contractual duty to pay taxes ............................... 10

        3.   CPLC had no statutory duty to pay the taxes ............................. 12

        4.   Equity does not require a different result ................................... 12

   C.   The Court Does Not Disregard The *Elliott* Decision ........................... 13

   D.   The Court Did Not Misconstrue The Purchase By McCauley .............. 14

   E.   The Court Did Not Err In Applying *Scott* ........................................... 19

III.  CONCLUSION ................................................................................................ 20

## TABLE OF AUTHORITIES

### Federal Cases

*Proctor v. Sagamore Big Game Club*, 265 F.2d 196 (3d Cir. 1959) .............. 5, 14

*Proctor v. Sagamore Big Game Club*, 166 F. Supp. 465 (W.D. Pa. 1958) .............. 14

*Tereo v. Smuck*, 2019 U.S. Dist. LEXIS 113053 (M.D. Pa. July 9, 2019) .............. 1

### State Cases

*Arthurs v. King*, 95 Pa. 167 (Pa. 1880) .............. 15

*Bartholomew v. Leach*, 7 Watts 472 (Pa. 1938) .............. 16

*Cornwall Mt. Invs., L.P. v. Thomas E. Proctor Heirs Trust*,
158 A.3d 148 (Pa. Super. 2017) .............. *passim*

*Coxe v. Hathaway*, 27 Pa. 160 (Pa. 1856) .............. 15

*Coxe v. Sartwell*, 21 Pa. 480 (Pa. 1853) .............. 17

*Coxe v. Wolcott*, 27 Pa. 154 (Pa. 1856) .............. 16

*Elliott v. Moffett*, 74 A.2d 164 (Pa. 1950) .............. 13, 14

*Ellis v. Houseknecht*, 57 Pa. Super. 55 (Pa. Super. 1914) .............. 12

*Herder Spring v. Keller*, 143 A.3d 358 (Pa. 2016) .............. *passim*

*Hick v. Peoples-Pittsburgh Trust Co.*, 16 A.2d 718 (Pa. 1940) .............. 12

*Keta Gas & Oil Co. v. Proctor*, 2019 Pa. Super. Unpub. LEXIS 4532
(Pa. Super. Dec. 6, 2019) .............. *passim*

*Knupp v. Syms*, 50 A. 210 (Pa. 1901) .............. 18

*Lamb v. Irwin*, 69 Pa. 436 (Pa. 1871) .............. 16

*Neill v. Lacy*, 110 Pa. 294 (Pa. 1885) .............................................................. 14

*Philadelphia v. Miller*, 192 Pa. Super. 239 (Pa. Super. 1956) ....................... 17

*Powell v. Lantzy*, 34 A. 450 (Pa. 1896) .................................................... *passim*

*Rogers v. Johnson*, 70 Pa. 224 (Pa. 1871) ....................................................... 15

*Scott v. Bell*, 25 A.2d 308 (Pa. 1942) ............................................................... 19

*Woodhouse Hunting Club, Inc. v. Hoyt*, 183 A.3d 453 (Pa. Super. 2018) ............ 5

*Yocum v. Zahner*, 162 Pa. 468 (Pa. 1894) ....................................................... 16

## Other Authorities

*An Historical Perspective Of The Pennsylvania Title Wash*,
85 PA Bar Assn. Quarterly 106 (July 2014) .................................................... 13

## I.    INTRODUCTION

The Court, late last year, considered and resolved the parties' cross-motions for partial summary judgment in an extensive memorandum opinion (Doc. 165) that followed from objections to a similarly extensive recommended decision by Magistrate Judge Schwab (Doc. 155).   The Court denied the Trusts' motion for partial summary judgment and granted Commission's motion for partial summary judgment.

The Trusts now move for reconsideration of that decision (Doc. 171), asserting that the Court made certain legal determinations that are inconsistent with controlling Pennsylvania authority.  But the Trusts base their motion on arguments identical to, or expanding upon, those raised in summary judgment briefing and, further, fail to identify or substantiate any error of law in the Court's prior decision. The Trusts' motion, thus, fails to provide a legitimate basis to reconsider the Court's interlocutory order and, accordingly, fails to establish why reconsideration would be consonant with justice.  *See Tereo v. Smuck*, 2019 U.S. Dist. LEXIS 113053, at *2-*3 (M.D. Pa. July 9, 2019).

