# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA PENNSYLVANIA GAME COMMISSION, | : : : | No. 1:12-CV-1567 |
| Plaintiff, | : : | Chief Judge Conner |
| v. | : : | |
| THOMAS E. PROCTOR HEIRS TRUST, et al., | : : | |
| Defendants. | : | (Electronically Filed) |

## PLAINTIFF'S BRIEF IN SUPPORT OF
## MOTION FOR RECONSIDERATION

The Court should reconsider its April 21, 2020 order (Doc. 184) and grant Plaintiff's ("Commission's") motion for partial summary judgment (Doc. 123). The Court, in its April 21, 2020 memorandum (Doc 183) stating the Court's reasons for its order, commits errors of law and makes legal determinations that are inconsistent with controlling Pennsylvania authority. Reconsideration of the Court's April 21, 2020 order and portions of the accompany memorandum is, therefore, consonant with justice. *See* Doc. 182.

**I.     Procedural History.**

Pertinent here, the Court, on April 21, 2020 granted the Trusts' motion (Doc. 171) for reconsideration and vacated its December 18, 2019 memorandum (Doc. 165) and order (Doc. 166). The Court, also on April 21, 2020, then entered an order (Doc. 184) adopting Chief Magistrate Judge Schwab's report (Doc. 155) to the

1

extent set forth in the Court's accompanying memorandum (Doc. 183) and denying the parties' cross-motions for partial summary judgment (Docs. 94, 123). The Commission has, pursuant to Local Rule 7.10, moved for reconsideration of the Court's April 21, 2020 order (Doc. 184).

## II.  Statement of Facts.

For purposes of this motion, the facts are as stated in the Court's April 21, 2020 memorandum (Doc. 183).

## III.  Statement of Questions Involved.

Did the Court err when it concluded that:

1. there is a genuine dispute of material fact as to what was assessed in 1907 and sold in 1908 (Doc. 183 at 31)?

2. there was a legal duty on owners of unseated land to pay assessed taxes (Doc. 183 at 36)?

[Suggested Answer: Yes.]

## IV.  Argument.

### A.  The Court Erred When It Concluded That There Is A Genuine Dispute Of Material Fact As To What Was Assessed In 1907 And Sold In 1908.

The Court found that there is record evidence that the county commissioners were "otherwise directed by the owners" to assess separate estates rather than the entire Josiah Haines Warrant. Doc. 183 at 31. The Court concluded, therefore, that

2

unlike in *Herder Spring Hunting Club v. Keller*, 143 A.3d 358 (Pa. 2016), it could not find as a matter of law that the 1907 assessment must have encompassed the entire warrant. *Id*. The Court erred.

Whether the surface and subsurface estates should have been separately assessed prior to the 1908 tax sale, as the Trusts assert, is, decades later, an immaterial fact as a matter of law. *See Herder Spring*, 143 A.3d at 374. It is immaterial because such fact relates to long-barred challenges to the 1907 assessment and 1908 tax sale. As the Pennsylvania Supreme Court explained in *Herder Spring*:

> if the Kellers disputed the County Commissioners' **failure to assess their subsurface estate separately from the surface estate, they should have contested the assessment and tax sale within the initial two-year redemption period**. **After the expiration of that redemption period, a challenge to the propriety of the tax sale would not be heard under Section 4 of the Act of 1815** . . . .

*Herder Spring,* 143 A.3d at 374.

The Trusts are in the same position as the Kellers in *Herder Spring*. This Court, therefore, overlooked controlling and directly relevant Pennsylvania authority when it concluded that record evidence that the county commissioners were "otherwise directed by the owners" to assess separate estates precluded summary judgment for the Commission. *Id*. *See also Cornwall Mt. Invs., L.P. v. Thomas E. Proctor Heirs Trust*, 158 A.3d 148, 160 (Pa. Super. 2017), *appeal denied by*, 172 A.3d 594 (Pa. 2017), *cert. denied*, 138 S.Ct. 1698 (2018); *Woodhouse*

3

*Hunting Club, Inc. v. Hoyt*, 183 A.3d 453, 461 (Pa. Super. 2018). Any such evidence goes to the propriety of the tax sale. Thus, even if a reasonable trier of fact could conclude that Union Tanning and CPLC reported their unseated surface interest to the county commissioners, which the Commission disputes, it simply does not matter, as the 1908 tax sale is, decades later, unassailable on that basis because it would **not** render the tax sale void. *See Herder Spring*, 143 A.3d at 374; *Cornwall*, 158 A.3d at 159-161 (Trusts time-barred from challenging procedural irregularities in the notice, assessment, and tax sale process because such irregularities only rendered the sale voidable within the period for challenging the tax sale, and not void); *Woodhouse*, 183 A.3d 453, 461 (collateral attacks on a tax sale may not be raised after the redemption period has passed). The 1908 tax sale was statutorily authorized, conducted by the proper authorities, and held in response to unpaid taxes. The 1908 tax sale cannot, under *Herder Spring*, be collaterally attacked, decades later, on the basis that the separate surface and subsurface estates were reported and should have been separately assessed prior to the tax sale. Such facts, if true, rendered the tax sale only voidable during the redemption period, not void. *See Herder Spring*, 143 A.3d at 374; *Cornwall*, 158 A.3d at 159-161. The Court should conclude, therefore, that pursuant to Section 5 of the Act of 1804 and as a matter of law, that 1908 tax sale, the propriety of which was not challenged during the two-

