## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, PENNSYLVANIA GAME COMMISSION, | |
| Plaintiff, | |
| v. | Case No. 1:12-CV-1567 |
| THOMAS E. PROCTOR HEIRS TRUST and the MARGARET O.F. PROCTOR TRUST, | Judge Conner |
| Defendants. | |

## DEFENDANTS' TRIAL BRIEF ON EVIDENTIARY DISPUTES

There remain, in Defendants' view, four basic evidentiary disputes relating to exhibits that the parties have proposed to introduce:

- Defendants (the "Trusts") continue to object to the admission of legal opinion testimony regarding the ownership of the subsurface estate of the Josiah Haines Warrant (the "Premises"), reiterating an objection that the Court has previously sustained.

- Plaintiff ("PGC") objects to the authenticity of ledger/plat books maintained by Central Pennsylvania Lumber Company ("CPLC"), and certain letters pasted into those books, despite authenticating testimony and the patent age and authenticity of these materials.

- PGC objects to certain historical documents, as inadmissible hearsay, even though all meet the standard for "ancient documents" under Fed. R. Evid. 803(16) (as well as other applicable hearsay exceptions).

1

- PGC objects to all of the Trusts' proposed exhibits as irrelevant, reiterating an argument that the Court has already resolved.

As the following discussion shows, the Trusts' objection has merit, but the PGC's objections do not.  Therefore, the Trusts ask the Court to exclude Exhibits P1 and P2 and the first seven pages of Exhibit J1, and to overrule the PGC's objections to the Trusts' exhibits and admit them into evidence.

## I.   The Court Should Continue to Exclude Improper Legal Opinion Testimony Proffered by the PGC.

As this Court previously held, opinion testimony previously offered by a lawyer retained by the PGC is improper and inadmissible.  *See* Mem. Op. & Order (ECF No. 183) at 7 n.5 ("we agree with Judge Schwab that the conclusions set forth in the report regarding the legal effect of the 1908 tax sale and ownership of the disputed mineral rights impermissibly usurp the role of the court in this quiet title action."); *see also* Report & Recommendation (ECF No. 155) at 11-17.  The Trusts continue to object to the admission of the opinion of attorney Jay Wilkinson (Exhibit P1), and also object to similar portions of the Percheron Title Abstract[1] (Exhibit J1), as well as a title report prepared for the PGC in connection with the purchase of certain lands in

---

[1] The Trusts object to pages J1.001 to J1.006, which contain assumptions and legal conclusions regarding the ownership of the subsurface estate.  The remaining pages are simply excerpts from and copies of relevant instruments that are not objectionable.

Sullivan County (Exhibit P2).[2]  All of these contain inadmissible legal conclusions.

The Court's prior ruling on this subject was and remains correct: expert testimony that purports to opine on legal issues intrudes on the "Court's role as the legal expert" and is improper and inadmissible.  *Romero v. Allstate Ins. Co.*, 52 F.Supp.3d 715, 723 (E.D. Pa. 2014); *Thomas v. United States,* 106 Fed. Cl. 467, 476, n. 4 (2012) ("Expert testimony that testifies about what the law is or directs the finder of fact how to apply law to facts" does not comply with Rule 702).  Although there is little risk that the Court as finder of fact would be misled, the usefulness of the testimony is, for the same reason, especially attenuated.  *See Martin v. Indiana Mich. Power Co.*, 292 F.Supp.2d 947, 959 (W.D. Mich. 2002) ("if the dangers of the [expert's] testimony on the [ultimate] issue… are minimal, so is her helpfulness to the court in understanding the evidence and determining the facts in issue in this case.").  Thus, the "district court must limit expert testimony so as to not allow experts to opine on 'what the law required' or 'testify as to the governing law.'" *Holman Enterprises v. Fidelity and Guar. Ins. Co.,* 563 F.Supp.2d 467, 472 (3d Cir. 2008).

Here, the opinions and conclusions set forth in the Wilkinson Declaration, portions of the Percheron report, and the "L-36" title report are all legal

---

[2] Substantial portions of Exhibit P2 are legal conclusions presented by the PGC's title examiner, which are not admissible against the Trusts (even though they would be admissible *against* the PGC, as admissions, if introduced by the Trusts).  The remaining portions of Exhibit P2 do not appear to be relevant to the dispute before the Court.

determinations reserved for this Court to decide.  The factual issues that remain for trial – whether CPLC reported its interest in the Premises, and whether McCauley was an agent of CPLC – are issues that none of these documents address. Therefore, their conclusions would not assist the Court at trial.

Accordingly, the Court should sustain the Trusts' objections to the Wilkinson declaration (Exhibit P1), the "L-36" title report (Exhibit P2), and pages J1.001-006 of the Percheron Report (Exhibit J1), and should deny their admission into evidence at trial.

## II.    The Court Should Overrule the PGC's Authenticity Objection.

The PGC challenges the authenticity of portions of CPLC's ledger/plat books, excerpts of which are marked as Exhibits D15, D16, D17, D30 and D31 (letters to or from C.H. McCauley, Jr.) and as Exhibit D41 (the ledger page and plat for the Josiah Haines warrant).

