# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, PENNSYLVANIA GAME COMMISSION, | : | CIVIL ACTION – LAW |
| | : | |
| | : | CASE NO. 1:12-CV-1567 |
| | : | |
| Plaintiff, | : | JUDGE: Christopher C. Conner |
| | : | |
| v. | : | |
| | : | |
| THOMAS E. PROCTOR HEIRS TRUST and the MARGARET O.F. PROCTOR TRUST, | : | |
| | : | |
| | : | |
| Defendants. | : | [Electronically Filed] |

## PLAINTIFF'S BENCH MEMORANDUM
## REGARDING EVIDENTIARY OBJECTIONS

Bradley C. Bechtel, Chief Counsel
PA No. 49681
W. Creigh Martson, Assistant Counsel
PA No. 94759
2001 Elmerton Ave.
Harrisburg, PA 17110-9797
(717) 783-6530
brbechtel@pa.gov
wmartson@pa.gov
*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Introduction…………………………………………………………… | 1 |
| II. | Collateral Estoppel Bars the Trusts from Presenting Their Evidence…… | 1 |
| III. | The Commission's Case in Chief………………………………………... | 4 |
| IV. | Trust's Evidentiary Objections to the Commission's Exhibits…………. | 5 |
| V. | Commission's Evidentiary Objections to the Trust's Exhibits…………. | 8 |

    A.   Relevancy………………………………………………………...8

    B.   Specific Objections………………………………………………9

        1.   Hearsay – Exhibits D5, D9, D12, D15, D20, D22, D27, D30, D36, D39-D41, D53……………………………………………..9

        2.   Authenticity – Exhibits D15-D17, D30-D31, D41……………10

        3.   Specific Relevancy & Prejudice……………………………….13

| | | | |
|---|---|---|---|
| | a. | Exhibits D2 and D3………………………………… | 13 |
| | b. | Exhibit D4………………………………………………. | 13 |
| | c. | Exhibit D5………………………………………………. | 14 |
| | d. | Exhibit D6………………………………………………. | 15 |
| | e. | Exhibit D7………………………………………………. | 15 |
| | f. | Exhibit D8………………………………………………. | 16 |
| | g. | Exhibit D9………………………………………………. | 17 |
| | h. | Exhibit D10 and D11…………………………………….. | 18 |
| | i. | Exhibits D12, D13 and D14……………………………… | 19 |
| | j. | Exhibit D15……………………………………………… | 20 |
| | k. | Exhibit D16……………………………………………… | 20 |
| | l. | Exhibit D17……………………………………………… | 21 |
| | m. | Exhibits D18-D20, and D22……………………………… | 21 |
| | n. | Exhibits D 21 and D23…………………………………… | 22 |
| | o. | Exhibit D24……………………………………………… | 23 |
| | p. | Exhibits D25 and D26…………………………………… | 23 |
| | q. | Exhibits D27 and D28…………………………………… | 24 |
| | r. | Exhibits D30 and D31…………………………………… | 24 |
| | s. | Exhibit D32……………………………………………... | 25 |
| | t. | Exhibit D33……………………………………………… | 25 |
| | u. | Exhibit D34……………………………………………… | 26 |
| | v. | Exhibit D35……………………………………………… | 26 |
| | w. | Exhibit D36……………………………………………… | 27 |
| | x. | Exhibit D37……………………………………………… | 27 |

y.    Exhibit D38……………………………………………28
z.    Exhibit D39……………………………………………29
aa.   Exhibit D40……………………………………………29
bb.   Exhibit D41……………………………………………30
cc.   Exhibit D42……………………………………………30
dd.   Exhibit D43……………………………………………31
ee.   Exhibits D44-D46………………………………………..31
ff.   Exhibit D47……………………………………………32
gg.   Exhibit D48……………………………………………33
hh.   Exhibit D49……………………………………………33
ii.   Exhibit D50……………………………………………34
jj.   Exhibit D51……………………………………………34
kk.   Exhibit D52……………………………………………35
ll.   Exhibit D53……………………………………………36

# TABLE OF AUTHORITIES

**Cases**

*Berkeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195 (3rd Cir. 2006)................................6

*Commonwealth v. Thomas Proctor Heirs Trust, et al. Memomrandun Opinion (Pa. Cmwlth Jan. 26, 2021).* ........................................................................................2

*Herder Spring v. Keller,* 143 A.3d 353 (Pa. 2016)....................................................4

*Holdings, Inc. v. Welch*, 744 Fed. Appx. 74, 81 (3d. Cir. 2018) .............................10

*Katzin v. United States*, 10 Fed. Cl. 199, 212 (2015................................................8

*Keta Gas & Oil Co. v. Proctor*, 2019 WL 6652174 (Pa. Super. Dec. 6, 2019) ........2

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S.Ct. 1589, 1594 (2020) ................................................................................................................1, 2

*Martin v. Indiana Mich. Power Co.*, 292 F.Supp.2d 947, 959 (W.D. Mich. 2002) ..8

*Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)....................1

*Romero v. Allstate Ins. Co.*, 52 F. Supp.3d 715 (E.D. Pa. 2014)...............................6

*Sec. and Data Techs., Inc. v. Sch. Dist. of Phila.*, 145 F.Supp.3d 454, 463 (E.D. Pa. 2015).......................................................................................................................9

*Walker v. Horn*, 385 F.3d 321, 336 (3d Cir. 2004)................................................1, 2

**Statutes**

28 U.S.C. § 1738 ........................................................................................................1

**Rules**

Fed. R. Evid. 801(c) ...................................................................................................9

Fed. R. Evid. 803 ................................................................................................. 9, 10

Fed. R. Evid. 804 ................................................................................................. 9, 10

Fed. R. Evid. 805 ................................................................................................. 9, 10

Fed. R. Evid. 901(b)(8) ..................................................................................... 10, 12

## I.   INTRODUCTION

Plaintiff ("Commission") submits this bench memorandum regarding evidentiary objections to the parties' trial exhibits in accordance with the Court's January 11, 2021 Order, Doc. 207.

The scheduled bench trial is intended to resolve outstanding issues of material fact regarding ownership of the subsurface estate of the Josiah Haines warrant (the "Property"), as set forth in the Court's April 21, 2020 memorandum.  *See* Doc. 183 at 29-43; Doc. 189.

As the Court has acknowledged, the Commission, for the reasons set forth in its summary judgment filings and subsequent motion for reconsideration, maintains a continuing objection to the relevance of these factual issues, which has been preserved for appellate review.  *See* Doc. 189 at n.1.

## II.   COLLATERAL   ESTOPPEL   BARS   THE   TRUSTS   FROM PRESENTING THEIR EVIDENCE.

Under the Full Faith and Credit Clause, as implemented by 28 U.S.C. § 1738, a federal court must give the same preclusive effect to state court judgments that those judgments would be given in that state's own courts.  *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *see also Walker v. Horn*, 385 F.3d 321, 336 (3d Cir. 2004).  The doctrine of issue preclusion, "sometimes called collateral estoppel," "precludes a party from relitigating an issue actually decided in a prior case."  *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S.Ct.

