**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, PENNSYLVANIA GAME COMMISSION, | : | CIVIL ACTION – LAW |
| | : | |
| | : | CASE NO. 1:12-CV-1567 |
| | : | |
| Plaintiff, | : | JUDGE: Christopher C. Conner |
| | : | |
| v. | : | |
| | : | |
| THOMAS E. PROCTOR HEIRS TRUST, | : | |
| | : | |
| Defendant. | : | |
| | : | [Electronically Filed] |

## PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Bradley C. Bechtel, Chief Counsel
PA No. 49681
W. Creigh Martson, Assistant Counsel
PA No. 94759
2001 Elmerton Ave.
Harrisburg, PA 17110-9797
(717) 783-6530
brbechtel@pa.gov
wmartson@pa.gov
*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

I.   Introductory Statement …………………………………………………..1

II.  Proposed Findings of Fact……………………………………………..2

    A. The Commission's Case-in-Chief…………………………………2

    B. Rebuttal of the Trust's Purported Evidence………………………..6

III. Proposed Conclusions of Law……………………………………………8

    A. The Commission is Entitled to Judgment in its Favor………………..8

    B. Collateral Estoppel Barred the Trust from Presenting Their Evidence
       on the Asserted Disputed Issues of Fact…………………….……13

    C. There Is No Genuine Dispute of Material Fact as to What was
       Assessed in 1907 and Sold in 1908…………………………………15

    D. There Was No "Duty" of Owners to Pay Taxes on Unseated Land
       that Barred Their Acquiring Better Title at a Tax Sale………………17

# TABLE OF CITATIONS

## Federal Cases

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S.Ct. 1589, 1594 (2020)…………………………………………….…………14

*Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)………..…13

*Proctor v. Sagamore Big Game Club*, 166 F. Supp. 465 (W.D. Pa. 1958), *aff'd*, 265 F.2d 196 (3d. Cir. 1959)…………………………….…………………….9

*Walker v. Horn*, 385 F.3d 321, 336 (3d Cir. 2004)…………………………..13, 14

## State Cases

*Commonwealth v. Thomas E. Proctor Heirs Trust, et al.*, 493 MD 2017 Memorandum Opinion (Pa. Cmwlth. Jan. 26, 2021)………………………..*passim*

*Cornwall Mt. Invs., L.P. v. Thomas E. Proctor Heirs Trust*, 158 A.3d 148 (Pa. Super. 2017)…………………………………………………………………9-10, 16

*Coxe v. Gibson*, 27 Pa. 160 (Pa. 1856)……………………………………..17, 20

*Herder Spring Hunting Club v. Keller*, 143 A.3d 358 (Pa. 2016)……………*passim*

*Hunter v. Cochran*, 3 Pa. 105 (Pa. 1846)…………………………………………19

*Hutchinson v. Kline*, 49 A. 312 (Pa. 1901)……………………….……………9, 25

*Kaiser Energy, Inc. v. Com., Dep't of Envtl. Res.*, 535 A.2d 1255 (Pa. Cmwlth. 1988)………………………………………………………………8

*Keta Gas & Oil Co. v. Proctor*, 2019 WL 6652174 (Pa. Super. Dec. 6, 2019), *appeal denied by*, 239 A.3d 23 (Pa. 2020), *cert. denied*, --- S.Ct. ---, 2021 WL 1725191 (May 3, 2021)……………………………..……*passim*

*Neil v. Lacy*, 1 A. 325 (Pa. 1885)……………………………………………23

*Powell v. Lantzy*, 34 A. 450 (Pa. 1896)……………………....……………10, 17-25

*Strauch v. Shoemaker*, 1 *Watts & Serg.* 166 (Pa. 1841)………………………..…10

*Wilson v. A. Cook Sons Co.*, 148 A. 63 (Pa. 1929)……………..……..……………9

*Woodhouse Hunting Club, Inc. v. Hoyt*, 183 A.3d 453 (Pa. Super. 2018)..…8-9, 16

## Statutes & Rules

Act of 1804, April 3, P.L. 517……………………………..……..………16, 22-23

Act of 1815, March 13, P.L. 177……………………………..………………4, 15

Act of 1887, June 6, P.L. 363……………………………………………..21-22

28 U.S.C. § 1738…………………………………………………………..13

## Other Authorities

*An Historical Perspective of The Pennsylvania Title Wash*, 85 PA Bar
Assn. Quarterly 106 (July 2014)……………………………………………..24

## I.      INTRODUCTORY STATEMENT.

Plaintiff ("Commission") submits these proposed findings of fact and conclusions of law in accordance with the Court's post-trial instructions to the parties. *See* April 27, 2021 Trial Transcript ("Trial Tr.") at 138. The bench trial was intended to resolve outstanding issues of material fact regarding ownership of the subsurface estate of the Josiah Haines warrant, as set forth in the Court's April 21, 2020 memorandum. *See* Doc. 183 at 29-43; Doc. 189.