## II.    ARGUMENT

The Trusts' motion presents five bases on which they contend reconsideration is warranted, *see* Doc. 172 at 8, each of which the Commission addresses below in turn.

## A.    The Court Did Not "Overlook" The Effect Of CPLC's Purported Reporting On The Scope Of The Tax Sale.

The Trusts' first argument is that the Court's finding that CPLC reported its unseated interest in the Josiah Haines warrant to Bradford County compels the conclusion, under *Herder Spring*, that the tax assessment and 1908 tax sale included only CPLC's interest and did not extend to the subsurface.  *See* Doc. 172 at 11, citing *Herder Spring Hunting Club v. Keller*, 143 A.3d 358, 360 (Pa. 2016).  The Trusts argue that CPLC's reporting of its unseated interest to Bradford County meant that the tax assessment could encompass only CPLC's interest therein and, therefore, title to the severed subsurface estate was unaffected by the 1908 tax sale.  *Id*. 11-12. The Trusts are wrong for several reasons.

First, the Trusts' argument, at bottom, is a challenge to the propriety of the assessment of the Josiah Haines warrant.  That is, what the Trusts are really arguing is that, because CPLC purportedly reported its interest, the *tax assessment* that led to CPLC defaulting on the 1907 taxes, and subsequent 1908 tax sale based on that assessment, *should have* included only CPLC's surface interest and not the subsurface.  But such arguments regarding the propriety of the assessment of the subject property are long barred by the applicable statute of limitations.  *See Herder Spring*, 143 A.3d at 374.  *See also Cornwall Mt. Invs., L.P. v. Thomas E. Proctor Heirs Trust*, 158 A.3d 148, 160 (Pa. Super. 2017).  Thus, even if CPLC reported its unseated interest in the Josiah Haines warrant to Bradford County, which the

2

Commission disputes, it simply does not matter, as the 1908 tax sale is unassailable on that basis.  *See Herder Spring*, 143 A.3d at 374; *Cornwall*, 158 A.3d at 160.

Second, although the Court found that CPLC "reported" its interest, any such "reporting," if one reads between the lines of the Trusts' voluminous filings with the Court, was done solely by the recording of deeds with Bradford County.  But what is legally relevant here, under the 1806 Act as interpreted by *Herder Spring*, is whether Thomas E. Proctor separately reported the 1894 ***severance*** to the Bradford County commissioners such that the subsurface estate should have been separately assessed and taxed prior to the 1908 tax sale.

The Pennsylvania Supreme Court's decision in *Herder Spring* makes clear that failure to report a ***severance*** of unseated land, as occurred here, "had the practical effect of having the property assessed and taxed as a whole, given that the assessors were not required to determine the sometimes elusive current ownership." *See Herder Spring*, 143 A.3d at 370.  Thus, if neither the Trusts' predecessors-in-interest nor the purchaser of the surface rights reported the severance to the Bradford County commissioners, then the commissioners would have continued to assess and tax the Josiah Haines warrant *in its entirety*.  *Id*. at 370, 372.  That is because "the tax system relating to unseated land, including the Acts of 1806 and 1815, treated unseated land entirely in reference to the original warrants when not otherwise directed by the owners." *Id.* at 372.  As ownership of unseated land was not easily

3

ascertainable, the county commissioners "were *not tasked with searching deed records* to determine the present ownership of unseated land." *Id.* (emphasis added). Thus, that the 1894 reservation may have appeared in a deed recorded with the county is not enough. Because the Josiah Haines warrant was unseated, the failure to report the severance to the Bradford County commissioners resulted in the commissioners assessing and taxing the warrant in its entirety. *Id.* at 370; Doc. 155 at 76-79 & 82-83.