year redemption period, encompassed the entire Josiah Haines warrant. *See Herder Spring*, 143 A.3d at 359; Doc. 97-1 at 74.

> B. **The Court Erred When It Concluded That There Was "Duty" Of Owners To Pay Taxes On Unseated Land That Barred Their Acquiring Better Title At A Tax Sale.**

The Court, following receipt the Trusts' deeply flawed and unsolicited post-argument letter brief (Doc. 181), misinterpreted the Pennsylvania Supreme Court's decision in *Powell v. Lantzy*, 34 A. 450 (Pa. 1896) to reverse itself and discover a non-existent "duty" on owners of unseated land to pay taxes thereon that barred their acquiring better title at a tax sale. The Court misinterpreted *Powell* because, as explained in that case, a finding of *personal liability to the state* for the taxes due, or some contractual or other obligation to a third party to pay them, is essential to finding any disabling "duty of the purchaser to pay the tax." *Id*. at 451. This rule of law is the relevant holding in *Powell*. And, this rule of law explains, and is essential to, the Pennsylvania Supreme Court's earlier decision in *Coxe v Gibson*, 27 Pa. 160 (Pa. 1856).

In *Powell*, the Pennsylvania Supreme Court began its analysis by acknowledging the general rule that "one cannot, by a purchase at a tax sale caused by his failure to pay taxes which he **owed the state** or which he was otherwise legally or morally bound to pay, acquire a better title or a title adverse to that of other parties in interest …." 34 A. at 451 (emphasis added). There are, according *Powell*, two

5

classes of owners who are barred from purchasing land at a tax sale: (1) owners "chargeable with" paying the overdue taxes; and (2) landowners that "by contract or otherwise . . . . [assume] a duty to other parties concerned to make the payment." *Id*.

As evidenced by the roughly equivalent depth of consideration of each, the holding in *Powell* has two parts corresponding to the two classes of purchasers precluded from acquiring better title at a tax sale. This is because the court in *Powell* had to decide whether the tax sale purchaser fell into either of the barred classes identified above.

As to the first class, persons charged with paying taxes, the holding of *Powell* is that an owner of unseated land is **not** "charged" with paying taxes on that land and, therefore, is not barred from purchasing the land unseated land at a tax sale. *Id*. at 451. The Pennsylvania Supreme Court's holding in this regard is: "In speaking of taxes on unseated lands, which are not a charge against the owner . . . there was nothing in reason or law to prevent the holder of a defective title from purchasing a better one at a tax sale." *Id*. When it explained this holding, the court expressly equated "chargeability" with personal liability for the tax, stating: "The taxes under which the sale was made in this case were on unseated lands, and there was no personal responsibility on the owner therefor. The land alone is liable." *Id*. Thus, rather than being "quite different" from the disabling "duty," as this Court

erroneously concluded (Doc. 183 at 37), personal liability is the *sine qua non* of that "duty."[1]

The Pennsylvania Supreme Court in *Powell* did not, as suggested by this Court, ground its holding in the fact that the tax sale purchaser did not own the land when the overdue taxes were assessed. *See* Doc. 183 at 36 (discussing *Cox v. Gibson*). To the contrary, this fact is mentioned at no point in *Powell's* discussion of the relevant law. Rather, the Pennsylvania Supreme Court's focus in *Powell* was on whether the purchaser, as the owner of the unseated land, was personally liable for taxes on the land and it reached its decision based on the fact that owners of unseated land are not personally liable for the taxes, *irrespective* of when taxes are assessed on the land.

Additionally, while the Pennsylvania Supreme Court, commenting on a decision from the Michigan Supreme Court, did observe that an owner may be chargeable with taxes if in possession of the property when taxes are assessed, the outcome determinative inquiry is not whether the purchaser at the tax sale owned

---

[1] When speaking of unseated land, the Pennsylvania Supreme Court has long equated "charge" with personal liability. In *Hunter v. Cochran*, 3 Pa. 105 (Pa. 1846), the court, affirming and adopting the opinion of the lower court, explained: "It is settled, that the charge of a tax upon unseated lands is no charge upon the person of the owner, but the land itself liable for the payment of it. It is also decided, that whether the charge be in the name of the real owner or not, is a matter of no moment; if charge upon the land and not paid, a sale of the land, for the unpaid taxes, passes to the purchaser."

the property at the time the taxes were assessed. *See Powell*, 34 A. 451 (discussing *Lacey v. Davis*, 4 Mich. 140 (1856)). Rather, as concluded by *Powell*, the outcome determinative inquiry is whether the owner, as a result of owning the land or otherwise, was "charged" with paying the taxes. *Id*.