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  "[T]he burden of proof for authentication is slight."  *Lexington Ins. Co. v. W. Pennsylvania Hosp.*, 423 F.3d 318, 328 (3d Cir. 2005) (internal quotations omitted); *Threadgill v. Armstrong World Indus., Inc*., 928 F.2d 1366, 1375 (3d Cir. 1991) ("there need be only a prima facie showing, to the court, of authenticity, not a full argument on admissibility.").  Rule 901 provides a nonexclusive list of methods by which a document may be authenticated, and

Rule 901(b)(8), which deals with authenticating ancient documents and data compilations, provides that such can be done by evidence that the document or data compilation:

> (A) is in a condition that creates no suspicion about its authenticity;
>
> (B) was in a place where, if authentic, it would likely be; and
>
> (C) is a least 20 years old when offered.

Fed. R. Evid. 901(b)(8).  "[T]he point of a Rule 901(b)(8) inquiry is to determine whether the documents in question are, in fact, what they appear to be." *Threadgill*, 928 F.2d at 1375.

The CPLC ledger books are in the possession of non-party Lauri Sekerak, an abstractor from the Warren area.  Ms. Sekerak gave a *de bene esse* deposition testimony on July 15, 2020 at which she identified how she came to possess the books and showed the original books during her testimony.  *See* Sekerak Tr., Ex. J30, at 7:15-10:24.  Ms. Sekerak testified that the books were maintained by the former law firm of Mervine, Calderwood & Hammond in Warren when she discovered them in the firm's library approximately 15 years ago when she was doing title work for the firm.  *Id.* at 8:9-20.  The firm was dissolving due to Judge Hammond's appointment to the bench and she inquired about the books and offered to take them.  *Id.* at 9:18-10:1, 11:9-16.  Ms. Sekerak has maintained control of the books ever since, although she permitted David Rainey of the International Development Corporation (the claimed successor to CPLC's oil, gas and mineral rights) to photograph the pages of the

5

books.  *Id.* at 15:10-13, 11:17-13:20.[3]  The location of CPLC's books in Warren

makes sense, because in 1931 CPLC relocated its headquarters to Sheffield, in

Warren County, where it remained until its closure in 1941.  *See* Warren Cnty.

Hist. Soc., "Sheffield Depot Preservation Society,"

https://www.warrenhistory.org/sheffield%20depot.htm (Ex. A hereto); *C.P.L.*

*Closing End of Era in Eastern U.S.*, The Kane Republican, July 12, 1941 (Ex. B

hereto).

The CPLC books are plainly more than 20 years old.  Initially, the

excerpts by their own terms date back to the early 1900s.  *See* Exs. D15-17,

D30-31 and D41.  The latest of the letters sought to be admitted is dated May

15, 1916.  *See* Ex. D31.  Indeed, Ms. Sekerak testified that the condition of the

books reflected their age.  Sekerak Tr., Ex. J30, at 14:11-24.

Moreover, the authenticity of the CPLC books was patent based on their

appearance.  *McGuire v. Blount*, 199 U.S. 142, 145 (1905) (considering the

"honest as well as ancient appearance" of the documents); *see also LG Display*

*Co. v. AU Optronics Corp.*, 265 F.R.D. 189, 196 (D. Del. 2010) ("the contents,

appearance and substance of the documents supports their authenticity.").  The

appearance, contents, substance, internal patterns, distinctive characteristics,

and its age are all factors the Court should consider.  Fed. R. Evid. 901(b)(4).

---

[3] The photographs taken by International Development Corporation are the reproductions the Trusts have utilized in this case.  Ms. Sekerak brought the original books to her deposition and she compared each of the exhibits to the original pages in the books and confirmed the exhibits are accurate reproductions. Sekerak Tr., Ex. J30, at 15:14-32:24.

In that regard, Ms. Sekerak held up the original books for counsel to see during the remote deposition, and screenshots of the books from the video deposition are included at the end of Exhibit J30. *See* Sekarak Tr., Ex. J30, at J30.074-082. The appearance and condition of the volumes – bound in leather, with "C. P. L. Co." in gilt lettering stamped on the covers – confirms the materials' age and authenticity. *Id.* Further, the exhibits' typography and handwriting is distinct, and characteristic of the early 20th century. *See* Exs. D15-17, D30-31 and D41. Also, the contents of the books reflect CPLC's massive land ownership in several counties in Pennsylvania, correctly identifying their predecessors in interest (i.e. Proctor and the other tannery owners that joined the U.S. Leather Company), and had detailed accounts of the bark stripping, peeling and timbering on the lands.

Under the circumstances, it would be fanciful to suggest that these CPLC books or the documents interleaved in those documents were forged, then left to molder for years in the offices of a Warren law firm, and rescued from the scrap heap by a land agent solely to support unknown claims arising years later. *See United States v. Stelmokas*, 100 F.3d 302, 312–13 (3d Cir. 1996) (holding ancient documents admissible where the defendant had "not produced any evidence or forwarded any reason to impeach the validity of the documents" and finding "it is difficult to conceive why someone would go to the lengths" of "plant[ing] fake documents in widely-scattered places" to frame him).