1589, 1594 (2020).  This Court must therefore look to Pennsylvania state law to determine the requirements and effects of issue preclusion on the Trusts' present claims.

In Pennsylvania, issue preclusion applies where:

(1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (5) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

*Walker*, 385 F.3d at 337.

Collateral estoppel precludes the Trusts from re-litigating, in this action, several questions of law and issues of fact that were litigated and adjudicated finally against the Trusts by the Pennsylvania Commonwealth Court in *Commonwealth v. Thomas E. Proctor Heirs Trust*, *et al.*, Memorandum Opinion (Pa. Cmwlth. Jan. 26, 2021) (attached), and by the Pennsylvania Superior Court in *Keta Gas & Oil Co. v. Proctor*, 2019 WL 6652174 (Pa. Super. Dec. 6, 2019) (attached).

Specifically, this Court should apply collateral estoppel against the Trusts and enter the following findings and conclusions in this case:

- Mere ownership of unseated land created no obligation on the owner of the unseated land to pay the assessed taxes.

- There was no duty – legal, contractual, equitable, or otherwise – obligating Central Pennsylvania Lumber Company ("CPLC") to pay the taxes on unseated land that would transform the 1908 tax-sale purchase by Calvin H. McCauley, Jr. into a redemption.

- It is legally irrelevant that McCauley, Jr. was an agent of CPLC at the time of the 1908 tax sale (to include the 1908 tax sale of the Property).

- Because there was no challenge to any alleged irregularity in the 1908 tax sale regarding McCauley, Jr.'s alleged fiduciary status or otherwise during the two-year statutory period, the Trusts are estopped from doing so now, over a century later.

- Because the 1908 tax sale was statutorily authorized, conducted by the proper authorities, and held in response to unpaid taxes, it is presumptively valid and McCauley, Jr.'s motives, even if improper, are not a sufficient reason to void the sales.

- If the Trusts disputed the County Commissioner's failure to assess their subsurface estate separately from the surface estate, they should have contested the assessment and tax sale with the initial two-year redemption period. As such, whether the severance of the surface and subsurface was reported to the County Commissioners and should have been separately assessed prior to the 1908 tax sale, is, decades later, immaterial as a matter of law.

- Deed language in subsequent deeds did not preserve the Trusts' subsurface rights in the Property after they were extinguished by the 1908 tax sale.

- The Commission is not estopped from claiming title to the subsurface of the Property.

- The personal beliefs of certain representatives of the parties' predecessors with respect to the state of the law surrounding title washing is legally irrelevant.

- The Trusts' due process claim fails as a matter of law.

Each of the foregoing issues, which are raised by the Trusts in this case, were necessary to the Commonwealth Court's and Superior Court's judgments against the Trusts. The Trusts were parties in both actions and had a full and fair

3

opportunity to litigate each of the issues in question.  As such, collateral estoppel precludes the Trusts from relitigating those same issues in this case.  The Commission will submit any further briefing of this issue, if necessary, upon request by the Court.

## III.   THE COMMISSION'S CASE IN CHIEF.

Joint Exhibits J1 and J2 establish, for the reasons set forth in the Commission's summary judgment filings with the Court (Docs. 119 through 126), the Commission's case-in-chief.  *See also* Plaintiff's Exhibit P1; Stipulation of Facts at ¶¶ 1-2, 4-7, 11-18.

This case involves the concept of title washing, as explained by the Pennsylvania Supreme Court in *Herder Spring v. Keller*:

> …[a] tax on unseated land was the liability of the land rather than the owners.  Therefore, if the property was assessed as a whole property and none of the owners paid the tax, then the property would be sold as a whole to satisfy that tax.  As cogently set forth in *Powell v. Lantzy* [ 173 Pa. 543, 34 a. 450 (1896)] "[a]ny moral obligation to agree and jointly pay the tax, each contributing his just share, rested equally upon the owners of the different parts, but there was no legal duty on either to do this.  It was their separate, not their joint, interests which were in peril."  *Id.*, at 550, 34 A. 450; *see also Proctor*, 166 F.Supp. at 475 ("[w]hen there is no separate assessment of the minerals, a purchase of the whole *by the owner of the surface* [emphasis added] divests the title of the owner of the minerals"; *Hutchinson*, 49 A. 312.

143 A.3d 358, 375 (Pa. 2016).

Joint Exhibits J1 and J2 establish the Property was wholly assessed as unseated and none of the owners paid the tax.  Further, the Exhibits prove the whole

of the Property was sold at the 1908 tax sale to satisfy unpaid taxes for 1907.

The Commission preserves its argument that the Court erred in striking Exhibit P1 in connection with the parties' cross-motions for summary judgment. *See* Doc. 158 at 16-19; Doc. 183 at 7, n.5. The Court, nonetheless, can consider Exhibit P1 to the extent previously deemed admissible in Judge Schwab's Report and Recommendation. *Id*. *See also* Doc. 155 at 16-17. The Court should, moreover, reconsider its ruling regarding the admissibility of Exhibit P1 in its entirety in the context of this trial, where the Court *is*, now, the trier of fact. *See* Doc. 158 at 16-19; Doc. 183 at 7, n.5.

For clarity, the remaining Joint Exhibits contain source deeds for the chain of title (J3-J7, J25, J26), source articles advertising the sale of the Property as a whole (J12-J24), source tax records indicating assessment of the Property as a whole (J8-J11) and the subsequent sale of the Property in satisfaction of the taxes (J11, J25).

## IV.   TRUST'S EVIDENTIARY OBJECTIONS TO THE COMMISSION'S EXHIBITS.

The Trusts object to Commission Exhibits P1, P2, and to the first seven (7) pages of Joint Exhibit J1. *See* Doc. 204 at 3, 7. The Trusts reserve relevancy objections to P29-P30, P32-33, and P35. *Id.* at 10; *see also* Doc. 206 at 10.

The Trusts' objection to Commission Exhibit P1 is addressed above.

With respect to Commission Exhibit P2, and the seven (7) pages at issue in

Joint Exhibit J1[1], the Trusts raise objections identical to those they raised to P1. The materials, however, are admissible under F.R.E. 702 and F.R.E. 704. They are the end-result of a thorough review of deeds and other public record materials offered to assist the Court in identifying the factual basis for the Commission's superior title to the oil, gas, and mineral estate of the Property.