As the Court has acknowledged, the Commission, for the reasons set forth in its summary judgment filings and subsequent motion for reconsideration, maintains a continuing objection to the relevance of these factual issues, which has been preserved for appellate review. *See* Doc. 189 at n.1.

The Commission, for the reasons stated in Plaintiff's Bench Memorandum Regarding Evidentiary Objections (Doc. 214) and at trial (Trial Tr. at 100-121), reiterates its evidentiary objections the Thomas E. Proctor Heirs Trust's ("Trust's") exhibits.[1]

---

[1]      Defendant Margaret O.F. Proctor Trust was removed from this action in advance of trial. *See* Doc. 213.

## II.     PROPOSED FINDINGS OF FACT.

### A.     The Commission's Case in Chief.

1.     The subject property is approximately 407.75 acres of land, being all of the Josiah Haines warrant located in Leroy Township, Bradford County, Pennsylvania.  *See* Doc. 183 at 3.

2.     The Josiah Haines warrant is a portion of the lands described in a deed, dated December 14, 1920, from the Central Pennsylvania Lumber Company to the Commission, recorded in Book 342, Page 376, in the official records of the Office of Recorder of Deeds of Bradford County.  Joint Exhibit J1 at J1.336; Trial Tr. 9.

3.     The early title in and to the Josiah Haines warrant traces via mesne conveyances from the Commonwealth of Pennsylvania to Robert Barclay of London, England, and then via specific devise in his will to his son Charles Barclay. *Id*. at J1.072 – J1.120; Trial Tr. 9.

4.     Joseph Oat, *et al.*, trustees for The Schrader Land Company, acquired a large tract of land containing over 18,000 acres, including the Josiah Haines warrant, by a series of deeds from 1853 through 1855.  *Id*. at J1.122 – J1.274.

5.     By deed, dated March 2, 1868, the trustees for the Schrader Land Company conveyed the same large tract of land containing over 18,000 acres, including the Josiah Haines warrant, to the Schrader Mining and Manufacturing Company.  *Id*. at J1.286.

2

6.     By deed, dated June 5, 1893, the Schrader Mining and Manufacturing Company conveyed a large tract of land containing over 15,000 acres, including the Josiah Haines warrant, to Thomas E. Proctor and Jonathan A. Hill.  *Id*. at J1.292; Doc. 183 at 3.

7.     By deed, dated October 27, 1894, Thomas E. Proctor and Jonathan A. Hill, joined by their spouses, conveyed a large tract of land stated to contain 14,200 acres, including the Josiah Haines warrant, to the Union Tanning Company, excepting and reserving the oil, gas, and minerals from the surface and excepting and reserving the oil, gas, and mineral estate for themselves, their heirs, and assigns (the "Proctor Reservation").  Joint Exhibit J1 at J1.296; Doc. 183 at 3.

8.     There was no separate assessment of the Josiah Haines warrant's oil, gas, and minerals.  Joint Exhibits J8 – J11.

9.     By deed, dated May 25, 1903, the Union Tanning Company conveyed the surface of a large tract of land, stated to contain 16,350.3 acres, including the Josiah Haines warrant, to the Central Pennsylvania Lumber Company ("CPLC"). Joint Exhibit J1 at J1.315; Doc. 183 at 3.

10.     By treasurer deed, dated June 8, 1908, by W.F. Waters, Treasurer of Bradford County, conveyed the Josiah Haines warrant described as, "410 acres of unseated land in LeRoy Township, assessed in the warrantee name of Josiah Haines," to Calvin H. McCauley, Jr., acknowledged in open court by A.C.

Blackwell, Deputy Treasurer of Bradford County.  Joint Exhibit J1 at J1.329; Doc. 183 at 3-4.

11.    By deed, dated December 6, 1910, Calvin H. McCauley, Jr. ("McCauley, Jr.") and his wife, Florence M. McCauley, conveyed forty-five tracts of land, including the Josiah Haines warrant, to CPLC.  Joint Exhibit J1 at J1.331; Doc. 183 at 4.

12.    The conveyance of the Josiah Haines warrant by McCauley, Jr., and his wife to CPCL on December 6, 1910 was after the two-year redemption period (Act of 1815, § 4) expired.  Joint Exhibit J1 at J1.331.

13.    By deed, dated December 14, 1920, the CPLC conveyed a tract of land stated to contain 7,492.9 acres, including the Josiah Haines warrant, to the Commonwealth of Pennsylvania.  *Id*. at J1.336; Doc. 183 at 4.

14.    From 1894 through 1910 the Josiah Haines warrant was unseated and assessed as such by the officials of Bradford County for tax purposes.  Joint Exhibits J8 – J11.

15.    From 1894 through 1910 Thomas E. Proctor is not associated with the Josiah Haines warrant in the tax assessment books for Bradford County.  *Id*.

16.    CPLC did not pay 1907 taxes for the Josiah Haines warrant and exposed it to tax sale in 1908.  Joint Exhibit J11 at J11.005.