Although the subsurface rights in the warrant may have been severed from the surface estate via the 1894 reservation, those rights were not separately assessed by the Bradford County commissioners and there is no evidence establishing that the severance was ever reported. There is no evidence establishing that the Trusts' predecessors-in-title ever requested that the county commissioners separately assess the severed subsurface rights prior to the 1908 tax sale. There is no evidence establishing that the county commissioners ever assessed the subsurface rights separately from the surface estate prior to the 1908 tax sale. Further, though the 1806 Act did not, according to *Herder Spring*, impose a duty on the Trusts' predecessors-in-title to report the severance, the consequence of their failure to report the severance ultimately caused the land to be continually taxed and assessed as a whole, and consequently, sold as a whole at the 1908 tax sale. *See Herder Spring*, 143 A.3d at 370, 372. *See also* Doc. 155 at 76-79 & 82-83.

4

While the Trusts deny that the 1908 tax sale had any effect on their subsurface interests, the case law is clear that the sale extinguished the 1894 reservation in the warrant and divested the Trusts' predecessors-in-title of any interest they may have had in the oil, gas, and minerals. *See Herder Spring*, *supra*; *See also Keta Gas & Oil Co. v. Proctor*, 2019 Pa. Super. Unpub. LEXIS 4532, at *22 (Pa. Super. Dec. 6, 2019) (affirming court's determination that 1908 tax sale extinguished subsurface rights of Proctor); *Cornwall*, 158 A.3d at 159-60; *Woodhouse Hunting Club, Inc. v. Hoyt*, 183 A.3d 453, 457-58 (Pa. Super. 2018); *Proctor v. Sagamore Big Game Club*, 265 F.2d 196, 200-201 (3d Cir. 1959).

Finally, the Trusts ask the Court not to draw any negative inferences from their failure to offer any *actual proof* of a separate assessment of the severed subsurface estate in the Josiah Haines warrant. *See* Doc. 172 at 6, n.4. They contend that the reason the severed subsurface estate in the warrant was not separately assessed by the Bradford County commissioners was because there was no production or development of the subsurface rights during the relevant time period and, consequently, no basis on which to assess the property. *Id.*, citing *F.H. Rockwell & Co. v. Warren County*, 77 A. 665 (Pa. 1910).

This argument by the Trusts – that the reserved subsurface rights had no assessable value as of the 1908 tax sale – was flatly rejected by the Pennsylvania Supreme Court in *Herder Spring* and, subsequently, by the Superior Court in

*Cornwall*, a case in which the Trusts made, and lost, the very same argument.  *See Herder Spring*, 143 A.3d at 373-74; *Cornwall*, 158 A.3d at 156-57.  *See also Woodhouse*, 183 A.3d at 461.  Magistrate Judge Schwab addressed and correctly rejected, again, that same argument here.  *See* Doc. 155 at 81-82.

### B.    No "Duties" Precluded CPLC From Acquiring The Subsurface At A Tax Sale.

This Court, applying the Pennsylvania Supreme Court's decision in *Powell v. Lantzy*, 34 A. 450 (Pa. 1896), properly concluded that there was no duty – legal, contractual, equitable, or otherwise – obligating CPLC to pay the 1907 taxes that would transform the 1908 tax-sale purchase through McCauley into a redemption.

The Trusts, dissatisfied with the Court's ruling, rehash or expand upon arguments previously raised and rejected by the Court and contend, yet again, that the Court erred by allowing CPLC to benefit from title acquired upon neglect of a duty to report (or falsely reporting) or neglect of a duty to pay taxes.  *See* Doc. 172 at 7-8.  But the Court correctly rejected each of these "estoppel" arguments.

As a threshold matter, there is no evidence that the Trusts' predecessors-in-interest ever paid any taxes on the severed subsurface estate following the 1894 reservation.  Yet, the Trusts want this Court to conclude that the 1908 tax sale constituted a redemption of the property on behalf of CPLC thereby restoring title to the warrant to the "status quo," including the 1894 reservation of subsurface rights.  In other words, the Trusts want to cast the 1908 tax sale as a redemption so

that the Trusts can benefit from the ***failure*** of their predecessors in interest to pay any taxes on the severed subsurface estate following the 1894 reservation.