Once the holding in *Powell* is correctly stated, any confusion regarding the court's earlier decision in *Coxe v Gibson* is cleared up. The Pennsylvania Supreme Court in *Gibson* did not ignore the fact that the purchaser at the tax sale owned the unseated land when at least a portion of the taxes at issue were assessed. *See* Doc. 183 at 36 (discussing *Gibson*). Rather, as it later expressly recognized in *Powell*, this fact was *immaterial* because the land at issue was unseated when the taxes were assessed. 34 A.2d at 451. This meant that the owner, and tax sale purchaser, did not have personal liability for the taxes assessed during his ownership and, therefore, the landowner was not barred from purchasing his own land at the tax sale. *Id*.

Moreover, the holding of *Powell* is perfectly consistent with the equitable concept that one should not be able to profit from the neglect of a legal duty or, as the court in *Powell* stated it, from the "failure to pay taxes which he **owed the state**." 34 A. at 451 (emphasis added). This is because, under Pennsylvania law, an owner of unseated land is not viewed as having a legal duty to pay (*i.e.*, personal liability for) taxes assessed on the land. The owner does not "owe" taxes to the state. And, in the absence of personal responsibility for the taxes, the owner is not viewed as

8

"profiting" from the tax sale. The owner does not escape or avoid liability – *because* the liability was never his to begin with.

In this regard, all owners of unseated land were identically situated, irrespective of whether they bought the land before or after taxes were assessed. Upon assessment, the tax liability attached to the unseated land and it remained with, or ran with, the land until satisfied. Because the unseated land, and not the owner, was the debtor, the taxes on unseated land burdened current and prior owners equally. Both were at risk of losing the unseated land at a tax sale but neither was "charged" with – *i.e.*, personally liable for, the taxes. More importantly, when thinking about the purchasing bar, both owners – the owner at the time of assessment and the owner at the time of a tax sale – enjoyed the same benefit if they purchased at a tax sale. They got the property back free of liability and burdens.

Because prior and current owners of unseated land were identically situated with respect to the unseated land and taxes assessed thereon, the bar to purchasing at a tax sale should apply equivalently to both owners. And, in fact, given the holdings of *Powell* and *Gibson*, it did.

Finally, the Act of June 6, 1887, relied upon by this Court (Doc. 183 at 38), did not disturb the holding of *Powell* or modify the rule that owners of unseated land were not personally liable for taxes assessed against the land. The 1887 Act, instead, confirmed the long-standing process by which taxes on unseated land were collected.

9

It was always the practice that the land was assessed, and became liable for the tax, but owners were expected to remit the tax because, of course, the land could not make the actual payment. The 1887 Act simply recognized the reality of how taxes were actually paid.[2]

This Court's conclusion, then, that owners of unseated land had a "duty" to pay taxes on such land is contrary to decades of well-established Pennsylvania law. Doc. 183 at 36. The "lack of person liability" to pay taxes on unseated land – *i.e.*, the lack of any "charge against the owner" - necessarily renders the "duty" discovered by this Court illusory, non-existent and one that simply could not be neglected or breached by the owner. That is because the unseated land, not the owner, is the debtor, and the owner has the same right as stranger to become a

---

[2] The 1887 Act relied upon by the Court, moreover, pre-dates the Pennsylvania Supreme Court's 1896 decision in *Powell*, which was subsequently reaffirmed by the Court's 2016 decision in *Herder Spring* over a 100 years later. *See Herder Spring*, 143 A.3d at 367, 375. It must be presumed that the Pennsylvania Supreme Court, when it rendered its *Powell* and *Herder Spring* decisions, was aware of the 1887 Act and did not view it as imposing the "duty" found by this Court. The 1887 Act did not, moreover, as the Court acknowledged, change the common law. Doc. 183 at 38.