The PGC's primary objection appears to be that Ms. Sekerak lacked personal knowledge regarding the contents of the documents. *See, e.g.,* Sekerak

Tr., Ex. J30, at 47:22-25.  However, "the lack of personal knowledge by [the authenticating witness] concerning the documents does not affect their admissibility into evidence." *LG Display Co. v. AU Optronics Corp.*, 265 F.R.D. 189, 196 (D. Del. 2010).  Ms. Sekerak has personal knowledge regarding her discovery of the CPLC ledger books, her maintenance of the books since she obtained possession and her review of the books' content and appearance.  That is sufficient.  Whether she knows why Calvin H. McCauley, Jr. sent a letter regarding a specific piece of property is irrelevant to determining whether the records are what they purport to be.

Accordingly, the Game Commission's authenticity objection to Exhibits D15, D16, D17, D30, D31 and D41 should be overruled.

## III.    The PGC's Hearsay Objections Are Not Well-Taken.

The Game Commission raises hearsay objections to the following proposed exhibits proffered by the Trusts:

- D5, D33 and D35 - correspondence from the Proctor estate to county treasurers in Pennsylvania, C.H. McCauley, Jr. and George R. Hill;

- D9 - news articles regarding Proctor & Hill's coal activity;

- D12 - the first annual report of CPLC;

- D15-D17, D30-31 and D41 - Letters to and from C.H. McCauley, Jr. contained in the CPLC Ledger books and the Josiah Haines excerpt from the Ledger Books;

- D18-20 and D22 - the Boyd's Directory of Williamsport for the years

8

1905-1909;

- D32 and D48 – newspaper articles regarding C.H. McCauley, Jr.;

- D34 – CPLC's map of lands; and

- D39 and D40 – John Moody's *The Truth About the Trusts* and Thomas Taber's *Sunset Along Susquehanna Waters.*

Notably, each of the above exhibits qualifies as ancient documents (which is not at all surprising, given this case involves events taking place between 1894 and 1922).  "Once a document qualifies as an ancient document, it is automatically excepted from the hearsay rule under Fed. R. Evid. 803(16)."  *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1375 (3d Cir. 1991).  Rule 803(16) provides that an "ancient document" is "a document that was prepared before January 1, 1998, and whose authenticity is established."  Therefore, all of the exhibits are excepted from the hearsay rule under Rule 803(16).[4]  Accordingly, the Game Commission's hearsay objections should be overruled.

## IV.    The Court Should Adhere to Its Prior Ruling on PGC's Relevance Objections.

The PGC objects generally to the relevance of *all* of the Trusts' proffered exhibits.  Presumably this objection is a reiteration of the PGC's position that only the assessment and tax deed are relevant to the Court's inquiry, and that

---

[4] These exhibits also qualify for admission under several of Rule 803's other exceptions.  For example, the CPLC ledger books and correspondence, map of CPLC's lands, CPLC's first annual report, and correspondence by the Proctor estate qualify as records of regularly conducted activity under Rule 803(6).  The Boyd's directories qualify as "directories" under Rule 803(17).  All of the exhibits would also qualify under the residual exception under Rule 807.

any materials not in the public record may not be considered.  The Court has already resolved this question, in holding that the issues of CPLC's reporting of its ownership and McCauley's agency are relevant to determining the effect of the tax sale.  *See* Mem. Op. & Order (ECF No. 183) at 28-43.  The Court should adhere to this ruling, because the Trusts' evidence bears upon the two factual issues this Court held were necessary to decide in order to determine the effect of the 1908 tax sale (*i.e.,* the scope of the 1907 assessment and McCauley's agency).  *See id.* at 43.

## V.     The Trusts Reserve Certain Relevancy Objections.

As a final note, there are certain exhibits whose relevancy is not immediately apparent (for example, Exhibits P29, P30, P32, P33 and P35).  The Trusts therefore reserve the right to seek offers of proof, and (if appropriate) to challenge the admission of certain documents at trial, should the PGC fail to tie those exhibits to facts that are of consequence to the determination of the matter.

## VI.    Conclusion.

In sum, the Trusts ask the Court to exclude Exhibits P1 and P2 and the first seven pages of Exhibit J1, and to overrule the PGC's objections to the Trusts' exhibits and admit them into evidence.

Respectfully submitted,

<u>/s/ *Paul K. Stockman*</u>
Paul K. Stockman
   Pa. ID No. 66951
KAZMAREK MOWREY CLOUD LASETER LLP
One PPG Place, Suite 3100 Pittsburgh, PA 15222
pstockman@kmcllaw.com

Laura A. Lange
   Pa. ID No. 310733
1670 Sturbridge Drive
Sewickley, PA 15143
lange@proctortrust.com

*Attorneys for the Thomas E. Proctor Heirs Trust and Margaret O.F. Proctor Trust*

11