The authorities the Trusts cite-to are distinguishable on the facts and lend legal support to the admission of P2 and the whole of Joint Exhibit J1. For example, in *Romero v. Allstate Ins. Co.*, 52 F. Supp.3d 715 (E.D. Pa. 2014), the district court was faced with a "[l]aw review-like statement on the propriety of class certification." The court relied upon *Berkeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195 (3rd Cir. 2006) in its application of F.R.E. 702 and F.R.E. 704, holding as impermissible that testimony which usurps the district court's role of explaining the law to the jury. However, the court further determined that F.R.E. 704 permits an expert witness to give testimony embracing an ultimate issue to be decided by the trier of fact. *Romero*, 52 F. Supp.3d 722-23 (quoting *Berkeley*, 455 F.3d at 217).

Commission Exhibit P2 is comprised of excerpts from an abstract of title to a related transfer of nearby lands as between the Commission and CPLC, the same,

---

[1] In the Joint Exhibit list (Doc. 204 at 3), the Trusts referenced pages numbered J1.001-007 as objectionable, while only J1.001-006 were specifically identified as subject to their objection in the Trusts' Trial Brief on Evidentiary Disputes (Doc. 206 at 2 note 1).

earlier grantor of the Property.  The writings speak directly to the effect of tax sales, the extinguishing of prior unreported interests, and the scope of the conveyances. The information is a public, government record that removes any doubt as to the parties' intent and the facts and circumstances surrounding these land transfers that occurred sometimes more than a century ago.

The first seven (7) pages of Joint Exhibit J1 consist of a legal disclaimer, a certification of title, and a synopsis of the title to the surface of the Property, all of which are the evidence of the chain of title filed of-record in this case.  *See* Doc. 97-1.  The documents contain specific, identifiable facts by persons who are familiar with the kinds of searches involved to determine title to lands in the Commonwealth's northern tier.  Such a determination involves complex issues of local assessments, taxation, long-repealed tax law, and lands to which title passed and passed again between speculators.

The proper inquiry is whether the evidence would assist the trier of fact understand the foundational facts underlying the Commission's claim, not *only* whether the proffer contains an opinion or a conclusion, as the Trusts suggest. Indeed, such information helps the trier of fact navigate the lengthy and complex chain-of-title, especially as the Trusts failed to submit their own title abstract and, in fact, *adopt* the chain-of-title submitted by the Commission.

To the extent the materials touch upon the ultimate issue in this case (i.e., title

wash), it is a faux danger where this Court is the trier of fact.  When such is the case, as here, "[t]he dangers which can be presented by such 'ultimate issue' [opinion] are minimal if not nonexistent."  *Katzin v. United States*, 10 Fed. Cl. 199, 212 (2015) (citing *Martin v. Indiana Mich. Power Co.*, 292 F.Supp.2d 947, 959 (W.D. Mich. 2002)).

Commission Exhibits P29-P30, P32-33, and P35 are potential rebuttal exhibits to which the Trusts reserved a relevancy objection until the time of trial.  The Commission will, therefore, address any such relevancy objections if and when raised by the Trusts at trial.

## V.   COMMISSION'S EVIDENTIARY OBJECTIONS TO THE TRUST'S EXHIBITS.

The remaining factual disputes identified by the Court in denying the parties' cross-motions for summary judgment can be divided broadly into two categories. Those broad categories are: (1) what interest in the Property was assessed in 1907 and sold at the 1908 tax sale; and (2) whether Calvin H. McCauley, Jr. ("McCauley, Jr.") was acting as Central Pennsylvania Lumber Company's ("CPLC's") agent at the 1908 tax sale.  *See* Doc. 183 at 50.  The Trusts' exhibits, D1 through D53, are, presumably, being offered in connection with these remaining factual disputes identified by the Court.

### A.   Relevancy.

The Commission, based upon its preserved, continuing objection and

collateral estoppel, *see supra*, contends that these misperceived factual disputes are irrelevant and immaterial as a matter of law and, consequently, that any evidence proffered by the Trusts with respect to the factual disputes identified by the Court must be rejected.

### B.    Specific Objections.

To the extent the Court entertains the challenged exhibits offered by the Trusts, the Commission has specific objections premised upon hearsay, authenticity, relevancy, and prejudice.

### 1.    Hearsay – Exhibits D5, D9, D12, D15-D20, D22, D27, D30-D36, D39-D41, D48, D53.

These exhibits, which consist of letters, newspaper articles and other writings, are out-of-court statements offered by the Trusts, presumably, to prove the truth of the matters asserted therein, and therefore constitute inadmissible hearsay and, in some cases, double hearsay.  *See* Fed. R. Evid. 801(c), 805.  *See also Sec. and Data Techs., Inc. v. Sch. Dist. of Phila.*, 145 F.Supp.3d 454, 463 (E.D. Pa. 2015) ("[G]enerally, newspaper articles and television programs are considered hearsay under Rule 801(c) when offered for the truth of the matter asserted and statements in newspapers by individuals other than the article's author often constitute double hearsay.").  It is incumbent on the Trusts, therefore, to establish an applicable exception to each layer of hearsay presented by these statements.  *See* Fed. R. Evid.

803-805.  *See also Holdings, Inc. v. Welch*, 744 Fed. Appx. 74, 81 (3d. Cir. 2018) (each layer of hearsay must fit into a hearsay exception).

The Commission can only speculate as to what, if any, hearsay exceptions the Trusts intend to rely upon in support of offering these exhibits to the Court and, consequently, reserves its right to contest the applicability of such exceptions at trial.

## 2.     Authenticity – Exhibits D15-D17, D30-D31, D41.

Exhibits D15-D17 and D30-D31 are purported letters found interleaved or glued into pages of a book found in the library of a law firm.  *See* Joint Exhibit J30 (Deposition of Lauri Sekerak) at J30.018 (D15), J30.021 (D16), J30.024 (D17), J30.028 (D30), and J30.932 (D31).

From deposition testimony taken in advance of trial, it appears the Trusts intend to reply upon Fed. R. Evid. 901(b)(8) (ancient documents) to authenticate Exhibits D15-17 and D30-31.  *See generally*, Joint Exhibit J30.  To authenticate a document under Fed. R. Evid. 901(b)(8), its proponent must establish that it is in a condition that creates no suspicion about its authenticity, that it was in a place where, if authentic, it would likely be, and that it is over 20 years old.  *See* Fed. R. Evid. 901(b)(8).  None of these elements are met.

At her deposition, Ms. Sekerak testified she found a book in the library of the law firm of Mervine, Calderwood and Hammond, in Warren, Pennsylvania.  *See* Joint Exhibit J30 at J30.009.  First, she indicated the letters were "glued in" in the

books.  *Id*. at J30.018 (D15), J30.021 (D16), J30.024 (D17), J30.028 (D30), and J30.932 (D31).  Ms. Sekerak said the books "looked" old to her and she had no reason to doubt they were "old," or that the letters were not created at or around the time they were dated.  However, on cross examination, she testified she came into possession of the books (and the letters glued in the books and offered as exhibits) in 2005.  *Id*. at J30.035.  She did not know how the law firm came into possession of the books and there was no one at the firm who knew where the books came from. *Id*. at J30.037.  For instance, Judge Hammond, a named partner at the firm, indicated he had never seen the books before.  *Id*.