17.    From April through June 1908, W.F. Waters, Treasurer of Bradford County, weekly advertised, under the heading "Treasurer's Sale of Unseated Lands," the Josiah Haines warrant to be sold for unpaid taxes pursuant to the then-applicable statute.  Joint Exhibits J12 – J24.

18.    Graphically, the Commission's chain of title is as follows:



Plaintiff's Exhibit P1 at P1.027; Trial Tr. 11.

**B.      Rebuttal of the Trust's Purported Evidence.**

19.      Although the subsurface rights in the Josiah Haines warrant may have been severed from the surface estate via the Proctor Reservation, those rights were not separately assessed by the Bradford County Commissioners.  *See* J8 – J11; *see also* Trial Tr., *generally*.

20.      There is no evidence establishing that the severance was ever reported to the Bradford County Commissioners.  *Id.*

21.      There is no evidence establishing that the Trust's predecessors in title ever requested that the Bradford County Commissioners separately assess the severed subsurface rights in and under the Josiah Haines warrant prior to the 1908 tax sale.  *Id.*

22.      Irrespective of whether the Trust's predecessors in title purportedly notified the county of the conveyance of the Josiah Haines warrant to them, there is no probative, admissible evidence of record that the Trust's predecessors in title subsequently notified the Bradford County Commissioners that, in 1894, the unseated land had been divided into surface and subsurface estates, such that they should be assessed and taxed separately.  *Id.*

23.      The Trust, despite the claimed sophistication of their predecessors and extensive land holdings in the Commonwealth, and despite bombarding the Court with mountains of irrelevant documents from which they ask the Court draw

improper inferences, fail to supply the Court with a single documented example of any such notice ever being provided to any county commissioner by their predecessors in title, yet claim it was their routine practice. *Id.*

24.     The materials provided by the Trust do not establish, even by inference, that the purported reservation of subsurface rights in the Josiah Haines warrant was reported to the Bradford County Commissioners prior to the 1908 tax sale. *Id.*

25.     During the relevant timeframe, McCauley, Jr., held various jobs and positions, including as a founding director, subscriber, and shareholder of the Rock Run Coal Company, as well as an association with Lewis, Jones, & Lewis, a Williamsport law firm. Defendant's Exhibit D23; Plaintiff's Exhibits P29 and P33.

26.     McCauley, Jr., joined by his wife, Florence, sold properties acquired at numerous 1908 tax sales to persons or entities other than CPLC. Plaintiff's Exhibit P30; Doc. 215-1 and 215-2.

27.     There is no evidence that McCauley, Jr. was, or acted as, CPLC's agent for purposes of the 1908 tax sale. *Id.*; *see* Trial Tr. *generally*.

28.     There is no evidence that McCauley Jr.'s wife, Florence, was, or acted as, CPLC's agent for purposes of the 1908 tax sale or ever. *Id.*

29.     Neither the public record at the time of the 1908 tax sale, nor the multitude of irrelevant documents that the Trust has submitted to the Court, provide

any basis for inferring that McCauley, Jr. intended to, or did, redeem the Josiah Haines warrant for CPLC. *Id.*

30.    McCauley, Jr. did not "redeem" the Josiah Haines warrant: he purchased it, as an individual, at a public tax sale at which anyone, including James Proctor or any other trustee, could have outbid him. Joint Exhibit J1 at J1.329; J25.

31.    On December 6, 1910, McCauley, Jr. did not assign to CPLC his interest in the Josiah Haines warrant. Instead, on December 6, 1910, McCauley, Jr., joined by his wife, conveyed their interest in the Josiah Haines warrant to CPLC. *Id.* at J1.331; Doc. 183 at 4.

## II.    PROPOSED CONCLUSIONS OF LAW.

### A.    The Commission is Entitled to Judgment in its Favor.

32.    The Commission is entitled to judgment because it has established superior title to the oil, gas, and mineral rights in the Josiah Haines warrant by a fair preponderance of the evidence. *See Commonwealth v. Thomas E. Proctor Heirs Trust, et al. ("Proctor Heirs")*, Memorandum Opinion at 2, 5 (Pa. Cmwlth. Jan. 26, 2021) (attached); *Kaiser Energy, Inc. v. Com., Dep't of Envtl. Res.*, 535 A.2d 1255, 1257-59 (Pa. Cmwlth. 1988); *Woodhouse Hunting Club, Inc. v. Hoyt*, 183 A.3d 453, 457 (Pa. Super. 2018).

33.    The Josiah Haines warrant was, as established by the public record and as a matter of law, assessed as a whole in 1907 and sold as a whole at the 1908 tax

sale. *See Herder Spring Hunting Club v. Keller*, 143 A.3d 358, 370, 373-375 (Pa. 2016); *Keta Gas & Oil Co. v. Proctor*, 2019 WL 6652174, at *3-*4 (Pa. Super. Dec. 6, 2019), *appeal denied by*, 239 A.3d 23 (Pa. 2020), *cert. denied*, --- S.Ct. ---, 2021 WL 1725191 (May 3, 2021); *Proctor Heirs*, Memorandum Opinion at 9-11.