Regardless, just as in *Keta Gas*, the Trusts again fail to explain how CPLC or McCauley was under any duty, legal or otherwise, to pay taxes on the *Trusts'* subsurface estate. *See Keta Gas*, 2019 Pa. Super. Unpub. LEXIS 4532, at *16-*17. The Pennsylvania Supreme Court's *Powell* decision made clear, over a century ago, that the rule prohibiting one from profiting from his own failure to pay taxes was restricted to cases where it was the duty of the purchaser to pay the tax. *See* Doc. 165 at 34-35; *Herder Spring*, 143 A.2d at 360, 372; *Keta Gas*, 2019 Pa. Super. Unpub. LEXIS 4532, at *16. Here it was the *Trusts'* predecessors-in-interest, not CPLC or its successors-in-interest, who failed to pay taxes on the severed subsurface estate, causing that estate to be subject to a tax sale. Additionally, the Trusts fail to establish that McCauley was acting at the behest of CPLC when he purchased the Josiah Haines warrant at the 1908 tax sale. "To so conclude, would require this Court to improperly speculate as to the motives of individuals acting over a century ago." *Keta Gas*, 2019 Pa. Super. Unpub. LEXIS 4532, at *16.

Further, McCauley's purported motives in 1908 are not dispositive. Parties to a tax sale, held pursuant to the Act of 1815, had two years to challenge any irregularities regarding such sale or redeem the property at issue. *See Herder Spring*, 143 A.3d at 374-75; *Keta Gas*, 2019 Pa. Super. Unpub. LEXIS 4532, at *17. This

two-year statutory period provided owners of unseated property the opportunity to redeem or challenge tax sales, while allowing tax sale purchasers security after the two-year period had run. *See Herder Spring*, 143 A.3d at 379; *Keta Gas*, 2019 Pa. Super. Unpub. LEXIS 4532, at *17. Here, the Trusts' predecessors-in-interest failed to challenge any alleged irregularity in the 1908 tax sale, regarding McCauley's alleged fiduciary status or otherwise, during the two-year statutory period and are estopped from doing so now, over a century later. *See Herder Spring*, 143 A.3d at 379; *Keta Gas*, 2019 Pa. Super. Unpub. LEXIS 4532, at *17.

Moreover, Pennsylvania case law makes clear that a challenge to a tax sale after the two-year statutory period provided under the Act of 1815, is untenable as long as the property was unseated at the time of its assessment, the tax at issue was assessed by the proper authorities, and the tax went unpaid for over a year. *See Keta Gas*, 2019 Pa. Super. Unpub. LEXIS 4532, at *17, citing *Cornwall*, 158 A.3d at 162. That is so even when the challenger claims that the tax sale at issue was "instigated solely for the purpose of allowing an owner of surface rights to also gain ownership of originally severed subsurface rights." *Id*. at *17-*18. The motives of the tax sale purchaser are not relevant where the sale was statutorily authorized. *Id*. at *18. Here, as in *Keta Gas*, the 1908 tax sale was statutorily authorized, conducted by the proper authorities, and held in response to unpaid taxes. Therefore, as in *Keta Gas*,

8

McCauley's motives, even if improper, are insufficient to void the sale or "deem" that sale, over a century later, to have been a redemption.  *Id.*

### 1. CPLC had no statutory duty to report.

The Trusts' arguments regarding the various, purported duties of CPLC must be rejected.  First, the Trusts contend that CPLC had a statutory "duty" to report under that Act of 1806.  But, as the Court in *Herder Spring* has already concluded, there was no such "duty" under the 1806 Act.  The Trusts are, as detailed above, conflating duty with *consequences*.  When CPLC took title to the surface, it had no affirmative duty to report the prior 1984 severance and Proctor reservation to the county commissioners.  *See Herder Spring*, 143 A.3d at 370, 372; Doc. 155 at 76-79 & 82-83.  There is, moreover, nothing in the record establishing that CPLC reported anything falsely, as the Trusts state without citation to a shred of evidence.