Section 5 of the Act of 1804, moreover, which the 1887 Act must be read in conjunction with, did not concern itself with who owned the unseated land or why the taxes were not paid. By its plain and unambiguous language, Section 5 of the Act of 1804 vested the first link in an entirely new chain of title in the purchaser at the tax sale, *regardless* of whether that purchaser was the owner of the unseated land sold at the tax sale or had precipitated the tax sale by failing or refusing to pay the taxes thereon. *See Herder Spring*, 143 A.3d at 366, quoting Section 5 of the Act of 1804.

purchaser at a tax sale of unseated land. *See Neil v. Lacy*, 1 A. 325 (Pa. 1885). *See also Herder Spring* at 366-67 (discussing *Powell*). Because the unseated land, not the owner, is the debtor, it is irrelevant *how* that debt was created and it makes no difference if the tax-sale purchaser induced the treasurer's sale by failing or refusing to pay the assessed taxes. Whether created by the owner of the unseated land through a deliberate tax avoidance scheme (like the one concocted by the Trusts' predecessors-in-interest in this case) or by a third party, the debt still belongs to the unseated land, not to the owner of it.[3]

The Court, in its memorandum, strains to predict how the Pennsylvania courts would rule if confronted with the situation presented by this case – *i.e.*, where the surface owner of unseated land failed to pay the assessed taxes and then purchased, or had an alleged agent purchase, the property at tax sale. *See* Doc. 183 at 36. But the Pennsylvania Supreme Court, as aptly recognized by Chief Magistrate Judge Schwab's report, has already ruled on that very issue. *See* Doc. 155 at 68-69. It concluded, in both *Powell* and *Herder Spring*, and contrary to this Court's decision, that the owner of unseated land was not "chargeable" for the taxes and, consequently,

---

[3] As the Court is aware from prior filings in this case, the tax sales the Trusts seek to undo in this and other cases were the linchpin of a monopolistic business model and tax avoidance scheme employed by the wealthy families whose assets are now held by the Trusts. The Trusts' hands are filthy here. *See An Historical Perspective Of The Pennsylvania Title Wash*, 85 PA Bar Assn. Quarterly 106 (July 2014) (providing illuminating insight into wealth and tax avoidance in the early 1900s).

11

was not barred, in the absence of some duty to a third party, from acquiring better title at a tax sale. *See Powell*, 34 A. at 451-52; *Herder Spring*, 143 A.3d at 367, 375. Indeed, in *Herder Spring*, the Pennsylvania Supreme Court expressly rejected this Court's conclusion that there was any "duty" on the owners of unseated land to pay the taxes thereon:

> As discussed, **tax on unseated land was the liability of the land rather than the owners**. Therefore, if the property was assessed as a whole property and none of the owners paid the tax, then the property would be sold as a whole to satisfy that tax. **As cogently set forth in *Powell v. Lantzy***, "[a]ny moral obligation to agree and jointly pay the tax, each contributing his just share, rested equally upon the owners of the different parts; **but there was no legal duty on either to do this**. It was their separate, not their joint, interests which were in peril." *Id*. at 550; *see also Proctor*, 166 F.Supp. at 475 ("[w]hen there is no separate assessment of the minerals, a purchase of the whole by the owner of the surface divests the title of the owner of the minerals"); *Hutchinson*, 199 Pa. 564, 49 A. 312. We find no distinction based upon the timing of the severance.

*Herder Spring*, 143 A.3d at 375 (emphasis added).[4]

Because unseated landowners had no legal duty to pay taxes on their land, McCauley's purchase at the tax sale is neither "highly relevant" nor "material." Doc. 183 at 43. It is of no consequence that McCauley was purportedly acting as CPLC's

---

[4] And, even if there was such a duty, as erroneously concluded by this Court, the Trusts cannot challenge the validity of the 1908 tax sale, over a century later, on the basis of that "duty." Any such duty, per the Court's own reasoning, would have been owed by CPLC *to the state* (or to a third party) and not to the Trusts' predecessors-in-interest. The state was not wronged by the owner's purchase and, as between CPLC and the Trusts' predecessors-in-interest, the state was simply not concerned with who purchased the property at the tax sale.

12

agent at the 1908 tax sale, as CPLC was not, per *Powell* and *Herder Spring*, precluded from acquiring better title at the tax sale.

                              Respectfully submitted,

                              PENNSYLVANIA GAME COMMISSION

DATE: May 5, 2020            s/Bradley C. Bechtel
                                    Bradley C. Bechtel, Chief Counsel
                                    PA No. 49681
                                    W. Creigh Martson, Assistant Counsel
                                    PA No. 94759
                                    2001 Elmerton Ave
                                    Harrisburg, PA 17110-9797
                                    (717) 783-6530
                                    brbechtel@pa.gov
                                    wmartson@pa.gov
                                    *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 5, 2020, a true and correct copy of the foregoing PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION was filed electronically by way of the Court's CM/ECF system, which will send notice to all registered users, including the following:

Paul K. Stockman
Kazmarek Mowrey Cloud Laseter LLP
One PPG Place, Suite 3100
Pittsburgh, PA 15222

Laura A. Lange
1670 Sturbridge Drive
Sewickley, PA 15143

s/Bradley C. Bechtel
Bradley C. Bechtel