The Trusts seek to authenticate the letters interleaved, or glued, into pages of a book, and not the books.  The fact the letters were "glued in" suggests they were added later and were not originally part of the books themselves.  The condition of the books may be germane to the books' authenticity, but there is no indication the letters were in a condition that would create no suspicion.  Here, the condition, location, and placement of the letters upon or within the books is irregular and unreliable.

Moreover, there is no indication that the books, or the letters glued in at a later time, were being kept in a place where, if authentic, they would be likely to be found. The library of a law firm is hardly where one would expect to find purported corporate records or correspondence.  There is no evidence CPLC, its predecessors

11

or successors in interest, were clients of the law firm.  In fact, the partner in the law firm had not seen the books.  *See* J30.037.   Finally, although the books may "look" more than twenty years old, there simply is no evidence they *were* older than 2005, the year they were found.

For these reasons, the Commission objects to the admissibility of the letters and their authenticity under Fed. R. Evid. 901(b)(8).

Exhibit D41 consists of a plat and ledgers, presumably with respect to the Property.  However, these documents were not properly authenticated.  The only witness to speak to them was Anne Hochberg.  *See generally*, Exhibit J32.  Ms. Hochberg was asked about a set of books relating to bark peeling that were supposedly in a vault in which the witness found certain records.  *See* J32.055, J32.056.  Ms. Hochberg testified that she thought she had seen such books.  *See* J32.056.  The Trusts go further and seek to authenticate a plat and some pages from ledger books *as were filed as part of Summary Judgment* (J32.060).  The witness, however, merely testified it was her understanding that the collection in the vault at Broude and Hochberg contained volumes that had similar pages to the Exhibits being shown during the deposition.  *See* J32.060.

On cross examination, Ms. Hochberg looked at a document, which was identified as being a plat and ledger for the Josiah Haines warrant, and was asked if these specific items were in the vault.  *See* J32.061.  Her response was that she did

not know.  *See* J32.062.  Upon further examination, Ms. Hochberg was not even sure if these were the types of business records kept in the vault, and further indicated that Broude & Hochberg did not represent CPLC.  *See* J32.063.  Indeed, there is no indication how old they were (or even how old they looked), or whether they were in a place they would be expected to be kept.  There is no indication who wrote the statements contained in this Exhibit D41, why they were kept, or whether they are free from suspicion.  Accordingly, Exhibit D41 is unauthenticated and inadmissible.

### 3.    Specific Relevancy and Prejudice.

In addition to the general relevancy objections mentioned above, the Commission maintains specific relevancy and prejudice objections to the Trusts' exhibits.

### a.    Exhibits D2 and D3.

Exhibits D2 and D3 contain, respectively, Barclay and Overton Township assessment book excerpts.  The Property is in Leroy Township.  The assessments in Barclay and Overton Township are irrelevant and extraneous material.  Their inclusion creates an illusion that there is more "evidence" than really exists.

### b.    Exhibit D4.

Exhibit D4 is a "paper book" from a court case commenced in 1905 relating to a piece of land in Lycoming County.  The opinion was issued in 1907, a year before the tax sale in this case.  Essentially, the exhibit reflects the argument of two

parties in that case, CPLC and Elk Tanning.  Significantly, C.H. McCauley is listed as attorney for CPLC.  C.H. McCauley, however, is the *father* of McCauley, Jr. - the person that Trusts' claim was acting as CPLC's agent at the 1908 tax sale at issue in the case before this Court.  Thus, Exhibit D4 is irrelevant to show any purported "agency" relationship between McCauley, Jr. and CPLC.

Additionally, as a proffer of business practice or course of dealings, Exhibit D4 contains argument, testimony, and other documents about what CPLC did in another county in 1905.  Such material is irrelevant to what occurred in Bradford County with respect to the Property in 1908.  Just as importantly, to the extent Exhibit D4 contains legal argument or statements from the court, such material is prejudicial and constitutes nothing more than the chosen portions of a record of a 112 year-old nonprecedential lawsuit over a discrete issue with no bearing on this case.

### c.    Exhibit D5.

Exhibit D5 consists of four letters, purportedly from the estate of Thomas E. Proctor.  Three of the letters are to the Treasurer of Lycoming County and one is to the Treasurer of Elk County.  The earliest of the letters is purportedly dated 1913 and has no relevance to what occurred during 1908.  The letters, which request copies of tax bills, are not notices to the County Commissioners notifying the County Commissioners of a Proctor interest in unseated land (including the Property).  They

do not so much as even reference the Property or whether the land is seated or unseated.  Moreover, the letters do not reference McCauley, Jr., nor do they mention whether any of these warrants went through a tax sale.  In other words, the letters cannot even be considered competent, relevant evidence of a tangential issue.  The proffer of these immaterial papers, again, creates an illusion of a volume of "evidence" where no evidence exists, inviting speculation and conjecture.

### d.    Exhibit D6.

Exhibit D6 is excerpts of the assessment books for McIntyre Township, Lycoming County, for the years 1905, 1907, 1908 and 1909.  Exhibit D6 is not relevant because it involves the wrong county and does not address any of the issues in this case directly or by reasonable inference.  Exhibit D6 does not mention McCauley Jr. and does not explain or reference the reporting, assessment, or sale of an interest in the Property.

### e.    Exhibit D7.

Exhibit D7 is a map of Oil and Gas Fields from the Department of Conservation and Natural Resources ("DCNR") dated 2007.  It is irrelevant what the DCNR mapped in 2007 for oil and gas fields.  Ostensibly this map supports the proposition that *if* the Proctors had reported their mineral interests, they could not have been assessed some 112 years earlier.  This argument by the Trusts – that the reserved subsurface rights in the Property had no assessable value as of the 1908 tax

sales – has been flatly rejected by the courts, including this one.  *See* Doc. 155 at 81-82.

Regardless, it is readily apparent from Exhibit D7 that there are no oil and gas fields depicted in the area of the Property.  There are also no oil and gas fields depicted in the area of McIntyre Township, Lycoming County.  It is not a reasonable inference that the Trusts could not be assessed with a mineral interest in unseated land, as the Proctor Heirs *are* assessed with a mineral interest in unseated land, as shown in Exhibit D6, for the years 1904-1909.  *See* Exhibit D6 at 18, 37, 58, 76-78. The map fails to even support the reasonable inference the Trusts could not be assessed when compared with the Trusts' own Exhibit with respect to the Lycoming County land referenced on the map.  It is irrelevant and incompetent to support a more generalized inference with respect to the Property in this case. Finally, once again, the inclusion of this Exhibit prejudices the Commission by suggesting to the fact finder that there is evidence where no evidence exists.