34.    The 1908 tax sale marked the start of a new chain of title and divested all prior holders of any interest in the Josiah Haines warrant. *Id.*

35.    The Proctor Reservation was extinguished by 1908 tax sale and the Trust has been divested of any interest in the oil, gas, and minerals in the Josiah Haines warrant. *Id.*

36.    The case law is clear that the 1908 tax sale extinguished the Proctor Reservation in the Josiah Haines warrant and divested the Trust's predecessors in title of any interest they may have had in the oil, gas, and minerals in, on and under the subject portions of the Josiah Haines warrant. *Id. See also Cornwall Mt. Invs., L.P. v. Thomas E. Proctor Heirs Trust*, 158 A.3d 148 (Pa. Super. 2017); *Woodhouse*, 183 A.3d at 461; *Proctor v. Sagamore Big Game Club*, 166 F. Supp. 465 (W.D. Pa. 1958), *aff'd*, 265 F.2d 196 (3d. Cir. 1959).

37.    That an unassessed mineral estate coexisting with an unseated surface estate is subject to extinguishment by the occurrence of a tax sale of the servient surface estate was neither unjust nor inequitable at the time. *See Herder Spring*, *supra*; *Wilson v. A. Cook Sons Co.*, 148 A. 63 (Pa. 1929); *Hutchinson v. Kline*, 49

9

A. 312 (Pa. 1901); *Powell v. Lantzy*, 34 A. 450 (Pa. 1896); *Strauch v. Shoemaker*, 1 *Watts & Serg.* 166 (Pa. 1841).

38.     Any injury suffered by the holder of any severed mineral interests because of a tax sale of the servient surface estate was entirely self-inflicted because the holder could have easily protected himself by disclosing and seeking a separate assessment of the reserved interest or by redeeming the land at the tax sale.  *See Herder Spring*, 143 A.3d at 368-70; *Proctor Heirs*, Memorandum Opinion at 9-11.

39.     If minerals or other reserved rights were separately assessed and taxes are paid, then those interests would neither have been conveyed nor extinguished by a subsequent tax sale of the surface.  *Id.*

40.     The argument by the Trust that the reserved subsurface rights had no assessable value as of the 1908 tax sale was flatly rejected by the Pennsylvania Supreme Court in *Herder Spring* and, subsequently, by the Superior Court in *Cornwall*, a case in which the Trust made the very same argument.  *See Herder Spring*, 143 A.3d at 373-74; *Cornwall*, 158 A.3d at 156-57.

41.     Mere ownership of unseated land created no obligation on the owner of the unseated land to pay the assessed taxes.  *See* Section II.B. & II.D.*, infra.  See also Proctor Heirs*, Memorandum Opinion at 11-13; *Keta Gas*, 2019 WL 6652174, at *5-*7.

10

42.     There was no duty – legal, contractual, equitable, or otherwise – obligating CPLC to pay the taxes on unseated land that would transform the 1908 tax-sale purchase by McCauley, Jr. into a redemption.  *See* Section II.B. & II.D, *infra*. *See also Proctor Heirs*, Memorandum Opinion at 11-13; *Keta Gas*, 2019 WL 6652174, at *5-*7.

43.     It is legally irrelevant that McCauley, Jr. was an agent of CPLC at the time of the 1908 tax sale (to include the 1908 tax sale of the Josiah Haines warrant). *See* Section II.B. & II.D, *infra*.  *See also Proctor Heirs*, Memorandum Opinion at 11-13; *Keta Gas*, 2019 WL 6652174, at *5-*7.

44.     Because there was no challenge to any alleged irregularity in the 1908 tax sale regarding McCauley, Jr.'s alleged fiduciary status or otherwise during the two-year statutory period, the Trust is estopped from doing so now, over a century later.  *See* Section II.B. & II.D., *infra*.  *See also Proctor Heirs*, Memorandum Opinion at 15-16; *Keta Gas*, 2019 WL 6652174, at *5-*7.

45.     Because the 1908 tax sale was statutorily authorized, conducted by the proper authorities, and held in response to unpaid taxes, it is presumptively valid and McCauley, Jr.'s motives, even if improper, are not a sufficient reason to void the sales.  *See* Section II.B. & II.D., *infra*. *See also Proctor Heirs*, Memorandum Opinion at 15-16; *Keta Gas*, 2019 WL 6652174, at *5-*7.

46.     If the Trust disputed the County Commissioner's failure to assess the subsurface estate separately from the surface estate, it should have contested the assessment and tax sale with the initial two-year redemption period.  As such, whether the severance of the surface and subsurface was reported to the County Commissioners and should have been separately assessed prior to the 1908 tax sale, is, more than 100 years later, immaterial as a matter of law.  *See* Section II.B. & II.C., *infra*.  *See also Proctor Heirs*, Memorandum Opinion at 15-16; *Keta Gas*, 2019 WL 6652174, at *5-*7.