But even if CPLC had a statutory "duty" to report as the Trusts assert, it would not matter, as CPLC's purported dereliction of that duty would not be grounds to void the tax sale.  *See Cornwall*, 158 A.3d at 160-61; *Keta Gas*, 2019 Pa. Super. Unpub. LEXIS 4532, at *20.  In this case, as in *Herder Spring*, "the documents relating to the . . . tax sale provide no indication that the assessment and taxation occurred on anything other than the entire . . . Warrant, as they provide no reference to the surface estate or a reserved subsurface estate." *Herder Spring*, 143 A.3d at 375. *See also* Doc. 155 at 76-79 & 82-83.  Here, the Bradford County tax assessment

record for the 1907 assessment of the Josiah Haines warrant does not contain any notation that the taxes were assessed on the anything other than the entire warrant. Doc. 155 at 76-79 & 82-83. There is no evidence that the Trusts (or anyone else) challenged the lack of separate assessments of the surface and the subsurface estates of the Josiah Haines warrant during the two-year redemption period. *Id*. *See also Keta Gas*, 2019 Pa. Super. Unpub. LEXIS 4532, at *17-*18. "And whether someone was at fault for the lack of such separate assessments does not change the fact that there were not separate assessments." Doc. 155 at 82. Because there were not separate assessments of the surface and subsurface estates, the Court correctly concluded, based on *Herder Spring*, that the 1908 tax sale of the Josiah Haines warrant was a sale of the entire property, including the subsurface estate. *See Herder Spring*, 143 A.3d at 375. *See also Keta Gas*, 2019 Pa. Super. Unpub. LEXIS 4532, at *17-*18.

## 2.    CPLC had no contractual duty to pay taxes.

The Trusts chide the Court for overlooking language in CPLC's 1903 deed from Union Tanning, which the Trusts contend obligated CPLC to pay all of the 1907 taxes. *See* Doc. 172 at 9. This argument fails when one considers the *entirety* of the deed provision selectively quoted by the Trusts. The 1903 deed provision, which reserved to Union Tanning the bark and bark rights for "twenty (25) years," provides:

10

> It is further understood and agreed by and between the parties hereto, that the party of the first part *[Union Tanning], its successors and assigns, by reason of its ownership in the bark and bark rights, herein reserved, hereby covenants and agrees to pay the one third part of any and all lawful taxes* which may be assessed and levied against any of said tracts on land upon which there is hemlock bark, chestnut oak bark and rock oak bark, *until said bark is removed therefrom, and written notice of such tract of land for barking purposes is surrendered*, when all liability of the party of the first part [Union Tanning], its successors or assigns, for the payment of taxes thereon shall cease and terminate. And the party of the second part [CPLC] for itself and its successors and assigns, hereby covenants and agrees to pay all *remaining* taxes upon said lands, timber and bark *during the joint possession thereof*, including all taxes that may be levied and assessed upon any increased valuation by reason of improvements or developments made on said lands.

Doc. 97-1 at 63-64 (emphasis and bracketed material added). There is no evidence that Union Tanning had surrendered its bark and bark rights in the Josiah Haines warrant when the 1907 taxes were due and owing or prior to the 1908 tax sale. Based on this language, therefore, CPLC was, at most, obligated to pay only *two-thirds* of the assessed 1907 taxes. Moreover, the claimed contractual obligation in the 1903 deed between CPLC and Union Tanning was for the *benefit of Union Tanning* and not the Trusts' predecessors-in-interest, was not enforceable by the Trusts' predecessors-in-interest and, in any event, would not transform, over a century later, the presumptively valid and unchallenged 1908 tax sale purchase through McCauley into a redemption. *See Keta Gas*, 2019 Pa. Super. Unpub. LEXIS 4532, at *17, citing *Cornwall*, 158 A.3d at 162.

11

### 3.   CPLC had no statutory duty to pay the taxes.

The Trusts' argument that CPLC had a "statutory duty" to pay the taxes fares no better.  The 1887 statute cited by the Trusts pre-dates the Pennsylvania Supreme Court's 1896 decision in *Powell*, which held that a tax on unseated land created no personal liability in the owner – a holding that was subsequently reaffirmed by the Court's 2016 decision in *Herder Spring* over a 100 years later.  *See Herder Spring*, 143 A.3d at 367, 375.  Regardless, the 1887 statute did not impose an absolute "duty" on the owner to pay the taxes; instead, the owner could "refus[e]" to pay the taxes, which would result in the running of interest on the tax levied on the unseated land (and, ultimately, a tax sale for unpaid taxes).  *See Ellis v. Houseknecht*, 57 Pa. Super. 55, 57 (Pa. Super. 1914).[1]  If, moreover, the Trusts' argument was accurate, then their predecessor in interest was, as the purported owner of the subsurface estate at the time of the 1908 tax sale, obligated to pay taxes thereon, which it did not.