### f.      Exhibit D8.

Exhibit D8 is a Seated Land Assessment for various years from 1895 to 1908. The question of assessments of *seated* lands has no bearing on this case.  The fact some *other* lands were assessed as seated and held by the Trusts' predecessors is irrelevant to the unseated assessment of the Property and its sale for non-payment of taxes.  There is no evidence suggesting that an interest in seated land had to be

reported, unlike the obligation of the holders of interests in unseated lands.  *See* J27-J29.  The exhibit tells the trier of fact nothing of the Trusts' predecessors' reporting of interests in unseated lands.  It does not reference the Property, so it is not informative of the *actual* tract in question and *its* assessment.  Exhibit D8 does not reference McCauley, Jr.  It simply is immaterial and irrelevant.  It is also prejudicial, as it calls for speculation and conjecture about the facts of the Josiah Haines Warrant.

### g.     Exhibit D9.

Exhibit D9 consists of various newspaper articles.  The first is a newspaper article from the Elmira Star Gazette from 1917 indicating that two persons, not affiliated with this litigation, had a lease from Proctor and Hill to mine coal on Barclay Mountain, near Sunfish Pond.  Elmira is in the State of New York.  There is no indication the lands leased are at issue in this case, or that there was a tax sale of that property such that there are any common issues, or that there is any reason the statements in the articles should be considered.

The second article is from the Wilkes-Barre Times in 1897 and merely states there is a vein of coal on Barclay Mountain that was found and that the surface owners were Union Tanning and the Proctors reserved coal.  Wilkes-Barre is in Luzerne County.  Assuming that is correct, there is no correlation with the Property in this case, nor any indication whether the area of this mine was included in a tax sale or not, nor whether there ever was a mine on the Property.

The third newspaper article is from the Sullivan Republican in 1893 indicating Proctors purchased land on South Mountain belonging to Schrader Land Company. Sullivan of course refers to Sullivan County.  To the extent such information is relevant to the trial of this case, the best evidence of this title transfer is Exhibit J3, a copy of the deed, recorded in Bradford County, by which Proctors acquired the Property.  The location of South Mountain does not appear in the evidence. Moreover, it is irrelevant a newspaper reported a fact that is not in dispute.

Finally, a fourth article from the Canton Sentinel in 1917 appears to repeat the first article from Elmira, New York.  Canton is in Bradford County.  However, the articles fail to mention the Property, Bradford County or LeRoy Township land assessments, reporting, McCauley, Jr., or any other issue related to this case.   These peripheral newspaper articles, without any context and hardly a vague notion of interrelatedness, have nothing to do with the Property in question and are simply irrelevant.  Moreover, the exhibit is improper hearsay and is inadmissible.

- **h.  Exhibits D10 and D11.**

Exhibits D10 and D11 are documents from the Potter County Prothonotary. Exhibit D10 is a petition in an assessment appeal case from Potter County for the year 1907.  Exhibit D11 is entitled "Evidence" and is from the case referenced by Exhibit D10.  These exhibits do not involve the Property or the assessment of land in Bradford County.  D10 and D11 do not address actions taken (or not taken) in

Bradford County, do not mention McCauley, Jr., and do not deal with any of the issues in this case.  There is no mention of the Trusts' predecessors-in-interest. Exhibits D10 and D11, if admissible, might be used to support inferences that CPLC was unhappy with Potter County assessments in 1907 and understood the process for challenging an improper assessment – both of which are irrelevant to this case.

### i.  Exhibits D12, D13 and D14.

Exhibit D12 is the First Annual Report of CPLC from 1903.  There is reference to McCauley, Jr., as a Real Estate Agent (incidentally there is reference to his father as General Solicitor).  Exhibits D13 and D14 are, respectively the Articles of Incorporation for CPLC and Certificate of Incorporation for CPLC, both from 1903.  They reference McCauley, Jr., as Treasurer of CPLC in 1903 (and his father as an original stock subscriber).  While these exhibits reference McCauley, Jr., and his association with CPLC at a point in time in 1903, they say nothing with respect to McCauley, Jr.'s status in 1908.  It is not a reasonable inference that if McCauley, Jr. worked as a Real Estate agent in 1903, or even as Treasurer, that he was acting as an agent for CPLC five years later at the 1908 tax sale.  In fact, McCauley Jr.'s status seemed to change within the year, as he was no longer identified as Treasurer at the time of the First Annual Report in 1903.

In this case, Exhibits D12-D14 are immaterial and irrelevant.  Moreover, the exhibits are improper hearsay and the PGC reserves the right to object to their

admissibility depending upon the purpose(s) for which they are sought to be introduced.

### j.      Exhibit D15.

D15 is a letter to McCauley, Jr., ostensibly as Real Estate Agent for CPLC. This is one of the letters supposedly found in the law firm's library by Ms. Sekerak. *See* Joint Exhibit J30. In addition to being unauthenticated and hearsay, the letter is irrelevant to whether McCauley was an agent of CPLC at the time of the 1908 tax sale.

### k.      Exhibit D16.

Exhibit D16 is a 1905 letter apparently found by Ms. Sekerak affixed within a bound volume in a law firm's library. *See* Joint Exhibit J30. This 1905 letter mentions McCauley, Jr., but is not relevant to his capacity or purpose at various tax sales in 1908. Just as important, this letter is to McCauley, Jr., from some representative of CPLC, and does *not* identify McCauley, Jr. as a representative of CPLC. The letter does not support the inference that McCauley, Jr. worked for CPLC in 1905, any more than in 1908. It is speculative and conjecture to indulge in reading a 1905 letter to mean something that it does not expressly state.

The Exhibit D16 is immaterial and irrelevant. Moreover, the exhibit is improper hearsay.

### l.     Exhibit D17.

Exhibit D17 is another 1905 letter apparently found by Ms. Sekerak affixed within a bound volume in a law firm's library.  *See* Joint Exhibit J30.  It suffers the same infirmities as Exhibit D16.  The letter is from CPLC (on CPLC's letterhead) and to McCauley, Jr., as a real estate agent, but it does not identify him, at that time, as CPLC's real estate agent.  The letter and its contents are immaterial, irrelevant, and improper hearsay.

### m.     Exhibits D18 – D20, D22

D18 through D20, and D22 are Boyd's Directories from 1906 through 1909. Ostensibly, they show McCauley, Jr. having a business address at a similar address to CPLC.  Additionally, one of them, Exhibit D20, lists McCauley, Jr. as Assistant General Solicitor, but does not say for what entity.  Given the speculation necessary to determine a similar address and a similar title would support a finding that McCauley was an agent of CPLC *for purposes of the 1908 tax sale*, the Commission objects these exhibits as prejudicial, immaterial, irrelevant, and improper hearsay.