47.     Deed language in subsequent deeds did not preserve the Trust's subsurface rights in the Josiah Haines warrant after they were extinguished by the 1908 tax sale.  Doc. 183 at 44-45.  *See also Proctor Heirs*, Memorandum Opinion at 13-15; *Keta Gas*, 2019 WL 6652174, at *6; Section II.B., *infra*.

48.     The "subject-to" clause in the deed for the Josiah Haines from CPLC to the Commission neither preserves a prior reservation nor creates a new exception and reservation of any interest.  Doc. 183 at 44-45.  *See also Proctor Heirs*, Memorandum Opinion at 13-15; *Keta Gas*, 2019 WL 6652174, at *6; Section II.B., *infra*.

49.     The Commission is not estopped from claiming title to the subsurface of the Josiah Haines warrant.  Doc. 183 at 44-45.  *See also Proctor Heirs*,

Memorandum Opinion at 13-15; *Keta Gas*, 2019 WL 6652174, at *6; Section II.B., *infra*.

50.     The beliefs of certain representatives of the parties' predecessors with respect to the state of the law surrounding title washing is legally irrelevant.  *See Herder Spring*, 143 A.3d at 379 (purchaser at a tax sale becomes the first link in a new chain of title and he need not prove the title back of the same); *Proctor Heirs*, Memorandum Opinion at 13; *Keta Gas*, 2019 WL 6652174, at *6; Section II.B., *infra*.

51.     The Trust's due process claim fails as a matter of law.  Doc. 183 at 46-50; *Keta Gas*, 2019 WL 6652174 at *7; Section II.B., *infra*.

52.     The Commission owns the whole of the Josiah Haines warrant including the estate(s) formerly excepted and reserved in the Proctor Reservation. *See Herder Spring*, 143 A.3d at 373-74; *See also Proctor Heirs*, Memorandum Opinion at 17-18; *Keta Gas*, 2019 WL 6652174, at *7.

**B.     Collateral Estoppel Barred the Trust from Presenting Their Evidence on the Asserted Disputed Issues of Fact.**

53.     Under the Full Faith and Credit Clause, as implemented by 28 U.S.C. § 1738, a federal court must give the same preclusive effect to state court judgments that those judgments would be given in that state's own courts.  *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *see also Walker v. Horn*, 385 F.3d 321, 336 (3d Cir. 2004).

54.    The doctrine of issue preclusion, "sometimes called collateral estoppel," "precludes a party from relitigating an issue actually decided in a prior case." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S.Ct. 1589, 1594 (2020).

55.    This Court must therefore look to Pennsylvania state law to determine the requirements and effects of issue preclusion on the Trust's present claims.

56.    In Pennsylvania, issue preclusion applies where: (1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (5) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action. *Walker*, 385 F.3d at 337.

57.    Collateral estoppel precludes the Trust from re-litigating, in this action, several questions of law and issues of fact that were litigated and adjudicated finally against the Trust by the Pennsylvania Commonwealth Court in *Commonwealth v. Thomas E. Proctor Heirs Trust, et al.*, Memorandum Opinion (Pa. Cmwlth. Jan. 26, 2021) (attached), and by the Pennsylvania Superior Court in *Keta Gas & Oil Co. v. Proctor*, 2019 WL 6652174 (Pa. Super. Dec. 6, 2019) (attached).

58.     Specifically, collateral estoppel precludes the Trust from re-litigating, and requires the Court to enter the findings and conclusions set forth Section II.A., *supra*.

59.     Each of the foregoing issues, which are raised by the Trust in this case, were necessary to the Commonwealth Court's and Superior Court's judgments against the Trust.  The Trust was a party in both actions and had a full and fair opportunity to litigate each of the issues in question. As such, collateral estoppel precludes the Trust from re-litigating those same issues in this case.

**C.     There Is No Genuine Dispute of Material Fact as to What Was Assessed in 1907 and Sold in 1908.**

60.     Whether the surface and subsurface estates should have been separately assessed prior to the 1908 tax sale, is, more than 100 years later, immaterial as a matter of law.  *See Herder Spring*, 143 A.3d at 374; *Proctor Heirs*, Memorandum Opinion at 16.  The matter is immaterial because it relates to long-barred challenges to the 1907 assessment and 1908 tax sale.  *Id*.

61.     As the Pennsylvania Supreme Court explained in *Herder Spring*:

if the Kellers disputed the County Commissioners' **failure to assess their subsurface estate separately from the surface estate, they should have contested the assessment and tax sale within the initial two-year redemption period**. **After the expiration of that redemption period, a challenge to the propriety of the tax sale would not be heard under Section 4 of the Act of 1815** . . . .

*Herder Spring,* 143 A.3d at 374.