### 4.   Equity does not require a different result.

Finally, the Trusts' invocation of equity to undo the 1908 tax sale should be readily rejected.  One of the fundamental principles of equity is that "he who seeks equity must do equity," or "he who cometh into equity must come with clean hands." *Hick v. Peoples-Pittsburgh Trust Co.*, 16 A.2d 718, 720 (Pa. 1940).

---

[1]   A complete copy of the Act of June 6, 1887, P.L. 363 is attached hereto as Exhibit A.

The Trusts' hands are not clean. The Trusts predecessors-in-interest failed to have the subsurface separately assessed and, further, failed to pay any taxes on the subsurface following the 1894 severance and reservation. Moreover, the tax sales the Trusts seek to undo in this and other cases were the linchpin of a monopolistic business model and *tax avoidance scheme* employed by the wealthy families whose assets are now held by the Trusts. *See An Historical Perspective Of The Pennsylvania Title Wash*, 85 PA Bar Assn. Quarterly 106 (July 2014) (providing illuminating insight into wealth and tax avoidance in the early 1900s). Contrary to the revisionist history the Trusts are now peddling, that historical context demonstrates the equity of the Court's decision here.

Unclean hands aside, the Pennsylvania Supreme Court in *Powell* addressed the question of whether there was an *equitable* reason for forbidding the surface owner from purchasing the entire property at tax sale and concluded, definitively, that there was not. *See Powell*, 34 A. at 548. The Court, over a century later, reaffirmed that conclusion in *Herder Spring*. *See Herder Spring*, 143 A.3d at 367, 375 (citing *Powell*).

## C.     The Court Does Not Disregard The *Elliott* Decision.

The Trusts rely on *Elliott v. Moffett*, 74 A.2d 164 (Pa. 1950), in support of their argument that based on the CPLC-Commonwealth Deed, the Commission is estopped from claiming that it owns the subsurface estate of the Josiah Haines

13

warrant.  The Trusts contend that the Court's decision disregards this "controlling" decision.  *See* Doc. 172 at 12.

This argument by the Trusts was fully briefed by the parties and extensively addressed and *rejected* by Judge Schwab's recommended decision.  *See* Doc. 155 at 84-87 (rejecting Trusts' reliance on *Elliott* as unavailing pursuant to *Herder Spring*). It was, thereafter, again flatly rejected by the Pennsylvania Superior Court in *Keta Gas*.  *See Keta Gas*, 2019 Pa. Super. Unpub. LEXIS 4532, at *18-*19 (same).  The Court should, again, reject it here for the reasons explained by Judge Schwab in her recommended decision and by the Superior Court in *Keta Gas*.

### D.    The Court Did Not Misconstrue The Purchase By McCauley.

The Trusts, rehashing arguments that were fully briefed by the parties and addressed by Judge Schwab's report, contend that the Court erred by failing to conclude that McCauley's purchase, because he was CPLC's purported agent, necessarily constituted a redemption.   The Court, based on well-established Pennsylvania law, correctly rejected that argument.

Under Pennsylvania law, even ***an owner*** of unseated land may purchase the land at a tax sale and obtain a treasurer's deed conveying a fee simple interest in the land to the same extent as a stranger to the property.  *See Neill v. Lacy*, 110 Pa. 294 (Pa. 1885); *Powell*, 34 A. at 451; *Proctor v. Sagamore Big Game Club*, 166 F. Supp. 465, 479 (W.D. Pa. 1958), *aff'd*, 265 F.2d 196 (3d. Cir. 1959).   CPLC was not

14

responsible for the taxes and, consequently, even if McCauley was CPLC's agent for the tax sale, CPLC was not barred from acquiring both the surface and subsurface estates at the tax sale. Because the land was unseated, there was no personal obligation on the owner for the payment of taxes. *See Powell*, 34 A. at 451. In other words, for purposes of tax sales of unseated land, the law treated the owner of unseated land as having an interest therein equivalent to a stranger.