For example, Mr. Stockman's law firm, Kazmarek, Mowrey, Cloud, Laseter, LLP, has maintained an address at One PPG Place Suite 3100, Pittsburgh, PA 15222 for a couple years at least.  The anchor tenant at One PPG Place is PPG Industries. It would be sheer folly to accept the fact that Mr. Stockman has an office in the same building and is an attorney, as supportive of an inference that Mr. Stockman

represents PPG Industries in any given activity.  For instance, in the leasing of the space at One PPG Place by KMCL, LLP, Mr. Stockman was not really an agent for the anchor tenant simply because they shared an address.  Even if two years later they surrender their lease to PPG Industries.  An address and a title are simply not competent evidence of agency.

### n.      Exhibits D21 and D23.

Exhibits D21 and D23 are related to a Potter County tax appeal in 1908. Exhibit D21 is the petition from 1908 and Exhibit D23 is entitled "Evidence" from 1910.  In Exhibit D21 from 1908, McCauley, Jr. is a notary public for an official of CPLC.  In Exhibit D23, McCauley, Jr. is referenced as representing CPLC at a February 1910 hearing, along with other members of the law firm of Lewis, Jones & Lewis.  Neither of these documents shed any light on McCauley, Jr. being an agent for the 1908 tax sale, nor do they signify employment of McCauley, Jr. by CPLC in connection with the the 1908 tax sale.  It would be speculation to conclude that because McCauley, Jr. (who apparently lived and worked in Lycoming County for years) was a notary, he was an agent of CPLC for purposes of the 1908 tax sale as well.  The exhibits are irrelevant and immaterial to the issues in this case, as they do not tend to make any fact of consequence more probable than not.

### o.    Exhibit D24.

Exhibit D24 is a manuscript Census from 1910 which shows McCauley, Jr. as a lawyer for an undisclosed "lumber company."  While it may be true McCauley was a lawyer, and may have represented CPLC in 1910, such fact does not make it more likely that McCauley, Jr. was an agent for the purposes of purchasing properties at the June 1908 tax sale at issue in this case.  In fact, there were likely any number of lumber companies to which this could refer.  For this reason, the Commission objects to this Exhibit is irrelevant, immaterial, and prejudicial.

### p.    Exhibits D25 and D26.

Exhibits D25 and D26 are legal documents from a tax appeal involving CPLC in 1910.  Exhibit D25 is a Writ of Certiorari from 1911 with respect to the case showing McCauley, Jr. as an attorney for CPLC, along with other members of Lewis, Jones & Lewis.  Exhibit D26 is from the same case and, likewise, lists McCauley, Jr., along with members of Lewis, Jones & Lewis, as attorneys for the appellant, CPLC.  Neither of these documents tend to make it more likely that McCauley, Jr. was an agent for CPLC at the June 1908 tax sale at issue in this case. The Commission objects that these Exhibits are irrelevant, immaterial, and prejudicial.

### q.     Exhibits D27 and D28.

Exhibits D27 and D28 are the same Declaration of Trust in an unrelated case from the 1950's concerning a tax sale of land in Elk County in 1914.  The Exhibits are immaterial, irrelevant, and hearsay.  It is wholly speculative as to how these documents would tend to make it more likely that McCauley, Jr. was an agent at the subject June 1908 tax sale.[2] This is especially true because the previous Exhibits, *inter alia*, D25 and D26, show that sometime *after* 1910 McCauley, Jr. did have a relationship with CPLC.  Moreover, in the ***absence*** of a document similar to Exhibits D27 and D28 with respect to the Property, the Court should draw an adverse inference – *i.e.*, that McCauley, Jr. was ***not*** CPLC's agent at the 1908 tax sale.  F.R.E. 803(10).

### r.     Exhibits D30 and D31.

Exhibits D30 and D31 are two 1916 letters apparently found by Ms. Sekerak affixed within a bound volume in a law firm's library.  *See* Joint Exhibit J30.  Both identify McCauley, Jr. as Assistant General Solicitor for CPLC in 1916.  They are not evidence that McCauley, Jr. was an agent for CPLC eight years earlier at the

---

[2] It is known that McCauley, Jr. purchased property at tax sales, and ultimately reconveyed them (in 1910-11) to other persons.  *See* Appendix, Exhibits A and B; *see also* trial Exhibit P30.  It can reasonably be inferred he was doing so on behalf of someone other than CPLC or anyone remotely connected with this case.  Therefore, at the time in question, McCauley, Jr was clearly not merely an agent for CPLC at the 1908 tax sales, so random "evidence" of his relationship at a different time and place is irrelevant.

1908 tax sale and, consequently, the Commission objects to these exhibits as prejudicial, irrelevant, immaterial, and improper hearsay.

### s.   Exhibit D32.

Exhibit D32 consists of newspaper clippings from 1913 and 1917.  They mention McCauley, Jr. as being appointed Assistant General Solicitor or elected to a management position at those specific points in time.  Exhibit D32 does not make it more likely that McCauley, Jr. was an agent, years earlier, at the various June 1908 tax sales and, consequently, is irrelevant and immaterial.  Additionally, and when viewed as a whole, these Exhibits suggest the relationship changed, or could change, at least every year at the annual meeting, such that the other documents showing McCauley, Jr. as working with CPLC in one capacity or another (prior to 1907 and after 1910), are rendered inconsequential, at best.  Accordingly, the Commission objects to Exhibits D32 as prejudicial, irrelevant, immaterial, and improper hearsay.

### t.   Exhibit D33.

Exhibits D33 is a collection of assorted letters.  The earliest letter is dated 1909 and is to C.H. McCauley, the father of McCauley, Jr.  It sheds no light on McCauley, Jr.'s status in 1908 or his intentions at the June 1908 tax sale.  The next two letters are equally infirm.  The earliest letter to McCauley, Jr. is dated 1910.  While it does identify McCauley, Jr., it does not identify him as working for CPLC, nor does it reference CPLC.  The earliest reference to McCauley, Jr. working for

CPLC is found at D33.007, in a letter from April 1911.  As before, this letter does not make it more likely that McCauley, Jr. was an agent at the 1908 tax sale.  In fact, none of the letters mention the Property, the 1908 tax sale, or what McCauley, Jr. was doing in 1908.   The Commission objects to these letters as prejudicial, irrelevant, immaterial, and improper hearsay.

### u.      Exhibit D34.

Exhibit D34 purports to be a 1902 map of CPLC lands with hand-written changes and notes.  The alterations on the map do not give any indication why the map was so marked, nor do the changes inform the trier of fact about ownership of the Property or the capacity in which McCauley, Jr. was acting during the relevant timeframe.  Finally, the Barclay Coal lands are not related to the Property at issue. Exhibit D34 does not tend to make any issue in the case, such as what was assessed and sold with respect to the Property, or what the relationship of McCauley, Jr. and CPLC was in 1908, more likely.   The Commission objects to this Exhibit as prejudicial, irrelevant, immaterial, and improper hearsay.