15

62.     The Trust is in the same position as the Kellers in *Herder Spring*.  This Court, therefore, should look to controlling and directly relevant Pennsylvania authority and conclude the 1908 tax sale is, over 100 years later, unassailable on the basis of alleged irregularities in notice, assessment, and process.  *Id.*; s*ee also Cornwall*, 158 A.3d at 160, *appeal denied by*, 172 A.3d 594 (Pa. 2017), *cert. denied*, 138 S.Ct. 1698 (2018) (Trusts time-barred from challenging procedural irregularities in the notice, assessment, and tax sale process because such irregularities only rendered the sale voidable within the period for challenging the tax sale, and not void); *Woodhouse*, 183 A.3d at 461  (collateral attacks on a tax sale may not be raised after the redemption period has passed).

63.     The 1908 tax sale was statutorily authorized, conducted by the proper authorities, and held in response to unpaid taxes.  *See* Joint Exhibit J1; *see also* Trial Tr. 9.

64.     The 1908 tax sale cannot, under *Herder Spring*, be collaterally attacked decades later on the basis that the separate surface and subsurface estates were reported and should have been separately assessed prior to the tax sale; such facts, if true, rendered the tax sale only voidable during the redemption period, not void. *See Herder Spring*, 143 A.3d at 374; *Proctor Heirs*, Memorandum Opinion at 13; *Cornwall*, 158 A.3d at 159-161.

65.     Pursuant to Section 5 of the Act of 1804 and as a matter of law, the

16

1908 tax sale, the propriety of which was not challenged during the two-year redemption period, encompassed the entire Josiah Haines warrant.  *See Herder Spring*, 143 A.3d at 359; *Proctor Heirs*, Memorandum Opinion at 13; Doc. 97-1 at 74.

### D.    There Was No "Duty" Of Owners to Pay Taxes on Unseated Land That Barred Their Acquiring Better Title at a Tax Sale.

66.    The Court misinterpreted the Pennsylvania Supreme Court's decision in *Powell v. Lantzy*, 34 A. 450 (Pa. 1896) to reverse itself and discover a non-existent "duty" on owners of unseated land to pay taxes thereon that barred their acquiring better title at a tax sale.  Doc. 183 at 43.

67.    The Court misinterpreted *Powell* because, as explained in that case, a finding of *personal liability to the state* for the taxes due, or some contractual or other obligation to a third party to pay them, is essential to finding any disabling "duty of the purchaser to pay the tax."  *Id*. at 451.  This rule of law is the relevant holding in *Powell*.   And, this rule of law explains, and is essential to, the Pennsylvania Supreme Court's earlier decision in *Coxe v. Gibson*, 27 Pa. 160 (Pa. 1856).

68.    In *Powell*, the Pennsylvania Supreme Court began its analysis by acknowledging the general rule that "[o]ne cannot, by a purchase at a tax sale caused by his failure to pay taxes which he **owed the state** or which he was otherwise legally or morally bound to pay, acquire a better title or a title adverse to that of other parties

17

in interest ….” 34 A. at 451 (emphasis added).

69.     There are, according *Powell*, two classes of owners who are barred from purchasing land at a tax sale: (1) owners “chargeable with” paying the overdue taxes; and (2) landowners that “by contract or otherwise [assume] a duty to other parties concerned to make the payment.” *Id*.

70.     As evidenced by the roughly equivalent depth of consideration of each, the holding in *Powell* has two parts corresponding to the two classes of purchasers precluded from acquiring better title at a tax sale. This is because the court in *Powell* had to decide whether the tax sale purchaser fell into either of the barred classes identified above.

71.     As to the first class, persons charged with paying taxes, the holding of *Powell* is that an owner of unseated land is **not** “charged” with paying taxes on that land and, therefore, is not barred from purchasing the land unseated land at a tax sale. *Id*.

72.     The Pennsylvania Supreme Court’s holding in this regard is: “[i]n speaking of taxes on unseated lands, which are not a charge against the owner . . . there was nothing in reason or law to prevent the holder of a defective title from purchasing a better one at a tax sale.” *Id*.  When it explained this holding, the court expressly equated “chargeability” with personal liability for the tax, stating: “[t]he taxes under which the sale was made in this case were on unseated lands, and there

was no personal responsibility on the owner therefor.  The land alone is liable." *Id.*

73.     Thus, rather than being "quite different" from the disabling "duty," as this Court erroneously concluded (Doc. 183 at 37), personal liability is the *sine qua non* of that "duty."[2]

74.     The Pennsylvania Supreme Court in *Powell* did not, as suggested by this Court, ground its holding in the fact that the tax sale purchaser did not own the land when the overdue taxes were assessed.  *See* Doc. 183 at 36 (discussing *Cox v. Gibson*).  To the contrary, this fact is mentioned at no point in *Powell's* discussion of the relevant law.  Rather, the Pennsylvania Supreme Court's focus in *Powell* was on whether the purchaser, as the owner of the unseated land, was personally liable for taxes on the land and it reached its decision since owners of unseated land are not personally liable for the taxes, *irrespective* of when taxes are assessed on the land.