Moreover, the owner of unseated land need not purchase the land directly from the county treasurer. To the contrary, historical records regarding the accepted, and legal, practice of "title washing" suggest the land typically was purchased by a third party who took title to the property with a washed title and later conveyed it to the owner. *See Coxe v. Hathaway*, 27 Pa. 160 (Pa. 1856). Alternatively, the owner may, at some point after the tax sale, elect to purchase the property, with a washed title, from the purchaser at the tax sale. *See Arthurs v. King*, 95 Pa. 167 (Pa. 1880).

Of course, it was also possible for the owner of unseated property to "redeem" the *existing* title to the land rather than purchase the land at, or following, a tax sale with the washed title. *See Rogers v. Johnson*, 70 Pa. 224 (Pa. 1871). Pursuant to the 1815 Act, the landowner had two years from the date of the tax sale to redeem title. Until the redemption period passed, the purchaser at the tax sale held an inchoate title which was subject to nullification by redemption. The material difference between a redemption and purchase by the landowner is that a redemption

15

nullifies the tax sale and restores the landowner's title as it existed prior to the tax sale thus saving preexisting reservations of rights that would have otherwise been washed off by the tax sale. *See Yocum v. Zahner*, 162 Pa. 468, 475 (Pa. 1894) (redemption operated to set aside sale and left title as though sale had not been made).

The Trusts contend that because McCauley was purportedly an agent of CPLC at the time of the tax sale, that it *must be* treated as a redemption by CPLC rather than a purchase by McCauley. That contention is materially flawed. First, the Trusts rely upon a rule that governs when the person who acquires the property at the tax sale had a *pre-existing obligation* to pay the delinquent taxes. *See* Doc. 172 at 15, citing *Lamb v. Irwin*, 69 Pa. 436 (Pa. 1871). This might be the case if, for example, the purchaser at the tax sale *had expressly promised* the landowner that he would pay the taxes and protect the land from a tax sale. *See Lamb*, 69 Pa. at 442 (person employed by owner of land to attend to land and prevent its sale cannot acquire by purchase of the land title adverse to that of owner); *Coxe v. Wolcott*, 27 Pa. 154, 159 (Pa. 1856) (person bound by agreement with owner of land to pay taxes upon it cannot acquire by purchase of the land title adverse to that of owner); *Bartholomew v. Leach*, 7 Watts 472 (Pa. 1938) (defendant's predecessor-in-interest, and purchaser of land at tax sale, was specifically employed by plaintiff's predecessor-in-interest to pay taxes and preserve the land from being sold).

16

There is, of course, no evidence that McCauley promised CPLC that he would pay the taxes and protect the land from tax sale.  The foregoing rule, more importantly, does not apply to a person, including the owner or third party associated with the owner, who purchases unseated lands at a tax sale if the purchaser has not otherwise obligated himself to pay the taxes.  *See Powell*, 34 A. at 451.  That is because the "taxes under which the sale was made in this case were on unseated land, and there was no responsibility on the owner therefore; the land alone was liable."  *Id*.  *See also* Doc. 155 at 66-69.  In this case, the Trusts have provided no evidence that McCauley had a legal or moral obligation to pay taxes on unseated land owned by CPLC.

Second, the Trusts are suggesting a dispositive rule of law – *i.e.*, if a purported agent of a property owner buys unseated land at a tax sale, then the sale *must* be treated as a redemption by the property owner.  But, in the cases in which a redemption has been found, the evidence established a redemption as a matter of fact, not as a matter of law.  *See*, *e.g.*, *Coxe v. Sartwell*, 21 Pa. 480, 486-87 (Pa. 1853) ("The money was paid and received [by the tax sale purchaser] under a claim of [a] right to redeem"); *Philadelphia v. Miller*, 192 Pa. Super. 239, 242 (Pa. Super. 1956) ("the lower court decided this matter in reliance upon … sworn admissions of a redemption").