### v.      Exhibit D35.

Exhibit D35 is another collection of letters, none of which involve the Property and even the earliest of which is outside the relevant time period.  The only mention of McCauley, Jr. is in one letter dated November 30, 1920, where the author writes *they* [the trusts' predecessors in interest] have done much business with

McCauley, Jr., *they* [again, the trusts' predecessors in interest] had great confidence in him, and he [McCauley, Jr.] *used to be* [at an unspecified time] an officer in CPLC.  These letters do not tend to make any of the facts of consequence in this case more probable than not.  The Commission objects these letters are prejudicial, irrelevant, immaterial, and improper hearsay.

### w.   Exhibit D36.

Exhibit D36 is a letter from 1931 from a title examiner to the Commission regarding properties other than the Property at issue.  To the extent it contains the opinions of a title examiner regarding what he surmises took place and are being offered for their truth, it is hearsay, speculative, and irrelevant.  To the extent it contains a non-attorney's personal musings about the law at the time, it is prejudicial, improper opinion testimony.  Pennsylvania's courts have interpreted the applicable law and the understandings or opinions of persons in 1931 should be irrelevant.  Moreover, the Commission objects to Exhibit D36 as irrelevant, immaterial, and prejudicial.

### x.   Exhibit D37.

Exhibit D37 is a letter from a title examiner to the Commission, which discusses an entirely different situation involving a separate tract, a different tax sale, and another subsurface owner.  In Exhibit D37 it is evident that the subsurface owners, Davidge, paid CPLC for a share of the taxes.  CPLC allowed a tax sale and

had their Solicitor buy the property *in order to clear (i.e., "wash") the title*.  In that case, CPLC was not only willing, but made it a point, to reconvey the subsurface to Davidge.  But interpreting this writing in the context of the case at bar requires speculation.  One might guess this reconveyance to Davidge was because CPLC owned the subsurface by virtue of the tax sale and had an obligation by virtue of Davidge having paid taxes to reconvey that subsurface.

In this case, however, there is no evidence whatsoever the Trusts' predecessors-in-interest ever paid any taxes on the Property.  There is no evidence McCauley, Jr. purchased the Property on behalf of CPLC and regardless, according to this letter, such an act would have "washed" the title and conveyed the subsurface.  Indeed, there is no evidence CPLC ever reconveyed the subsurface of the Property to the Trusts' predecessors-in-interest.

The letter does not tend to make any of the facts of consequence in this case more likely or not.  The Exhibit 37 is inadmissible as prejudicial, irrelevant, and immaterial.  Moreover, the Commission reserves the right to object to admissibility depending upon the purpose(s) for which the exhibit is sought to be introduced.

### y.  Exhibit D38.

Exhibit D38 is a 1931 letter from the Solicitor for CPLC indicating that CPLC had reconveyed the subsurface to Davidge.  In other words, the reconveyance discussed in D37 was a *fait accompli*.  Again, there is no evidence in the volumes of

material submitted by the Trusts that the situation here is the same as it was with Davidge. Davidge paid taxes to CPLC and CPLC desired to reconvey the subsurface and, in fact, did so. CPLC apparently believed it had an obligation due to Davidge having paid taxes and acted upon that belief *prior* to any transfer to the Commission. This letter is irrelevant and immaterial to what CPLC believed or did with respect to the 1908 tax sale and the Trusts. If anything, these letters prove how different the situations were. The Commission objects to this letter as irrelevant, immaterial, and prejudicial. Moreover, the Commission reserves the right to object to admissibility depending upon the purpose(s) for which the exhibit is sought to be introduced.

### z.      Exhibit D39.

Exhibit D39 is an excerpt from a book from 1904. The excerpt does not discuss any of the parties or their predecessors in this litigation, nor does it mention or discuss the Property. It is prior to any of the acts (or omissions) which form the basis for the claims in this case. It mentions only the U.S. Leather Company, which was never in the chain of title to any of the properties involved in this case. The Commission objects to this Exhibit as irrelevant and immaterial. Additionally, the Commission objects that this Exhibit is unauthenticated hearsay.

### aa.      Exhibit D40.

Exhibit D40 is an excerpt from a 1972 book. While this excerpt is generally about CPLC, its railroads, and lumber mills, it does not speak to any of the properties

at issue in this litigation.  It does not discuss the transfer of property nor does it mention Proctor, McCauley, Jr., or the Commission.  The information is historical but does not tend to make any fact of consequence in this case more likely or not. The Commission objects that this Exhibit is prejudicial, irrelevant, immaterial, and improper hearsay.

### bb.    Exhibit D41

Exhibit D41 is a plat purporting to show the Josiah Haines warrant and excerpts from CPLC ledger books and pages.  The unauthenticated pages are immaterial to the ownership of the Property, which question is answered by Joint Exhibits J1 and J2.  The Exhibit has no bearing on the actual unseated assessment, taxation, and sale of the Property.  The PGC objects to Exhibit D41 as unauthenticated, irrelevant, and improper hearsay.

### cc.    Exhibit D42.

Exhibit D42 is a stipulation from the case *Proctor v. Sagamore Big Game Club*, 166 F. Supp. 465 (W.D. Pa. 1958).  Despite the inability to be certain of stipulation's purpose in the District Court in 1958, the Trusts idly seek its inclusion because it contains the name of McCauley, Jr.  The stipulation itself acquiesces to a legally irrelevant fact: that McCauley, Jr. was associated with CPLC from 1912 to 1916.  Indeed, the stipulation actually makes McCauley, Jr.'s agency for CPLC at the June 1908 tax sales *less* likely because it specifically delineates his roles and

30

when he held those roles.  Nevertheless, the Commission objects that this exhibit is irrelevant and immaterial.

### dd.    Exhibit D43.

Exhibit D43 is part of the title to several other tracts in Lycoming County, also subject to litigation between the parties.  At best, it discusses the relationship of A. Jones to CPLC and the authors observance that Jones was "apparently" acting on behalf of CPLC.  It is prejudicial, improper opinion testimony of the legal effect of Jones's action.  It is, moreover, speculative and irrelevant as to what was done by McCauley, Jr. in 1908.  The Commission objects that this Exhibit is irrelevant and immaterial, as well as prejudicial as noted before.

### ee.    Exhibits D44-D46.

Exhibits D44-D46 are declarations that show no records of reporting of an interest in the Property by the Trusts' predecessors-in-interest exist in various offices.

The Exhibit D44 states no such notices are found in the Bradford County Historical Society and suggests looking in either the Historical Society or the Archives of the Bradford County Register and Recorder.  Exhibit D45 is from the Bradford County Register and Recorder indicating it does not possess these records, and if they remain in existence, they would be kept with the Commissioners or the

31

archives of the Register and Recorder.  The declaration of the person who searched and found nothing relevant in the state archives is at Exhibit 46.