75.     Additionally, while the Pennsylvania Supreme Court, commenting on a decision from the Michigan Supreme Court, did observe that an owner may be

---

[2]     When speaking of unseated land, the Pennsylvania Supreme Court has long equated "charge" with personal liability.  In *Hunter v. Cochran*, 3 Pa. 105 (Pa. 1846), the court, affirming and adopting the opinion of the lower court, explained: "[i]t is settled, that the charge of a tax upon unseated lands is no charge upon the person of the owner, but the land itself liable for the payment of it.   It is also decided, that whether the charge be in the name of the real owner or not, is a matter of no moment; if charge upon the land and not paid, a sale of the land, for the unpaid taxes, passes to the purchaser."

chargeable with taxes if in possession of the property when taxes are assessed, the outcome determinative inquiry is not whether the purchaser at the tax sale owned the property at the time the taxes were assessed. *See Powell*, 34 A. 451 (discussing *Lacey v. Davis*, 4 Mich. 140 (1856)). Rather, as concluded by *Powell*, the outcome determinative inquiry is whether the owner, as a result of owning the land or otherwise, was "charged" with paying the taxes. *Id*.

76. Once the holding in *Powell* is correctly stated, any confusion regarding the court's earlier decision in *Coxe v Gibson* is cleared up. The Pennsylvania Supreme Court in *Gibson* did not ignore the fact that the purchaser at the tax sale owned the unseated land when at least a portion of the taxes at issue were assessed. *See* Doc. 183 at 36 (discussing *Gibson*). Rather, as it later expressly recognized in *Powell*, this fact was *immaterial* because the land at issue was unseated when the taxes were assessed. 34 A.2d at 451. This meant that the owner, and tax sale purchaser, did not have personal liability for the taxes assessed during his ownership and, therefore, the landowner was not barred from purchasing his own land at the tax sale. *Id*.

77. The holding of *Powell* is perfectly consistent with the equitable concept that one should not be able to profit from the neglect of a legal duty or, as the court in *Powell* stated it, from the "failure to pay taxes which he **owed the state**." 34 A. at 451 (emphasis added). This is because, under Pennsylvania law, an owner of

unseated land is not viewed as having a legal duty to pay (*i.e.*, personal liability for) taxes assessed on the land.  The owner does not "owe" taxes to the state.  And, in the absence of personal responsibility for the taxes, the owner is not viewed as "profiting" from the tax sale.  The owner does not escape or avoid liability – *because* the liability was never his to begin with.

78.    All owners of unseated land were identically situated, irrespective of whether they bought the land before or after taxes were assessed.  Upon assessment, the tax liability attached to the unseated land and it remained with, or ran with, the land until satisfied.  Because the unseated land, and not the owner, was the debtor, the taxes on unseated land burdened current and prior owners equally.  Both were at risk of losing the unseated land at a tax sale, but neither was "charged" with (*i.e.*, personally liable for) the taxes.  More importantly, when thinking about the purchasing bar, both owners – the owner at the time of assessment and the owner at the time of a tax sale – enjoyed the same benefit if they purchased at a tax sale.  They got the property back free of liability and burdens.

79.    Because prior and current owners of unseated land were identically situated with respect to the unseated land and taxes assessed thereon, the bar to purchasing at a tax sale should apply equivalently to both owners.  And, in fact, given the holdings of *Powell* and *Gibson*, it did.

80.    The Act of June 6, 1887, relied upon by this Court (Doc. 183 at 38), did

not disturb the holding of *Powell* or modify the rule that owners of unseated land were not personally liable for taxes assessed against the land. The 1887 Act, instead, confirmed the long-standing process by which taxes on unseated land were collected. It was always the practice that the land was assessed, and became liable for the tax, but owners were expected to remit the tax because, of course, the land could not make the actual payment. The 1887 Act simply recognized the reality of how taxes were actually paid. *See* Joint Exhibit J29.

81.    The 1887 Act relied upon by the Court, moreover, pre-dates the Pennsylvania Supreme Court's 1896 decision in *Powell*, which was subsequently reaffirmed by the Court's 2016 decision in *Herder Spring* over a 100 years later. *See Herder Spring*, 143 A.3d at 367, 375. It must be presumed that the Pennsylvania Supreme Court, when it rendered its *Powell* and *Herder Spring* decisions, was aware of the 1887 Act and did not view it as imposing the "duty" found by this Court. The 1887 Act did not, moreover, as the Court acknowledged, change the common law. Doc. 183 at 38.

82.    Section 5 of the Act of 1804, moreover, which the 1887 Act must be read in conjunction with, did not concern itself with who owned the unseated land or why the taxes were not paid. By its plain and unambiguous language, Section 5 of the Act of 1804 vested the first link in an entirely new chain of title in the purchaser at the tax sale, *regardless* of whether that purchaser was the owner of the

22

unseated land sold at the tax sale or had precipitated the tax sale by failing or refusing to pay the taxes thereon.  *See Herder Spring*, 143 A.3d at 366, quoting Section 5 of the Act of 1804.