Here, neither the public record at the time of the tax sale, nor the multitude of documents that the Trusts have dumped on this Court, provide any basis for proving that McCauley intended to, or did, redeem the warrant for CPLC. McCauley did not "redeem" the warrant; he purchased it, as an individual, at a public tax sale at which anyone, *including* Thomas E. Proctor, could have outbid him. Further, McCauley did not assign to CPLC his interests in the warrant. Instead, joined by his wife, McCauley conveyed his interests in the warrant to CPLC. There is, in sum, a complete lack of evidence necessary to overcome the presumption of regularity associated with, and the admissible facts recited in, the treasurer's deed to McCauley or to otherwise defeat a *prima facie* showing of a valid, final tax sale. *See Herder Spring*, 143 A.3d at 365 (following 1815 Act, tax sales of unseated land presumed to be rightly done).

The case of *Knupp v. Syms*, 50 A. 210 (Pa. 1901), relied upon by the Trusts, is, as found by Magistrate Judge Schwab, distinguishable. *See* Doc. 155 at 64-65. In *Knupp*, it appeared from entries in books in the treasurer's office that H., to whom lands were sold in 1848 for taxes, acted as agent of the owners for the lands from 1840 to 1852, and that thereafter, before expiration of time for redemption, H. paid and the treasurer received the defaulted taxes on which the treasurer's deed to H. was based. It was presumed, based on those public records, that he purchased in trust for his principals, and his payment was deemed a redemption.

18

Quite unlike *Knupp*, the purported relationship of McCauley to CPLC does not change the nature of the transactions. There is no basis for asserting, and the Trusts have provided no evidence to suggest, that McCauley had a preexisting obligation to pay the delinquent taxes, or legal or moral obligation to pay taxes on the subject *unseated* land owned by CPLC (a corporate entity). And, whether McCauley purchased the warrant on his own or at the behest of CPLC, the legal effect is the same. The *whole* of the unseated land was sold, including any reserved interest not separately assessed.

### E.    The Court Did Not Err In Applying *Scott*.

The Trusts argue that, because the Court concluded that the Josiah Haines warrant was in fact seated, the Pennsylvania Supreme Court's decision in *Scott v. Bell*, 25 A.2d 308 (Pa. 1942), does not apply because the controlling law at the time of the 1908 tax sale prohibited the sale of "seated" land. Doc. 172 at 16-17. As *Scott* concluded, however, the Act of 1885 was *not* repealed at the time of the 1908 tax sale of the Josiah Haines warrant. *See Scott*, 25 A.2d at 310-311. Thus, it makes no difference whether tax sales of seated land were, as the Trusts claim, prohibited in 1908. The Josiah Haines warrant was assessed as "unseated" and sold as such at the 1908 tax sale, thus implicating the Act of 1885. *Scott*, therefore, controls. *See* Doc. 165 at 22. *See also Keta Gas*, 2019 Pa. Super. Unpub. LEXIS 4532, at *11-*12.

19

## III.    CONCLUSION

The Trusts' motion, for the foregoing reasons, should be denied.

Respectfully submitted,

PENNSYLVANIA GAME COMMISSION

DATE:  January 23, 2020

s/Bradley C. Bechtel
Bradley C. Bechtel, Chief Counsel
PA No. 49681
W. Creigh Martson, Assistant Counsel
PA No. 94759
2001 Elmerton Ave
Harrisburg, PA 17110-9797
(717) 783-6530
brbechtel@pa.gov
wmartson@pa.gov
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this Brief contains less than 5,000 words as calculated by the word count feature on the word processing program used to prepare this Brief and, therefore, complies with M.D. Local Rule 7.8.

s/Bradley C. Bechtel
Bradley C. Bechtel

## **CERTIFICATE OF SERVICE**

I hereby certify that, on January 23, 2020, a true and correct copy of the

foregoing PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION

FOR RECONSIDERATION was filed electronically by way of the Court's CM/ECF

system, which will send notice to all registered users, including the following:

Paul K. Stockman
Kazmarek Mowrey Cloud Laseter LLP
One PPG Place, Suite 3100
Pittsburgh, PA 15222

Laura A. Lange
1670 Sturbridge Drive
Sewickley, PA 15143

s/Bradley C. Bechtel
Bradley C. Bechtel