Of course, reporting under the Act of March 28, 1806, P.L. 644, was to be to the County Commissioners.  *See* Joint Exhibit J27.  In any event, there is no evidence of the Trusts' predecessors-in-interest having reported any interest in the unseated Property at the multiple times they became holders of such an interest.  It is immaterial and irrelevant such notices do not exist at the present time.  Under the Act of March 13, 1815, P.L. 177, a challenge to a tax sale was to be brought within two years of an unseated tax sale.  The presence or non-presence of such notices in 2020 is a red herring, as the Trusts or their predecessors waived their ability to challenge the tax sale of the property.

The Exhibits D44-D46 are irrelevant and immaterial as they do not tend to make the alleged fact of the Trusts' predecessors-in-interest reporting of their interest in the Property more likely or not than if the statements were considered.

### ff.     Exhibit D47.

Exhibit D47 is described on the Joint Exhibit List as a list of Bradford County unseated lands for 1906-1908.  However, the actual exhibit as marked for trial is for certain years between 1909 and 1922.  Accordingly, the Exhibit is immaterial and irrelevant to the extent it does not span the operative years of unseated assessments of the Property leading to its 1908 sale for unpaid taxes.  To the extent the motive

behind the Exhibit is unclear, the Commission reserves the right to object to its admissibility depending upon the purpose for which it is sought to be introduced.

### gg.   Exhibit D48.

Exhibit D48 consists of two unrelated newspaper articles.  The first is a newspaper article from 1908 stating that Calvin H. McCauley (McCauley, Jr.'s father) passed the bar and was named Assistant General Solicitor of CPLC.  At the risk of redundancy, what happened to McCauley's *father* is irrelevant.  To the extent this article is mistaken and may be about McCauley, Jr., the Commission objects it is untrustworthy.  If a 112-year-old newspaper article is to be accepted as evidence not of what it actually says, but for what someone wants it to say, the whole notion of evidence is turned on its head.

The second article is dated 1907 and indicates that McCauley, Jr. was visiting Ridgway in July of 1907.  The irrelevance of the article in the context of this federal matter cannot be overstated.  As we have seen, the CPLC-McCauley, Jr. relationship, if any, changed from year to year (and sometimes within the year as made apparent by Exhibit D12).  The Exhibit D48 is immaterial, irrelevant, and improper hearsay.

### hh.   Exhibit D49.

Exhibit D49 is a map of Schrader Lands.  Besides being difficult to read, what lands were mapped prior to the Trusts' predecessors-in-interest acquiring some or all of the lands pursuant to the deed at Joint Exhibit J3 is irrelevant and immaterial.

### ii.    Exhibit D50.

Exhibit D50 is a recapitulation statement from Barclay Township.  The fact that in 1894 there were so many cows or barns assessed, or that coal or a coal mine on other lands was assessed in 1922, does not make it more probable the Trusts' predecessors reported their subsurface interest in the Property (or not) and be subject to assessment.  More importantly, the Exhibit does nothing to explain the tax sale of the Property in 1908.  The Commission objects to the Exhibit as immaterial and irrelevant.

### jj.    Exhibit D51.

Exhibit D51 purports to be a demonstrative exhibit.   However, the Commission objects to its admissibility for lack of proper foundation.  Exhibit D51 was testified to by Gregory Gass.  *See* Joint Exhibit J31.04.  While Mr. Gass testified extensively as to what the document says, he advised he did not search to determine whether the persons identified as paying tax were the same as the deeded owner(s). *Id.,* at J31.04-J31.039, J31.062-J31.066.

Mr. Gass was not alive during the various years of records selected by the Trusts.  The witness testified he did not search title to compare what was in the assessment records to what was in the title records.  To advise the trier-of-fact what

such a selection of assessment materials means is improper opinion testimony to which the Commission objects. *See,* Id. At J31.069-J31.076.  Moreover, the Exhibit is immaterial and irrelevant to the issues in this case.

### kk.    Exhibit D52.

Exhibit D52 is a deed from the Commonwealth of Pennsylvania, acting by and through the Pennsylvania Game Commission, to the Commissioners of Bradford County for a property known as "Sunfish Pond."  While this may explain the Trusts' inclusion of the news pieces about coal near Sunfish Pond, it does not – in  any way – explain the bearing of this deed to the Property in question.    The Exhibit is immaterial and irrelevant.

Tangential deeds that have no context of location and have nothing to do with the Property in question are simply irrelevant to any material facts.  Additionally, the sole tangentially relevant portion of this deed would be the clause reserving to the lawful owners rights of way, minerals, coal, gas, petroleum and oil.  D52.  The Trusts probably claim ownership of that interest, but the Court does not have the benefit of any chain of title, deed, or other evidence of location or title to this tract. Essentially, this Exhibit seeks to have the Court decide that there is title to the Trusts in this unrelated property, the inference being they must hold title in the Property. Worse yet, this exhibit seeks to have the Court make this determination not on the basis of evidence, but on the basis of a wise precaution on the part of the Commission

to make it clear the Commission does not warrant outstanding rights of way, minerals, coal, gas, petroleum and oil.

The layers of speculation required to find this exhibit relevant point out exactly why the Pennsylvania Courts have refused to indulge the argument of the Trusts.

### ll.    Exhibit D53.

Exhibit D53 is a collection of newspaper articles.   The first is from The Williamsport Sun in 1903, Exhibit D53.001, D53.002.  This article merely states that CPLC was incorporated and that the General Solicitor was C.H. McCauley, McCauley, Jr.'s father.   First, this fact is irrelevant.   Second, this fact is not in dispute.  Lastly, this says nothing more than what the actual Articles of Incorporation say.   For this reason, the first article is irrelevant and cumulative.

The second article is from The Williamsport Sun in 1907, Exhibit D53.004-D53.005.   Once again, it concerns the funeral of a Charles Norton and the only possible link to any issue in this case is that one of the pall bearers is shown as Calvin H. McCauley, General Solicitor of CPLC.  (Incidentally, the article also shows O.B. Grant and several members of the Davidge family, but not one Proctor or Hill heir in attendance).   Nevertheless, this article is irrelevant as it does not tend to make it more likely that McCauley, Jr. was an agent at the 1908 tax sale.

The third article is the news of McCauley, Sr's death in 1910, Exhibit D53.006, D53.007. McCauley, Sr., is not at issue in this case.  His status is irrelevant and his date of death equally so.


Respectfully submitted,

PENNSYLVANIA GAME COMMISSION


DATE:  April 16, 2021                    s/Bradley C. Bechtel_____
                                                    Bradley C. Bechtel, Chief Counsel
                                                    PA No. 49681
                                                    W. Creigh Martson, Assistant Counsel
                                                    PA No. 94759
                                                    2001 Elmerton Ave.
                                                    Harrisburg, PA 17110-9797
                                                    (717) 783-6530
                                                    brbechtel@pa.gov
                                                    wmartson@pa.gov
                                                    *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 16, 2021, I filed the attached document with the Court's

ECF system such that all counsel of record will be served automatically.


s/Bradley C. Bechtel
Bradley C. Bechtel

1