83.   This Court's conclusion, then, that owners of unseated land had a "duty" to pay taxes on such land is contrary to decades of well-established Pennsylvania law.  Doc. 183 at 36.  The "lack of person liability" to pay taxes on unseated land – *i.e.*, the lack of any "charge against the owner" – necessarily renders the "duty" discovered by this Court illusory, non-existent, and one that simply could be neglected or breached by the owner.  That is because the unseated land, not the owner, is the debtor, and the owner has the same right as stranger to become a purchaser at a tax sale of unseated land.  *See Neil v. Lacy*, 1 A. 325 (Pa. 1885).  *See also Herder Spring* at 366-67 (discussing *Powell*).

84.   Because the unseated land, not the owner, is the debtor, it is irrelevant *how* that debt was created, and it makes no difference if the tax-sale purchaser induced the treasurer's sale by failing or refusing to pay the assessed taxes.  Whether created by the owner of the unseated land through a deliberate tax avoidance scheme (like the one concocted by the Trust's predecessors-in-interest in this case) or by a third party, the debt still belongs to the unseated land, not to the owner of it.[3]

---

[3]      As the Court is aware from prior filings in this case, the tax sales the Trust seeks to undo in this, and other cases were the linchpin of a monopolistic business

85.    The Court, in its memorandum, strained to predict how the Pennsylvania courts would rule if confronted with the situation presented by this case – *i.e.*, where the surface owner of unseated land failed to pay the assessed taxes and then purchased, or had an alleged agent purchase, the property at tax sale.  *See* Doc. 183 at 36.  But the Pennsylvania Supreme Court, as aptly recognized by Chief Magistrate Judge Schwab's report, has already ruled on that very issue.  *See* Doc. 155 at 68-69.  It concluded, in both *Powell* and *Herder Spring*, and contrary to this Court's decision, that the owner of unseated land was not "chargeable" for the taxes and, consequently, was not barred, in the absence of some duty to a third party, from acquiring better title at a tax sale.  *See Powell*, 34 A. at 451-52; *Herder Spring*, 143 A.3d at 367, 375.

86.    In *Herder Spring*, the Pennsylvania Supreme Court expressly rejected this Court's conclusion that there was any "duty" on the owners of unseated land to pay the taxes thereon:

> As discussed, **tax on unseated land was the liability of the land rather than the owners**. Therefore, if the property was assessed as a whole property and none of the owners paid the tax, then the property would be sold as a whole to satisfy that tax. **As cogently set forth in *Powell v. Lantzy***, "[a]ny moral obligation to agree and jointly pay the tax, each contributing his just share, rested equally upon the owners of

---

model and tax avoidance scheme employed by the wealthy families whose assets are now held by the Trust.  The Trust's hands are filthy here.  *See An Historical Perspective of The Pennsylvania Title Wash*, 85 PA Bar Assn. Quarterly 106 (July 2014) (providing illuminating insight into wealth and tax avoidance in the early 1900s).

the different parts; **but there was no legal duty on either to do this**. It was their separate, not their joint, interests which were in peril." *Id*. at 550; *see also Proctor*, 166 F.Supp. at 475 ("[w]hen there is no separate assessment of the minerals, a purchase of the whole by the owner of the surface divests the title of the owner of the minerals"); *Hutchinson*, 199 Pa. 564, 49 A. 312. We find no distinction based upon the timing of the severance.

*Herder Spring*, 143 A.3d at 375 (emphasis added).

87.     Even if there was such a duty, as erroneously concluded by this Court on reconsideration of its prior grant of summary judgment for the Commission, the Trust cannot challenge the validity of the 1908 tax sale, over a century later, on the basis of that "duty."  Any such duty, per the Court's own reasoning, would have been owed by CPLC *to the state* (or to a third party) and not to the Trust's predecessors-in-interest.  The state was not wronged by the owner's purchase and, as between CPLC and the Trust's predecessors-in-interest, the state was simply not concerned with who purchased the property at the tax sale.

88.     Because unseated landowners had no legal duty to pay taxes on their land, McCauley Jr.'s purchase at the tax sale is neither "highly relevant" nor "material."  Doc. 183 at 43.

89.     It is of no consequence that McCauley, Jr. was purportedly acting as CPLC's agent at the 1908 tax sale, as CPLC was not, per *Powell* and *Herder Spring*, precluded from acquiring better title at the tax sale.

25

Respectfully Submitted,


PENNSYLVANIA GAME COMMISSION


July 1, 2021                    _s/_ Bradley C. Bechtel_____
                               Bradley C. Bechtel
                               PA No. 49681
                               W. Creigh Martson
                               PA No. 94759
                               2001 Elmerton Ave.
                               Harrisburg, PA 17110-9797
                               (717) 787-4250
                               brbechtel@pa.gov
                               wmartson@pa.gov
                               *Attorneys for Plaintiff*

26